# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY, and
4.     ROGER BORN AUSTIN

      Defendants.

---

## DEFENDANT ROGER AUSTIN'S MOTION FOR BILL OF PARTICULARS

Defendant Roger Austin, by and through undersigned counsel, and pursuant to Rule 7(f), respectfully requests the Court order the government to file a bill of particulars.

## I.     STATEMENT OF THE CASE

On June 2, 2020, Mr. Austin was indicted, along with three others, on one count of conspiracy in restraint of trade in violation of the Sherman Act.  15 U.S.C. § 1.  The Indictment alleges that the four defendants and many other entities or individuals (who may or may not be co-conspirators, the Indictment does not specify) engaged in communications over a five-year period to fix, maintain, stabilize, and raise the price of chicken.  The Indictment charges a large conspiracy involving a "continuing network of Suppliers and co-conspirators," and agreements to "submit aligned, though not necessarily identical" bids.  (Indictment, ¶¶ 28-29(a)).  It identifies by code name approximately 30 entities and individuals purportedly involved and further references "co-conspirators known and unknown."  *Id.* ¶ 1.  To support these sweeping allegations, the government has informed defense counsel that it intends to produce approximately 12.5 million documents, amounting to 19 terabytes of information.  Lost or buried in the government's discovery are the crucial specifics to properly define the charges and apprise Mr. Austin of the allegations against him so that he may prepare his defense for trial.

Specifically, the Indictment contains a section entitled "Means and Methods of the Conspiracy" in which the government describes eight incidents identified as "a part" of the conspiracy.  *Id.* ¶¶ 28, 32-77.  The Indictment suggests, but does not clearly state, that there are more incidents underlying the charges and against which Mr. Austin will need to defend himself.  Mr. Austin seeks particularization of which bids and which prices submitted over this five-year period were allegedly rigged or fixed, and what his alleged role was.

Second, the Indictment relies on vague language, or no detail at all, to describe the substance of the allegedly improper agreements such as, "aligned, though not necessarily identical" (*id*. ¶ 29(a)), or a recitation of a communication stating that "[Austin] is in agreement with us" (*id.* ¶ 40(c)) without indicating the substance of that agreement.  Mr. Austin seeks particularization of the substance of each agreement that is allegedly part of the conspiracy sufficient to know the theory of the case against him.

Third, the Indictment describes a "network" of co-conspirators but does not identify them, other than the four named defendants.  Mr. Austin seeks the identities of any alleged co-conspirators so that he may prepare his defense and find the relevant items buried in the 12.5 million documents.

It is settled law that a defendant is entitled to notice of the government's case against him sufficient to prepare his defense and to minimize surprise at trial.  *See United States v. Levine*, 983 F.2d 165, 166-67 (10th Cir. 1992).  The Indictment and the government's upcoming document dump do not meet this standard and, accordingly, a bill of particulars is appropriate.

## I.   <u>APPLICABLE LAW</u>

Rule 7(f) provides that the Court may direct the government to file a bill of particulars on motion by the defendant.  Fed. R. Crim. P. 7(f).  "The primary purpose of a bill of particulars is to more specifically define the charges set forth in the indictment, so that the defendant is apprised of the charges against him with sufficient clarity in order to allow him the opportunity to prepare his defense and to obviate prejudicial surprise to the defendant at trial."  *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985) (citations omitted); *see also United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988).

A trial court has broad discretion in ruling on a motion for a bill of particulars. *Dunn,* 841 F.2d at 1029. "In determining whether to grant a bill of particulars, courts look to certain factors including the complexity of the offense charged, the clarity of the indictment, and the degree of discovery available to the defendants without the bill . . ." *Rogers*, 617 F. Supp. at 1026. In considering complexity, "courts that have confronted demands for bills of particulars in criminal antitrust cases generally have recognized that such cases are different from the 'ordinary' criminal case." *United States v. Bestway Disposal Corp*., 681 F. Supp. 1027, 1029-30 (W.D.N.Y. 1988*) (granting a motion for a bill of particulars). Antitrust cases, like this one, frequently involve complex business transactions, dozens of individuals and entities, lengthy time periods and scores of lawful communications amongst which there is an allegedly unlawful agreement or agreements. A certain level of specificity as to who was involved, the substance of the alleged improper agreements and when those agreements took place is required for a defendant to be apprised of the theory against him and prepare his defense for trial. *Id.*; *see also United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (a bill of particulars is appropriate where an indictment does not reveal the theory of the government's case sufficiently to enable the defendant to prepare for trial).

