IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY, and
4.    ROGER BORN AUSTIN

       Defendants.

**DEFENDANT ROGER AUSTIN'S REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS**

      Mr. Austin respectfully submits this reply in support of his motion for a bill of particulars. Mr. Austin's motion asked essentially for three particulars: (1) identification of the specific incidents of alleged price fixing the government alleges; (2) identification of alleged co-conspirators; and (3) identification of the agreements alleged by the government. The government's response neither provides the requested particulars nor provides a compelling reason Mr. Austin's motion should not be granted.

      First, the government argues that it has provided a "non-exhaustive list" of incidents of alleged price fixing. Opp. at 11. If the government is prepared to limit the case to those eight incidents, fine. But if the government intends to rely on other incidents to prove its case at trial, Mr. Austin's motion asks simply that the government identify what they are.

1

The same is true with respect to co-conspirators – the government argues that it has identified many of the alleged co-conspirators, and that is sufficient.  Mr. Austin's motion reasonably seeks identification of all co-conspirators, and the government offers no compelling reason why this should not be provided, other than the general proposition that it does not have to prove the identity of all co-conspirators beyond a reasonable doubt at trial.

Finally, the heart of the indictment is the allegation of a continuing agreement, *e.g.*, Indictment ¶ 2.  Mr. Austin's motion seeks to compel the government to identify the particulars of the alleged agreement – who agreed with whom to do what under what terms and conditions.  The government's response that the indictment is a 20-page "speaking indictment" is a non sequitur – allegations such as "to reach agreements and understandings to submit aligned, though not necessarily identical bids and to offer aligned, though not necessarily identical prices," Indictment ¶ 29(a), provide no particulars at all, especially since many of the allegations of the indictment state that competitors signed agreements with customers which had different prices. *See e.g.*, Indictment ¶¶ 38, 39.

Despite the government's assertion that it has provided "full" discovery, Opp. at 1, its obligations are not fulfilled by saddling the defense with approximately 12.5 million documents and a handful of witness interview reports that, for the most part, make no mention of Mr. Austin.  Mr. Austin requests proper notice, an adequate opportunity to mount a defense at trial, and legitimate protections from double jeopardy. These foundational concerns underlie Mr. Austin's request for a bill of particulars.

The government admits in its opposition that the indictment's outline of "eight conspiratorial episodes" is "non-exhaustive." Opp. at 11.  Given the sheer size of the discovery

2

anticipated by the government, it is manifestly unfair to require Mr. Austin to read through approximately 12.5 million documents, much less be left to guess which of these (if any) will be used to support the charges in this case. The government's contention that these documents are "annotated and electronically searchable," Opp. at 3, does not mitigate the problem. Without more particularized information from the government, any of these 12.5 million documents could potentially serve as "evidence" on which the government may rely (and later claim to have properly disclosed), especially with regards to acts outside the indictment that supposedly underlie the charged conspiracy. "Annotating" these documents or providing the ability to search within them does not alter the fundamental fact that Mr. Austin has been given no guidance about what he should be looking for beyond those eight alleged episodes. Moreover, the witness interview reports and the set of "highly relevant" documents do not illuminate the actual substance of the charges against which Mr. Austin must defend himself.

## I.     LEGAL STANDARD[1]

"It is axiomatic that a criminal defendant should be given enough information about the offense charged so that he may prepare adequately for trial." *United States v. Rogers*, 617 F. Supp. 1024, 1027 (D. Colo. 1985). As previously discussed by all parties, *Rogers* lays out three factors governing the Court's discretion as to whether a bill of particulars is necessary: the complexity of the offense charged, the clarity of the indictment, and the degree of discovery provided by the government. *Id.* at 1026. As to the analysis of those factors, "each case is particularly limited to its own facts." *Id.* The government must "provide enough information to

---

[1] Pursuant to Local Rule 12.1(b)(1-4), Roger Austin adopts and incorporates by reference the arguments made and authorities cited by Defendant Jayson Penn in his Reply in Support of Motion for Bill of Particulars (the "Penn Reply"). Document No. 75, filed July 7, 2020.

apprise defendants of the nature of ***their own alleged overt acts*** as well as those of co-violators . . . especially where the government seeks to hold defendants liable for the overt acts of alleged co-conspirators." *Id.* at 1029 (emphasis added).  As set forth in Mr. Austin's Motion for a Bill of Particulars, the Penn Reply, and the additional analysis *infra*, the *Rogers* factors all support the provision of a bill of particulars under circumstances of this case.

