**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. **MIKELL REEVE FRIES,**
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,

    Defendants.

---

**GOVERNMENT'S OPPOSITION TO DEFENDANT FRIES' MOTION TO MODIFY BOND CONDITIONS TO ALLOW FOR INTERNATIONAL TRAVEL**

---

To reasonably assure the defendant Mikell Fries' appearance in these proceedings as required by the Bail Reform Act, the United States opposes his request for a leisure trip in pursuit of big-game trophies in Tanzania, where extradition would be extremely difficult and highly unlikely.

**BACKGROUND**

A federal grand jury returned an indictment against Mr. Fries on June 2, 2020, charging a single count in violation of the Sherman Act, 15 U.S.C. § 1, for his role in a multi-year conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States. Indictment ¶ 1, ECF No. 1. He faces a maximum sentence of ten years of imprisonment and a $1 million fine, as well as three years of supervised release, a $100 special assessment, and restitution. 15 U.S.C. § 1.

Mr. Fries' initial appearance was on June 4, 2020, before the Honorable Magistrate Judge Kristin L. Mix. The Court released the defendant subject to a personal-recognizance bond and other conditions, including that Mr. Fries was ordered to surrender his passport to his attorney by June 6, not to obtain a passport or other international travel document, and not to travel outside the United States without prior permission of the Court. Order Setting Conditions of Release ("Release Order"), ECF No. 38.  And on June 8, 2020, Chief Judge Brimmer scheduled a 10-day trial in this matter to commence August 10, 2020.  ECF No. 46.

Eight days after his initial appearance and entry of the order directing him not to obtain any international travel documents, on June 12, Mr. Fries applied for a Tanzanian entry visa with a start date the same day his trial was scheduled to begin. Def. Fries' Mot. to Modify Bond Conditions ("Fries Mot."), Ex. C, ECF No. 78.  His application was approved on June 19. *Id.* On July 8, 2020, Chief Judge Brimmer rescheduled trial for February 2021. ECF No. 76. Then, on July 10, 2020—after trial was rescheduled, but while he was nevertheless restricted from international travel—Mr. Fries received a flight confirmation for a flight on Ethiopian Airlines to Kilimanjaro, Tanzania, connecting through Addis Ababa, Ethiopia, scheduled to depart August 15 and return August 31.[1] Fries Mot., Ex. B.

On July 13, 2020, Mr. Fries—claiming that he "does not have a history of non-compliance with court orders" and citing his "compliance with pretrial release," Fries

---

[1] It is unclear whether Mr. Fries booked the travel before or after the trial date was moved from August 2020 to February 2021. However, on July 7—one day prior to the rescheduling—the government was advised by counsel for Mr. Fries that his client was in the process of booking new tickets and that flight numbers would soon be provided.

2

Mot. at 3—made the present motion to modify his conditions of release so that he may travel to Tanzania for a "once-in-a-lifetime trip" in pursuit of big-game trophies.[2] *Id.*

## ARGUMENT

Mr. Fries' motion to modify his conditions of release to permit him to travel to Tanzania for a "hunting safari" runs contrary to the Bail Reform Act's mandate that conditions be crafted to "reasonably assure the appearance of the person," 18 U.S.C. § 3142(c)(1)(B). Not only would such travel place Mr. Fries outside the jurisdiction of this Court, but the government would effectively have little recourse if he chooses to remain in Tanzania.

Extradition from Tanzania is an extremely difficult, resource-intensive, and time-consuming undertaking. To the best of the government's knowledge the last successful extradition from Tanzania to the United States for *any* crime occurred for a drug offense in 2017, and prior to that there was an extradition for a homicide/kidnapping offense in 1996. The government is unaware of any extraditions from Tanzania for antitrust offenses. Indeed, antitrust crimes are not explicitly contained in the list of extraditable offenses enumerated in Article 3 of the Treaty. *See* Fries Mot., Ex. D. And although the United Nations Convention Against Transnational Organized Crime (UNTOC) is a separate multilateral convention that can supplement the extradition treaty, G.A. Res.

