**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  JAYSON JEFFREY PENN,
2.  MIKELL REEVE FRIES,
3.  SCOTT JAMES BRADY,
4.  ROGER BORN AUSTIN,
5.  TIMOTHY R. MULRENIN,
6.  WILLIAM VINCENT KANTOLA,
7.  JIMMIE LEE LITTLE,
8.  WILLIAM WADE LOVETTE,
9.  GARY BRIAN ROBERTS,
**10. RICKIE PATTERSON BLAKE,**

      Defendants.

---

**GOVERNMENT'S PARTIAL OPPOSITION TO DEFENDANT
MR. BLAKE'S MOTION FOR DISCOVERY OF JURY SELECTION PROCEDURES**

      The government partially opposes Defendant Rickie Patterson Blake's Motion for

Discovery of Jury Selection Procedures (ECF No. 125). Specifically, the Court should

reject, in whole or part, Requests 2, 5-8, 10, and 11 insofar as they are outside the

scope of Jury Selection and Service Act of 1968 ("JSSA"), intrude on grand jury

secrecy, and unduly compromise juror privacy. The government does not oppose

Requests 1, 3, 4, and 9. Consistent with other orders granting JSSA discovery in this

District, *see, e.g.*, *United States v. Hicks*, No. 07-cr-00184-WYD, 2008 WL 5396013 (D.

Colo. Dec. 22, 2008), as well as equity to all parties, the Court should allow the

government and other defendants equal access to any and all discovered materials.[1]

## BACKGROUND

Mr. Blake requests broad discovery of petit and grand jury materials to aid his preparation of a contemplated motion under 28 U.S.C. § 1867(a), which would allege a "substantial failure" to comply with the JSSA based on the systematic exclusion of jurors of certain races and ages due to COVID-19. To that end, Mr. Blake requests the following categories of discovery pursuant to 28 U.S.C. § 1867(f) of the JSSA:

1) The Jury Plan for the District of Colorado currently in effect, if different from that available on the Court's website (*Revised Jury Plan for Random Jury Selection*, U.S. D. CT. D. COLO., Mar. 1, 2017, https://tinyurl.com/y3ekg9td ("D. Colo. Jury Selection Plan")), and a description of any changes that have been made in the selection of prospective jurors due to the COVID-19 pandemic, to the extent not otherwise stated in the Court's Jury Trial Protocols (*Jury Trial Protocols*, U.S. D. CT. D. COLO., June 30, 2020, https://tinyurl.com/y6aspn84));

2) Documents sufficient to show: (a) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of all grand juries empaneled in the District during the COVID-19 pandemic; (b) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of all grand jury members excused or deferred from participating in a grand jury after it was empaneled in the District; and (c) the Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation of any grand jury members added after a grand jury was originally empaneled in the District;

3) The Juror Qualification Questionnaire distributed to potential grand or petit jurors, as contemplated in Section 14 of the Court's Plan, and any additional forms being distributed during the COVID-19 pandemic;

4) The District's two most recently submitted AO-12 forms;

5) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals on the Master Jury Wheel in this District;

---

[1] The government notes that the prosecution team does not have the requested documents other than those available on the District of Colorado's public website.

6) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals eligible for jury service in this District;

7) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for those individuals (a) to whom summonses and jury questionnaires were sent, as contemplated by Sections 11, 12, and 15 of the Court's Plan, and (b) those deemed qualified for jury service, as contemplated by Section 16 of the Court's Plan;

8) Documents identifying all excuses received from potential jurors and, separately, all excuses accepted from potential jurors, for the District, as contemplated by Sections 17 and 18 of the Court's Plan, during the COVID-19 pandemic;

9) Documents reflecting any policies or practices established by the Court or Clerk's Office for excusing grand or petit jurors during the COVID-19 pandemic;

10) Documents sufficient to show: Race, Religion, Sex, Gender, Ethnicity, Year of Birth, Zip Code, Income, and Occupation for all prospective jurors for the District who have been excused from or granted a deferral of their jury service based on the COVID-19 pandemic; and

11) Once criminal trials in this District resume and a trial schedule in this matter is set, any additional documents or data responsive to Request Nos. 2-3 and 5-10 for the period between March 13, 2020 and 30 days before voir dire in this matter.

