IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **JAYSON JEFFREY PENN, et al.**, <br><br> *Defendants.* | Case No. 1:20-cr-00152-PAB |

**MR. BLAKE'S REPLY IN SUPPORT OF HIS MOTION FOR**
**DISCOVERY OF JURY SELECTION PROCEDURES**

A judge in this District recently observed that "[t]he court will experience difficulty . . . obtaining an adequate cross-section of the community for jury selection" in light of the COVID-19 pandemic. *United States v. Davis*, No. 20-mj-140-KMT, 2020 WL 5653332, at *2 (D. Colo. Sept. 18, 2020). Mr. Blake has filed a motion for discovery of this District's jury selection procedures and any related COVID-19 juror excuse policies pursuant to the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1867(f), which provides him an unqualified statutory right to that information. He requests this information so he can determine whether the procedures by which his grand jury was selected and maintained, or a future petit jury will be selected, impinge his Fifth and Sixth Amendment rights to an impartial grand and petit jury or violate the JSSA itself and, if so, to allow him to prepare a motion for appropriate relief. *See* Mr. Blake's Mot. for Discovery of Jury Selection Procedures, ECF No. 125 ("Def.'s Mot.").

The Government agrees that Mr. Blake is entitled to much of the information he seeks, considerably narrowing the issues in dispute. Specifically, the Government agrees that Mr. Blake should receive the materials responsive to Requests 1, 3, 4, and 9 in his Motion. *See* Gov't's Partial Opp'n, ECF No. 177 ("Opp'n"), at 1. The Government opposes Requests 5–7 only to the extent that the responsive information is provided in individualized format, rather than provided in aggregated form. *Id.* at 9. Mr. Blake does not require receipt of this information in individualized format. Finally, the Government offers no substantive objection to Request 11, asking only that the Court's ruling on that Request be consistent with its other rulings. *Id.* at 10.[1]

The only items, therefore, that remain in dispute are Requests 2, 8, and 10. As a general matter, the Government objects to these Requests on the ground that disclosing the responsive information would violate grand jury secrecy and juror privacy. *See id.* at 1, 4–6. The Government's concerns about grand jury secrecy and juror privacy are misplaced, however, because Mr. Blake does not seek personal identifying information and the demographic and excuse information he does seek is purely ministerial. The Government also asserts that Mr. Blake is not entitled to information that relates to jury selection procedures during the pandemic, given that his grand jury was selected pre-pandemic and the JSSA purportedly does not allow Mr. Blake to seek discovery of post-empanelment information (Reqs. 2(a), 2(b), 8, and 10). *Id.* at 6–8, 9–10. However, the JSSA does not limit Mr. Blake to seeking information solely about the initial selection process for jurors, but rather, allows him to seek records and

---

[1] Mr. Blake does not oppose the Government's request that the information provided to Mr. Blake also be produced to the Government. *Id.* at 1–2.

2

information "in connection with the jury selection process" (28 U.S.C. § 1867(f)), which should be read to include procedures for handling composition changes to an existing grand jury. Finally, the Government asserts, Mr. Blake should only receive discovery concerning the addition of jurors to grand juries seated during the pandemic if a grand juror was added to the grand jury that indicted him and, then, only as to the process for selecting *that* juror (Req. 2(c)). Opp'n at 8–9.  The Government's contention that Mr. Blake should be limited to receiving information specific to *his* grand jury should be squarely rejected, as it is in conflict with binding precedent from both the Supreme Court and Tenth Circuit.

Mr. Blake respectfully requests that the Court order the Clerk's Office to produce materials responsive to all the Requests in his Motion.

## ARGUMENT

**I.   Mr. Blake's Requests do not implicate, let alone compromise, grand jury secrecy or juror privacy.**

The Government objects, generally, to Requests 2, 8, and 10—which seek demographic and excuse information about grand jurors serving during the pandemic and prospective jurors— on the theory that releasing this information would violate Rule 6(e) of the Federal Rules of Criminal Procedure or offend juror privacy.  *See* Opp'n at 5.  Neither concern is well grounded.

