IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.: 20-CR-152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM-WADE LOVETTE,
**9. GARY BRIAN ROBERTS,**
10. RICKIE PATTERSON BLAKE,

    Defendants.

## DEFENDANT GARY BRIAN ROBERTS' MOTION FOR A BILL OF PARTICULARS

Defendant Gary Brian Roberts files this Motion for a Bill of Particulars and respectfully moves this honorable Court to direct the government to file a bill of particulars as requested herein, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, showing as follows:

## I. INTRODUCTION AND FACTUAL BACKGROUND

The Government's Superseding Indictment of October 6, 2020, charges that, from "at least as early" as 2012 through "at least" 2019, the ten named defendants, including Mr. Roberts, and others known and unknown, allegedly entered into and engaged in a conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. (ECF No. 101 at ¶ 1). The Government charges that the defendants, and others, allegedly executed the purported conspiracy in fourteen (14) different episodes or transactions occurring at various times over the alleged seven (7) year period of the conspiracy. (*Id.* at ¶¶ 51-143).

The Government asserts various general allegations against Mr. Roberts in its Superseding Indictment. (ECF No. 101 at ¶¶ 47-50). It broadly alleges that Mr. Roberts and his co-defendants, together with conspirators known and unknown, "entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products…" (*Id.* at ¶ 1). In averring the "means and methods" of the alleged bid rigging and price fixing conspiracy, the Government states that the Defendants, including Mr. Roberts, and their co-conspirators, "participated in a continuing network of Suppliers and co-conspirators, an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products…" (*Id.* at ¶ 47). The Government alleges that the Defendants and their

co-conspirators utilized the continuing network to allegedly (1) reach agreements and understandings to submit aligned bids and aligned prices and price-related terms for broiler chicken products; (2) participate in conversations and communications relating to non-public information such as bids, prices, and price-related terms for broiler chicken products with the understanding that the purpose of the conversations and communications was to rig bids, and to fix, maintain, stabilize, and raise prices and other price-related terms for broiler chicken products, and (3) to monitor bids submitted by, and prices and price-related terms offered by, suppliers and co-conspirators for broiler chicken products. (*Id*. at ¶ 48). It charges that the Defendants and their co-conspirators discussed protecting and acted to protect the purpose and effectiveness of the conspiracy. (*Id*. at ¶ 49). Lastly, the Government alleges that the Defendants and their co-conspirators "sold and accepted payment for broiler chicken products that are the subject of the allegations in this Indictment in the United States through until at least approximately early 2019." (*Id*. at ¶ 50).

In contrast to its broad conspiracy allegations, the Government's specific, factual allegations relating to Mr. Roberts are few—with none dating later than late 2014. It alleges that Mr. Roberts was a manager and director for "Supplier-3," an employee of "Supplier-4," and that he supervised Defendant Timothy Mulrenin. (ECF No. 101 at ¶ 20). In its episode headed "QSR-4's 2013 Freezing Charge," the Government alleges that, on or about May 31, 2013, an employee of Supplier-3 allegedly forwarded an inquiry by an employee of quick-service restaurant ("QSR") "4" to Mr. Roberts and Mr. Mulrenin

and said: "[Supplier-1] told me they would be around .025 to .03 on 8pc & dark meat and [Supplier-5] told me they were .025 on 8pc and at this time was not charging for dark but would probably change to .025 for next year." (*Id.* at ¶ 68(c)). It alleges that, on or about June 3, 2013, Mr. Roberts allegedly told Mr. Mulrenin and the employee of Supplier-3: "I want to discuss this before we submit. I want to understand what the storage expectation is." (*Id.* at ¶ 69).

The Government proceeds to allege, under its episode entitled "QSR-4's Quality Assurance Costs for 2014," that, on or about December 26, 2013, the employee of QSR-4 allegedly told Mr. Roberts and Mr. Mulrenin: "Talked to Jimmy Little [LITTLE] and he said they were planning on adding to their cost to do this. They also didn't like it just showing up also." (ECF No. 101 at ¶ 82). And lastly, under the Superseding Indictment's heading "QSR-1's 8-Piece COB Supply for 2015," the Government alleges that Mr. Roberts allegedly had a telephone call with Defendant Scott James Brady, and exchanged e-mails with an employee of a centralized buying cooperative on or about August 11, 2014. (*Id.* at ¶ 91). It furthermore cites alleged telephone calls between Mr. Roberts, Mr. Brady, Mr. Mulrenin, and Defendant Jayson Jeffrey Penn on August 15, 2014. (*Id.* at ¶ 93). The Superseding Indictment alleges that Mr. Roberts allegedly e-mailed a pricing model for a supplier of broiler chicken products to the cooperative employee on or about August 22, 2014, and that the employee responded. (*Id.* at ¶ 98). And the final allegation relating to Mr. Roberts is that, on or about September 3, 2014, another employee of the buying

cooperative sent Mr. Roberts a telephonic meeting invitation with an agenda. (*Id*. at ¶ 104).

