IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1.  JAYSON JEFFREY PENN,
2.  MIKELL REEVE FRIES,
3.  SCOTT JAMES BRADY,
4.  ROGER BORN AUSTIN,
5.  **TIMOTHY R. MULRENIN**,
6.  WILLIAM VINCENT KANTOLA,
7.  JIMMIE LEE LITTLE,
8.  WILLIAM WADE LOVETTE,
9.  GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

 Defendants.

### DEFENDANT TIMOTHY MULRENIN'S MOTION FOR BILL OF PARTICULARS

 Defendant Timothy Mulrenin, by and through undersigned counsel, and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully requests that the Court order the government to file a bill of particulars as to the October 6, 2020 Superseding Indictment (filed at Dkt. 101). Defendant Mulrenin adopts the factual background, legal standards, and arguments set forth in Defendant Jayson Penn's Motion for a Bill of Particulars filed on October 27, 2020, (Dkt. 183), pursuant to D.C.COLO. LCrR 12.1(b), and supplements them with this Motion.

### I. INTRODUCTION

 The superseding indictment fails to inform Mr. Mulrenin of the charge against him "with sufficient precision to allow him to prepare his defense," *United States v. Dunn*, 841 F.2d 1026,

1029 (10th Cir. 1988), and considering the complexity of the case and voluminous discovery, this Court should direct the government to file a bill of particulars. *See United States v. Rogers*, 617 F. Supp. 1024, 1028-29 (D. Colo. 1985); Fed. R. Crim. P. 7(f).

Although the superseding indictment alleges that Mr. Mulrenin was involved in an wide-ranging conspiracy based on a "continuing network" of suppliers of broiler chicken in the United States over a span of almost seven years, it does little to illustrate how Mr. Mulrenin participated in this "network"—specifically how he conspired with his co-defendants, when he conspired with his co-defendants, what episodes the government alleges Mr. Mulrenin was involved in, and in what capacity, and whether Mr. Mulrenin's alleged involvement in the conspiracy continued after he left his position at Tyson in May 2018.

The government has identified approximately 5,300 "highly relevant" documents from its immense production of over 12 million documents. However, rather than provide clarity for the charge against Mr. Mulrenin, these documents add to the mystery. The vast majority of the "highly relevant" documents have seemingly nothing to do with Mr. Mulrenin—less than 300 of these documents appear to reference Mr. Mulrenin in any way. Not a single document provides direct evidence of Mr. Mulrenin's participation in a conspiratorial agreement, so he is left to guess how the government will string together evidence to prove his participation in the indicted charge. Out of the 14 episodes pleaded in the superseding indictment, only five reference Mr. Mulrenin, and they all occur over the course of 14 days in 2013, 2014, and 2017, just three years out of the seven-year conspiracy. Yet it remains unclear whether the government intends to implicate Mr. Mulrenin only in the episodes that explicitly mention him in the superseding indictment, or whether it will seek to implicate Mr. Mulrenin in other episodes. This highlights why a bill of particulars is necessary—Mr. Mulrenin has a right to understand which, if any, of

these additional events, transactions, individuals, or companies may be part of the government's theory of his alleged participation in the charged conspiracy

The ends of justice will not be met if Mr. Mulrenin is tasked with accomplishing the impossible over the next several months—digging through over 12 million documents to divine what the government intends to prove at trial—especially when this information can be readily provided by the government. To adequately prepare his defense, Mr. Mulrenin therefore seeks basic information about the charge against him: (1) the specific bids, prices, and price-terms allegedly fixed; (2) the names of all alleged co-conspirators; and (3) the government's theory of when and how Mr. Mulrenin allegedly joined and participated in the conspiracy, including the dates and means of participation, all of which should be readily available to the government.

## II.   FACTUAL BACKGROUND

Mr. Mulrenin is a former employee of Tyson Foods, Inc. ("Tyson"). He began his career at Tyson in October 2000, and was a National Account Executive for approximately six years starting in October 2007. He later became a Director of Sales in March 2014, and was in that role until he left Tyson in May 2018.

On October 6, 2020, the government filed a superseding indictment, naming Mr. Mulrenin as one of six new defendants in a price-fixing conspiracy the government alleges violated Section 1 of the Sherman Act. (Dkt. 101 ¶¶ 144, 145.) The superseding indictment alleges a conspiracy that began as early as 2012, and continued through at least early 2019. (*Id.* ¶ 1.) To call the superseding indictment a "speaking indictment" by reference to its page length would be misleading and unfair, particularly as far as Mr. Mulrenin is concerned. The charge is extraordinary in its breadth, and the vast majority of its references relate to the other nine defendants, and therefore much more detail is required for Mr. Mulrenin to avoid a trial-by-surprise. The superseding indictment describes 14 separate incidents or episodes that allegedly

3

constitute the "means and methods of the conspiracy," (*id.* ¶¶ 47-143), but maintains the conspiracy extends beyond these 14 episodes. (*Id.* ¶¶ 47-50.) It also alleges that Mr. Mulrenin, the nine other co-defendants, and numerous identified co-conspirators engaged in a "continuing network" to reach agreements and understandings to submit "aligned" bids, discuss non-public information, and monitor bids, (*id.* ¶ 48(a)-(c)), but leaves open the possibility that additional individuals and entities were also co-conspirators. The superseding indictment is non-descriptive as to how the co-conspirators reached such agreements and understandings, or whether they were ultimately effective.

