IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    **GARY BRIAN ROBERTS**, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

---

**DEFENDANT ROBERTS' MOTION TO DISMISS THE INDICTMENT
AS BARRED BY THE STATUTE OF LIMITATIONS
AND BRIEF IN SUPPORT THEREOF**

---

Defendant Gary Brian Roberts respectfully moves the Court to dismiss the charges against him as barred by the statute of limitations pursuant to 18 U.S.C. § 3282(a) and the Fifth Amendment of the Constitution of the United States. In the event that the charges against Defendant are not dismissed on Defendant's motion, Defendant respectfully requests that an evidentiary hearing be held on the issue of whether the Government's prosecution of Defendant is barred by the statute of limitations, at which the prosecution should be required to produce evidence that Defendant participated in an alleged crime within the limitations period.

-1-

# I. <u>INTRODUCTION</u>

The Government alleges in its Superseding Indictment (Indictment) that, "beginning at least as early as 2012," the Defendants and others allegedly "entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States," which was "per se unlawful." Dkt. # 101, ¶ 1. The Government's allegations and the nature of a Sherman Act, 15 U.S.C. § 1, conspiracy charge present *prima facie* grounds for dismissal of this prosecution as barred by the statute of limitations. The prosecution obtained its Indictment against Mr. Roberts and the other Defendants on October 6, 2020. *Id.* Based upon its own allegations, the prosecution indicted Mr. Roberts and the other Defendants 8 years after the offense was complete and the limitations period began to run. Dismissal of the Indictment and this prosecution as barred by the statute of limitations is warranted, and compelled by the Defendants' right to due process.

Fully *three quarters* of the prosecution's substantive allegations concern alleged conduct occurring outside of the limitations period. *See* Dkt. # 101, ¶¶ 51-119. In Mr. Roberts' case, the last specific act alleged against him occurred over 6 years prior to the return of the Indictment. *Id.* at ¶ 106. Based upon the grounds set forth herein, the prosecution should not be permitted to proceed against Mr. Roberts, and the Indictment and charges should be dismissed as to him.

# II. <u>APPLICABLE LAW AND ARGUMENT</u>

## A. <u>The Charge Against Mr. Roberts Is Barred By The Statute of Limitations</u>

The Government alleges in its Indictment that the Defendants entered into and engaged in a "continuing" combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products, in violation of Section

1 of the Sherman Act, 15 U.S.C. § 1, continuing through at least early 2019. Dkt. # 101, ¶ 1. Its specific allegations concerning Mr. Roberts consist of various alleged communications in relation to "QSR-4's 2013 Freezing Charge," "QSR-4's Quality Assurance Costs for 2014," and "QSR-1's 8-Piece COB Supply for 2015." *Id.* at ¶¶ 68(c), 69, 82, 91, 93, 98, 104. The most recent specific conduct alleged against Mr. Roberts are alleged communications between August 11 and September 3, 2014, in relation to "QSR-1's 8-Piece COB Supply for 2015." *Id.* at ¶¶ 91-95, 97-101, 103. The Government alleges more recent conduct in sections entitled "QSR-2's 2015 Bone-In Promotional Discount," "Distributor-1's Line-of-Credit Term," "QSR-1's Broiler Chicken Products for 2018," and "QSR-2's 8-Piece COB Supply for 2018 and 2019," however none of this conduct references Mr. Roberts. *Id.* at ¶¶ 120-143.

