# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   **WILLIAM VINCENT KANTOLA**,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

    Defendants.

## DEFENDANT WILLIAM KANTOLA'S
## MOTION TO DISMISS THE SUPERSEDING INDICTMENT

COMES NOW, Defendant William Kantola, by and through his undersigned counsel, and pursuant to Rule 12(b)(3)(B)(iii) and (v) of the Federal Rules of Criminal Procedure, respectfully requests that the Court dismiss the Superseding Indictment returned on October 6, 2020[1] for failure to state an offense and lack of specificity.

---

[1] Dkt. 101.

## I. INTRODUCTION

With nine co-defendants, Mr. Kantola was named in one count of a Superseding Indictment for violating Section 1 of the Sherman Act, 15 U.S.C. § 1.[2] Yet the Superseding Indictment fails to allege the elements of a Sherman Act violation or adequately to inform Mr. Kantola of a charge against him. The disjointed and contradictory factual allegations fail to provide any coherent charge. It does not define an agreement, does not explain how any restraint of trade would be unreasonable or undue, and offers nothing on whether Mr. Kantola knowingly and intentionally entered into an illegal agreement. Neither conclusory labeling nor presumptions can fill in the voids. Furthermore, in this context, and with the benefit of a June 21, 2021 Supreme Court decision, it is evident that the Sherman Act itself fails here as a criminal statute under the void for vagueness doctrine. Constitutional requirements thus direct dismissal of the Superseding Indictment.

## II. THE SUPERSEDING INDICTMENT

The Superseding Indictment claims the existence of "a continuing network of Suppliers and co-conspirators," and agreements to "submit aligned – though not necessarily identical" bids.[3] Among the features of this unusual charge, it does not exclude customers as co-conspirators. Relatedly, the intriguing term "aligned" is ambiguous and obscures any bid-rigging charge by allowing the interpretation that the alleged conspirators agreed with customers to align offers with customer expectations. Moreover, the specification that defendants and co-conspirators engaged in conversations and communications relating to non-public information and monitored bids does not allege unlawful conduct.[4]

---

[2] He is not included in two other non-conspiracy counts against another defendant.
[3] Dkt. 101, ¶¶47-48(a).
[4] Dkt. 101, ¶48(a)-(c).

Whatever the "continuing network" is, Mr. Kantola is named in only five of 14 incidents alleged to comprise the "Means and Methods of the Conspiracy" (hereinafter, "Means and Methods").[5] Particularly as to Mr. Kantola, these events make sense neither as a continuing nor a single conspiracy. In general, the Superseding Indictment recites that Mr. Kantola received calls from other defendants and occasionally called back, but nowhere is he quoted or actually paraphrased, except in a 2013 email with an individual at his own company reporting bid *results* that showed why a competitor found favor with a customer. (Dkt. 101, ¶81 (b)). The allegations in which he is mentioned sound more like reports of fact than pledges to do anything. In any event, even as evidence of communication, as to Mr. Kantola, it lapses in the spring of 2015, while the Superseding Indictment charges that others continued to conspire to rig bids to at least two of Mr. Kantola's customers entirely *without him or his company*. *See* Dkt. 101, ¶¶ 129-135 and ¶¶ 136-147.[6] Another alleged incident in the conspiracy, a 2014 plan to impose upcharges on antibiotic-free chicken meat neither involves Mr. Kantola nor concerns a customer of his or his company. *See* Dkt. 101, ¶¶ 84-86.

The last act attributed to Mr. Kantola in the claimed conspiracy is on April 1, 2015[7], when he emailed a customer to agree to a *discount* the customer requested. There is no allegation that Mr. Kantola communicated with any competitor on this occasion. Mr. Kantola is not mentioned in any later event described in the Superseding Indictment. Elsewhere, the Superseding Indictment repeatedly claims that acts alleged therein are but "part" of the

---

[5] Dkt. 101, ¶51-143.
[6] Nor is Mr. Kantola is mentioned at all in a section of the Superseding Indictment entitled "Protecting the Purpose and Effectiveness of the Conspiracy" at Dkt. 101, ¶¶ 117-119.
[7] Dkt. 101, ¶127(a).  And notably this alleged act is over five years before Mr. Kantola was charged.

"conspiracy,"[8] but any broad conspiracy is not described, let alone Mr. Kantola's role in it. The factual allegations do not purport to show how any of the conduct would be unreasonable in the context of market realities, nor do any allegations claim that Mr. Kantola knowingly and intentionally entered into any agreement, let alone an agreement to unreasonably restrain trade. In sum, on its face, as to Mr. Kantola, the Superseding Indictment fails to charge an illegal conspiracy.

