IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

      Defendants.

**DEFENDANT ROGER AUSTIN'S MOTION TO DISMISS
THE SUPERSEDING INDICTMENT**

**Introduction and Summary of Argument**

Defendant Roger Austin moves, pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, to dismiss the superseding indictment for failure to state an offense.

The superseding indictment should be dismissed because it does not allege an agreement – it does not say, nor can it be inferred, who agreed with whom to do what. Even drawing all reasonable inferences in favor of the government, the superseding indictment at most alleges the sharing of price information among competitors, conduct which is not a per se antitrust violation.

1

Since it has not alleged a per se violation, the government would have to take the unprecedented step of trying to prove a criminal antitrust case under the rule of reason, which the government disclaims and for which it has not pled the necessary facts. Moreover, the superseding indictment fails to allege that Mr. Austin knowingly entered a conspiracy, thus omitting the necessary element of intent. While intent can sometimes be inferred, it cannot be here, where the only conduct alleged is facially lawful.

A criminal indictment must set forth the elements of the offense alleged. For statutes such as the Sherman Act, where the statute does not lay out the elements of the offense with specificity, more is required than just parroting the statute. An antitrust indictment must go further and plead that the defendant knowingly entered into an agreement that unreasonably restrains trade, affecting interstate commerce. The factual detail in the superseding indictment cannot mask the fact that it fails to plead these basic elements.

For these reasons, the superseding indictment does not satisfy Rule 7 and should be dismissed under Rule 12.

### I.     Factual Background

On June 2, 2020, a grand jury indicted Mr. Austin and three co-defendants for an alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Indictment ("Dkt. 1") ¶ 1. The indictment alleged a price-fixing and bid-rigging conspiracy between 2012 and 2017 among suppliers of broiler chicken products, *id.*, and described eight incidents of alleged conspiratorial activity relating to five customers and four different products. *Id.* ¶¶ 32-77. The indictment alleged that the defendants utilized a "continuing network" to reach agreements and understandings to submit "aligned" bids, to participate in conversations and communications

relating to non-public information, and to monitor bids. *Id.* ¶ 29(a)-(c).

On October 6, 2020, a grand jury returned a superseding indictment against Mr. Austin and nine co-defendants, charging all defendants with one-count of violating 15 U.S.C. § 1, and charging co-defendant Jimmie Little with two additional counts. *See* Superseding Indictment ("Dkt. 101") ¶¶ 1, 147, 151. The superseding indictment alleges a price-fixing and bid-rigging conspiracy over a seven-year period, relating to several different and unrelated suppliers, customers and products, and consisting of fourteen separate incidents. *Id.* ¶¶ 51-145. The fourteen incidents include sales to quick service restaurants, grocery stores, and food distributors. The superseding indictment alleges that the defendants participated in a "continuing network" that they utilized to reach agreements and understandings to submit "aligned – though not necessarily identical" bids, to participate in conversations and communications relating to non-public information, and to monitor bids. *Id.* ¶¶ 47, 48(a)-(c). Of the fourteen incidents, Mr. Austin appears in five. The superseding indictment alleges that he was a vice president of [Supplier-1] starting in approximately February 2007, and that he was supervised by co-defendant Jayson Penn. *Id.* ¶ 13.

**II.    Legal Background**

"An indictment must set forth each element of the crime that it charges." *Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998); *see also United States v. Hathaway*, 318 F.3d 1001, 1009 (10th Cir. 2003) (indictment must "set[] forth the elements of the offense charged") (quotation omitted); *Hamling v. United States*, 418 U.S. 87, 117 (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or

3

conviction in bar of future prosecutions for the same offense."). The sufficiency of an indictment is judged "by practical rather than technical considerations." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997). "This test is embodied in Fed. R. Crim. P. 7(c)(1), which requires that an indictment be 'a plain, concise and definite written statement of the essential facts constituting the offense charged.'" *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983).

"[W]hile an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) ("An indictment is 'generally sufficient if it sets forth the offense in the words of the statute so long as the statute adequately states the elements of the offense.'") (quoting *Salazar*, 720 F.2d. at 1486). "'In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to punished[.]'" *Russell v. United States*, 369 U.S. 749, 765 (1962) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)). Accordingly, "where the definition of an offence … includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *Russell*, 369 U.S. at 765 (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)).

The Sherman Act, which is notoriously short on detail, is perhaps the quintessential example of such a statute. *See National Soc. Of Professional Engineers v. United States*, 435 U.S. 679, 687-88 (1978) ("[T]he Sherman Act … cannot mean what it says. … Congress … did

4

not intend the text of the Sherman Act to delineate the full meaning of the statute or its application in concrete situations."). "The Sherman Act, unlike most traditional criminal statutes, does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978). The Act "is couched in general language, it speaks in generic terms, and it fails to enter into details." *Frankfort Distilleries v. United States*, 144 F.2d 824, 830 (10th Cir. 1944) (en banc) ("It has a generality and adaptability comparable to that found to be desirable in constitutional provisions." (quotation omitted)), *rev'd on other grounds*, 324 U.S. 293 (1945). "It therefore is necessary that an indictment charging an offense under its provisions descend to particulars and allege the constituent ingredients of which the crime is composed." *Id.*

The elements of an antitrust offense, which must be pled in the indictment, are: (1) an agreement; (2) that unreasonably restrains trade; (3) affecting interstate commerce; and (4) that was knowingly entered into by the defendant. *See* Jury Instructions Nos. 15-19, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. filed Dec. 2, 2019) (Dkt. 626).

