IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

     Defendants.

---

**DEFENDANT WILLIAM LOVETTE'S MOTION TO DISMISS
THE SUPERSEDING INDICTMENT**

---

Pursuant to Fed. R. Crim. P. 12(b)(3)(B), William Lovette moves to dismiss the superseding indictment for failure to plead the essential elements of a Sherman Act § 1 offense.

Nothing in the 145 paragraphs of the indictment alleges with specificity that Mr. Lovette conspired to fix prices or rig bids with a competitor. In the indictment's fourteen separate episodes of alleged conspiratorial behavior, only six mention Mr. Lovette and all but one communication involving Mr. Lovette are ordinary internal business communications with coworkers. The episode titled "Distributor-1's Line-of-Credit Term" (Ind. ¶ 128 ("Episode 12")) is the only paragraph in

1

the indictment in which Mr. Lovette communicates with someone outside of his employer, Supplier-1.

The indictment must be dismissed because the Government has failed to plead the essential elements of a Sherman Act offense. First, it fails to plead that Mr. Lovette agreed, combined, or conspired to join the alleged multi-year conspiracy to restrain trade—the *actus reus* necessary for an offense.  Second, it fails to plead he had the *mens rea* to join and participate in the alleged conspiracy. The episodes involving Mr. Lovette show him to be engaged in legal business activity.

Further, the *per se* rule does not apply to Mr. Lovette's alleged acts. With the exception of Episode 12, the indictment alleges merely that Mr. Lovette had communications with his coworkers at Supplier-1 and passively received pricing information from them. In Episode 12, there is no allegation that Mr. Lovette and the other individual involved agreed to fix a credit term or to deny credit, or that either company took any action as a result. At most, therefore, the rule of reason applies to Mr. Lovette's alleged acts, and there is no basis for a criminal indictment.

Finally, the Government fails to plead a single "contract, combination . . . or conspiracy[.]" 15 U.S.C. § 1. Instead, the Government alleges multiple conspiracies in a single count. The lack of a pleaded nexus among the fourteen episodes demonstrates the indictment's duplicity.

## BACKGROUND

The indictment mentions Mr. Lovette in just nine of the 145 paragraphs. Ind. ¶¶ 60, 94, 99, 111, 115-117, 119, 128. Eight of the paragraphs that mention him show him to be: (i) a party to a telephone call with a coworker, as to which the content is not alleged, nor is there any connection of these routine business communication to the alleged conspiracy (*Id*. ¶ 99 ("Episode 7")); (ii) an individual referenced in a coworker's discussion with no allegation of what Mr. Lovette did or

said (*Id.* ¶ 94 ("Episode 7")); (iii) a passive actor who received, but did not respond to, sporadic emails from his own coworkers that allegedly contained competitors' bid prices, which differed materially from each other, and did not contain the source of the market information (*Id.* ¶¶ 60 ("Episode 1"), 111 ("Episode 8")); (iv) an individual who received an unprompted email from a Supplier-1 sales representative allegedly containing pricing information from another supplier with no context regarding to what the pricing information relates or how it was acquired (*Id.* ¶¶ 115-16 ("Episode 9")); and (v) part of a discussion with coworkers regarding whether to cover another supplier's short supply (*Id.* ¶¶ 117, 119 ("Episode 10")).

Glaringly, it is not alleged that Mr. Lovette instructed any Supplier-1 employee to engage in, approved of, otherwise participated in, or had been informed of or knew that any information conveyed to him by an employee of Supplier-1 was obtained pursuant to any agreement in violation of § 1.  Mr. Lovette's only alleged communication with a competitor is one in which he informed a competitor that Supplier-1 had already rejected a customer's request to extend credit terms. *Id.* ¶ 128. Asked if he would provide an update if Supplier-1's response to that customer changed, Mr. Lovette replied in relevant part, "Will do[.]" *Id.* The Government does not allege that Mr. Lovette ever followed up with the individual or asked anyone else to do so, tried to coordinate a response to the customer with any indicted co-conspirator or their employer, or agreed to anything else. *Id.*

