**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. **JIMMIE LEE LITTLE,**
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

---

**DEFENDANT JIMMIE LITTLE'S MOTION TO DISMISS**
**COUNT ONE OF THE SUPERSEDING INDICTMENT**

---

Defendant Jimmie Little, by and through his counsel, and pursuant to Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, moves to dismiss Count One of the Superseding Indictment for failure to state an offense.

## I.   **INTRODUCTION**

On October 6, 2020, Mr. Little was indicted, along with nine other individuals, for an alleged violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.[1] Superseding Indictment ("Dkt. 101"). Count One of the Superseding Indictment alleges that the ten defendants, together with co-conspirators known and unknown to the grand jury, engaged in a continuing combination and conspiracy to fix prices and other price related terms for broiler chicken products sold in the United States in violation Section 1 of the Sherman Act (15 U.S.C. § 1).  Dkt. 101 ¶ 1.  The Superseding Indictment alleges a conspiracy spanning at least seven years, beginning as early as 2012 and continuing through at least early 2019.  *Id.*  The Superseding Indictment identifies ten suppliers of broiler chicken parts (*id.* ¶¶ 14, 22-35), eight customers and one distributor (*id.* ¶¶ 36-44), but it does not indicate whether the conspiracy was limited to them.

The Superseding Indictment describes fourteen separate incidents that allegedly constitute the means and methods of the conspiracy, yet it argues a broader and seemingly more wide-reaching conspiracy than those fourteen incidents.  *Id.* ¶¶ 47-143.  The Superseding Indictment alleges a conspiracy whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States."  *Id.* ¶ 47. It contends that the acts alleged in the indictment formed only "part" of the conspiracy alleged.  *Id.* ¶ 48 ("It was part of the conspiracy ...."); *Id.* ¶ 49 ("It was further part of the conspiracy ...."); *Id.* ¶ 50 (same).  In addition, the Superseding Indictment alleges the co-conspirators utilized their "continuing network" to reach agreements and understandings to submit "aligned" bids, participate

---

[1] Mr. Little is also charged with False Statements (18 U.S.C. § 1001) and Obstruction of Justice (18 U.S.C. § 1512(c)(2)).  Dkt. 101 ¶¶ 146-149, 150-151.

in conversations and communications relating to non-public information, and to monitor bids. *Id.* ¶ 48(a)-(c).

It is unclear from the Superseding Indictment how the fourteen distinct incidents are related to a single conspiracy involving all the defendants. In fact, the fourteen incidents involve different groups of individuals, customers, and bids, further obscuring what the alleged agreement could be. With respect to the specific allegations against Mr. Little, he is identified in only three of the fourteen identified incidents. *Id.* ¶¶ 66-70; 77-83; 87-107. The Superseding Indictment alleges that he was a Sales Director at Supplier-1 and started working at the company in approximately 2000. *Id.* ¶ 18. Mr. Little left the poultry industry when he retired in 2016.[2]

## II.   LEGAL STANDARD

Pursuant to Local Criminal Rule 12.1(b), Mr. Little incorporates by reference the legal authorities set forth in Section II and III of the Motion to Dismiss filed by Mr. Austin on July 26, 2021. (Defendant Roger Austin's Motion to Dismiss the Superseding Indictment, Dkt. No. 302.)

## III.   ARGUMENT

Count One of the Superseding Indictment should be dismissed because it fails to allege: 1) an agreement among the co-conspirators; 2) an unreasonable restraint on trade; and 3) that Mr. Little knowingly and intentionally entered into an illegal agreement to restrain trade.

### A.  The Superseding Indictment Fails to Allege an Agreement

The Superseding Indictment alleges numerous facts in relation to the fourteen incidents, however, it does not include a specific allegation of an agreement among the alleged conspirators. It does not say, and it cannot be inferred, who agreed with whom to do what. Instead, the Superseding Indictment just parrots the "combination" and "conspiracy" language from the Sherman Act (Dkt.

---

[2] Mr. Little originally was charged by Criminal Complaint with Conspiracy to Restrain Trade. (*See U.S. v. Little*, 20-mj-149-SKC, Criminal Complaint, Doc. No. 1.) In the Affidavit in Support of Criminal Complaint, the affiant stated that Mr. Little retired in approximately 2016, although it was noted that there was conflicting documentation about whether he retired in 2016 or 2017. (*Id.* ¶ 13, FN. 2.)

101 ¶¶ 1, 2), but the Sherman Act "does not, in clear and categorical terms, precisely identify the conduct which it proscribes." *U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978).

The Superseding Indictment alleges actions supposedly in furtherance of an alleged conspiracy while failing to identify the alleged agreement. *See* Dkt. 101 ¶¶ 51-143. The formation of an agreement is not alleged. *See id*. An agreement cannot be inferred from any of the alleged acts because, while the indictment alleges a bid-rigging and price-fixing conspiracy, there is no allegation that any bid was rigged, or that any price was fixed.[3]  *See id*.

**B.  The Superseding Indictment Fails to Allege an Unreasonable Restraint on Trade**

The Sherman Act prohibits "unreasonable restraints" of trade. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). "Restraints can be unreasonable in one of two ways. A small group of restraints are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output." *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2283 (2018) (quotation omitted). "Restraints that are not unreasonable per se are judged under the rule of reason[,]" which "requires courts to conduct a fact-specific assessment of market power and market structure … to assess the restraint's actual effect on competition." *American Express Co.*, 138 S. Ct. at 2283 (quotations omitted).

