IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br>1.   JAYSON JEFFREY PENN,<br>2.   MIKELL REEVE FRIES,<br>3.   SCOTT JAMES BRADY,<br>4.   ROGER BORN AUSTIN,<br>5.   TIMOTHY R. MULRENIN,<br>6.   WILLIAM VINCENT KANTOLA,<br>7.   JIMMIE LEE LITTLE,<br>8.   WILLIAM WADE LOVETTE,<br>9.   GARY BRIAN ROBERTS, and<br>10.  RICKIE PATTERSON BLAKE,<br><br>    Defendants. | No. 20-cr-00152-PAB |

**DEFENDANT JAYSON JEFFREY PENN'S
MOTION TO DISMISS SUPERSEDING INDICTMENT**

Defendant Jayson Penn, by and through undersigned counsel, respectfully requests that the Court invoke Federal Rule of Criminal Procedure 12(b)(3)(B)(v) and dismiss the superseding indictment for failure to state an offense. The superseding indictment is insufficient for three independent reasons.

*First*, the superseding indictment uses words like "agreement," "understanding," and "concert of action" in wholly conclusory fashion, and fails to allege an agreement with the specificity required by the Constitution. A "meeting of minds in an unlawful arrangement" is the *sine qua non* of any criminal Sherman Act Section 1 violation. *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *see Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) (requiring evidence that defendant made "a conscious commitment to a common scheme

1

designed to achieve an unlawful objective"); *cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (explaining that the "crucial question" in a Section 1 case is whether the challenged conduct "stems from independent decision or from an agreement"). The superseding indictment does not satisfy that requirement. In an attempt to string together a coherent narrative, the superseding indictment instead relies on broad assertions, vague labels, and disparate communications that have no evident connection and do not particularize the asserted anticompetitive agreement. Because, in an antitrust case, "guilt depends so crucially upon . . . a *specific identification of fact*"—what the offending agreement was—the generic language in the superseding indictment does not satisfy the Sixth Amendment or Federal Rule of Criminal Procedure 7(c)(1). *See Hamling v. United States*, 418 U.S. 87, 118 (1974). The superseding indictment should be dismissed for failure to state an offense.

*Second*, the superseding indictment does not allege an agreement that is *per se* unlawful. Courts assess Section 1 agreements under one of two analytical frameworks to determine if the agreements unreasonably restrain trade: the *per se* rule or the "rule of reason." The government's longstanding position is that it will criminally prosecute only *per se* violations of the Sherman Act. *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1274 (10th Cir. 2018). A charging document's failure to clearly delimit *per se* violations with precise allegations raises serious due process concerns. *Cf. United States v. U.S. Gypsum Co.*, 438 U.S. 422, 440-42 (1978) (*Gypsum*) (noting that outside of *per se* violations, "the behavior proscribed by the Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct," making "the use of criminal sanctions in such circumstances . . . difficult to square with the generally accepted functions of the criminal law").

In contrast, rule of reason cases are subject to civil enforcement and require plaintiffs to allege a relevant market, market power, and anticompetitive effects—evidentiary predicates that do not apply in a *per se* case. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). Courts analyze agreements to exchange pricing information under the civil rule of reason standard, not the *per se* framework. *Gypsum*, 438 U.S. at 441 n.16. Here, the superseding indictment alleges as the sole factual predicate for a Sherman Act violation the exchange of information between competitors. This is insufficient. The superseding indictment does not make any fact-based allegations of an agreement to *use* that information to fix prices, as must be proven to establish a criminal Sherman Act violation. Indeed, the superseding indictment does not allege factual allegations capable of establishing *any agreement*—including an agreement to exchange information—much less a *per se* unlawful agreement to rig bids or fix prices. Dismissal is independently warranted on this basis.

*Finally*, the superseding indictment does not allege that Mr. Penn knowingly and intentionally entered into any agreement. *See Gypsum*, 438 U.S. at 443 n.20. The superseding indictment omits the intent allegation necessary to plead a criminal antitrust case—that the defendant "knowingly joined and participated" in the conspiracy. No subsequent pleadings fill that void. This fundamental failing also renders the superseding indictment inadequate to meet constitutional requirements or satisfy Rule 7.