Where the government's discovery will not clarify the charges, courts frequently find a need for a bill of particulars. *See, e.g.*, *United States v. Bortnovsky,* 820 F.2d 572, 575 (2d. Cir. 1987). This includes matters where there is little discovery but also cases where the government is "providing mountains of documents to defense counsel." *Id.* Sometimes the large volume of material disclosed is precisely what necessitates a bill of particulars.

Ultimately, "[t]he test in passing on a motion for a bill of particulars should be whether it

is necessary that defendant have the particulars sought in order to prepare his defense and in order that prejudicial surprise be avoided." *Rogers*, 617 F. Supp at 1027. Because the grant of a bill of particulars is premised on the Sixth Amendment right to defend, doubt should be resolved in favor of disclosure. *Id.* at 1027-28 ("[I]f the competing interests of the defense and the government are closely balanced, the interests of the defendant must prevail."). While a defendant may not be entitled to know all the evidence the government intends to produce, he is entitled to know the theory of the government's case against him. *See Levine*, 983 F. 2d at 167.

## III.    REQUESTED PARTICULARS

Accordingly, Mr. Austin requests the following particulars in order to understand and prepare to defend the charges against him:

(1)    Which bids or prices were allegedly rigged or fixed as a part of the conspiracy;

(2)    The substance of the allegedly improper agreements; and

(3)    Identities of any alleged participants in the conspiracy.

### 1.    The Government should identify the incidents of alleged price fixing or bid rigging.

The Indictment suggests a large conspiracy involving a "continuing network of Suppliers and co-conspirators" across a five-year time frame. (Indictment ¶ 28.) It provides eight incidents under a section entitled "Means and Methods of the Conspiracy." *Id.* ¶¶ 28-71. It does not specify if these are the only incidents of alleged bid-rigging and price-fixing. The expansive language used in the "Means and Methods" section and throughout the Indictment implies that these incidents are merely examples of what the government may present at trial. Over the five-years identified by the government, suppliers entered hundreds of bids and continually researched and analyzed pricing.

In order to sort through the government's enormous discovery and to prepare his case for trial, Mr. Austin needs to know which bids were allegedly rigged and which prices or price-related terms were allegedly fixed.  Mr. Austin asks that the government provide a list of implicated contracts or bids, including the time frame, the customers, the products being sold, the allegedly impacted contractual terms or prices, the suppliers involved, and the names of those with whom he allegedly conspired.

Case law in the antitrust context supports this request.  *See Rogers*, 617 F. Supp. at 1029 ("The government must reveal the substance, time, place, and date of each overt act as well as the identities of the participants in those acts."); *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. 376, 380-81 (N.D.N.Y. 1977) (ordering bill of particulars to sufficiently specify overt acts on which the government's theory rests in antitrust cases); *United States v. Metro. Leather & Findings Ass'n*, 82 F. Supp. 449, 455 (S.D.N.Y. 1949) (in price fixing case, a defendant is entitled to "a statement identifying each separate occasion [of price-fixing] relied on"); *United States v. Tedesco*, 441 F. Supp. 1336, 1343 (M.D. Pa. 1977) (similar).