## II.   ANALYSIS

### A.   Complexity of the Offense Charged

Defendant Jayson Penn, in his Reply in Support of Motion for Bill of Particulars, Document No. 75, filed July 7, 2020 (the "Penn Reply"), lays out in detail the government's distinctions between when a case should be considered "complex" and when it should not.  In sum, the government wants to tout its adherence to the "complete discovery" of 12.5 million documents, while at the same time alleging that this case is "factually and legally" simple and "straightforward." Opp. at 7.  Were that the case, the government would be able to easily lay out which of these 12.5 million documents it intends to rely on at trial.  This case cannot both necessitate so much discovery and at the same time be "straightforward[ly]" about "selling broiler chicken." Opp. at 8.

### B.   Clarity of the Indictment

The government contends that its indictment is "very specific" and "clear," Opp. at 6, but it does not address Mr. Austin's legitimate concern that what he must defend himself against does not fall within its four corners.  The non-exhaustive list does not provide Mr. Austin with the notice to which he is legally entitled.

For example, Mr. Austin has requested information regarding the relevant timeframe of

4

the bids he is alleged to have rigged and the prices he is alleged to have fixed.  The government argues that this request should be denied, Opp. at 11, while at the same time acknowledging that a defendant is entitled to an awareness of "the scope" of the enterprise. Opp. at 12 (citation omitted).  Mr. Austin cannot realistically understand the scope of the alleged conspiracy without information on its timeline.  As noted in the Penn Reply, "the episodes that the indictment does allege are so spread out in time, disconnected in participants, and sparse" as to leave Mr. Penn, and similarly Mr. Austin, "to guess about the government's theory of his complicity in an overarching multi-year conspiracy." Penn Reply at 4-5.

Even the information provided about the eight episodes gives little insight into Mr. Austin's alleged overt acts.  In one instance, the totality of Mr. Austin's alleged behavior is that he submitted a bid to a buyer, and one month later, he made a 3-minute phone call to an alleged co-conspirator. Indictment ¶¶ 43, 45.  The witness interview reports (all but three have now been provided) have no clear connection whatsoever to that alleged episode, and Mr. Austin is left to review over 12 million documents to attempt to understand what he is alleged to have done in violation of the law.

      **C.**    **Degree of Discovery Provided**

The government intends to provide Mr. Austin with 12.5 million documents by August 4, 2020. Opp. at 3.  The government highlights its production of "interview reports summarizing the government's witness interviews thus far[,]" Opp. at 3, as well as "more than 2,000 documents flagged as highly relevant and accompanying indices describing each production in detail[.]" Opp. at 1.  Its contention is that due to this "full" discovery, no bill of particulars is necessary.  However, simply proving the defense with enormous discovery in this manner does

not end the analysis. In *U.S. v Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987), the court stated that providing the defense with 4,000 documents caused "the burden of proof impermissibly [to shift] to [the defendants]" and found that the trial court erred in denying the defendants a bill of particulars. *Id.* The court continued that, while the government had cooperated in "turning over" documents before trial, "[t]he relevance of key events was shrouded in mystery at the commencement of and throughout the trial" and "[t]he Government did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be [relevant]." *Id.* Similarly, the volume of discovery in this case requires a bill of particulars, especially considering the "non-exhaustive" nature of the indictment.

### i. Volume of Discovery

The government "does not dispute that there is a lot of discovery" in this case. Opp. at 4. But if the government refuses to provide dates, times, or parties' identities relevant to evidence they intend to prove at trial, what is the use of an annotated or searchable database of documents? What would Mr. Austin search for?

The government's case law does not inform the situation. Its reliance on *U.S. v Wright*, 826 F.2d 938 (10th Cir. 1987) is misplaced; in that case, there was no information provided by the defense as to the actual volume of discovery or the prejudice suffered by the court's denial of a bill of particulars, and the court was unwilling to "fill that void for them." *Id.* at 944. The "complete discovery" in *U.S. v. Jenkins*, 313 F.3d 549 (10th Cir. 2002), which the government cites as proof that such discovery obviates a need for a bill of particulars, involved discovery regarding one .9 mm handgun, not 12.5 million documents. Finally, *U.S. v. Kunzman*, 54 F.3d

6

1522 (10th Cir. 1995) notes that the defendant in that case "ha[d] not demonstrated, or even argued, that he was actually surprised at trial" without a bill of particulars.  In this case, absent a bill of particulars, surprise is inevitable – it is not possible to review and digest all of the documents in any meaningful way without more information about what, if anything, the government intends to try to prove.