---

[2] The government notes that this does not appear to be a "once-in-a-lifetime trip" as Mr. Fries claims. The publicly accessible website for Umlilo Safaris in South Africa contains at least nine photographs of Mr. Fries from 2015 posing with nine different animals. *See 2015 Trophy Hunting Gallery*, UMLILO SAFARIS, http://umlilosafaris.co.za/gallery/archives/2015-trophy-hunting/category/14-2015-trophy-hunting?limitstart=0 (last visited Jul. 16, 2020). There are also numerous photographs of a man identified in the caption as "Rawls" posing with similar animals, suggesting that at least one of his proposed travel companions for the present "once-in-a-lifetime trip" accompanied Mr. Fries on his 2015 safari. *Id.*

3

55/25, annex, United Nations Convention Against Transnational Organized Crime art. 16 (Nov 15, 2000), the government is also unaware of fugitives being extradited from Tanzania (or anywhere else, for that matter) for antitrust offenses using the UNTOC, leaving the viability of that avenue untested and unclear. Mr. Fries' proposed hunting trip is the wrong vehicle to provide a test case.

Further, Mr. Fries' offer to waive extradition is an inadequate remedy. A waiver would likely be unenforceable and provides no guarantee that Mr. Fries will not flee to a third country from which extradition may be even more difficult or impossible. *See, e.g.*, *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *7 (D. Utah Aug. 27, 2013) ("[I]n [defendant's] briefs, he offers to waive extradition. But this too is hollow. If he arrives in Lebanon, the United States's ability to enforce that contractual waiver is significantly hampered."); *United States v. Morrison*, No. 16-MR-118, 2016 WL 7421924, at *4 (W.D.N.Y. Dec. 23, 2016) ("waiver may not become valid until an extradition request is pending in Canada and may be subject to withdrawal"); *United States v. Kazeem*, No. 1:15-cr-00172-AA-1, 2015 WL 4645357, at *3 (D. Or. Aug. 3, 2015) ("Defendant's suggestion that he might sign a waiver of extradition is undermined by grave doubts about the enforceability of such a waiver."). Moreover, Mr. Fries has not offered to waive extradition from Ethiopia or from any other country (such as the United Arab Emirates) to which he might travel where there is no extradition treaty.

Also unpersuasive is the defendant's suggestion that his familial and community ties and other personal characteristics make him a low flight risk. For the first time in his life, Mr. Fries stands accused of a felony—one that carries a maximum term of ten

4

years of imprisonment.[3] Once in a foreign country, away from the counsel of his attorneys, Mr. Fries—a person of substantial financial means—may find that the circumstances awaiting him upon his return weigh in favor of remaining in Tanzania or fleeing to another country. The fact that the United States would face considerable legal challenges to extradition only compounds the problem and creates an unreasonable risk of nonappearance that would deny the public its right to have Mr. Fries stand trial.

Moreover, Mr. Fries' actions during the pendency of this prosecution demonstrate his cavalier attitude toward the Court's orders and should give the Court considerable pause before allowing him to travel abroad. In particular, even though on June 4 the Court prohibited him from obtaining international travel documents, Mr. Fries did just that on June 12 by applying for, and later obtaining, a visa to enter Tanzania. Moreover, he did so with the intent to travel to Tanzania *during* his trial, which was then-scheduled to begin August 10. *See* Release Order at 2 (June 4, 2020, order that Mr. Fries not obtain any international travel document); Order, ECF No. 46 (June 8, 2020, order setting a 10-day jury trial beginning August 10, 2020); Fries Mot., Ex. C (showing that Mr. Fries on June 12, 2020, applied for a Visa to enter Tanzania); Fries Mot., Ex. A (showing the purpose of the Tanzania trip was for a safari beginning August 15, 2020). Simply put, those are not the actions of a defendant who respects the gravity of his

---

[3] Even if the defendant does not receive the maximum sentence, he could be incarcerated for a substantial period of time. For reference, last month an executive convicted in an unrelated price-fixing conspiracy affecting the tuna industry received a 40-month sentence in the Northern District of California. *See* Minute Entry, *United States v. Lischewski*, No. 3:18-cr-203 (N.D. Cal. June 16, 2020).