ECF No. 125 at 2-3.

According to Mr. Blake, he requires the demographic data outlined in Requests 2, 4-7, and 11 to determine whether certain racial and age groups were (or may become, in the case of the not-yet empaneled petit jury) underrepresented due to COVID-19. He also says he requires information in Requests 1, 3, and 8-11 to determine whether the Court's practices and procedures are causing any such underrepresentation during COVID-19.

## APPLICABLE LAW

"The Sixth Amendment guarantees a defendant the right to a jury pool comprised of a fair cross-section of the community," *United States v. Green*, 435 F.3d 1265, 1270 (10th Cir. 2006), a right codified by the JSSA at 28 U.S.C. § 1861. As such, "jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community." *Duren v. Missouri*, 439 U.S. 357, 363-364 (1979) (citations omitted). However, a defendant "does not have a right to a jury of 'any particular composition' and the jury actually chosen does not have to 'mirror the community,'" *Green*, 435 F.3d at 1270-1271 (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)). To ensure adherence to those principles, the JSSA permits a defendant to access "records or papers used by the jury commission or clerk *in connection with the jury selection process*," § 1867(f) (emphasis added), and then, if there was a "substantial failure" to comply with the JSSA, to move to dismiss the indictment or stay the proceedings, § 1867(a).

Whether in the context of petit or grand juries, "a defendant's right to inspect pursuant to § 1867(f) is unqualified, [but] it is not unlimited." *United States v. Koerber*, No. 2:17-cr-37-RJS-PMW, 2017 WL 2992090, at *2 (D. Utah July 13, 2017). The JSSA provides that "contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . *as may be necessary* in the preparation or presentation of a motion under [§ 1867(a)]." § 1867(f) (emphasis added). It follows from the plain language of the statute that a defendant is

entitled to no more discovery than necessary to prepare his contemplated motion.[2]
*United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987) (defendant must show that the requested records are "necessary" for the preparation of a motion under § 1867(a)); *United States v. Shader*, No. 20-CR-202, 2020 WL 4158059, at *3 (E.D.N.Y. July 17, 2020) (explaining that "access to materials under the JSSA is not unfettered" and that "JSSA is not a license for litigants to rummage at will through all jury-related records maintained by the Clerk of Court") (citation omitted). The statutory requirement of necessity not only reduces additional burden imposed by broad discovery on an already-overburdened judicial system, but it also protects against violations of juror privacy, *Koerber*, 2017 WL 2992090, at *3.

Grand jury secrecy raises an additional counterbalance to the defendant's need for the materials. The Supreme Court has consistently "recognized that the proper functioning of our grand jury system depends on the secrecy of grand jury proceedings" and in "the absence of a clear indication in a statute or [r]ule, [the court] must always be reluctant to conclude that a breach of secrecy has been authorized." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 424 (1983) (citations omitted). *See also* Fed. R. Crim. P. 6(e) (mandating grand jury secrecy and prohibiting disclosure of matters before a grand jury except in very limited circumstances). "Therefore, access to grand jury selection records is prohibited unless a defendant can demonstrate that the records requested:

---

[2] In order to establish a prima facie violation of the fair cross-section requirement, a successful §1867(a) motion must show: (1) that the allegedly excluded group is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren*, 439 U.S. at 364.

(1) are ministerial and do not involve matters occurring before the grand jury; (2) are records or papers used by the court's jury administrator 'in connection with the jury selection process;' and (3) will aid him in filing a meritorious jury challenge pursuant to § 1867(a) . . . of the JSSA." *Koerber*, 2017 WL 2992090, at *2.

## **DISCUSSION**

The court should deny most of Mr. Blake's discovery requests as unnecessary and irrelevant to the preparation of his contemplated motion, as undue intrusions into grand jury secrecy, and as intrusive of juror privacy.