The information that Mr. Blake requests does not touch on the substance of "a matter occurring before the grand jury" (Fed. R. Crim. P. 6(e)(2)(B)), on which concerns of grand jury secrecy are premised.  Rather, his Requests seek administrative information.  In fact, the demographic information that Mr. Blake requests is the same type of information that the District is obligated to report in its AO-12 form, which the Government has *conceded* Mr. Blake should receive.  *See* Opp'n at 1.  Similarly, juror excuse information could not implicate any "matter"

3

before the grand jury because it is collected in advance of the grand jury being seated, in order to determine who will serve as a grand juror. *See Revised Jury Plan for Random Jury Selection* §§ 17–18, U.S. D. CT. D. COLO., Mar. 1, 2017, https://tinyurl.com/y3ekg9td/; *see also, e.g.*, *In re Special Grand Jury 89–2*, 450 F.3d 1159, 1176–77 (10th Cir. 2006) (Rule 6(e) applies to "what is said or takes place in the grand jury room" (alteration adopted) (internal quotation marks omitted)); Wright & Miller, 1 FED. PRAC. & PROC. CRIM. § 106 (4th ed. 2020) ("material or information that would not tend to reveal what took place in the grand jury room or is derived independently from the grand jury process typically is not covered" by Rule 6(e)).[2]

Nor do Mr. Blake's Requests implicate juror privacy. As stated in the Proposed Order that accompanied Mr. Blake's Motion, Mr. Blake does not seek personal identifying information as part of any Request. Proposed Order, ECF No. 125-1, at 3. That information can be redacted or otherwise withheld by the Clerk's Office.[3]

Although the Government leans heavily on *United States v. Koerber*, No. 2:17-cr-37-RJW-PMW, 2017 WL 2992090 (D. Utah July 13, 2017) (Opp'n at 5–6), that case does not

---

[2] In *United States v. Sells Engineering, Inc.*—which the Government cites to highlight the importance of grand jury secrecy, generally (Opp'n at 5)—the Supreme Court explained that protecting the secrecy of "grand jury proceedings" is necessary in order to ensure that witnesses come forward voluntarily and "testify fully and frankly"; that those targeted by the grand jury's investigation neither flee nor influence grand jurors' votes; and that those who the grand jury declines to prosecute are not publicly shamed for having been accused of wrongdoing. 463 U.S. 418, 424 (1983) (internal quotation marks omitted). Disclosure of demographic and juror excuse information implicates none of those concerns.

[3] To the extent personal identifying information cannot be redacted or otherwise withheld from responsive materials, this would not be a basis to withhold the information from Mr. Blake. The JSSA expressly contemplates that all information provided in response to a discovery request under it may not be further disclosed. 28 U.S.C. § 1867(f); *see also* Proposed Order, ECF No. 125-1, at 3 (citing § 1867(f)). Further, the Court could amend the existing protective order to explicitly encompass the non-disclosure of these materials.

counsel differently. In *Koerber*, the court expressed concerns that discovery under § 1867(f) could implicate Rule 6(e) and articulated a three-part test that it believed the defendant must meet in order to warrant disclosure of jury selection information, including a requirement that the defendant show the requested records "are ministerial and do not involve matters occurring before the grand jury." *Id.* at *2. The court did not draw that requirement from any governing precedent or the literal text of § 1867(f). No court has cited this opinion since it was decided.

In any event, as discussed above, demographic information and juror excuses are administrative, or "ministerial," records gathered in the course of seating a grand jury, not records that go to the substance of any matter before the grand jury. *See supra* at 4. Indeed, in *Koerber*, the government did not oppose and the court *granted* the defendant's request for "demographic information associated with the venire that reflects constitutionally significant distinction among grand jurors (race, religion, gender, etc.) for the indictments returned against [the defendant]." 2017 WL 2992090 at *5–6. The court denied that request only as to jurors' names and addresses (*id.*), which is not information that Mr. Blake seeks.