The Government has produced 12 and a half million documents to counsel for the Defendants in this case. It should not be permitted to make sweeping allegations of an alleged conspiracy stretching over years and involving dozens of alleged participants and at the same time point the defense to a mountain of evidence for the alleged details, consistent with guarantees of due process, a fair trial, and a defendant's right to present a defense.

## II. LEGAL STANDARD

The grant or denial of a motion for a bill of particulars "'is a matter lying within the sound discretion of the trial court...'" *United States v. Moore*, 556 F.2d 479, 483 (10th Cir. 1977) (quoting *United States v. Hedges*, 458 F.2d 188 (10th Cir. 1972)); *see also Will v. United States*, 389 U.S. 90, 99, 88 S. Ct. 269 (1967) (citing *Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300 (1927)).

## III. ARGUMENT

Federal Rule of Criminal Procedure 7 provides that "[t]he court may direct the filing of a bill of particulars." Fed.R.Crim.P. 7(f). The Rule "is designed to encourage a more liberal attitude by the courts toward bills of particulars…" Fed. R. Crim. P. 7 (1966 Amends.). "'The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense.'" *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (quoting *United States v. Levine,* 983 F.2d 165,

166–167 (10th Cir. 1992)). Bills of particulars also serve to avoid prejudicial surprise at trial. *See United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983) (citing *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir. 1980)). A bill of particulars furthermore entitles defendants to notice of the government's theory of the case. *See United States v. Doe*, 572 F.3d 1162, 1176 (10th Cir. 2009) (quoting *United States v. Tyler*, 42 F. Appx. 186, 190 (10th Cir. 2002)).

A criminal conviction for a § 1 conspiracy requires, in relevant part, that the government establish beyond a reasonable doubt that the charged conspiracy existed and that the defendant "'knowingly-that is, voluntarily and intentionally-became members of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it…'" *United States v. Hui Hsiung*, 778 F.3d 738, 753 (9th Cir. 2015). Accordingly, pursuant to Rule 7(f) and the authorities set forth herein, Mr. Roberts requests that the Court direct the Government to file a bill containing the following particulars:

1. The identities of all individuals and entities which the Government maintains entered into, or engaged in, the alleged conspiracy, pursuant to the Government's general allegations in paragraphs 1, 47, 48, 49, and 50 of its Superseding Indictment (ECF No. 101 at ¶¶ 1, 47-50);

2. The particular facts, including dates, relating to any and all rigged bids or fixed prices which the Government references in paragraphs 1, 47, and 48 of its Superseding Indictment (*Id.* at ¶ 1, 47, 48);

3. The particular facts which the Government maintains demonstrate that Mr. Roberts entered into, or was allegedly aware of, any agreements or understandings which the Government references in paragraphs 2 or 48 of its Superseding Indictment (*Id*. at ¶ 2, 48);

4. The Government's theory of Mr. Roberts' alleged agreement to, and participation in, the alleged conspiracy; and

5. Particular facts, including dates, concerning the most recent act, and which the Government maintains Mr. Roberts engaged in, in furtherance of the alleged conspiracy.

In this case, the Government has inundated the defense with 12.5 million pages of discovery. However, as other courts have recognized, "the Government does 'not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided' as to the nature of the charges pending.'" *United States v. Lino*, No. 00 CR. 632 (WHP), 2001 WL 8356, at *3–4 (S.D.N.Y. Jan. 2, 2001) (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (voluminous voluntary discovery of 4,000 documents did not obviate the need for a bill to identify particular essential documents where indictment did not specify); *United States v. Bin Laden,* 92 F.Supp.2d 225, 234 (S.D.N.Y. 2000)); *see also United States v. Bazezew*, 783 F.Supp.2d 160, 168 (D.D.C. 2011) ("[I]t is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided…") (citing *United States v. Anderson*, 441 F.Supp.2d 15, 19 (D.D.C.2006); citing *United States v. Trie*, 21 F.Supp.2d 7,

21 n. 12 (D.D.C.1998)). *United States v. Wolf*, No. 92 CR 737, 1993 WL 169271, at *10 (N.D.Ill., May 18, 1993) ("liberal discovery policies are no substitute for specific disclosure of essential documents where those documents are produced as an undifferentiated portion of thousands of others").

The Government makes several particular allegations against Mr. Roberts. However, the Government's allegations lack the precision to provide Mr. Roberts with notice of how he allegedly agreed to, and engaged in, the charged conspiracy to rig bids and fix prices sufficient to enable Mr. Roberts to adequately defend himself in any trial of this case, consistent with his Fifth and Sixth Amendment rights. The Government's broad, generalized conspiracy allegations, spanning years and sweeping within their scope dozens of individuals and entities and, in conjunction with the enormity of the volume of evidence produced to the defense in this case, dictate that the Government be directed to provide the requested particulars, pursuant to Rule 7(f). Disclosure of the requested particulars is furthermore supported by the need to avoid prejudicial surprise and to ensure a fair trial.