While at this stage Mr. Mulrenin is seemingly only implicated in five out of the 14 episodes, given the lack of clarity received from the government, it remains to be seen whether that will be the case going forward. Mr. Mulrenin is named in alleged conspiratorial episodes regarding: QSR-4's 2013 Freezing Charge, QSR-4's Quality Assurance Costs for 2014, QSR-5's 2014 Conversion to Antibiotic-Free Broiler Chicken Meat, QSR-1's 8-Piece COB Supply for 2015, and QSR-2' 8-Piece COB Supply for 2018 and 2019. He is not mentioned at all with respect to the other nine identified episodes in the superseding indictment. Further, his involvement in these five episodes is alleged to have taken place on 14 days within the seven-year period charged. Moreover, Mr. Mulrenin's alleged involvement in these episodes does not show clear, active participation in furthering the charged conspiracy's objectives, and in some cases he is merely included in conversations in which he does not actively participate. For example, regarding the episode described as "QSR-4's 2013 Freezing Charge," the government seemingly bases Mr. Mulrenin's involvement in the conspiracy on the fact that he was the recipient of several emails sent or forwarded to him. (*Id.* ¶¶ 68-70.) The same is true of the government's implication that Mr. Mulrenin was involved in the alleged conspiracy described as

4

"QSR-4's Quality Assurance Costs for 2014"—Mr. Mulrenin is the recipient of just two emails sent to him. (*Id*. ¶¶ 79, 82.)

Whether the communications pled in each episode encompass the totality of the evidence against Mr. Mulrenin remains unclear. Indeed, none of the conduct alleged in the superseding indictment shows Mr. Mulrenin participating in an unlawful conspiracy in any clear way, leaving him to speculate as to which of these (or other yet unidentified) episodes will be part of the government's theory of his alleged participation. For example, the government alleges that Mr. Mulrenin participated in a conspiracy by: (1) being told by his supervisor to wait on submitting a bid price to a customer so he could better understand storage expectations (*id*. ¶ 69); (2) having telephone conversations with his supervisor (*id*. ¶ 93); and (3) discussing customer pricing expectations with a colleague. (*Id*. ¶¶ 138, 139.) Further, as recently as November 24, 2020, the government provided Mr. Mulrenin and the other defendants with a smattering of information gained from interviews and calls with witnesses and counsel representing other subjects of the investigation totaling 129 pages of material, that only further muddies the waters in terms of the government's theory of the case and Mr. Mulrenin's supposed role.

The result is that Mr. Mulrenin is now left to cull through vast amounts of data, presumably using the 14 episodes outlined in the superseding indictment as representative benchmarks, to uncover the full contours of the conspiracy he will need to defend against, and to speculate as to which innocuous business dealings the government will latch onto and which it will not in proving its case at trial.

### III.  LEGAL STANDARD

A court has broad discretion in ruling on a motion for a bill of particulars. *Rogers*, 617 F. Supp. at 1026. Courts consider three factors when determining whether to grant a bill of particulars: the complexity of the offense charged, the clarity of the superseding indictment, and

the degree of discovery provided. *Id.* at 1026-27. If a court determines that the interests of the defense and the government are closely balanced, the interests of the defendant "must prevail." *Id.* at 1027-28; *see also King v. United States*, 402 F.2d 289, 292 (10th Cir. 1968).

## IV.  ARGUMENT

As noted above, the charges against Mr. Mulrenin and the other nine defendants are complex. This is illustrated by: the millions of documents that have been produced in this case to-date; the fact that, at this time, there are ten defendants facing trial; and the involvement of more than a dozen customers and hundreds of business transactions and events throughout the seven-year alleged conspiracy. On that basis alone, given the complexity of the antitrust charge, more specificity is required so that Mr. Mulrenin can defend himself against the superseding indictment. *See United States v. Bestway Disposal Corp.*, 681 F. Supp. 1027, 1030 (W.D.N.Y. 1988) ("Greater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts.") (internal citation omitted).