The Government's Section 1 charge is subject to a five (5) year limitations period under 18 U.S.C. § 3282. *See United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018) (citing 18 U.S.C. § 3282(a); *United States v. Evans & Assocs. Const. Co.*, 839 F.2d 656, 661 (10th Cir. 1988)). The Court of Appeals has held that, when a defendant raises a statute of limitations defense, "'the Government then bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period or by establishing an exception to the limitations period.'" *United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018) (quoting *Musacchio v. United States*, 136 S.Ct. 709, 718 (2016)); *see also Musacchio*, at 717 ("When a defendant introduces the limitations defense into the case, the Government then has 'the right to reply or give evidence' on the limitations claim") (quoting *United States v. Cook*, 17 Wall. 168, 179 (1872)) (quoting *United States v. Cook*, 17 Wall. 168, 179 (1872)). Furthermore, in a criminal antitrust prosecution, the government must prove beyond

a reasonable doubt that each defendant "continued to be a member to a time within the period of the statute of limitations." American Bar Association, *Model Jury Instructions in Criminal Antitrust Cases*, Ch. 4, § A(1) (2009).

Statutes of limitations provide a guarantee "'against bringing overly stale criminal charges.'" *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (quoting *United States v. Marion*, 404 U.S. 307, 322 (1971); quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966)). "'[A]n act condoned by the expiration of the statute of limitations is no longer a punishable offense.'" *Stogner v. California*, 539 U.S. 607, 613 (2003) (quoting H. Black, *American Constitutional Law* § 266, p. 700 (4th ed.1927)). Statutes of limitations "reflect[ ] a legislative judgment that, after a certain time, no quantum of evidence is sufficient to convict." *Id.* at 615 (citing *Marion*, at 322); *accord DeLia*, 906 F.3d at 1217 (quoting *Stogner*, at 615). "'The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" *Marion*, at 325 (quoting *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 349 (1944)).

Given that the expiration of the statute of limitations prevents the bringing of stale criminal charges and renders the underlying conduct no longer punishable, in combination with the requirement that the Government bears the burden of proving that the offense was committed within the limitations period or the applicability of an exception to the statute when a statute of limitations defense is raised by the defendant, the Government should be required to establish why its prosecution of Mr. Roberts is not barred before its prosecution proceeds further. Requiring the Government to meet this burden before its prosecution of Mr. Roberts is allowed to continue is

further wholly consistent with "the law of this circuit [ ] that if the statute of limitations is to have any meaning in the administration of criminal justice, [it] must be held ... to operate as a jurisdictional limitation upon the power to prosecute and punish." *United States v. Cooper*, 956 F.2d 960, 961–962 (10th Cir. 1992) (where the criminal information against the defendant was filed after the expiration of the statute of limitation in Section 3282, reversing the defendant's conviction despite her guilty plea and holding that the statute of limitations was a bar to prosecution, and that the charge against the defendant was a nullity). Dismissals of indictments and charges brought in violation of the statute of limitations have been upheld in other cases, under similar circumstances. *See United States v. Dunne*, 324 F.3d 1158, 1166 (10th Cir. 2003) (affirming the district court's dismissal of a superseding indictment for failure to charge within the applicable five-year statute of limitations); *United States v. Payne*, 978 F.2d 1177, 1181 (10th Cir. 1992) (reversing the defendant's convictions for false representations of social security numbers as barred by the five-year statute of limitations under Section 3282 where the evidence was undisputed that the defendant's last false representation of a social security number occurred in 1984, and the indictment was not returned until 1991).

Mr. Roberts accordingly requests that the Indictment be dismissed as to him or, in the event that the charges against him are not dismissed on this Motion, that an evidentiary hearing be held in which the prosecution should be required to meet its burden of proving that Mr. Roberts committed an alleged offense within the limitations period.

1. **The Government's Charged Antitrust Conspiracy Was Complete and Triggered the Running of the Statute of Limitations When the Alleged Combination and Conspiracy Was Entered Into**

The Court of Appeals has held that criminal statutes of limitations generally begin to run when the crime is complete. *See Hinkle v. Beckham Cty. Bd. of Cty. Commissioners*, 962 F.3d 1204, 1225 (10th Cir. 2020) (quoting *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995); 22A C.J.S. *Criminal Procedure and Rights of Accused* § 596). "'A crime is complete as soon as every element in the crime occurs.'" *United States v. Payne*, 978 F.2d 1177, 1179 (10th Cir. 1992) (quoting *United States v. Musacchio*, 968 F.2d 782, 790 (9th Cir. 1991)).