### III.   ARGUMENT

#### A. The Superseding Indictment Fails to Allege the Elements of Section One of the Sherman Act.

The curious Superseding Indictment fails sufficiently to "set forth each element of the crime that it charges." *See Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998); *United States v. Hathaway*, 318 F.3d 1001, 1009 (10th Cir. 2003) and fails to "inform the defendant of the charge against *him* with sufficient precision to allow him to prepare his defense [emphasis added]," *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (internal citations omitted). The elements of a violation of Sherman Act Section 1 are: (1) an agreement, (2) that unreasonably restrains trade, (3) affecting interstate commerce,[9] with a fourth element required only for a criminal violation -- of knowledge that the proscribed effects would most likely follow from the agreement.[10]

While, in some instances, the words of the statute may suffice, the Supreme Court has explained that "the language of the Sherman Act cannot mean what it says." *National Society of Professional Engineers v. United States*, 435 U.S. 679, 687-88 (1978). *See Dunn*, 841 F.2d at

---

[8] Dkt. 101, ¶¶ 48, 49, 50.
[9] 15 U.S.C. § 1; *ABA Section of Antitrust Law, Antitrust Law Develop*ments 2 (8th ed. 2017) (hereinafter *ALD*).
[10] *United States v. U.S. Gypsum*, 438 U.S. 422, 435-44 (1978).

1029 (qualifying acceptable use of statutory language in an indictment "so long as the statute adequately states the elements of the offense."). "Greater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts". *See United States v. Bestway Disposal Corp.,* 681 F. Supp. 1027, 1030 (W.D.N.Y. 1988). Thus, an indictment charging a conspiracy under Section 1 must set out, at a minimum, the "time, place, manner, means and effect" of the alleged agreement. *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 907 (10th Cir.), *opinion supplemented on reh'g,* 881 F.2d 866 (10th Cir. 1989), *and abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010).

### 1. The Factual Allegations of the Superseding Indictment Do Not Allege Mr. Kantola Knowingly Entered Into an Illegal Agreement.

The Superseding Indictment does not define terms of an agreement with a common objective or how the claimed conspirators entered into any agreement. Thus, the Superseding Indictment fails to allege any agreement; that Mr. Kantola knowingly and intentionally entered into an agreement; that, whatever the agreement, it had as its common objective an undue restraint of trade; and that Mr. Kantola had the requisite intent that such undue restraint would in all likelihood follow from such agreement. Instead, the government chose to include Mr. Kantola and others, named and unnamed, in a "continuing network"[11] that purportedly was utilized to submit "aligned, though not necessarily identical bids." Yet, a "network" is not an "agreement", which is a fundamental predicate for a Sherman Act violation.[12] Likewise, Mr. Kantola's alleged participation "in conversations and communications relating to non-public

---

[11] Dkt. 101, ¶ 47.
[12] *See ALD* at 3.

information" or to "monitor bids"[13] does not describe an agreement or a common objective with his co-defendants. As noted, the incidents recited as Means and Methods consist of a collection of unrelated events, only five of which involve Mr. Kantola in any way. Moreover, at war with the essential charge of a single conspiracy on the first page, the Means and Methods portion of the Superseding Indictment refers to multiple "agreements and understandings".[14] As to Mr. Kantola, the specific contentions in the Superseding Indictment confuse and, in essential ways, nullify the charge of a single, continuing conspiracy, with no facts alleged that Mr. Kantola knowingly joined in *any* agreement.

The Superseding Indictment also provides no explanation beyond conclusory language of how the disjointed conduct or any claimed agreement meets the Sherman Act requirements that the object of the agreement constitute a restraint of trade that is "unreasonable" or "undue" or that  the likely and probable consequence of Mr. Kantola's conduct would be an undue restraint of trade.[15]  Indeed, it is impossible to evaluate whether any restraint of trade is unreasonable or undue if the context and parameters of what was purportedly agreed is not clear and the Superseding Indictment does not provide this. *See Broadcast Music Inc. v. Columbia Broadcasting System, Inc.*, (BMI), 441 U.S. 1, 19-21 (1979) (horizontal price fixing was analyzed under rule of reason and requires fact-finding on issue of whether a restraint is unreasonable). Instead, the government relies exclusively upon its conclusory labeling of "per se".

---

[13] Dkt. 101, ¶ 48 (a)-(c).  As noted above, the Superseding Indictment "monitoring" charges Mr. Kantola with reporting bid results within his company.
[14] Dkt. 101, ¶48 (a).
[15] Dkt. 101, ¶ 1.  ("The combination and conspiracy engaged in by the Defendants and co-conspirators was a per se unlawful, and thus unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.").