### III.  Argument

The superseding indictment fails to allege three of the elements of a criminal antitrust offense and should therefore be dismissed.

#### A. The Superseding Indictment Fails to Allege an Agreement

While the indictment alleges numerous variegated facts, there is a rather stark omission—nowhere does it make a specific allegation of an agreement among the alleged conspirators. Simply put, the indictment does not say, and it cannot be inferred, who agreed with whom to do what.

5

The superseding indictment parrots the "combination" and "conspiracy" language from the Sherman Act, Dkt. 101 ¶¶ 1, 2, but the Sherman Act "does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *U.S. Gypsum Co.*, 438 U.S. at 438.

Superficially, the superseding indictment appears to descend into the particulars. But in actuality it alleges actions supposedly in furtherance of an alleged conspiracy while failing to identify the alleged agreement. *See* Dkt. 101 ¶¶ 51-143. The formation of an agreement is not alleged. *See id.* And an agreement cannot be inferred from any of the alleged acts because, while the indictment alleges a bid-rigging and price-fixing conspiracy, there is no allegation that any bid was rigged, or that any price was fixed. *See id.* To the contrary, from the face of the indictment, the suppliers' bids and prices were different, and in many cases, suppliers actually *lowered* their prices following intercompany communications. *See, e.g.*, Dkt. 101 ¶¶ 74-75 (lowering prices after communications); *id.* ¶¶ 51-63 (after conversations, bids submitted with different prices).

Comparing the allegations here to the allegations in indictments that have been upheld is instructive. In *United States v. Mobile Materials*, 871 F.2d 902 (10th Cir. 1989), the sufficiency of the indictment was challenged on post-conviction appeal, and the Tenth Circuit concluded that "[t]he indictment does more than merely repeat the words of the statute; it describes this particular conspiracy." *Id.* at 909, *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010). The Court reached this conclusion because the indictment "outlines the practices in furtherance of the conspiracy allegedly engaged in by the appellants and other conspirators including: 1) discussing the submission of prospective bids on projects, 2) agreeing on the successful low bidder on projects, 3) submitting intentionally high, noncompetitive bids or

6

withholding bids on construction projects and 4) submitting bid proposals with false statements and entries." *Id.* at 907. The superseding indictment in this case alleges none of those things.

To the contrary, the superseding indictment calls the alleged conspiracy a "continuing network." Dkt. 101 ¶¶ 47, 48. This odd formulation raises more questions than it answers: Is the network a single agreement? Or is it an agreement to enter into multiple other agreements? And, most intriguingly, why did the government choose to use a vague term that does not appear to ever have been used previously in a criminal antitrust indictment? In any event, the allegation of a "continuing network" adds nothing to the government's simple parroting of the statute. It does not detail the particulars, nor does it explain what Mr. Austin is alleged to have agreed to, or with whom.

The Department of Justice itself explains that "[t]he agreement is the essence of a [Sherman Act] Section 1 violation." U.S. Dep't of Justice, Antitrust Division, "An Antitrust Primer for Federal Law Enforcement Personnel," at 2 (Aug. 2003, rev'd. Sep. 2018). The superseding indictment lacks that "essence" and should be dismissed.

### B. The Superseding Indictment Fails to Allege an Unreasonable Restraint on Trade

The Sherman Act prohibits "unreasonable restraints" of trade. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). "Restraints can be unreasonable in one of two ways. A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output." *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2283 (2018) (quotation omitted). Per se unreasonable restraints include horizontal price-fixing, market allocation, group boycotts, and bid rigging. *See, e.g.*, *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 290 (1985). "Restraints that are not

unreasonable per se are judged under the rule of reason[,]" which "requires courts to conduct a fact-specific assessment of market power and market structure … to assess the restraint's actual effect on competition." *American Express Co.*, 138 S. Ct. at 2283 (quotations omitted).