## ARGUMENT

I.       **THE GOVERNMENT FAILS TO ALLEGE THAT MR. LOVETTE COMMITTED AN *ACTUS REUS* OR HAD THE *MENS REA* TO VIOLATE THE SHERMAN ACT.**

The Government must sufficiently allege a "[1] contract, combination . . . or conspiracy, [2] in restraint of trade or commerce [3] among the several States," and [4] that Mr. Lovette

"**knowingly** joined and participated in the conspiracy." *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 480 (10th Cir. 1990) (citing *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 449 (10th Cir. 1984)); 15 U.S.C. § 1; *see also* Elements of the Offense, Department of Justice Release, Nov. 2107 (https://www.justice.gov/archives/jm/antitrust-resource-manual-1-attorney-generals-policy-statement).

Under the Fifth Amendment, an indictment must "[1] contain the elements of the offense and [2] sufficiently apprise the defendant of what he must be prepared to meet[.]" *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983), *cert. denied*, 469 U.S. 1110 (1985). To that end, every indictment must contain "the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). Failure to plead all the essential elements results in dismissal. *See Hamling v. United States*, 418 U.S. 87, 117 (1974).

The Government can plead the *actus reus* and *mens rea* explicitly or implicitly. *Suntar*, 897 F.2d at 479-80 (citing *Metro. Enters., Inc*., 728 F.2d at 449). In so pleading, the issue remains *how* to plead the defendant "knowingly joined and participated in the conspiracy." *Id*.

   a.   **Courts Must Apply the Presumption in Favor of a Scienter Requirement for an Act Alleged to Be a Criminal Violation of the Sherman Act.**

The *mens rea* element—knowledge—must modify every non-jurisdictional element in accordance with the presumption in favor of a scienter requirement. *See Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019); *Elonis v. United States*, 135 S. Ct. 2001 (2015); *Staples v. United States*, 511 U.S. 600 (1994); *United States v. X-Citement Video*, 513 U.S. 64, 72 (1994). Thus, the Government must plead that Mr. Lovette: (i) knowingly entered into a "contract, combination . . . or conspiracy," and (ii) did so knowing that the "contract, combination . . . or conspiracy" was

intended to restrain competition. 15 U.S.C. § 1.[1]

Two cases, *Elonis* and *Staples*, are on point. Like the Sherman Act, the statutes at issue in both omit the *mens rea* from the statutory text. *Elonis*, 135 S. Ct. at 2011 (involving 18 U.S.C. § 875); *Staples*, 511 U.S. at 602 (involving 26 U.S.C. § 5861). Caselaw similarly establishes "knowledge" as the *mens rea* element for both crimes. *Elonis*, 135 S. Ct. at 2011; *Staples*, 511 U.S. at 618-19. The Supreme Court held a defendant must have knowledge of "each of the statutory elements that criminalize otherwise innocent conduct." *Elonis*, 135 S. Ct. at 2011. Alleging a defendant's "knowledge only of traditionally lawful conduct" is not enough. *Staples*, 511 U.S. at 618-19; *accord Elonis*, 135 S. Ct. at 2004.  The same is true for the Sherman Act.

In *Elonis*, the statute barred the transmission of "[1] any communication [2] containing any threat . . . to injure the person of another" [3] through interstate commerce. *Elonis*, 135 S. Ct. at 2023. The Government argued that the defendant need only know he is transmitting a communication. *Id*. at 2011. The Supreme Court rejected the argument, holding that penalizing a defendant merely for knowingly transmitting a communication, without more, would "criminalize otherwise innocent conduct." *Id*. The "'crucial element separating legal innocence from wrongful conduct' is the threatening nature of the communication." *Id*. The Tenth Circuit has long recognized this "presumption against penalizing defendants who have 'knowledge only of traditionally lawful conduct.'" *United States v. Harry*, No. CR 10-1915 JB, 2014 U.S. Dist. LEXIS 159470, at *16 (D.N.M. Oct. 14, 2014) (quoting *United States v. Saavedra*, 523 F.3d 1287, 1289

---

[1] The scienter requirement applies to every non-jurisdictional element of criminal statutes, except "'regulatory' or 'public welfare' [statutes that] carry only minor penalties." *Rehaif*, 139 S. Ct. at 2197; *Staples*, 511 U.S. at 602. The Sherman Act carries a potential penalty of ten years in prison and thus does not meet the exception. 15 U.S.C. § 1; *Staples,* 511 U.S. at 602.