The Superseding Indictment alleges that the Defendants engaged in a *per se* unlawful restraint of trade.  Dkt. 101 ¶ 1.  *Per se* unreasonable restraints include horizontal price-fixing, market allocation, group boycotts, and bid rigging. *See, e.g., United States v. Topco, Inc.*, 405 U.S.

---

[3] Compare *United States v. Mobile Materials*, 871 F.2d 902 (10th Cir. 1989), where the Tenth Circuit upheld the sufficiency of the indictment and concluded that "[t]he indictment does more than merely repeat the words of the statute; it describes this particular conspiracy." *Id*. at 909, *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010). The Court reached this conclusion because the indictment "outlines the practices in furtherance of the conspiracy allegedly engaged in by the appellants and other conspirators including: 1) discussing the submission of prospective bids on projects, 2) agreeing on the successful low bidder on projects, 3) submitting intentionally high, noncompetitive bids or withholding bids on construction projects and 4) submitting bid proposals with false statements and entries." *Id*. at 907. The same cannot be said in this case.

596, 607-09 (1972); *see also Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 290 (1985). However, the most that can be inferred from the allegations in the Superseding Indictment is that Mr. Little shared pricing information with competitors.

First, in 2013, QSR-4 began requiring suppliers to provide frozen 8-piece chicken-on-bone and dark meat. The Superseding Indictment alleges that Supplier-3-Employee-1called Mr. Little twice and then Supplier-3-Employee-1 sent an e-mail to co-workers noting Supplier-1's price. The Superseding Indictment also alleges that Supplier-3-Employee-1 later submitted pricing to QSR-4, but the Superseding Indictment is silent as to any pricing information that Mr. Little's employer submitted to QSR-4. Dkt. 101 ¶¶ 66-70.

Second, in 2013, QSR- 4 implemented new quality assurance requirements. The Superseding Indictment alleges that after a co-worker questioned how other suppliers would react, Supplier-3-Employee-1 called Mr. Little and then sent an e-mail that he had talked to Mr. Little and he said they were planning on adding it to their cost. The Superseding Indictment alleges that Supplier-3-Employee-1 later submitted pricing to QSR-4 that included a quality assurance cost, but the Superseding Indictment is silent on whether Mr. Little's employer charged QSR-4 for the quality assurance cost. In connection with the same incident, the Superseding Indictment alleges that Mr. Little called Mr. Kantola after which Mr. Kantola and Mr. Little sent e-mails to their co-workers with general pricing information, but there is no allegation regarding how those calls or the pricing information set forth in the e-mails relate to the quality assurance cost in issue. Dkt. 101 ¶¶ 66-70.

Third, the Superseding Indictment alleges that Mr. Little spoke to Supplier-3-Employee-1, Mr. Kantola, and Mr. Austin on August 18, 2014, during the first round of negotiations to supply 8-piece chicken-on-bone products for QSR-1 in 2015. Dkt. 101 ¶ 94(a). On the same day, one of Mr. Little's co-workers sent an e-mail that included pricing information of competitors. The suppliers ultimately submitted bids for QSR-1 with different margins. *Id.* ¶ 107.

Although it is possible to draw the inference that Mr. Little may have shared pricing

information with competitors in connection with these incidents, "[t]he exchange of price data and other information among competitors…do not constitute a per se violation of the Sherman Act." *U.S. Gypsum Co*., 438 U.S. at 441 n.16. This is because such an exchange "does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive." *Id.* Similarly, "consciously parallel behavior … is insufficient, standing alone, to prove conspiracy." *Mitchael v. Intracorp., Inc.*, 179 F.3d 847, 859 (10th Cir. 1999).

**C.   The Superseding Indictment Fails to Allege Mr. Little Knowingly Entered a Conspiracy**

"[A] defendant's state of mind or intent is an element of a criminal antitrust offense which must be established by evidence and inferences drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent…" *U.S. Gypsum Co*., 438 U.S. at 435.  The "requisite intent must be pled and proved in any criminal prosecution arising out of the Sherman Act[.]" *United States v. Metro. Enterprises, Inc.*, 728 F.2d 444, 453 (10th Cir. 1984). This may be done explicitly or implicitly. *Id.* at 452-53.

The Superseding Indictment does not explicitly allege that Mr. Little knowingly or intentionally violated the Sherman Act.  It contains no allegation that he intended to unreasonably restrain trade or knew that the supposed "continuing network" had the effect of unreasonably restraining trade.  Although the Superseding Indictment asserts in conclusory terms that Mr. Little "participated in a continuing network" (Dkt. 101 ¶ 47) and the network had an "understood purpose" and "shared understanding" (Dkt. 101 ¶ 48), there is no allegation that Mr. Little intentionally or knowingly joined this "network."  Nor can the requisite intent be inferred from the allegations in the Superseding Indictment.  It alleges only facially lawful conduct- exchanges of information.

IV.    **CONCLUSION**

For the foregoing reasons, Mr. Little respectfully requests that the Court dismiss Count One of the Superseding Indictment.

Dated: July 26, 2021                                    Respectfully submitted,

/s/ Mark A. Byrne

---

Mark A. Byrne (Cal. Bar No. 116657)
e-mail: markbyrne@byrnenixon.com
Jennifer L. Derwin (Cal. Bar No. 222420)
e-mail: jenniferderwin@byrnenixon.com
**BYRNE & NIXON LLP**
888 West Sixth Street, Suite 1100
Los Angeles, California 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012

*Attorneys for Defendant Jimmie Lee Little*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to all parties of record.


_____/s/ Mark A. Byrne_____
Mark A. Byrne