For each of these reasons, the Court should dismiss the superseding indictment.

## FACTUAL BACKGROUND

On June 2, 2020, a grand jury indicted Mr. Penn and three co-defendants for allegedly violating Section 1 of the Sherman Act, 15 U.S.C. § 1. Indictment ("Ind.") ¶ 1. The indictment

alleged a price-fixing and bid-rigging conspiracy between 2012 and 2017 involving suppliers of broiler chicken products. *Id*. It described eight separate incidents of alleged conspiratorial activity relating to five customers and four different products. *Id.* ¶¶ 32-77. The indictment alleged that the defendants utilized a "continuing network" to reach agreements and understandings to submit "aligned" bids; to participate in conversations and communications relating to non-public information; and to monitor bids. *Id.* ¶ 29(a)-(c).

On October 6, 2020, a grand jury returned a superseding indictment against Mr. Penn and nine co-defendants, charging all defendants with one count of violating 15 U.S.C. § 1, and charging only co-defendant Jimmie Little with two additional counts. Superseding Indictment ("Super. Ind.") ¶¶ 1, 147, 151. The superseding indictment alleges a price-fixing and bid-rigging conspiracy spanning a seven-year period; relating to a larger number of suppliers, customers, and products; and identifies fourteen separate incidents that were allegedly part of the conspiracy. *Id*. ¶¶ 51-145. The fundamentals remain unchanged: the superseding indictment alleges that the co-conspirators utilized a "continuing network" to reach agreements and understandings to submit aligned bids; to participate in conversations and communications relating to non-public information; and to monitor bids. *Id*. ¶¶ 47, 48(a)-(c). The superseding indictment identifies Mr. Penn in six out of the fourteen incidents. As with the original indictment, there are no factual allegations from which a jury could infer an express or implied agreement. There are just allegations of data sharing that invoke a civil "rule of reason" analysis.

## LEGAL STANDARD

An indictment that does not set forth all of the elements of the alleged crime is deficient. *United States v. Hathaway*, 318 F.3d 1001, 1009 (10th Cir. 2003) (dismissing indictment that

failed to allege a required and essential element of the crime for which the defendant was convicted). At a minimum, the indictment must (1) "contain[] the elements of the offense charged and fairly inform[] a defendant of the charge against which he must defend"; and (2) "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling*, 418 U.S. at 117; *see also United States v. Washington*, 653 F.3d 1251, 1259 (10th Cir. 2011); *United States v. Fitapelli*, 786 F.2d 1461, 1463-64 (11th Cir. 1986) (reversing convictions for violation of 15 U.S.C. § 1 where indictment failed to allege element of the offense). "This test is embodied in Fed. R. Crim. P. 7(c)(1), which requires that an indictment be 'a plain, concise and definite written statement of the essential facts constituting the offense charged.'" *United States v. Salazar*, 720 F.2d 1482, 1486 (10th Cir. 1983).

While "an indictment parroting the language of a federal criminal statute is often sufficient, there are crimes that must be charged with greater specificity." *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007). If the language of the relevant statute does not "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished," then the charging document "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Russell v. United States*, 369 U.S. 749, 765 (1965). In determining the sufficiency of an indictment, "a court generally is bound by the factual allegations contained within [its] four corners. . . ." *United States v. Welch*, 327 F.3d 1081, 1090 (10th Cir. 2003).

## ARGUMENT

The superseding indictment does not sufficiently "set forth each element of the crime that

5

it charges." *See Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998). It must allege the four elements of any criminal violation of Sherman Act Section 1: (1) an agreement, (2) that unreasonably restrains trade, (3) affecting interstate commerce, and (4) that the defendant knowingly and intentionally entered into. 15 U.S.C. § 1; *Shaw v. United States*, 371 F. Supp. 2d 265, 272 (E.D.N.Y. 2005); *Gypsum*, 438 U.S. at 430, 443 & n.20. Because the superseding indictment does not allege the first, second, and fourth elements of that offense, it should be dismissed.