**2.  The Government should identify the substance of the allegedly improper agreements.**

The Indictment does not sufficiently identify the government's theory of the substance of agreements amongst the co-conspirators.  It uses the vague description of "[a]ligned but not necessarily identical bids."  Indictment ¶ 29(a).  It refers to Mr. Austin as being "in agreement" without actually identifying what he agreed to.  Id. ¶ 41(c).  The eight incidents set forth in the Indictment describe some price bids that are meaningfully different from each other but were supposedly based on an improper agreement.  *See, e.g.*, Indictment ¶ 45.  In a highly competitive, customer-driven market, such as this one, it is no surprise that competitors would have similar

bids.  To prepare his defense for trial, Mr. Austin needs to have notice of the government's theory against him, and fundamental to that is the substance of the alleged agreements amongst the conspirators.  Accordingly, for each incident of alleged price fixing or bid-rigging, Mr. Austin asks the government to provide the substance of the agreement sufficient to know the theory of the case against him, including the price or terms allegedly fixed or rigged by each participant.

   3.  **The Government should identify any alleged participants in the conspiracy.**

   To defend himself review the government's production in any sort of a rational manner Mr. Austin must know with whom he is alleged to have conspired.  Requiring the government to identify co-conspirators comports with established caselaw in complex prosecutions.  *See, e.g.*, *Rogers*, 617 F. Supp. at 1028 (government required to identify undisclosed and unidentified co-conspirators, aiders and abettors, and other individuals involved in the criminal acts charged); *United States v. James*, 2007 WL 914242, at *15 (E.D.N.Y. Mar. 21, 2007) ("Courts have required the government to provide a list of any unindicted co-conspirators or 'co-schemers' if the government intends to introduce evidence about those individuals at trial."); *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) (granting bill of particulars seeking information about unindicted coconspirators).

   In *Kahale*, the court explained that:

   in assessing whether a bill of particulars revealing the names of unindicted co-conspirators would accomplish the permissible goals of providing a defendant with necessary information to prepare for trial and avoid surprise, courts in [the Second] Circuit have routinely evaluated six factors: (1) the number of co-

conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the Government's investigation.

*Id.* at 372, *citing Nachamie*, 91 F. Supp. 2d at 572-73.  Here, as in *Kahale*, at least four of these factors weigh in favor of disclosure: (1) the number of potential co-conspirators is potentially large; (2) "the alleged duration of the conspiracy, five years, is relatively lengthy" and the geographic scope of the conspiracy—nationwide—is expansive; (3) the government has not otherwise provided the particulars requested; and (4) the government will be overwhelming the defendants with "mountains" of discovery.  *See id.* at 372-73.  The government has provided no reason to believe the remaining two factors weigh against disclosure.  Finally, as in *Kahale* and similar cases, "the relative complexity of the [] charges facing defendants, … also weighs in favor of requiring disclosure."  *Id.* at 373.  The Government should be ordered to identify all the co-conspirators, including names and employers, and any other suppliers, customers, or witnesses in the alleged conspiracy.

IV.     **<u>CONCLUSION</u>**

The indictment in this case does not sufficiently reveal the particulars of the government's case against Mr. Austin, without which he cannot adequately prepare his defense at trial.  Mr. Austin respectfully requests that the Court order the government to provide a bill of particulars.

Dated: New York, New York                     Respectfully Submitted,
       June 18, 2020

                                                  REICHMAN JORGENSEN LLP

                                                  By:   /s/ Michael S. Feldberg

                                                  Michael S. Feldberg
                                                  *mfeldberg@reichmanjorgensen.com*
                                                  750 Third Avenue
                                                  Suite 2400
                                                  New York, NY 10017
                                                  Tel.: (212) 381-1965

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

I hereby certify that on June 18, 2020, I electronically filed the foregoing motion for a Bill of Particulars with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

Dated: New York, New York                    Respectfully Submitted,
       June 18, 2020

                                                REICHMAN JORGENSEN LLP

                                                By:   /s/ Michael S. Feldberg

                                                Michael S. Feldberg
                                                *mfeldberg@reichmanjorgensen.com*
                                                750 Third Avenue
                                                Suite 2400
                                                New York, NY 10017
                                                Tel.: (212) 381-1965