The government counters that Mr. Austin "ha[s] and will continue to receive a clear and continuously updated roadmap of the government's case[,]"  including a "twenty-page speaking indictment," a set of "more than 2,000 documents flagged as 'highly relevant'," and "witness interviews that will be supplemented as additional interviews occur." Opp. at 6.  Regardless of the length of the indictment, since the government concedes it is "non-exhaustive," Mr. Austin does not know what to look for in the entire set of documents provided, whether flagged as "highly relevant" or not.

### ii.        Witness Interview Reports/302s

The "witness interview reports" cited by the government do not provide Mr. Austin with sufficient notice as to what, specifically, he is alleged to have done. Opp. at 1, 3, 6, 12.

The witness interviews already provided by the government do nothing to elucidate what unlawful act or acts Mr. Austin is accused of having committed.  Of the twenty-two interview summaries that the government has provided to Mr. Austin, only three even mention Mr. Austin by name in any capacity.[2]

In one, the interviewee simply states that he "worked with" Mr. Austin, among many others, during the relevant time period, and provides the interviewer with Mr. Austin's contact

---

[2] A fourth notes that the interviewee does not know Mr. Austin. Interview of [REDACTED-1].

7

telephone number. Interview of [REDACTED-2].

In another, the interviewee states only that the Pilgrim's "current contract in place was negotiated under Roger Austin [] prior to his retirement[.]" Interview of [REDACTED-3].

In the third, the interviewee identifies Mr. Austin as one in a laundry list of his "points of contact" in the conducting of "business," noting that Mr. Austin was subsequently replaced by another person. Interview of [REDACTED-4].

The witness interview reports already supplied to Mr. Austin do not provide particulars of what bids he is alleged to have "fixed," what timeframe the government contends he acted illegally within, or, in sum, how he has broken the law. The government cannot just repeat the idea that the witness interviews provide "insight and specificity" and make it so. Opp. at 12. The government should be required to provide Mr. Austin with much more clarity about what he is alleged to have done, when, and with whom, than what is present in these highly-touted witness interview reports.

### iii. "Highly Relevant" Documents

As outlined in detail in the Penn Reply, the government's reliance on this subset of "highly relevant" documents does not assist Mr. Austin in illuminating the allegations in this matter. Designating a set of "highly relevant" documents does not relieve Mr. Austin of the burden of examining the rest of the 12.5 million documents. That they were provided to Mr. Austin suggests that the government considers them relevant to the case. Moreover, the government's set of "highly relevant" documents likely involves allegedly inculpatory evidence; potentially exculpatory evidence may be within the greater set of 12.5 million. In order to adequately prepare his defense, Mr. Austin cannot rely on conducting an examination of only

8

2,840 out of 12.5 million documents.  A bill of particulars is required for Mr. Austin to be given proper notice of the case against him.

### III.     CONCLUSION

Mr. Austin respectfully requests that the Court order the government to provide a bill of particulars.


Dated: New York, New York					Respectfully Submitted,
       July 9, 2020


REICHMAN JORGENSEN LLP


By:   /s/ Michael S. Feldberg

Michael S. Feldberg
*mfeldberg@reichmanjorgensen.com*
750 Third Avenue
Suite 2400
New York, NY 10017
Tel.: (212) 381-1965

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLORADO**

I hereby certify that on July 9, 2020, I electronically filed the foregoing motion for a Bill of Particulars with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.


Dated: New York, New York                     Respectfully Submitted,
       July 9, 2020

                                            REICHMAN JORGENSEN LLP

                                            By:   /s/ Michael S. Feldberg

                                            Michael S. Feldberg
                                            *mfeldberg@reichmanjorgensen.com*
                                            750 Third Avenue
                                            Suite 2400
                                            New York, NY 10017
                                            Tel.: (212) 381-1965