5

situation and who should be entrusted to return voluntarily pursuant to an order of the Court.[4]

The government recognizes, of course, that courts sometimes grant requests for international travel—usually due to some type of hardship, including sick family members or the need to maintain employment. The only hardship identified in Mr. Fries' motion is the loss of a nonrefundable deposit. While the size of the lost deposit may seem large, it is less meaningful when placed in context of Mr. Fries' overall wealth and assets. In any event, Mr. Fries' predicament is little different from that in which many Americans of far lesser means now find themselves—where plans such as vacations, weddings, etc. were disrupted by the ongoing pandemic—and as such his hardship is not out of the ordinary.

## CONCLUSION

For the reasons stated, the Court should deny Mr. Fries' motion. Should the Court be inclined to grant the motion, however, the government requests that the Court consider appropriate additional conditions of release, including at least (1) a monetary

---

[4] Mr. Fries suggests that because his trip to Tanzania was planned before he was aware of the investigation, the Court should view the timing of his trip shortly after indictment as a coincidence rather than a factor enhancing the likelihood of flight. *See* Fries Mot. at 2. While his reasoning may have a degree of superficial appeal, the facts undermine its persuasiveness. The government advised company counsel that Mr. Fries should obtain individual counsel in August 2019. Although he continued with corporate counsel, Mr. Fries was surely aware that he was under investigation at that time. And according to the handwritten notations on Mr. Fries' safari receipt, he did not pay more than his initial $5,000 deposit until January of 2020—several months after August 2019 when he was apprised of his status. Fries Mot., Ex. A. Either way, his intent in booking the trip is irrelevant because it provides an opportunity for, and unreasonable risk of, flight.

6

bond in the amount of $500,000, secured by $300,000 cash; (2) a waiver of extradition;[5] and (3) an order requiring Mr. Fries to provide the government with an up-to-date copy of his itinerary prior to travel, including information regarding his travel schedule, lodging, and all local contact information.

      Respectfully submitted this 20th day of July, 2020.

By:  /s/ Heather Call  
Heather D. Call  
Michael T. Koenig  
Carolyn M. Sweeney  
Paul J. Torzilli  
Trial Attorneys  
Antitrust Division  
U.S. Department of Justice  
Washington Criminal II Office  
450 Fifth Street, N.W.  
Washington, D.C. 20530  
Tel: (202) 598-2623  
Email: heather.call@usdoj.gov  

Attorneys for the United States

---

[5] While likely unenforceable and not meaningful to the flight-risk analysis, the government submits that such a waiver should be ordered in the unlikely event that it may prove useful in an extradition proceeding.  *See, e.g.*, *United States v. Myiow*, No. 95-CR-446 FJS, 1996 WL 238545, at *1 n.2 (N.D.N.Y. Apr. 26, 1996) ("[T]he United States has offered evidence that such a waiver is unenforceable in Canadian courts unless executed under the jurisdiction of those courts. Such evidence is persuasive. . . . The waiver is retained as a condition of release, however, based on the defendant's offer to do so and the possibility that it might have some effect in an extradition proceeding.").

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of July 2020, I electronically filed the foregoing **GOVERNMENT'S OPPOSITION TO DEFENDANT FRIES' MOTION TO MODIFY BOND CONDITIONS TO ALLOW FOR INTERNATIONAL TRAVEL** with the Clerk of the Court using CM/ECF which will send notification of such filing to counsel of record in the above-captioned matter.

s/ Heather D. Call
Heather D. Call
Trial Attorney
United States Department of Justice
Antitrust Division
Washington Criminal II Office
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 598-2623
Email: Heather.Call@usdoj.gov

Attorney for the United States