Request 2(a): The Court should deny Request 2(a), seeking demographic information for "all grand juries empaneled in the District during the COVID-19 pandemic." Under the JSSA, Mr. Blake's contemplated motion must allege a "substantial failure to comply with the provisions of [the JSSA] in *selecting* the grand . . . jury." § 1867(a) (emphasis added). A plain reading of subsection (f) confirms that the right of access is confined to "records or papers used by the jury commission or clerk *in connection with the jury selection process*." § 1867(f) (emphasis added). *See also Green*, 435 F.3d at 1270-1271 (quoting *Taylor*, 419 U.S. at 538) (explaining a defendant "does not have a right to a jury of 'any particular composition' and the jury actually chosen does not have to 'mirror the community.'"); *Koerber*, 2017 WL 2992090, at *2 ("[A]ccess to grand jury selection records is prohibited unless a defendant can demonstrate that the records requested . . . are records or papers used by the court's jury administrator 'in connection with the jury selection process[.]'")

Mr. Blake cannot show the information he seeks is necessary or relevant to prove COVID-19 led to a violation of his right to a grand jury selected from a fair cross-

section of the community. COVID-19 did not affect the initial selection of the grand jury that indicted Mr. Blake, as it was empaneled prior to the onset of the pandemic. Thus, jury selection procedures—including jury excuses made after empanelment due to the onset of the pandemic—are simply not relevant to § 1867(a) motions relating to juries empaneled before the onset of COVID-19.

Although the government has not located an instance in which this Court has ruled on a request premised on an indictment during the COVID-19 pandemic, the few courts in other districts that have addressed the issue are in accord. In *Shader*, a case with facts similar to the ones here, a grand jury empaneled before the pandemic returned an indictment against a defendant after the onset of the pandemic, prompting the defendant to seek discovery under § 1867(f) of, among other things, "information regarding any effects of COVID-19 on . . . the selection of grand juries." 2020 WL 4158059, at *2. The court ruled that such information was irrelevant because the defendant only had a right to narrow discovery relating to pre-pandemic jury selection. *Id.* at *3. More recently, a court relied on *Shader* to find that, "because the grand jury here was empaneled months before the start of the COIVD-19 pandemic, any changes made to address the effect of the pandemic on the current grand jury selection process [are] irrelevant to any potential motion by Defendant." Mem. and Order at 7, *United States v. Braxton*, No. 20-CR-237 (LDH), (E.D.N.Y. Oct. 15, 2020), ECF No. 13. By contrast, in *United States v. Holmes*, where the grand jury was empaneled and returned its indictment after the onset of COVID-19, the court granted the defendant access to information of the nature sought in *Shader* and, indeed, explicitly distinguished the case on that basis. *See* No. 18-cr-258-EJD-1, 2020 WL 5408163, at *6 (N.D. Cal. Sept. 9,

2020). *See also United States v. Sullivan*, No. 20-cr-337-WHO-1, 2020 WL 5944433, at *2 (N.D. Cal. Oct. 7, 2020) (explaining that the court agrees with, and follows, the analysis in *Holmes*).[3, 4]

Given the clear statutory language, coupled with the persuasive dichotomy between *Shader* and *Braxton* versus *Holmes*, Request 2(a) should be denied as irrelevant to Mr. Blake's contemplated motion.

Request 2(b): The Court should deny Request 2(b), seeking demographic information for "all grand jury members excused or deferred from participating in a grand jury after it was empaneled in the District." As explained, the statutory scheme is focused on the "selection" of grand jurors. *See* § 1867(a), (f). But a decision to excuse or defer a juror *after* empanelment sheds no light on the selection of jurors in the first instance.

Request 2(c): The Court should conditionally deny Request 2(c), seeking demographic information for "any grand jury members added after a grand jury was originally empaneled in the District," unless any jurors were added to the specific grand jury that returned the indictment against Mr. Blake. In that case, Mr. Blake would only be entitled to discovery of the selection process used for any such juror. § 1867(f). But in

---

[3] Mr. Blake cites *United States v. Merrick*, No. 20-cr-009-JD, 2020 WL 4808634 (D.N.H. Aug. 18, 2020)), for support. Not only is it unclear when the *Merrick* grand jury was empaneled *vis à vis* COVID-19, but also the government did not oppose the defendant's relatively narrow requests in that case and, as a result, there was little analysis by the court. Therefore, *Merrick* provides scant persuasive value in that regard.