## II.   The Government's individual objections to the remaining Requests are not valid.

The Government's remaining objections to Mr. Blake's Motion are equally unpersuasive. The Government is mistaken to construe the JSSA as precluding discovery of post-empanelment information and errs in suggesting that Mr. Blake's statutory and constitutional rights are not implicated by the procedures that govern changes in the composition of grand juries seated during the pandemic. Additionally, the Government misstates the law by suggesting that

5

Mr. Blake's Requests should be limited to pertain solely to information concerning the grand jury that returned his indictment.[4]

Requests 2(a), 2(b), 8, and 10:   The Government opposes Mr. Blake's Requests for demographic information for "all grand juries empaneled in the District during the COVID-19 pandemic" (Req. 2(a)) and "all grand jury members excused or deferred from participating in a grand jury after it was empaneled in the District" (Req. 2(b)) because the Government interprets the JSSA as allowing discovery only into the initial jury selection procedures (rather than post-empanelment procedures) and Mr. Blake's grand jury was selected prior to the pandemic. *See* Opp'n at 6–8.[5]

The Government cites no support for its position that discovery under the JSSA is limited to selection of jurors "in the first instance" and cannot reach materials concerning post-empanelment procedures. *See* Opp'n at 6–7, 8, 10.  Its embroidery of an "initial selection" limitation onto the statutory text should be set aside.  The statute expressly contemplates discovery of materials used "*in connection with* the jury selection process" (28 U.S.C. § 1867(f) (emphasis added))—which is much broader than discovery of materials concerning only the initial selection of jurors.  *See United States v. Sullivan*, No. 3:20-cr-337-WHO-1, 2020 WL

---

[4] The Government does not appear to oppose Requests 8 and 10 insofar as they relate to prospective petit jurors.  Accordingly, Mr. Blake understands those Requests to be unopposed as to prospective petit jurors and limits his discussion here to the Government's objections to those Requests as they relate to grand jurors during the pandemic.

[5] For these same reasons, the Government objects to Mr. Blake's Request for "[d]ocuments identifying all excuses received from potential jurors and, separately, all excuses accepted from potential jurors" (Req. 8), and demographic data of "all prospective jurors for the District who have been excused from or granted a deferral of their jury service based on the COVID-19 pandemic" (Req. 10), to the extent those Requests are not limited to the time period during which Mr. Blake's own grand jury initially was selected.  *Id.* at 9–10.

5944433, at *3–4 (N.D. Cal. Oct. 7, 2020) (JSSA contains "no textual limitation on records used after selection from the master wheel"; granting discovery of juror numbers for grand jurors who returned indictment because defendant "may need to know how the grand jury that was ultimately selected differed in makeup from the pool from which it was chosen"); *United States v. Holmes*, No. 18-cr-258-EJD-1, 2020 WL 5408163, at *7 (N.D. Cal. Sept. 9, 2020) (same); *United States v. Corbett*, No. 20-cr- 213 (KAM), 2020 WL 5803243, at *7 (E.D.N.Y. Aug. 21, 2020) (granting request for "attendance record and reason for absence by date for each grand juror" or, if not maintained, directing Clerk of the Court to provide "a description of underlying procedures used pertaining to this data set, and what information, if any, is retained").

Mr. Blake seeks information that will allow him to understand whether the composition of grand juries active during the pandemic changed over the course of the pandemic and the procedures that governed those changes. The phrase "all grand juries empaneled in the District during the COVID-19 pandemic" in Request 2(a) does not refer only to those grand jurors who were *initially selected* for grand jury service during the pandemic. Rather, Mr. Blake's Requests seek demographic information both for those initially selected for grand jury service during the pandemic and those selected for service prior to the pandemic's onset who *continued to serve* as grand jurors during the pandemic. This information is necessary for Mr. Blake to understand the procedures in this District that govern changes in grand jury compositions during the pandemic and whether those procedures are affecting distinctive groups in a disparate way. Indeed, the

Government admits that the composition of Mr. Blake's own grand jury changed during the pandemic. Opp'n at 9 n.5.[6]