The Government makes repeated references to other "known and unknown" members of the alleged conspiracy. It may therefore properly be directed to disclose particulars relating to the identities of any and all persons or entities which it maintains agreed to, or engaged in, the alleged conspiracy it charges in its Superseding Indictment. "Informing the defendant of the names of alleged unindicted coconspirators has been held a proper use of a bill of particulars." *United States v. Mackey*, 551 F.2d 967, 970 (5th

Cir. 1977) (in a case of defendants charged with conducting and conspiracy to conduct an illegal gambling operation in violation of 18 U.S.C. §§ 371 & 1955, noting that the magistrate judge had made an order "requiring the government to disclose the names of the[ ] unindicted coconspirators") (citing *United States v. Dioguardi*, 332 F.Supp. 7 (S.D.N.Y. 1971); *United States v. Rosenstein*, 303 F. Supp. 210 (S.D.N.Y. 1969); *United States v. White*, 50 F.R.D. 70 (N.D.Ga. 1970)); *see also Will v. United States*, 389 U.S. 90, 99, 88 S. Ct. 269 (1967) ("[I]t is not uncommon for the Government to be required to disclose the names of some potential witnesses in a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial") (citing *United States v. White*, 370 F.2d 559 (7th Cir. 1966); *United States v. Debrow*, 346 U.S. 374, 378, 74 S.Ct. 113 (1953)).

Likewise, the Government may be required to disclose the alleged particular facts upon which it relies to support its broad, generalized allegations of alleged bid rigging and price fixing. *See United States v. Ferrara*, 990 F.Supp. 146, 148–153 (E.D.N.Y. 1998) (ordering the government to furnish the defendant, who was charged with bribery, with particulars on the "approximate date[s] of each conversation during which the government claims defendant offered money…").

Mr. Roberts is furthermore properly entitled to any and all particulars relating to his alleged involvement in the charged conspiracy. *See United States v. Warner*, 2004 WL 1794476, at *29 (N.D.Ill., Aug. 11, 2004) (directing government to provide particulars to support its allegation that defendant falsified lobbyist registration statements); *United States v. Hsia*, 24 F.Supp.2d 14, 32 (D.D.C. 1998) (ordering bill of particulars for

government to disclose to defendant how she "caused" alleged false statements to be made); *United States v. Thevis*, 474 F.Supp. 117, 127 (N.D.Ga. 1979) (holding that a defendant to an "alleged conspiracy is entitled to know where the government contends the illegal agreement was made") (citing *United States v. Tanner*, 279 F.Supp. 457, 476 (N.D.Ill.1967)). In view of the fact that the most recent allegation in the Superseding Indictment with any particularity concerning Mr. Roberts is dated over six years prior to the Superseding Indictment, Mr. Roberts should be permitted to obtain disclosure concerning the dates of his alleged participation in the charged conspiracy.

## IV. CONCLUSION

For the reasons set forth herein, Defendant Gary Brian Roberts respectfully requests that the Court grant his Motion for a Bill of Particulars and direct the Government to file a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, setting forth (1) the identities of all individuals and entities which the Government maintains entered into, or engaged in, the alleged conspiracy; (2) the particular facts, including dates, relating to any and all rigged bids or fixed prices which the Government references in its Superseding Indictment; (3) the particular facts which the Government maintains demonstrate that Defendant entered into, or was allegedly aware of, any agreements or understandings which the Government references in its Superseding Indictment; (4) the Government's theory of Defendant Roberts' alleged agreement to, and participation in, the alleged conspiracy; and (5) the particular facts,

including dates, concerning the most recent act, and which the Government maintains Defendant Roberts engaged in in furtherance of the alleged conspiracy.

Respectfully submitted, this 30th day of November, 2020.

                                        GILLEN WITHERS & LAKE LLC

                                        **/s/Craig A. Gillen**
                                        Craig A. Gillen
                                        Georgia Bar No. 294838
                                        400 Galleria Parkway
                                        Suite 1920
                                        Atlanta, Georgia 30339
                                        Telephone:   (404) 842-9700
                                        Facsimile:    (404) 842-9750
                                        E-mail:         cgillen@gwllawfirm.com

                                        *Counsel for Gary Brian Roberts*

-12-

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 30th day of November, 2020, he electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all listed parties and counsel of record

                                GILLEN WITHERS & LAKE LLC

                                **/s/Craig A. Gillen**
                                Craig A. Gillen
                                Georgia Bar No. 294838
                                400 Galleria Parkway
                                Suite 1920
                                Atlanta, Georgia 30339
                                Telephone:   (404) 842-9700
                                Facsimile:    (404) 842-9750
                                E-mail:        cgillen@gwllawfirm.com

*Counsel for Gary Brian Roberts*