The difficulty faced by Mr. Mulrenin is compounded by the fact that the superseding indictment is remarkably unclear: it alleges Mr. Mulrenin's involvement in an exceedingly broad alleged conspiracy over seven years involving dozens of customers and business transactions, none of which are particularly remarkable or clearly criminal, and only a fraction of which Mr. Mulrenin would even arguably have been aware of, let alone meaningfully involved in. As a result, Mr. Mulrenin is left to sort through mountains of millions of documents, with little guidance from the government on what conduct it is focused on.

It is also unclear when Mr. Mulrenin supposedly participated in this conspiracy. His involvement is alleged to have taken place on 14 separate days within three of the seven years of the conspiracy, but that does not provide clarity of when Mr. Mulrenin supposedly joined the conspiracy and how long he supposedly participated, or whether such participation was

continuous. For example, Mr. Mulrenin left Tyson in 2018, but the conspiracy is charged as continuing into 2019. Without particulars, Mr. Mulrenin is left to assume that he will be tried based on his conduct after he left Tyson, and correspondingly will need to sift through additional voluminous discovery that could be otherwise avoided.

Mr. Mulrenin is also entitled to know who he supposedly conspired with, when they conspired which each other, and what they conspired about. The laundry list of "competing supplier employees" that the government appended to the Release Conditions are insufficient to provide Mr. Mulrenin the information he requires to mount a defense—it does not indicate why those individuals were placed on that list, nor whether they are potential co-conspirators or witnesses, or whether other individuals not on the list are also considered to be co-conspirators. (*See* Dkt. 154.) As the Court will observe, the same list was provided to other co-defendants as well and does not answer these critical questions for Mr. Mulrenin with the necessary particularity. (*Id.*) Given the upcoming trial date where the government will need to present its case to a jury, it is hard to imagine any hardship it would face by setting forth these basic contours of the charge against Mr. Mulrenin in a bill of particulars now so that he can adequately prepare for trial.

Ongoing discovery has not and cannot cure these issues. While discovery can provide sufficient information so that a bill of particulars is unnecessary, in a complex case with voluminous discovery such as this, a bill of particulars in needed. *See, e.g.*, *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (the government "[does] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven [inculpatory].").  Moreover, a preliminary review of the discovery provided makes it clear that it does not go far enough to describe the contours of the

7

Sherman Action charge Mr. Mulrenin must defend against. Counsel's initial review of the "highly relevant" documents identified by the government show that he is only referenced in a small fraction (less than 5%) of those documents.

Not only are the documents flagged as "highly relevant" by the government insufficiently descriptive of Mr. Mulrenin's participation in a conspiracy, but the witness interview notes provided by the government are also threadbare of such evidence, and at most reflect a possible mere awareness that confidential information may have been shared among competing suppliers which, even if true, would not sustain a *per se* criminal violation. *See United States v. Citizens & S. Nat. Bank,* 422 U.S. 86, 113 (1975) ("the dissemination of price information is not itself a per se violation of the Sherman Act"). The specificity Mr. Mulrenin is entitled to is also not found within the information the government provided in the 129 pages of discovery material provided to all defendants on November 24, 2020.[1]

Rather than bury Mr. Mulrenin in discovery that may or may not be relevant to his defense, the government should instead provide information tailored to inform Mr. Mulrenin of the contours of the charge against him, specifically: (1) the specific bids, prices, and price-terms allegedly fixed; (2) the names of all alleged co-conspirators; and (3) the government's theory of when and how Mr. Mulrenin allegedly joined and participated in the conspiracy, including the dates and means of participation.

---

[1] Due to longstanding government practice, this Court might expect that there had been some prior engagement between the government and counsel for Mr. Mulrenin that would set forth the basic contours of the government's theory. However, and contrary to Department of Justice policy, *see* U.S. Dep't of Just., Just. Manual §9-11.153 (2017); *id.* at §7-3.400 (2017), Mr. Mulrenin was neither notified of his target status nor provided any opportunity to engage with the government before he was invited to appear by summons to the arraignment upon the superseding indictment. As a result, Mr. Mulrenin is beginning his defense from a cold start and now faces a sea of potential evidence that he lacks a meaningful ability to sift through.

8

## V.  CONCLUSION

Mr. Mulrenin is entitled to basic information that he needs to defend himself at trial.  The Court should therefore order the government to provide Mr. Mulrenin a bill of particulars as requested.

Dated:  November 30, 2020                    Respectfully submitted,

*/s/ Elizabeth Prewitt*
Elizabeth Prewitt
Caroline Rivera
**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York  10022
Tel: (212) 906-1200
Fax: (212) 751-4864
elizabeth.prewitt@lw.com
caroline.rivera@lw.com

*Attorneys for Defendant Timothy Mulrenin*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2020, I electronically filed the foregoing **DEFENDANT TIMOTHY MULRENIN'S MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.


*/s/ Elizabeth Prewitt*
Elizabeth Prewitt