Over a century ago, in *United States v. Kissel*, 218 U.S. 601 (1910), Justice Holmes held that a conspiracy in restraint of trade under the Sherman Act "continues up to the time of abandonment or success." *Kissel*, 218 U.S. at 608. The Court also recognized, however, that "[m]ere continuance of the result of a crime does not continue the crime." *Id.* at 607 (citing *United States v. Irvine*, 98 U. S. 450 (1878); 3 Am. Crim. Rep. 334).

Thirty years later, however, in *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940), a prosecution of alleged fixing of gasoline prices under Section 1, the Supreme Court observed that "under the Sherman Act a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se," *id.* at 223. The Court recognized that conspiracies under the Sherman Act "are not dependent on the 'doing of any act other than the act of conspiring' as a condition of liability." *Id.* at 252 (quoting *Nash v. United States*, 229 U.S. 373, 378 (1913)).

Mr. Roberts acknowledges that the Court of Appeals has held that a conspiracy under the Sherman Act "remains actionable 'until its purpose has been achieved or abandoned, and the

statute of limitations does not run so long as the co-conspirators engage in overt acts designed to accomplish its objectives.'" *Kemp & Assocs., Inc.*, 907 F.3d at 1270 (quoting *United States v. Inryco, Inc.*, 642 F.2d 290, 293 (9th Cir. 1981); citing *Kissel*, 218 U.S. at 607).

The Government alleges that the purpose of the Section 1 conspiracy was to allegedly suppress and eliminate competition through rigging bids and fixing prices. *See* Dkt. # 101, ¶ 47. In regard to the most recent transaction Mr. Roberts had alleged involvement in, "QSR-1's 8-Piece COB Supply for 2015," that alleged purpose was achieved when the suppliers signed cost-plus pricing agreements with Cooperative-1 prior to December 24, 2014. *Id*. at ¶ 106. Moreover, the Superseding Indictment fails to allege any specific overt acts subsequent to the pricing agreements. *Id*. at ¶ 107. It alleges that Supplier-1 sold and accepted payment for 8-piece COB through a distributor to QSR-1 franchisees at a margin of $.2175. *Id*. However, such payments did not constitute alleged overt acts in furtherance of any conspiracy. *See In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 261 F. Supp. 2d 188, 229 (E.D.N.Y. 2003) ("[T]he performance of an allegedly anticompetitive, pre-existing contract is not a new predicate act").

The Government's Section 1 charge alleges that the Defendants and others entered into, and engaged in, a "continuing combination and conspiracy" to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products "beginning at least as early as 2012." *See* Dkt. # 101, ¶ 1. Pursuant to the Supreme Court's interpretation of Section 1 in *Socony-Vacuum Oil Co.*, the Government's alleged bid rigging and price fixing conspiracy was "complete" when the Defendants initially allegedly combined and

conspired in 2012.[1] *See United States v. Reitmeyer*, 356 F.3d 1313, 1316 (10th Cir. 2004) (in prosecution of pursuant to indictment in February of 2002 of various companies and their officers for an alleged scheme to defraud the United States in violation of the Major Fraud Act, 18 U.S.C. § 1031(a), based upon defendants' submission in May of 1994 of a claim for equitable adjustment to the United States Army Corps of Engineers, finding that the defendants executed their alleged scheme when they filed their claim for equitable adjustment in May of 1994, and that the limitations period began to run at that time). No further act by the Defendants was necessary to render the Defendants allegedly liable under Section 1. Pursuant to law, the limitations period was therefore triggered and commenced running in 2012. From the face of the Government's allegations, its charges against the Defendants are plainly time-barred.