2. **A Per Se Label Cannot Fill the Void to Allege an Unreasonable or Undue Restraint of Trade or the Requisite Intention to Agree to an Unreasonable or Undue Restraint of Trade.**

By its terms, Section One of the Sherman Act proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade," 15 U.S.C. § 1, but, as that text cannot mean what it says, federal courts interpret the statute to prohibit only "unreasonable" or "undue" restraints of trade. *National Collegiate Athletic Ass'n v. Alston* (*NCAA*), slip op. at 9 (S.Ct. June 21, 2021); *Standard Oil Co. v. United States*, 221 U.S. 1, 87 (1911). This element of an unreasonable or undue restraint of trade cannot be circumvented by a conclusory label of price fixing or bid rigging. *BMI*, 441 U.S. at 19-21.[16] As explained by the unanimous Supreme Court last month: "Whether an antitrust violation exists necessarily depends on a careful analysis of market realities." *NCAA*, slip op. at 21. The Court further recognized that "even '[u]nder the best of circumstances,' applying the antitrust laws ' 'can be difficult' '—and mistaken condemnations of legitimate business arrangements ''are especially costly, because they chill the very'' procompetitive conduct ''the antitrust laws are designed to protect.' '". *Id.,* slip op. at 27 (citations omitted). To be clear, *NCAA* applied a rule of reason analysis, not a per se analysis to a civil case of "admitted horizontal price fixing in a market where the defendants exercise monopoly control." *Id.* at 14. The Court explained in that context that the amount of work necessary for judicial evaluation of a restraint varies across a spectrum depending upon the factual parameters and market realities with the vast bulk of restraints in the middle of the spectrum, neither able to be quickly condemned or approved. *Id.* slip op. at 14-19.

---

[16] *See also* Roxann E. Henry, Per Se Antitrust Offenses in Criminal Cases, 2021 *Colum. Bus. L. Rev.* 114 (describing in detail how the concept of per se illegality cannot constitutionally substitute a judicial presumption in place of fact-finding and how the Supreme Court requires fact-finding on the element of whether a restraint is unreasonable even in the context of price fixing)(hereinafter "Per Se Antitrust Offenses").

7

The per se concept reflects only a means to evaluate whether a plaintiff has fulfilled the required element of an undue restraint. *Id.* While the Court acknowledged with reference to civil contexts that sometimes judges might be able quickly to conduct their fact-finding regarding whether or not a restraint of trade is undue under the circumstances, the Court reinforced that even judicial per se condemnation is dependent upon the facts, not labels. *Id.* But this judicial evaluation has no place in criminal procedure.

Supreme Court precedent requires that all fact-finding on an element of a criminal offense is reserved for the jury and judicial presumptions cannot substitute without violating constitutional Due Process, the right to trial by jury and the separation of powers. *Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000)(rejecting judicial fact-finding on sentencing factors and reiterating that constitutional "rights indisputably entitle a criminal defendant to a jury determination on every element of the crime with which he is charged); *United States v. Booker*, 543 U.S. 220, 230 (2005)(constitutional right to jury determination of all elements of an offense); *United States v. U.S. Gypsum*, 438 U.S. 422 (1978)(rejecting instruction of conclusive presumption of antitrust intent in criminal case where indictment charged price fixing); *In re Winship*, 397 U.S 358, 364 (1970) ("we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Morrisette v. United States*, 342 U.S. 246, 275 (1952)(where intent is an element, "[h]owever clear the proof may be, or however incontrovertible may seem to the judge the inference of a criminal intention, the question of intent can never be ruled as a matter of law, but must always be submitted to the jury…"). Thus, the Constitution does not permit in a criminal case what the Tenth Circuit has described as "an evidentiary shortcut through the rule of reason morass." *United States v. Kemp & Assocs.*, 907

8

F.3d 1264, 1272 (10th Cir. 2018) (the constitutional issue was not before the court; the parties had argued below that the particular offense should not be categorized as per se).

Even were the per se label a valid shortcut to avoid alleging and proving an element of the Sherman Act, the Superseding Indictment provides no basis to invoke that label. The factual allegations, as explained above, fall short of alleging any type of agreement, let alone one that had as its object an undue restraint. Paying attention to what competitors are charging is procompetitive and not a violation of the Sherman Act.[17] It has long been accepted that information exchanges alone do not constitute an agreement, and even an agreement to exchange price information is subject to the rule of reason. *Mitchell v. Intracorp, Inc.,* 179 F.3d 847, 860 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."); *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 475 (10th Cir. 1990) ("[I]t is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or . . . exchange information on independently derived prices."). Similarly, parallel business interests, such as common concerns, do not demonstrate an illegal agreement because of the possibility that the defendants acted independently for legitimate and reasonable motivations. *Id.* at 861.

The government's attempt to avoid charging an acknowledged element of the Sherman Act by relying upon conclusory labeling thus fails.