Reading the superseding indictment in the light most favorable to the government, the most that can be inferred is that Mr. Austin exchanged price information with competitors. *See, e.g.*, Dkt. 101 ¶¶ 51-63 (Mr. Austin had calls with Scott Brady of [Supplier-2], the substance of which is not alleged, after which [Supplier-1] and [Supplier-2] submitted final bids to sell dark meat to [QSR-1] at different prices); *id.* ¶¶ 87-107 (Mr. Austin had telephone calls with Mr. Brady and someone at [Supplier-6], the substance of which is not alleged, after which the suppliers submitted bids to [Cooperative-1] with different margins). But "[t]he exchange of price data and other information among competitors…do not constitute a *per se* violation of the Sherman Act." *U.S. Gypsum Co.*, 438 U.S. at 441 n.16. This is because such an exchange "does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive." *Id.* Similarly, "consciously parallel behavior … is insufficient, standing alone, to prove conspiracy." *Mitchael v. Intracorp., Inc.*, 179 F.3d 847, 859 (10th Cir. 1999).

The superseding indictment does claim that "an understood purpose" of the so-called "continuing network" "was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms …" Dkt. 101 ¶ 47; *see also id.* ¶¶ 1, 2, 48. But that generic language is all that is alleged. The superseding indictment does not allege any examples of bid rigging, price fixing, or any other per se unreasonable conduct. Simply using conclusory terms for types of per se antitrust violations is insufficient. *Contrast, e.g.*, *Mobile Materials, Inc.*, 871

F.2d at 907-09 (concluding that indictment sufficiently alleged per se violation where "[t]here was advance agreement as to which co-conspirator would be the low bidder on highway construction projects. With this object in mind, some noncompetitive bids were submitted, and some bids were withheld.").

The superseding indictment describes this as a per se case, Dkt. 101 ¶ 1, which is understandable, since criminally prosecuting a rule of reason case would be a departure from Department of Justice Policy to prosecute only "'horizontal, per se unlawful agreements.'" *United States v. Kemp & Associates, Inc.*, 907 F.3d 1264, 1274 (10th Cir. 2018) (quoting U.S. Dep't of Justice, Antitrust Div., Antitrust Division Manual, at III-12 (5th ed. 2018)).  Even if the government intended to take the unprecedented step of criminally prosecuting a rule of reason case, the superseding indictment would be insufficient. There is no allegation that the alleged conduct decreased economic efficiency or rendered markets less competitive, and no definition of a relevant product market, allegations that are necessary in a rule of reason case. *See American Express Co.*, 138 S. Ct. at 2284 (describing the rule of reason analysis). Because the superseding indictment lacks any allegation of an unreasonable restraint on trade, it should be dismissed.

### C. The Superseding Indictment Fails to Allege Mr. Austin Knowingly Entered a Conspiracy

"[A] defendant's state of mind or intent is an element of a criminal antitrust offense which must be established by evidence and inferences drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent…" *U.S. Gypsum Co.*, 438 U.S. at 435. The "requisite intent must be pled and proved in any criminal prosecution arising out of the Sherman Act[.]" *United States v. Metro. Enterprises, Inc.*, 728 F.2d 444, 453 (10th Cir. 1984). This may be done explicitly or implicitly. *Id.* at 452-53.

9

The superseding indictment plainly does not explicitly allege that Mr. Austin knowingly or intentionally violated the Sherman Act. There is simply no allegation that Mr. Austin intended to unreasonably restrain trade or knew that the supposed "continuing network" had the effect of unreasonably restraining trade. Nor can the requisite intent be inferred from the allegations in the superseding indictment. While a charge of conspiracy can imply knowledge and intent, *see Metro Enterprises, Inc.*, 728 F.2d at 453 (intent could be implied where the "Indictment alleges that the conspirators discussed the submission of prospective bids; agreed among themselves upon a low bidder; agreed that appellant Metropolitan Enterprises, Inc., would receive a specified subcontract to perform certain work on the projects in question; and submitted intentionally high, noncompetitive bids, or withheld bids"), here, in contrast, the superseding indictment alleges only facially lawful conduct—exchanges of information. While allegations of obviously unreasonable restraints of trade can imply intent, allegations of normal business conduct cannot. Otherwise, imposing criminal liability on conduct "without inquiring into the intent with which it was undertaken, holds out the distinct possibility of overdeterrence; salutary and procompetitive conduct lying close to the borderline of impermissible conduct might be shunned by businessmen who chose to be excessively cautious in the face of uncertainty regarding possible exposure to criminal punishment for even a good-faith error of judgment." *U.S. Gypsum Co.*, 438 U.S. at 440-41.  Because the superseding indictment fails to allege intent or any facts from which intent can be inferred, it should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Roger Austin respectfully requests that the Court dismiss the charges against him contained in the Superseding Indictment.

DATED this 26th day of July, 2021

Respectfully Submitted,

REICHMAN JORGENSEN LEHMAN & FELDBERG LLP


 /s/ *Michael S. Feldberg*

Michael S. Feldberg
750 Third Avenue, Suite 2400
New York, NY 10017
Tel.: (212) 381-4970
*mfeldberg@reichmanjorgensen.com*

## CERTIFICATE OF SERVICE

      I hereby certify that on July 26, 2021, I electronically filed the foregoing Motion to Dismiss the Superseding Indictment with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have entered notices of appearance in this matter.

                                                  Michael S. Feldberg