(10th Cir. 2008)) (quoting *Staples*, 511 U.S. at 617)). In *Harry*, the court declined to adopt the Government's reading of a criminal statute when "the mens rea -- knowingly -- would apply only to otherwise innocent conduct[.]" *Id*. at *29.

In *Metropolitan Enterprises*, the Tenth Circuit held the "requisite intent . . . was satisfied by showing that the appellants knowingly joined and participated in a conspiracy to rig bids." 728 F.2d at 450 (citing *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 684 (5th Cir. 1981)). The court's citation to *Cargo Service Stations* sheds light on this issue: there the Fifth Circuit held "the Government must prove [the co-conspirators] intended to fix prices"—a finding that "supplies the criminal intent necessary for a conviction of a criminal antitrust offense." 657 F.2d at 684.[2]

If the Sherman Act's *mens rea* requirement were deemed to modify only the first element—entry into a "contract, combination . . . or conspiracy"—but not the second—that the defendant know the objective to be to restrain trade or commerce—then § 1 could penalize one with "knowledge only of traditionally lawful conduct". *Harry*, 2014 U.S. Dist. LEXIS 159470, at *16 (quoting *Saavedra*, 523 F.3d at 1289 (10th Cir. 2008)) (quoting *Staples*, 511 U.S. at 617)); 15 U.S.C. § 1.

**b.      The Government Fails to Allege that Mr. Lovette Committed an *Actus Reus* or Had the *Mens Rea* to Violate the Sherman Act.**

Assuming *arguendo* the Government pleads an indictable "contract, combination, or . . . conspiracy," the Government still fails to allege facts to support an inference that Mr. Lovette

---

[2] Other courts agree that "knowledge alone [of the conspiracy] is not sufficient." *See In re Magnesium Oxide Antitrust Litig.*, No. 10-5943 (DRD), 2011 U.S. Dist. LEXIS 121373, at *61 (D.N.J. Oct. 20, 2011) (quoting *In re Vitamins Antitrust Litig.*, 320 F. Supp. 2d 1, 16 (D.D.C. 2004)). The defendant must also have "knowledge of the conspiracy to fix prices . . . and [have] intended to join that conspiracy." *Id*. at *61.

joined a "contract, combination . . . or conspiracy[.]" 15 U.S.C. § 1. The Justice Department has

acknowledged the necessary *actus reus* in its public guidance: "In effect, the conspiracy must

comprise an agreement, understanding or meeting of the minds between at least two competitors

or potential competitors, for the purpose or with the effect of unreasonably restraining trade. ***The***

***agreement itself is what constitutes the offense*** . . . ."[3]

In addition, Mr. Lovette must have acted with *mens rea* by: (i) ***knowingly*** joining the

"contract, combination . . . or conspiracy," and (ii) doing so ***knowing*** that the "contract,

combination . . . or conspiracy" was intended to rig bids or restrain competition. 15 U.S.C. § 1.

The Government's group-pled conclusions are the ***only*** allegations of Mr. Lovette's alleged

*mens rea* over the alleged seven-year conspiracy.[4] The Court, however, should not accept

conclusory, group-pled allegations as sufficient. Only "well-pleaded facts, as distinguished from

conclusory allegations, must be taken as true" in an indictment. *See United States v. Morgan*, No.