## I. The Superseding Indictment Does Not Identify the Agreement Underpinning the Charged Offense.

The superseding indictment founders on the first and foundational element of any Section 1 violation: an agreement. *Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986). Only an agreement can transform "[m]ere exchanges of information" into a potentially illegal conspiracy. *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999). Yet the language of the Sherman Act does not provide clear guidance on the characteristics that distinguish unlawful agreements. *Gypsum*, 438 U.S. at 438 ("The Sherman Act, unlike most traditional criminal statutes, does not, in clear and categorical terms, precisely identify the conduct which it proscribes.").

That ambiguity places Sherman Act offenses in a category of crimes for which guilt depends "crucially upon [] a specific identification of fact"—an agreement—that the statute defines generically, but that the government must charge with specificity. *See Resendiz-Ponce*, 549 U.S. at 110; *see also Russell*, 369 U.S. 764-66 (indictment charging refusal by witness summoned to congressional hearing to answer any question "pertinent to the question under inquiry," must allege the subject of the hearing). Accordingly, an indictment charging a conspiracy under Section 1 must set out, at a minimum, the "time, place, manner, means and

6

effect" of the alleged agreement. *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 907 (10th Cir. 1989), *opinion supplemented on reh'g*, 881 F.2d 866 (10th Cir. 1989), *and abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010). Any omission of these critical contextual details is fatal. *Id.* at 907.

In Count One, the superseding indictment purports to charge a single, multi-year overarching agreement. The first paragraphs of the superseding indictment parrot the Sherman Act by alleging a "combination" and "conspiracy," and go on to describe the charged conduct in equally conclusory language as "a continuing agreement, understanding and concert of action." Super. Ind. ¶¶ 1, 2. However, the remaining paragraphs do not elaborate on the nature of that alleged agreement. They only refer to a vague and disjointed set of events under the rubric of a "continuing network" (*id.* ¶¶ 47-50), an "understood purpose" of which was to suppress competition through bid-rigging and other unspecified acts (*id.* ¶¶ 51-143). None of the factual allegations even claim the Defendants formed a specific agreement, fixed a certain price, or rigged an identified bid. *See id.*

The indictment that the Tenth Circuit affirmed in *Mobile Materials* illustrates what is required to state an offense, and what is missing here. In *Mobile Materials*, a jury convicted a highway construction company and its president of rigging bids in violation of Section 1. 871 F.2d at 905. On appeal, the defendants contended that the indictment failed to provide sufficient information to enable them to prepare a defense. *Id.* at 906. The Court disagreed. With respect to the manner and means by which the defendants conspired, the indictment alleged: "There was advance agreement as to which co-conspirator would be the low bidder on highway construction projects. With this object in mind, some noncompetitive bids were submitted, and some bids

7

were withheld." *Id.* at 907. The Tenth Circuit held that these straightforward statements sufficed, because they clearly specified the object of the agreement and, importantly, the manner by which the defendants achieved it. *Id.*

Rather than adopt the straightforward approach that *Mobile Materials* laid out, the superseding indictment in this case alleges that Defendants participated in a "continuing network," and utilized that network to reach unspecified agreements and understandings to submit aligned bids; participate in conversations and communications relating to non-public information; and monitor bids. *Id.* ¶ 48(a)-(c). As to Mr. Penn, the superseding indictment alleges only that he "participated in a continuing network," an "understood purpose of which" was to rig bids and fix prices and "price-related terms" for broiler chicken. Super. Ind. ¶ 47. But it does not describe with any specificity the alleged agreement he made or the manner by which he purportedly sought to achieve it.

These vague and amorphous allegations—in a case involving allegations that span nearly a decade—do not meet the requirements of the Constitution. Counsel has not found a single criminal antitrust indictment, plea agreement, or information that uses the term "continuing network." "Network" suggests some sort of association or connection among individuals[1], but the superseding indictment does not define who was connected or the parameters of their connection, nor does it explain how or why that connection matters for purposes of Section 1. The superseding indictment alleges that the "understood purpose" of the "continuing network" was to rig bids and fix prices, but does not describe the provenance of that understanding or the

---

[1] *See Network, Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/network (last visited July 26, 2021) ("[A]n interconnected or interrelated chain, group, or system.").

identity of those who shared it.