[4] An additional, very recent order also contemplates the effect of the COVID-19 pandemic on JSSA materials available to the defense, but it is inapposite because there the grand jury was empaneled and the indictment was returned before the COVID-19 pandemic. *See* Order, *United States v. Knight*, No. 3:19-cr-00038-MDD-CLB (D. Nev. Oct. 20, 2020), ECF No. 68.

light of the countervailing interests of grand jury secrecy and juror privacy, *see Koerber*, 2017 WL 2992090, at *3, he should not be permitted to discover demographic information specific to any selected juror. Instead, Mr. Blake should be permitted only to discover whether jurors were added to the grand jury that returned the indictment against him after empanelment, and if any jurors were added, he should be permitted to discovery in connection to the selection process for those additions generally, without revealing the demographics of jurors who were added.[5]

Requests 5-7: The Court should partially deny Requests 5-7, respectively seeking demographic information for "those individuals on the Master Jury Wheel in this District," "those individuals eligible for jury service in this District," and "those individuals (a) to whom summonses and jury questionnaires were sent, as contemplated by Sections 11, 12, and 15 of the Court's Plan, and (b) those deemed qualified for jury service, as contemplated by Section 16 of the Court's Plan." In the interests of grand jury secrecy and juror privacy, Mr. Blake is entitled at most to demographic information on an aggregated, rather than individualized, basis.

Request 8: The Court should partially deny Request 8, seeking "[d]ocuments identifying all excuses received from potential jurors and, separately, all excuses accepted from potential jurors, for the District, as contemplated by Sections 17 and 18 of the Court's Plan, during the COVID-19 pandemic." Permitting discovery into excuses received from potential jurors—without limitation as to whether the excuses were

---

[5] The government is aware of one alternate juror being seated on the grand jury after the onset of the pandemic due to an original juror being excused. However, it is the government's understanding that the alternate juror was selected as an alternate pre-onset at the same time as the rest of the grand jurors.

actually accepted or whether the excuses were received during selection of *this* grand jury—would be far broader than necessary to allow Mr. Blake to prepare his contemplated motion and would also compromise juror privacy. Moreover, discovery of any excuses received and accepted for *this* grand jury after empanelment goes beyond the bounds of § 1867(f) (allowing discovery "in connection with the jury selection process"). For that reason, Mr. Blake is not entitled to discovery of excuses from grand jurors accepted during the COVID-19 pandemic because such excuses necessarily occurred after empanelment. At most, Mr. Blake should be permitted discovery of (1) the standards for evaluating excuses, and (2) accepted excuses when *this* grand jury was selected.

Request 10: The Court should partially deny Request 10, seeking demographic information "for all prospective jurors for the District who have been excused from or granted a deferral of their jury service based on the COVID-19 pandemic." Mr. Blake should only be permitted to discover information relating to procedures in effect at the time of empanelment of the grand jury that returned an indictment against him. § 1876(a), (f).

Request 11: The Court should conditionally deny Request 11, seeking "any additional documents or data responsive to Request Nos. 2-3 and 5-10 for the period between March 13, 2020 and 30 days before voir dire in this matter." To the extent that discovery of additional documents or data is inconsistent with the Court's order regarding Request Nos. 2-3 and 5-10, such discovery should not be allowed.

## OTHER LIMITATIONS ON DISCLOSURE

Should this Court grant any of Mr. Blake's requests, the government recommends that disclosure be limited to comply with the protective measures outlined in 28 U.S.C. § 1867(f) and Federal Rule of Criminal Procedure 6(e). Any review or production of the documents should be subject to safeguards, including a protective order, redaction of personal identifying information, and other protections deemed necessary to protect the privacy of grand jurors and grand jury secrecy. *See Merrick*, 2020 WL 4808634.

## CONCLUSION

For the reasons outlined above, the government respectfully requests that this Court deny in part and grant in part Mr. Blake's motion.

DATED: October 26, 2020

Respectfully submitted,

MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 11300
Washington D.C. 20530
Tel: (202) 476-0435
michael.koenig@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on October 26, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

MICHAEL KOENIG
Trial Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 11300
Washington D.C. 20530
Tel: (202) 476-0435
michael.koenig@usdoj.gov