The Government relies predominately on two cases from the Eastern District of New York to support its contention that information concerning grand jury selection information during the pandemic is irrelevant and should not be produced to a defendant indicted by a grand jury that was initially selected and seated prior to the pandemic. *See id.* at 7 (citing *United States v. Braxton*, No. 20-cr-237 (LDH), 2020 WL 6083649 (E.D.N.Y. Oct. 15, 2020); *United States v. Shader*, No. 20-cr-202, 2020 WL 4158059 (E.D.N.Y. July 17, 2020)). In neither case, however, had the pandemic affected the composition of the defendant's grand jury. *See* Gov't's Opp'n Br. at 3, 7, *United States v. Braxton*, No. 20-cr-237 (E.D.N.Y. Sept. 10, 2020), ECF No. 11 (noting that selection of the grand jury that returned defendant's indictment "was not affected by the pandemic"); Gov't's Opp'n Br. at 3, 6, *United States v. Shader*, No. 20-cr-202 (E.D.N.Y. July 2, 2020), ECF No. 12 (same).

Request 2(c): The Government asks the Court to narrow Mr. Blake's Request for demographic information of "any grand jury members added after a grand jury was originally empaneled in the District" (Req. 2(c)) to reach only information relevant to the grand jury that indicted Mr. Blake, specifically, by limiting any responsive materials to the specific process that resulted in any new juror being added to his grand jury. Opp'n at 8.

---

[6] Although the Government states that its "understanding" is that the alternate juror was selected pre-pandemic (Opp'n at 9 n.5), this detail does not change the fact that one juror was excused from grand jury service during the pandemic and a procedure in place during the pandemic affected the seating of the alternate juror.

8

That argument conflicts with binding precedent. In *Taylor v. Louisiana*, the Supreme Court explained that "[d]efendants are not entitled to a jury of any particular composition; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." 419 U.S. 522, 538 (1975) (citations omitted). To show a violation of the fair cross-section requirement, a defendant must demonstrate that "the representation of [a distinctive] group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community" and that "this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979). The discovery is requested not to determine whether Mr. Blake has a challenge to the *composition* of the particular grand jury that indicted him, but rather to determine whether he has a challenge to the *procedures* applied to this grand jury and whether those procedures complied with the Constitution and JSSA. *See* Def.'s Mot. at 9–11. In essence, the Government asks this Court to enter an order that prejudices Mr. Blake by narrowing his Requests to the point that he receives only the very information on which he cannot rely to make out a violation of his Fifth and Sixth Amendment rights or the JSSA. Mr. Blake respectfully asks the Court to decline this invitation.

## CONCLUSION

The Government concedes that Mr. Blake is entitled to discovery of materials responsive to Requests 1, 3, 4–7, and 9 and offers no substantive opposition to Request 11. Mr. Blake is also entitled to the information sought in Requests 2, 8, and 10. The Government's concerns about juror privacy and grand jury secrecy are misplaced because Mr. Blake has not requested

9

personal identifying information as to any juror.  The information he seeks is ministerial.  The requests he makes concerning post-empanelment information are within the letter of the JSSA—which authorizes discovery of "records and information *in connection with* the jury selection process."  28 U.S.C. § 1867(f) (emphasis added).  Courts have therefore read the statute to reach post-empanelment records and information.  Mr. Blake's Requests all appropriately focus on information necessary to understand the *procedures* in place in this District, as opposed to information about the grand jury that returned an indictment against him.  The Government's attempt to narrow discovery to that particular grand jury should be rejected.  It is contrary to binding precedent and would defeat the purpose of the discovery, which is to assess potential challenges to the process by which the grand jury was selected, not the composition of that particular grand jury.

Date:  November 3, 2020

*/s/ Wendy W. Johnson*
Wendy W. Johnson
RMP LLP
5519 Hackett Road, Suite 300
Springdale, Arkansas  72762
Telephone:  (479) 443-2705
Fax:  (479) 443-2718
wjohnson@rmp.law

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
Jessica Arden Ettinger
ROBBINS, RUSSELL, ENGLERT, ORSECK,
 UNTEREINER & SAUBER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com
jettinger@robbinsrussell.com

*Counsel for Mr. Blake*

**CERTIFICATE OF SERVICE**

On this 3rd day of November, 2020, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Colorado by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Mr. Blake*