## 2. The Alleged Conduct Involving Mr. Roberts Was Not a "Continuing" Violation

The Government will doubtless argue that the alleged combination and conspiracy was "continuing," as it alleges in the first paragraph of its Indictment. *See* Dkt. # 101, ¶ 1. As referenced above, the Indictment contains allegations of specific acts by Defendants asserted to be unlawful as late as September of 2017. *Id*. at ¶ 143. However, the three alleged schemes in which Mr. Roberts is specifically referenced ended years prior to that date. The Government makes no allegations regarding "QSR-4's 2013 Freezing Charge" dating later than June of 2013. *See* Dkt. #

---

[1] Other courts have found that an offense of a Sherman Act conspiracy is generally complete when the agreement or conspiracy is formed. *See United States v. Gasoline Retailers Ass'n, Inc.*, 285 F.2d 688, 691 (7th Cir. 1961) (quoting *United States v. New York Great Atlantic & Pacific Tea Co.*, 137 F.2d 459, 463 (5 Cir. 1943)). This holding stems from the Supreme Court's statement in *Socony-Vacuum Oil Co.* that Section 1 prohibits "'conspiracy, in restraint of trade or commerce… whether the concerted activity be wholly nascent or abortive…'" *Socony-Vacuum Oil Co.*, 310 U.S. at 224 (quoting *United States v. Trenton Potteries Co.*, 273 U.S. 392, 402 (1954); citing *Retail Lumber Dealer's Ass'n v. State*, 95 Miss. 337 (1909)).

101, ¶ 70. Similarly, the Government's most recent allegation concerning "QSR-4's Quality Assurance Costs for 2014" is in January of 2014. *Id*. at ¶ 83.

Concerning "QSR-1's 8-Piece COB Supply for 2015," the Indictment alleges that suppliers signed cost-plus pricing agreements for 2015 with "Cooperative-1" by on or about December 24, 2014. *See* Dkt. # 101, ¶ 106. It then proceeds to allege that it was part of the conspiracy that "Supplier-1" sold and accepted payment for 8-piece chicken-on-bone (COB) through a distributor to "QSR-1" franchisees at a margin of $.2175 as late as approximately December 26, 2015. *Id*. at ¶ 107.

Whether these alleged schemes are viewed separately or as part of the alleged combination and conspiracy entered into in 2012, in regard to Mr. Roberts the offense was complete and the limitations period commenced, at the absolute latest, at the end of 2014. The payments to Supplier-1 in 2015 for 8-piece COB cannot transform the alleged conduct relating to "QSR-1's 8-Piece COB Supply for 2015" into an alleged "continuing" violation or conspiracy. *See* Dkt. # 101, ¶ 107. The Court of Appeals has held, in the context of a civil antitrust claims, that the continuing conspiracy or violation exception to the statute of limitations applies only where "acts committed within the limitations period are somehow more than 'the abatable but unabated inertial consequences of some pre-limitations action.'" *Kaw Valley Elec. Co-op. Co. v. Kansas Elec. Power Co-op., Inc.*, 872 F.2d 931, 933 (10th Cir. 1989) (quoting *Poster Exchange, Inc. v. National Screen Serv. Corp.*, 517 F.2d 117, 128 (5th Cir. 1975)). "[A] victim does not have a new cause of action if, within the limitations period, a violator collects payments on an illegal contract executed outside the limitations period that established with finality 'the rights and liabilties of [the] parties

[to the contract].'" *Id.* 872 at 933 n. 5 (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1053 (5th Cir. 1982)).