### B. The Sherman Act is Constitutionally Void for Vagueness.

The void-for-vagueness doctrine requires that a person can know what conduct may bring punishment. *See Connally v. Construction Co.*, 269 U.S. 385 (1926). The doctrine has particular

---

[17] The allegations against Mr. Kantola fall within what the Supreme Court identified in *NCAA* as the vast bulk of restraints in the middle of the spectrum for analysis.

application to antitrust cases because the common law nature of the Sherman Act illustrates its complexity[18] and the ever-changing legal standards and potential to chill beneficial conduct highlight the problem. Perhaps the most salient example of the Act's unpredictability is the use of the per se label. The morphing and flipping of the per se classification squarely demonstrates unpredictability with the Supreme Court even explicitly condemning conduct then explicitly overruling itself.[19] In considering the question of vagueness, the Court's unanimous pronouncement last month defined the vagueness problem in recognizing the difficulty of applying the antitrust laws in even the best circumstances and the severity of the consequences of mistakes. *NCAA* slip op. at 27.

The only Supreme Court decision to address the issue of the Act's criminal constitutionality is distinguishable and subsequent cases undermine its vitality. When the Court decided *Nash v. United States*, 229 U.S.373 (1913), the Sherman Act was a misdemeanor, punishable by a maximum of six months in jail. Now the Act provides for penalties of up to 10 years in prison and fines routinely reach into the tens and hundreds of millions of dollars.[20] And the market realities and judicial interpretations continue to evolve. Not only do per se rules

---

[18] Yet, "federal crimes are defined by statute rather than by common law." *United States v. Oakland Cannabis Buyers Cooperative*, 532 U.S. 483, 490 (2001); *see also Central Bank N. A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 181 (1994).

[19] William E. Kovacic, The Future Adaptation of the Per Se Rule of Illegality in U.S. Antitrust Law, 2021 *Colum. Bus. L Rev.* 33, 48 ("[T]he Supreme Court has revisited [per se]assumptions with dramatic effects. It has concluded that various practices once subject to categorical prohibition yield important economic benefits in too many cases to be condemned out of hand…"); Per Se Antitrust Offenses, 2021 *Colum. Bus. L. Rev.* at 121-138.

[20] Corporate fines have reached almost a half billion dollars ($925,000,000). Sherman Act Violations Resulting in Criminal Fines & Penalties of $10 Million or More, https://www.justice.gov/atr/sherman-act-violations-yielding-corporate-fine-10-million-or-more (listing 156 fines and penalties as of 2/23/21).

embody arbitrariness that is antithetical to the concept of criminal predictability,[21] but the Court after *Nash* has made clear that it does not apply stare decisis in the usual manner and intends to continue to modify the parameters of the Sherman Act. As the Supreme Court has explained: "The Sherman Act's broad reference to prohibitions on 'restraint of trade 'turn[s] over exceptional law-shaping authority to the courts.' ***"We have therefore felt relatively free to revise our legal analysis as economic understanding evolves and … to reverse antitrust precedents that misperceived a practice's competitive consequences.'" *Kimble v. Marvel Entertainment, LLC*, 576 U.S. 446, 2412-13 (2015).[22] While the Act's civil validity is not in question, as a criminal law this evolutionary unpredictability can deprive an individual of his or her freedom.

Due process does not permit such a loose and changing formulation of what can be prosecuted as a crime.

---

[21] *See United States v. Container Corp. of Am.*, 393 U.S. 333, 341 (1969) (Marshall, J. dissenting)("*Per se* rules always contain a degree of arbitrariness." Further noting administrative convenience as justification).

[22] *Leegin Creative Leather Products Inc. v. PSKS Inc.*, 551 U.S. 877, 899 (2007) ("Stare decisis is not as significant in this case, however, because the issue before us is the scope of the Sherman Act.").

## IV.  CONCLUSION

For the foregoing reasons, Mr. Kantola respectfully requests dismissal of the Superseding Indictment against him.

Dated:  July 26, 2021
At:     Philadelphia, Pennsylvania

Respectfully submitted,

JAMES A. BACKSTROM, COUNSELLOR

*s/ James A. Backstrom*

1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
Tel: (215) 864-7797
jabber@backstromlaw.com

ROXANN E. HENRY, ESQ.

5410 Wilson Lane
Bethesda, MD 20814-1342
Tel: (202) 489-9556
Henry.Roxann@me.com

**Counsel for Defendant William Kantola**

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of July, 2021, I filed the foregoing **Defendant William Kantola's Motion to Dismiss the Superseding Indictment** with the Clerk of Court using the CM/ECF system, which will serve notice of such filing on all counsel of record.

At:   Philadelphia, Pennsylvania                               *s/ James A. Backstrom*
                                                                James A. Backstrom