02-454 JC, 2002 U.S. Dist. LEXIS 30116, at *1-2 (D.N.M. Oct. 1, 2002). "[A]ll the material facts

and circumstances . . . must be stated, or the indictment will be defective." *United States v.*

*Kilpatrick*, 821 F.2d 1456, 1463 (10th Cir. 1987). Moreover, the Fifth Amendment compels the

Government to plead facts supporting the inference of Mr. Lovette's *actus reus* and *mens rea*, not

a group's *actus reus* and *mens rea*. "[I]f it does not, *it fails to charge that offense*." *See United*

---

[3] https://www.justice.gov/archives/jm/antitrust-resource-manual-1-attorney-generals-policy-statement (emphasis added).

[4] Defendants "participated in a continuing network . . . an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms" and defendants used the "continuing network . . . to reach agreements and understandings to submit aligned—though not necessarily identical—bids and . . . prices [and] price-related terms . . .." Ind. ¶¶ 47-48(a)

*States v. Cline*, No. 00-40024-03/06-SAC, 2002 U.S. Dist. LEXIS 10001, at *5 (D. Kan. Apr. 5,

2002) (quoting *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999)) (dismissing

conspiracy counts for failure to allege an essential element). This requirement serves "one of the

central purposes of the indictment: to ensure that the grand jury finds probable cause [for] each

element of the offense" for each defendant. *Id*. (quoting *Cabrera-Teran*, 168 F.3d at 143).

Otherwise, the Government could "skip over elements for which it may not have established

probable cause and attempt to convict those it may not have even properly indicted." *United States*

*v. Neha*, No. CR 04-1677 JB, 2005 U.S. Dist. LEXIS 55691, at *11 (D.N.M. Dec. 2, 2005)

(dismissing indictment for failure to allege essential elements). None of the six episodes

mentioning Mr. Lovette allege facts that create an inference that Mr. Lovette agreed to rig bids or

fix prices. *Contrast,* Ind. ¶¶ 60, 94, 99, 115-117, 119, 128.

> 1.  Four of the Six Episodes Allege Internal Business Communications of
>     Employees at Supplier-1 with No Pleaded Connection to a Conspiracy.

Allegations of routine business communications fail to create an inference that Mr. Lovette

entered into an agreement in violation of § 1, much less that he did so knowingly or intentionally.

Courts have dismissed indictments for failing to differentiate legal from illegal conduct. *Resolution*

*Tr. Corp. v. Rowe*, Case No. C 90-20114 BAC, 1993 U.S. Dist. LEXIS 1497, at *22-23 (N.D. Cal.

Feb. 5, 1993) (dismissal ordered when it could "not be inferred from the mere preparation of tax

returns or the performance of routine accounting services that [defendant] was aware of the

conspiracy"). This is particularly true with respect to business communications that are ordinary

on their face and are ubiquitous. *Chamarac Props. v. Pike*, 86 Civ. 7919 (KMW), 1993 U.S. Dist.

LEXIS 14593, at *13 (S.D.N.Y. Oct. 15, 1993) ("phone calls and correspondence . . . appear to be

part of routine business transactions" and did not provide the "factual basis from which to infer"

defendant's knowledge of the scheme).  Business conduct conspiracies contrast with conspiracies to commit a drug offense, for example, in which the alleged conduct *res ipsa* supports an inference of the defendant's guilty knowledge. *See, e.g., United States v. Thomas*, 690 F.3d 358, 367 (5th Cir. 2012) ("[W]e have inferred knowledge of the conspiracy when the defendant is entrusted to carry a large amount of drugs.").

Four of the six episodes in which Mr. Lovette is mentioned in the indictment simply allege that Mr. Lovette received emails from his coworkers that contained pricing information. Ind. ¶¶ 60, 111, 115, 116. There is no allegation that Mr. Lovette knew the source of the pricing information, directed anyone to obtain or to share the pricing information, or agreed that Supplier-1 should change its independent pricing strategy based on the information shared. As a matter of law these allegations of routine business communications with Supplier-1 employees are not sufficient to allege the necessary *actus reas* or *mens rea* needed to plead a violation of § 1.