The fourteen episodes described in the superseding indictment muddy the waters even further. They encompass multiple different suppliers, customers, products, and price terms over the course of seven years. There is no Defendant who is common to every event, nor is there any "hub" who is alleged to have facilitated an agreement or understanding among the various Defendants. For example, nothing in the superseding indictment connects a 2016 email communication between William Lovette and Joe Grendys about credit terms for a food wholesaler with communications in 2014 between different individuals working at different chicken suppliers about a different customer seeking to transition to antibiotic-free chicken. The connection between Mr. Penn and the alleged misconduct is even more attenuated. As described in the superseding indictment, his communications are mundane internal corporate emails that are lawful on their face. For example, the superseding indictment alleges that Mr. Penn participated in a conspiracy by (1) agreeing to give a customer a discount for a promotion the customer wanted to run, Super. Ind. ¶¶ 124-26, (2) refusing to sell chicken to a competitor, *id.* ¶¶ 117-18, and (3) signing a contract with a customer, *id.* ¶ 75. Here, in contrast to *Mobile Materials*, there is no allegation that Defendants entered into any agreement governing this disjointed set of events, nor any contention that a specific outcome—such as withholding or aligning a bid submission—can be traced to that agreement.

The superseding indictment's internal contradictions add to the confusion. While it initially alleges one count under Section 1 and describes the allegedly unlawful agreement in the singular, it later refers to multiple conspiracies to fix prices and rig bids. *Compare* Super. Ind. ¶ 1 (alleging that Defendants "entered into and engaged in *a continuing combination and*

9

*conspiracy*") (emphasis added), *with id.* ¶ 48(a) (alleging that Mr. Penn and co-Defendants utilized the continuing network "to reach *agreements and understandings*" to fix prices and submit rigged bids) (emphasis added). The only through line is the allegation that Defendants participated in a "continuing network," an elusive construct that reduces to little more than "worked in the broiler chicken industry." *See Dahl v. Bain Capital Partners, LLC*, 937 F. Supp. 2d 119, 137 (D. Mass. 2013) (holding that evidence of a "kaleidoscope of interactions among an ever-rotating, overlapping cast of Defendants as they reacted to the spontaneous events of the market" did not suggest "that any single interaction was the result of a larger scheme"); *cf. In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 975 (N.D. Iowa 2011) ("What is missing in this case, however, is the 'larger picture' from which inferences of a wider conspiracy can be drawn from guilty pleas to separate bilateral conspiracies.").

None of the purportedly conspiratorial incidents reflects an actual agreement, much less a single, years long, overarching conspiracy encompassing each of the fourteen incidents. Unless this Court dismisses the superseding indictment for failure to specify this element—the key predicate of the charged offense—Mr. Penn will lose the protections that grand jury indictments are supposed to afford: the right to be informed of the nature and cause of the accusation and protection against future prosecutions for the same offense. *See Russell*, 369 U.S. at 764.

## II.     The Superseding Indictment Fails to Allege a *Per Se* Unlawful Restraint of Trade.

Just as the superseding indictment does not allege or identify any agreement, it omits allegations that would justify applying the *per se* analytical framework to the challenged conduct. By its terms, Section 1 proscribes "[e]very contract, combination in the form of trust or otherwise, or conspiracy," 15 U.S.C. § 1, but federal courts interpret the statute to prohibit only

"unreasonable" restraints of trade. *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 98 (1984). Based on longstanding experience with a discrete category of restraints that always or nearly always harm competition—price fixing, bid rigging, market allocations, and certain types of group boycotts—courts presume that they are unreasonable and classify them as *per se* unlawful without inquiring into their effect. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006).

Federal courts assess business practices that do not fall within the narrow *per se* category under the "rule of reason," an analytical framework that requires the fact-finder to define a relevant antitrust market and weigh the competitive effects of a business practice to determine whether it is unreasonable, and therefore unlawful. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018); *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977). Among the conduct that falls within the "rule of reason" rubric are agreements among competitors to exchange pricing information. *United States v. Citizens & S. Nat. Bank*, 422 U.S. 86, 113 (1975); *United States v. Container Corp. of Am.*, 393 U.S. 333, 338-39 (1969) (Fortas, J., concurring).