In this case, the 2015 payments to Supplier-1 were merely the consequence or result of the earlier alleged combination and agreement. *See Kissel*, 218 U.S. at 608 ("Mere continuance of the result of a crime does not continue the crime") 607 (citing *Irvine*, 98 U. S. 450; 3 Am. Crim. Rep. 334); *see also United States v. Great W. Sugar Co.*, 39 F.2d 152 (D. Neb. 1930) (in a criminal prosecution of a conspiracy to restrain interstate commerce in beet sugar, contrary to the Sherman Act, finding that the defendant's increase in the price of beets was done outside of the statute of limitations and that the charged conspiracy was barred, holding that that the act of price fixing "was not the acceptance of the beets or paying for them... It was the price boost by offer to contract at the excessive price and the contracting..."); *Reitmeyer*, 356 F.3d at 1324 (finding that the execution of the scheme was not a "continuing offense" for statute of limitations purposes). The payments were not necessary to Defendants' alleged liability under the Sherman Act. The charged bid rigging and price fixing conspiracy is not a "continuing" conspiracy.

Section 3282 provides that "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Criminal statutes of limitations are "liberally interpreted in favor of repose." *United States v. Marion*, 404 U.S. 307, 325 (1971) (citing *United States v. Habig*, 390 U.S. 222, 227 (1968)). Furthermore, the Due Process Clause also serves to protect defendants from "oppressive delay." *Lovasco*, 431 U.S. at 789 (citing *Marion*, 404 U.S. at 324); *accord United States v. Deberry*, 430 F.3d 1294, 1300–01 (10th Cir. 2005) (citing *Marion*, at 324).

> [T]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense."

*United States v. Gouveia*, 467 U.S. 180, 192 (1984) (internal citations omitted) (citing *Lovasco*, at 788–790; *Marion*, 404 U.S. at 322, 324). The Due Process Clause is "a safeguard against fundamentally unfair prosecutorial conduct." *Betterman v. Montana*, 136 S. Ct. 1609, 1613 (2016) (quoting *Lovasco*, at 795 n. 17).

As demonstrated above, the alleged offense was complete and the limitations period began to run in 2012. The prosecution took approximately 8 years to bring the Indictment against the Defendants, and indicted Mr. Roberts over 6 years after the last specific act alleged against him. Pursuant to due process and construing the statute of limitations in favor of repose, the Court should find that the conduct charged against Mr. Roberts is no longer a prosecutable or punishable offense, and should dismiss the Indictment as to him. Dismissal of the charges against Mr. Roberts is furthermore warranted as a sanction for the prosecution's unjustifiable delay in bringing the case. *See Marion*, 404 U.S. at 323 (finding that limitations periods "'have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity'") (quoting *Toussie v. United States*, 397 U.S. 112, 114-115 (1970)); *accord United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018) (quoting *Toussie*, 397 U.S. at 115).

## III. <u>CONCLUSION</u>

Based upon the authorities and grounds set forth herein, Defendant Brian Roberts respectfully requests that the Court grant Defendant Roberts' Motion to Dismiss the Indictment As Barred by the Statute of Limitations, and dismiss the charges against him as barred by the statute of limitations and due process. In the event that the charges against Defendant are not

dismissed, Defendant respectfully requests that an evidentiary hearing be held on the issue of whether the Government's prosecution of Defendant is barred by the statute of limitations.

Respectfully submitted, this 26th day of July, 2021.

*s/ Craig A. Gillen*
Craig Allen Gillen
GILLEN WITHERS & LAKE, LLC
400 Galleria Parkway
Ste 1920
Atlanta, Georgia 30339
Telephone: 404-842-9700
Email: cgillen@gwllawfirm.com
*Counsel for Gary Brian Roberts*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of July, 2021, I electronically filed the foregoing

**DEFENDANT ROBERTS' MOTION TO DISMISS THE INDICTMENT AS BARRED BY**

**THE STATUTE OF LIMITATIONS AND BRIEF IN SUPPORT THEREOF** with the Clerk

of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Craig A. Gillen*
Craig Allen Gillen
GILLEN WITHERS & LAKE, LLC
400 Galleria Parkway
Ste 1920
Atlanta, Georgia 30339
Telephone: 404-842-9700
Email: cgillen@gwllawfirm.com
*Counsel for Gary Brian Roberts*