2.      Episode 10 Shows a Unitary Act with No Connection to a Conspiracy.

The allegations of Episode 10 show Mr. Lovette (and Supplier-1) competing on the merits for a customer's long-term business, not trying to enforce an alleged conspiracy. *Id*. ¶¶ 117, 119. As alleged in this episode, Supplier-3 asked Supplier-1 to assist in providing broiler chickens to a customer because Supplier-3 was unable to fulfill the customer's order. *Id* ¶ 117. Supplier-3 was unable to fulfill the customer's order because it had increased its "market share and distribution" to its higher-priority customer. *Id*. ¶ 117(b). The allegations thus show that Supplier-3 had contracted with customers, but failed to meet its supply commitments. *Id*. ¶ 117(a)-(d). By bidding to supply chicken it did not have, Supplier-3 secured the advantage of holding long-term contracts and then giving priority of restricted supply to those customers that it valued most. *Id*. ¶ 117(b).

With Mr. Lovette's approval, Supplier-1 declined to cover Supplier-3's shortfalls. *Id.* ¶ 117(c)-(e). The communications demonstrate Supplier-1's strategy was to compete against Supplier-3 for the customer's *long-term* business, not an effort to punish Supplier-3 to enforce a conspiracy. *Id.* ¶ 117(c). Mr. Lovette and Supplier-1 were competing with Supplier-3 by demonstrating Supplier-1's ability (unlike Supplier-3) to meet the customer's supply needs. Essentially, the Government would have the Court infer that Mr. Lovette participated in a conspiracy because he ***refused*** to help a competitor. These allegations do not demonstrate participation in the conspiracy, nor can they support an inference against Mr. Lovette as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.21 (1986) ("[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy.").

Setting aside the pro-competitive nature of this episode, it cannot support an inference that Mr. Lovette had knowledge or participated in an unlawful conspiracy. The communications involving Mr. Lovette are entirely among employees of Supplier-1. Ind. ¶¶ 117-119. The indictment fails to allege Supplier-3 engaged in conduct that violated the alleged conspiracy's terms; Mr. Lovette knew of such a breach; or that Supplier-1 or Mr. Lovette communicated with any co-conspirator about an unpleaded breach or retaliation. Instead, the alleged facts demonstrate that Mr. Lovette communicated internally with Supplier-1 employees regarding Supplier-1's firm strategy to win business from Supplier-3. "[A]n internal 'agreement' to implement a single, unitary firm's policies does not raise the antitrust dangers that §1 was designed to police." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984). "Coordination within a firm is as likely to result from an effort to compete as from an effort to stifle competition[,]"

which "may be necessary . . . to compete effectively." *Id*. at 769. *Copperweld* bars the inference that Mr. Lovette knowingly restrained trade by communicating with coworkers about a firm decision to compete with a competitor aggressively.

        3.      Episode 12 Shows a Short Exchange about a Customer's *Credit Term* (Not Prices or Bids or an Agreement to Restrain Trade).

Episode 12 contains the indictment's sole communication between Mr. Lovette and a competitor's employee, who is not an indicted alleged co-conspirator and appears in no other episode. Ind. ¶ 128. The Government, however, fails to plead the requisite *mens rea*. The indictment alleges that Supper-5's employee texted Lovette asking if he "herd [sic] that [a certain customer] is going to 65 day terms with their supplie[r]s?" and that Lovette responded "[y]es, we told them NO!" *Id*. On the face of the text, Supplier-1 had already made its decision. Mr. Lovette did not ask what the competitor intended to do; nor did he ask that the competitor agree to respond "no" as well. The competitor did not ask Supplier-1 to maintain its position, and there is no agreement to fix a credit term. *Id*. Thus, there was no *actus reus*. When asked to provide an update if Supplier-1's answer was to change, Mr. Lovette replied in relevant part, "Will do[.]" *Id*. The indictment, however, neither alleges that Mr. Lovette followed up with the individual nor that he asked anyone else to do so. The indictment alleges no other communication between them or their companies on this issue and it alleges no act or failure to act following from this communication that might evidence an agreement.[5]

---

[5] The indictment does not disclose what the Government knows was found in the discovery—Supplier-1's position did change. Supplier-1 independently renegotiated the credit term with the customer. There is a reason there are no further allegations of an agreement in the indictment. We see in the discovery that Supplier-5 also went on to negotiate new credit terms with the customer and there is no evidence of a subsequent communication with the competitor.