The distinction is relevant in this case due to the mismatch between the superseding indictment's factual allegations and the *per se* label it applies to this case. Given the most generous reading, the superseding indictment alleges that the Defendants exchanged price information with competitors. For instance, it alleges generically that the Defendants (which includes Mr. Penn) "participate[d] in conversations and communications" about "bids, prices and price-related terms," Super. Ind. ¶ 48(b); possessed information about competitor pricing, *id*. ¶ 60; and received information regarding supplier margins, *id*. ¶ 94(c), (d). The superseding indictment also alleges a handful of instances of parallel pricing. *See id*. ¶¶ 62, 63, 125. But even if those information exchanges could amount to an agreement to share pricing information, and

11

even if broiler chicken suppliers engaged in parallel pricing, this conduct would still—as a matter of binding precedent—be assessed under the rule of reason rather than the *per s*e framework.

The Supreme Court explained in *Gypsum* that exchanges "of price data and other information among competitors do[] not invariably have anticompetitive effects" and "do not constitute a *per se* violation of the Sherman Act," precisely because they "can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive." 438 U.S. 422, 441 n.16; *see also Mitchael*, 179 F.3d at 859 ("Mere exchanges of information, even regarding price, are not necessarily illegal"); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990) ("[I]t is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or . . . exchange information on independently derived prices.").[2] Similarly, parallel pricing—intentionally setting the same price as a competitor without an agreement to do so—is not unlawful. *See, e.g.*, *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993); *Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 484 (1st Cir. 1988) (Breyer, J.) (noting near uniformity among courts in concluding that parallel conduct without prior agreement is lawful).

The superseding indictment's allegations fit squarely within this line of precedent. Indeed, there is a complete absence of factual allegations supporting a criminal violation. Because the rule of reason governs the type of information exchanges at issue, the superseding

---

[2] *See also In re Baby Food Antitrust Litig.*, 166 F.3d 112, 124, 137 (3d Cir. 1999) (affirming holding that evidence of price verification among sellers and parallel pricing did "not support an inference of a conspiracy to fix prices but portrayed nothing more than intense efforts on the part of three large and strong competing companies in the baby food industry to ascertain[] 'what their competitors would be doing with regard to pricing, promotions and products'").

indictment must meet the rule of reason's requirements to survive a motion to dismiss. *See Am. Express Co.*, 138 S. Ct. at 2284 (discussing elements of rule of reason framework, including anticompetitive effects and relevant antitrust markets). But it does not purport to do so. It is premised on a *per se* theory. Accordingly, the superseding indictment must be dismissed.[3]

### III. The Superseding Indictment Does Not Allege that Mr. Penn Knowingly or Intentionally Joined Any Conspiracy.

Regardless of whether the *per se* or rule-of-reason analytical framework applies to the superseding indictment, it should be dismissed for a third and independent reason: it does not expressly or impliedly allege that Mr. Penn knowingly or intentionally entered into an unlawful agreement. "[I]ntent is a necessary element of a criminal antitrust violation," *Gypsum*, 438 U.S. at 443, and it "must be pled and proved in any criminal prosecution arising out of the Sherman Act," *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 453 (10th Cir. 1984). While a charging document may allege the intent element explicitly or implicitly, *id.*, here it does neither.

*First*, the superseding indictment does not expressly allege the intent element and, strangely, eschews the language typically used for that purpose in criminal antitrust indictments. *See, e.g.*, *United States v. Lischewski*, No. 3:18-cr-00203 (N.D. Cal. May 16, 2019) (alleging that defendant "knowingly joined and participated" in antitrust conspiracy) (Ind. at 2); *United States*

---

[3] Even assuming the government properly alleges an offense based on the *per se* theory of liability, the superseding indictment would fail for a separate and independent reason: it does not advance factual allegations describing how the charged conduct unreasonably restrained trade. As discussed above, the *per se* theory simply presumes a restraint is unreasonable. But in the criminal context, a conclusive presumption that takes an element away from the jury violates the Fifth and Sixth Amendments. *United States v. Gaudin*, 515 U.S. 506, 514 (1995); *Francis v. Franklin*, 471 U.S. 307, 317 (1985); *Morissette v. United States*, 342 U.S. 246, 274 (1952). Accordingly, the government's attempt to utilize an unconstitutional presumption against Mr. Penn requires dismissal.