      4.      <u>The Indictment Fails to Allege an Act That Can Be Prosecuted Criminally.</u>

The indictment further fails to allege that Mr. Lovette engaged in a *per se* restraint of trade. The Government may criminally prosecute only those restraints that are conclusively presumed unreasonable under the *per se* rule. *See United States v. Kemp & Assoc., Inc.*, 907 F.3d 1264, 1274 (10th Cir. 2018) (citing U.S. Dep't of Justice, Antitrust Div., Antitrust Division Manual, at III-12 (5th Ed. 2018)). The *per se* rule applies to certain horizontal restraints (*i.e.*, those between competitors) deemed "manifestly anticompetitive," such as price-fixing and market allocation agreements. *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 50 (1977); *Arizona v. Maricopa Cty. Med. Soc'y*, 457 U.S. 332, 344 n.15 (1982).

At most, the rule of reason alone should apply to Mr. Lovette's alleged conduct. Mere "exchanges of information [between competitors] do not constitute a *per se* violation of the Sherman Act*." United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16. (1978). "[T]he dissemination of price information is not itself a *per se* violation of the Sherman Act." *United States v. Citizens and Southern National Bank*, 422 U.S. 86, 113 (1975); *see also, Todd v. Exxon Corp.*, 275 F.3d 191, 199 (2d Cir. 2001) (discussing precedents). And, application of the *per se* rule is based upon "demanding standards."[6] A "departure from the rule-of-reason standard must be based upon demonstrable economic effect rather than…upon formalistic line drawing." *Cont'l. T.V., Inc.,* 433 U.S. at 58-59. As a matter of law, Mr. Lovette's actions do not amount to a *per se* violation without the pleading of a host of other factors, none of which appear in the indictment.

---

[6] *Cont'l T.V., Inc.,* 433 U.S. at 50 (citing to the demanding standards for *per se* treatment explained in *Northern Pac. R. Co. v. United States*, 356 U.S. 1 (1958)).

At worst, the allegations related to Mr. Lovette for four of the six episodes mentioning him demonstrate that he received competitor information from Supplier-1 employees. Even assuming such information came from competitors, which is not alleged, those allegations are insufficient to allege a *per se* violation. Furthermore, internal communications regarding whether to cover shorts for a competitor (Episode 10) are also insufficient to allege a *per se* violation. Finally, as relates to Episode 12, in the credit context, courts apply the *per se* rule only when competitors allegedly agree to **fix** credit terms or to **deny** credit. *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 650 (1980).  Neither is applicable here. At most, the exchange in Episode 12 constitutes a refusal to accept a customer's unilateral mass request for extension of credit terms without negotiation, not a coordinated denial of credit or a fixing of credit terms. Ind. ¶ 128. Nothing in these allegations indicates that Mr. Lovette and the competitor's employee agreed to fix a credit term or to deny credit to a customer. *Id*. Because the rule of reason should apply to the allegations against Mr. Lovette, the indictment should be dismissed.

## II.     THE GOVERNMENT FAILS TO PLEAD A SINGLE "CONTRACT, COMBINATION . . . OR CONSPIRACY."

To be part of an alleged conspiracy, a defendant's acts or statements "must be interdependent so that each member of the conspiracy depends upon [them] to make the conspiracy succeed." *See United States v. McDowell*, No. 09-20133-JWL, 2011 U.S. Dist. LEXIS 99601, at *10 (D. Kan. Sep. 6, 2011). "Co-conspirators are interdependent when they intend to act together for their shared mutual benefit within the scope of the conspiracy charged." *Id*. (quoting *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011)). The allegations against Mr. Lovette fail to support an inference that he agreed to join or participate in the single conspiracy alleged. At most the indictment pleads a series of isolated episodes without sufficient connection