*v. Usher et al.*, No. 1:17-cr-00019 (S.D.N.Y. Jan. 10, 2017) (same) (Ind. at 7). The superseding indictment *never* alleges that Mr. Penn knowingly or intentionally joined or participated in any conspiracy. *See Gypsum*, 438 U.S. at 433 n.20 (noting that the base "intent to agree . . . is necessary to establish the existence of the conspiracy"). The closest the superseding indictment comes to expressly alleging intent is in its discussion of the "continuing network":

> It was part of the conspiracy that Penn, Fries, Brady, Austin, Mulrenin, Kantola, Little, Lovette, Roberts, and Blake, together with their co-conspirators known and unknown to the Grand Jury, in the State and District of Colorado and elsewhere, participated in a continuing network of Suppliers and co-conspirators, an understood purpose of which was to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States.

Super. Ind. ¶ 47 (capitalization omitted). But there is no allegation that Mr. Penn knowingly or intentionally joined or "participated in a continuing network," or that he knew the "understood purpose" of this "continuing network" was rigging bids and fixing prices. If the facts support the superseding indictment, it should have been easy to expressly allege that Mr. Penn knowingly and intentionally agreed with competitors to rig bids and fix prices. In failing to do so, the superseding indictment is incurably defective.

*Second*, the superseding indictment does not support any inference that Mr. Penn knowingly or intentionally entered into any agreement. While the requisite intent to agree may be implicit in the overt acts charged or in the allegation of a price-fixing agreement, *Metro. Enters.*, 728 F.2d at 452-53, it is absent here. The allegations involving Mr. Penn describe ordinary, lawful conduct—at most, information sharing. There is no allegation from which his knowing and intentional entry into an agreement of any kind can be implied. *See id*. at 453; *cf. Mobile Materials*, 871 F.2d at 906-907 (conspirators decided the "winner" on highway

14

construction projects in advance, and "losers" then submitted noncompetitive bids or withheld bids entirely).

The Sherman Act does not impose strict liability on criminal defendants. Without an intent allegation, no Sherman Act violation is possible. *Gypsum*, 438 U.S. at 423, 433 n.20, 443 n.17. It follows that the superseding indictment, which omits any express or implied intent allegation, should be dismissed.

## CONCLUSION

The superseding indictment fails to allege three of the four elements of the charged Section 1 violation. The purpose of an indictment is sacrosanct: to protect the innocent from government overreach and inform the accused of the nature and cause of the accusation. *Hamling*, 418 U.S. at 117; *see also United States v. Williston*, 862 F.3d 1023, 1031 (10th Cir. 2017). Because the superseding indictment fails to fulfill these purposes, it should be dismissed.

Dated:  July 26, 2021

Respectfully submitted,

*s/ Michael F. Tubach*

| | |
|---|---|
| Chad David Williams | Michael F. Tubach (Cal. Bar No. 145955) |
| Jacqueline Ventre Roeder | Anna T. Pletcher (Cal. Bar No. 239730) |
| DAVIS GRAHAM & STUBBS LLP-DENVER | Brian P. Quinn (D.C. Bar No. 1048323) |
| 1550 17th Street | O'MELVENY & MYERS LLP |
| Suite 500 | Two Embarcadero Center, 28th Floor |
| Denver, CO 80202 | San Francisco, California  94111-3823 |
| Tel.: 303-892-9400 | Tel.: 415-984-8700 |
| Fax: 303-893-1379 | Fax: 415-984-8701 |
| chad.williams@dgslaw.com | mtubach@omm.com |
| jackie.roeder@dgslaw.com | apletcher@omm.com |
| | bquinn@omm.com |

*Attorneys for Defendant Jayson Jeffrey Penn*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2021, I electronically filed the foregoing Motion to Dismiss Superseding Indictment with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  July 26, 2021

*s/ Michael F. Tubach*

Michael F. Tubach