to the single alleged conspiracy. A court can dismiss an indictment on duplicity grounds whenever it fails to provide a separate count for each charged offense *See* Fed. R. Crim. P. 8(a); *see also* 12(b)(3)(B). For a conspiracy charge, duplicity occurs when an indictment "on its face presents more than one conspiracy in a single count[.]" *United States v. Eury*, Nos. 1:14CR39-1; 1:14CR39-5, 2015 U.S. Dist. LEXIS 53338, at \*13 (M.D.N.C. Apr. 23, 2015). Duplicity offends the Sixth Amendment by presenting "a danger that the jury may convict a defendant [without] a unanimous agreement on precisely which charge is the basis for the conviction[.]" *United States v. Ibarra-Diaz*, 805 F.3d 908, 930 (10th Cir. 2015) (quoting *United States v. Washington*, 653 F.3d 1251, 1262 (10th Cir. 2011)). Federal courts have dismissed single conspiracy counts for duplicity when, as now, the count encompasses multiple alleged conspiracies. *See, e.g., Eury*, 2015 U.S. Dist. LEXIS 53338, at \*16-17  (the "key actors, methods, and goals" of the alleged schemes were sufficiently different); *United States v. Munoz-Franco*, 986 F. Supp. 70, 72 (D.P.R. 1997) ("[a] simple reading" of the conspiracy charge revealed "two separate conspiracies which did not merge"); *United States v. Hardy*, 762 F. Supp. 1403, 1408-10 (D. Haw. 1991) (conspiracy count was duplicitous because (1) the nature of the two transactions was markedly dissimilar, (2) the individuals in each transaction did not overlap, and (3) the time lapse between the two transactions was eighteen months).

Surveying the episodes in the indictment makes the point clear. Episode 10 demonstrates unilateral action by Mr. Lovette, having no communication or pleaded connection of any kind with any alleged co-conspirator. In Episode 12, the competitor's employee is in none of the other fourteen episodes, Ind. ¶¶ 1-143; the episode shows no discussion of bids or prices; and no other episode involves credit terms. *Id*. ¶ 128. The alleged statements in both Episodes 10 and 12 are

thus not the kind upon which "each member of the conspiracy depends . . . to make the [alleged] conspiracy succeed." *See McDowell*, 2011 U.S. Dist. LEXIS at \*10. Rather, they reflect a "discrete, self-contained" event. *See Hardy*, 762 F. Supp. at 1408; *see also* Ind. ¶ 128.

Although "ordinarily" the remedy in the Tenth Circuit is requiring the Government to select which of the duplicitous indictments to prosecute, this is not an ordinary case. *United States v. Bowline*, 593 F.2d 944, 946-47 (10th Cir. 1979).[7] Like in *Hardy*, the indictment alleges multiple conspiracies in one count. Because Mr. Lovette's Fifth and Sixth Amendment rights "hang in the balance," the indictment should be dismissed as to him on duplicity grounds. *Hardy*, 762 F. Supp. at 1410 (jury charge will not cure risk to Fifth and Sixth Amendment rights).

## CONCLUSION

Mr. Lovette respectfully asks that this Court dismiss the superseding indictment as to him.

This 26th day of July 2021.                    Respectfully Submitted,

/s/ John A. Fagg, Jr.
John A. Fagg, Jr.
James P. McLoughlin, Jr.
Frank E. Schall
Kaitlin M. Price
**Moore & Van Allen PLLC**
100 North Tryon Street, Suite 4700
Charlotte, NC 28202-4003
Telephone:  704-331-3622
Email:  johnfagg@mvalaw.com
*Attorneys for William Wade Lovette*

---

[7] In *Bowline*, the indictment's single conspiracy count appeared to assert "at least three conspiracies[.]" 593 F.2d at 946. On reconsideration, the district court dismissed the conspiracy count for duplicity, which the Tenth Circuit affirmed. *Id*. at 946-48.

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July 2021, I electronically filed the foregoing **DEFENDANT WILLIAM LOVETTE'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ John A. Fagg, Jr.