IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

v.

JAYSON JEFFREY PENN, et al.,

*Defendants.*

Case No. 1:20-cr-00152-PAB

RICKIE BLAKE'S MOTION TO DISMISS COUNT ONE
FOR FAILURE TO ALLEGE AN OFFENSE AGAINST HIM

The Superseding Indictment charges Mr. Blake with a single violation of the Sherman Act, 15 U.S.C. § 1.  An indictment charging a conspiracy under § 1 of the Sherman Act "must descend to particulars and charge every constituent ingredient of which the crime is composed" through factual allegations. *Frankfort Distilleries, Inc. v. United States*, 144 F.2d 824, 830 (10th Cir. 1944) (en banc), *rev'd on other grounds*, 324 U.S. 293 (1945).  The Government must allege and prove: (1) "that the conspiracy described in the indictment existed at or about the time alleged"; (2) "that the defendant knowingly became a member of the conspiracy"; and (3) "that the conspiracy described in the indictment either affected interstate [and/or foreign] commerce in goods or services or occurred within the flow of interstate [and/or foreign] commerce in goods

and services."  *See*, *e.g.*, ABA Model Jury Instructions in Criminal Antitrust Cases (Feb. 2009) ("ABA Model Instructions"), ch. 3.C.[1]

As described in greater detail below, missing from the Superseding Indictment are non-conclusory factual allegations about Mr. Blake regarding the second element, *i.e.*, that Mr. Blake participated in an agreement in restraint of trade and that Mr. Blake knowingly joined that conspiracy, with intent to further its purpose of restraining trade.  Other than making conclusory allegations that track the statutory language, with respect to Mr. Blake, the Superseding Indictment merely alleges that he made or received six phone calls from other chicken suppliers over the course of several years—without alleging what was said in any of these calls.  At most, the factual allegations imply that, in some of these calls, Mr. Blake shared pricing information of his employer, Supplier-6, with competitors of his employer.

Missing are any allegations that Mr. Blake shared pricing information with the intent to align Supplier-6's bids with the bids of its competitors or received any pricing information in return.  Indeed, the Superseding Indictment contains no non-conclusory factual allegations that Mr. Blake intended to affect the bids of Supplier-6 (or even possessed authority to affect the bids of Supplier-6) *or* that he intended to affect the bids of its competitors, much less that he intended to align competitors' bids with Supplier-6's bids in order to restrain competition.

---

[1] *See also* Sand, 3 *Modern Federal Jury Instructions*, § 58.01 ("Sand"), Instruction 58-3 (Elements of the Offense) (identifying the same substantive requirements, broken out into four elements); 1-1 Antitrust Law Developments 1B, ABA Section of Antitrust Law, (8th ed. 2018). "Knowingly" joining the conspiracy means the defendant "act[ed] voluntarily and intentionally" and "joined the conspiracy . . . with the intent to aid or advance the object or purpose of the conspiracy."  ABA Model Instructions ch. 3.K; *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 435 (1978) (intent is an essential element of a Sherman Act § 1 offense).  Because the Tenth Circuit's Pattern Jury Instructions do not include an instruction for antitrust offenses, Mr. Blake is relying on other sources with respect to these elements.

Independently, the Superseding Indictment also fails to allege that the charged agreement was an unreasonable restraint of trade.  Rather, the Superseding Indictment relies on the *per se* rule to presume unreasonableness.  Because such a presumption cannot constitutionally be applied in a criminal case, the Superseding Indictment's failure to include factual allegations regarding the unreasonableness of the alleged restraint of trade is fatal.

Because the allegations fail to state an offense against Mr. Blake, the Superseding Indictment should be dismissed as to him.  *See* Fed. R. Crim. P. 7(c)(1), 12(b)(3)(B)(v).

## BACKGROUND

On October 6, 2020, Mr. Blake and nine others were charged in a Superseding Indictment with one count of violating the Sherman Act, 15 U.S.C. § 1, by conspiring to fix prices and rig bids in the broiler chicken supply industry over at least a seven-year period, from 2012 to 2019.  *See* Superseding Indictment, ECF No. 101 ("SI"), ¶ 1.  Despite its length, Count One of the Superseding Indictment lacks the substance of an adequately alleged violation of 15 U.S.C. § 1 by Mr. Blake.

The Superseding Indictment contains generic conclusory allegations.  Supposedly, all co-defendants "entered into and engaged in a continuing combination and conspiracy" that "consisted of a continuing agreement, understanding, and concert of action[,] . . . the substantial terms of which were to rig bids and to fix, maintain, stabilize, and raise prices and other price-related terms for broiler chicken products sold in the United States" (SI ¶¶ 1–2); all ten defendants and other, unnamed co-conspirators "participated in a continuing network of Suppliers and co-conspirators" (*id.* ¶ 47) and "utilized that continuing network" "to reach agreements and understandings to submit aligned . . . bids and to offer aligned . . . prices, and

price-related terms" (*id.* ¶ 48(a)); communicated "non-public information" to one another with a "shared understanding that the purpose of the conversations and communications was to rig bids, and to fix, maintain, stabilize, and raise prices and other price-related terms" (*id.* ¶ 48(b)); and monitored bids submitted and prices and price-related terms offered by chicken suppliers and other co-conspirators (*id.* ¶ 48(c)).   The term "continuing network" is not defined in the Superseding Indictment; nor does it have any meaning in the context of antitrust law.   The Superseding Indictment, moreover, does not descend into the particulars and make specific factual allegations, particularly with respect to Mr. Blake.

With respect to Mr. Blake, the allegations in the Superseding Indictment are particularly sparse.   He is referenced just twelve times in over 145 paragraphs.   After alleging that Mr. Blake worked at Supplier-6 (*id.* ¶ 21) and parroting language from the statute that he—along with all other defendants—was a member of a "continuing combination and conspiracy" (*see id.* ¶¶ 1, 47–50), the Superseding Indictment references Mr. Blake only with respect to four phone calls he made to, and two phone calls he received from, other broiler chicken suppliers' employees over a five-year period from November 2012 to September 2017 (*id.* ¶¶ 56, 58, 105(a), 122(a), 123(c), 142).   The Superseding Indictment does not allege what Mr. Blake said or what was said to him in any one of those six calls.

The Superseding Indictment does not allege, even by implication, that in any of these calls Mr. Blake agreed to fix prices, rig bids, or knowingly furthered such an agreement by providing price information to or obtaining price information from competitors for use in assuring that the bids that were to be submitted by his employer would be fixed or aligned with bids to be submitted by his employer's competitors.   At most, the Superseding Indictment

implies that in some of these calls, Mr. Blake may have shared some information with a competitor about what his employer intended to bid, without receiving similar information from the competitor.

First, the Superseding Indictment alleges that, during the same time period that suppliers were negotiating for QSR-1's business for calendar year 2013, Mr. Blake made one call to Scott Brady (*id.* ¶ 56 (November 13, 2012)), who worked for Supplier 2 (*id.* ¶ 15), and one call to Roger Austin (*id.* ¶ 58 (November 28, 2012)), who worked for Supplier 1 (*id.* ¶ 13). Mr. Brady allegedly texted Mikell Fries (at Supplier 2 (*id.* ¶ 14)) shortly after he spoke with Mr. Blake that "[Supplier-6] is .30 back on dark meat." *Id.* ¶ 56. Thus, the Superseding Indictment implies that Mr. Brady learned from Mr. Blake the revised bid that Supplier-6 might submit for QSR-1's business.

Second, the Superseding Indictment alleges that Mr. Austin called Supplier-1-Employee-4 the day after speaking with Mr. Blake and that Supplier-1-Employee-4 then sent a spreadsheet to Mr. Austin that contained Supplier-6's "8 Piece Quote[]" of $0.9632 per pound. *See id.* ¶¶ 58–59. It continues on, however, to allege that Supplier-6 ultimately submitted a different, lower bid (*id.* ¶ 61) and does not allege that the other suppliers bid a price that was identical to or aligned with Supplier-6's final bid.

Third, the Superseding Indictment alleges that Mr. Blake called Mr. Austin on September 3, 2014, during the period when suppliers were negotiating an increased margin at which to supply QSR-1 with 8-piece chicken-on-bone products in 2015. *Id.* ¶ 105(a). Mr. Austin and Mr. Brady allegedly spoke about two and a half hours after Mr. Austin concluded his call with Mr. Blake. *Id.* (alleging Blake-Austin call at 2:01 pm lasting eight minutes and alleging

Mr. Austin called Mr. Brady at 4:24 p.m.).   Shortly after Mr. Brady concluded his call with Mr. Austin, Mr. Brady allegedly texted Mr. Fries that Cooperative-1-Employee-3 had told him "someone moved down .04" but Mr. Brady could only guess that "it has to be [Supplier-6] or he is bluffing" because "Roger [AUSTIN] and bill [KANTOLA] are not moving." *Id.* ¶ 105(b) (alleging Mr. Brady texted Mr. Fries at 5:15 p.m.).   Thus, the Superseding Indictment concedes that three hours *after* Mr. Blake had spoken to Mr. Austin and after Mr. Austin had spoken to Mr. Brady, Mr. Austin did not know what Supplier-6 intended to bid and could only guess. Further, the Superseding Indictment alleges that when Supplier-6 signed its pricing agreement with Cooperative-1 later that year, its proposed margin was substantially lower than every other supplier's margin. *Id.* ¶ 106.

Fourth, Mr. Blake is alleged to have received a 30-second phone call from Supplier-3-Employee-1 on March 26, 2015, during the same time period that suppliers were asked to provide a discount to QSR-2 for the month of September 2015. *Id.* ¶ 122(a).   Later that same day, Supplier-3-Employee-1 told another Supplier-3-employee that he had "talked to a couple company's [sic] and they are thinking .02lb for September." *Id.* ¶ 122(b).   Even assuming that one of these companies was Employer-6 and that Mr. Blake was the person at Supplier-6 with whom Supplier-3-Employee-1 spoke (neither of which the Superseding Indictment alleges), the Superseding Indictment does not allege that Mr. Blake obtained any information in this call about what discount, if any, Supplier-3 was intending to offer.

Fifth, Mr. Blake allegedly made a phone call to Supplier-3-Employee-1 on March 27, 2015. *Id.* ¶ 123(c)).   There is no allegation even by inference, however, regarding anything Mr. Blake and Supplier-3-Employee-1 discussed during this call. *Id.*

Sixth, and finally, Paragraph 142 alleges that, during the same time period that suppliers were asked to propose lower prices at which to supply QSR-2 with 8-piece chicken-on-bone product for calendar years 2018 and 2019, Mr. Blake received a phone call from Supplier-3-Employee-1. Two hours later, Mr. Mulrenin allegedly received a text from Supplier-3-Employee-1 saying that he had "a general idea what [Supplier-6] is doing." *Id.* ¶ 142. Again, while the Superseding Indictment may be read to imply that Mr. Blake shared general pricing information, there is no allegation that Mr. Blake obtained even general pricing information from Supplier-3.

Thus, considered in the light most favorable to the Government, the Superseding Indictment can be read to allege only that Mr. Blake, on occasion, shared some information about Supplier-6's bidding intentions with competitors of Supplier-6. The Superseding Indictment, however, does not allege, even by implication, that Mr. Blake received information from competitors or that Mr. Blake intended to align Supplier-6's bids with those of its competitors, or even that he had the ability to do so.

## ARGUMENT[2]

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). An indictment must allege

---

[2] Pursuant to Local Rule 12.1(b), Mr. Blake approves, adopts, and incorporates by reference all reasons, arguments, and authorities cited in Defendant Jayson Jeffrey Penn's Motion to Dismiss Superseding Indictment, ECF No. 308 ("Penn Mot.") (filed on July 26, 2021), Defendant Roger Austin's Motion to Dismiss the Superseding Indictment, ECF No. 302 ("Austin Mot.") (same), and Defendant Roberts' Motion to Dismiss the Indictment on Sufficiency Grounds and Brief in Support Thereof, ECF No. 305 ("Roberts Mot.") (same) for the proposition that the Superseding Indictment fails adequately to allege the existence of the conspiracy charged (the first element). For the reasons stated in those motions and those described below, the allegations in the Superseding Indictment fail to state that Mr. Blake committed a criminal offense.

the elements of the offense charged and provide notice to the defendant so that he may prepare his defense and avoid double jeopardy.  *See Hamling v. United States*, 418 U.S. 87, 117–18 (1974); *Russell v. United States*, 369 U.S. 749, 763–65 (1962).  If it fails to do so, the defendant must identify that defect in a pretrial motion to dismiss.   Fed. R. Crim. P. 12(b)(3)(B)(v).  Because § 1 of the Sherman Act does not set forth all the elements necessary to constitute an offense and relies on generic terms, as noted above, an indictment charging a conspiracy under § 1 of the Sherman Act "must descend to particulars and charge every constituent ingredient of which the crime is composed" through factual allegations.  *Frankfort Distilleries*, 144 F.2d at 830.[3]

It is the anticompetitive agreement itself that distinguishes legal from illegal conduct. *See, e.g.*, *United States v. Armour & Co.*, 137 F.2d 269, 270 (10th Cir. 1943) ("Of course, a conspiracy is the result of an unlawful agreement and without an agreement to restrain trade there can be no conspiracy, and an indictment which fails to charge such an agreement is fatally defective."); *see also* U.S. Dep't of Justice, Antitrust Div., *An Antitrust Primer for Federal Law Enforcement Personnel* (Sep. 2018), https://tinyurl.com/d3af9268, at 2 ("**Agreement Is Key**. The agreement is the essence of a Section 1 violation." (bold in original)).  The contours of the allegedly anticompetitive agreement change with each case, requiring fuller factual allegations in an indictment.  At a minimum, an indictment must set forth the "time, place, manner, means and effect" of the alleged conspiracy.  *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 907

---

[3] *See* Penn Mot. at 6 (citing, *inter alia*, *U.S. Gypsum Co.*, 438 U.S. at 438 ("The Sherman Act, unlike most traditional criminal statutes, does not, in clear and categorical terms, precisely identify the conduct which it proscribes.")); Austin Mot. at 4–5 (citing, *inter alia*, *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 688 (1978) (" . . . Congress . . . did not intend the

(10th Cir.) (per curiam), *supplemented on reh'g*, 881 F.2d 866 (10th Cir. 1989), *abrogated on other grounds*, *Bloate v. United States*, 559 U.S. 196 (2010).

As set forth below, the Superseding Indictment fails to do so with respect to Mr. Blake. Specifically, it fails to make factual allegations that Mr. Blake participated in the charged conspiracy or that he did so knowingly.  Accordingly, the Superseding Indictment fails to state an offense against him and must be dismissed.[4]

## I.      The Superseding Indictment fails to allege Mr. Blake participated in an agreement to restrain trade.

Although the Superseding Indictment cloaks all six calls in which it alleges Mr. Blake participated with the boilerplate phrase "[i]t was further part of the conspiracy" (SI ¶¶ 56, 58, 105, 122, 123, 142), the Superseding Indictment fails to include any factual allegations to support that conclusory assertion.  *See Russell*, 369 U.S. at 765; *Frankfort Distilleries*, 144 F.2d at 830.  Indeed, unlike the allegations made against each of the other defendants, which include the alleged content of text messages or e-mails (*see, e.g.*, SI ¶¶ 65, 79(a)), the allegations against Mr. Blake rely exclusively on telephone calls and state only when the calls occurred, without alleging anything about what was said in those calls.  At most, the Superseding Indictment circumstantially implies that in some of these calls, Mr. Blake shared some Supplier-6 price

---

text of the Sherman Act to delineate the full meaning of the statute or its application . . . ")); *see also Russell*, 369 U.S. at 765.

[4] The Court denied Mr. Blake's motion for a bill of particulars in part because the Superseding Indictment "sets forth the elements of the charge and the government's general theory of the case."  Order, ECF No. 257, at 5; *accord id.* at 7.  Whether a motion for a bill of particulars is warranted and whether an indictment is legally sufficient, however, are two separate questions. *See* Fed. R. Crim P. 7(c), 7(f), 12(b); *see also Russell*, 369 U.S. at 770 ("a bill of particulars cannot save an invalid indictment").  Neither Mr. Blake's motion for a bill of particulars nor the Court's ruling on that motion addressed the issue raised in this motion: whether the Superseding Indictment states an offense as to Mr. Blake.

information, while failing even by implication to allege that he received any price information in return. *See supra* at 4–7.

These allegations are insufficient to state a claim for violation of the Sherman Act. Indeed, even two-way "exchanges of information" between competitors "do not constitute a *per se* violation of the Sherman Act." *U.S. Gypsum Co.*, 438 U.S. at 441 & n.16. This is because "[t]he exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances *increase* economic efficiency and render markets more, rather than less, competitive." *Id*. n.16 (emphasis added)).

Consequently, an allegation that a person engaged in a two-way exchange of price information with a competitor, standing alone, is not an allegation of an illegal agreement to violate the Sherman Act. *See Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 474–75 (10th Cir. 1990) (jury properly instructed that, "[i]n the absence of an agreement on a course of action that is designed to eliminate competition, it is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices").[5]

---

[5] *See also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 763 (7th Cir. 2015) (communications between competitors did not support inference of conspiracy); *United States v. Therm-All, Inc.*, 373 F.3d 625, 638 (5th Cir. 2004) (not error to instruct jury conspiracy could not be proven based on an "exchange [of] pricing information without more"); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 125–26 (3d Cir. 1999) (information exchanges must be correlated with specific collusive behavior; "mere possession of competitive memoranda" reflecting "advance prices of competition" is not "evidence of concerted action to fix prices"

Yet, the Superseding Indictment alleges, standing alone, simply that Mr. Blake may have shared pricing information with competitors, which is even more deficient than an allegation against Mr. Blake of a two-way exchange of information, which itself would be insufficient to state an offense against him.   Accordingly, the Superseding Indictment fails to allege that Mr. Blake participated in an agreement to restrain trade.

**II.      The Superseding Indictment fails to allege that Mr. Blake knowingly entered into an agreement with the intent to restrain trade.**

The Superseding Indictment must be dismissed for the independent reason that, even if it adequately alleges an illegal agreement between or among some individuals to restrain trade in which Mr. Blake unwittingly participated, it does not adequately allege that Mr. Blake knowingly entered into that agreement and intended to restrain trade, as required to state an offense under § 1.  *See U.S. Gypsum Co.*, 438 U.S. at 443; Penn Mot. at 13–15; Austin Mot. at 5, 9–10; Roberts Mot. at 3–7.  As Mr. Penn argues, the Superseding Indictment lacks even the basic boilerplate assertion that Mr. Blake and others "knowingly" or "intentionally" joined any illegal agreement.  *See* Penn Mot. at 13–15.  While Paragraphs 47 and 48 assert in conclusory fashion that Mr. Blake "participated in a continuing network" and the network had an "understood

because, "[i]n a highly competitive industry, . . . it makes common sense to obtain as much information as possible of the pricing policies and marketing strategy of one's competitors"); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1357–58 (9th Cir. 1982) ("[T]he mere exchange of price information, without more, is not per se illegal[.]"; affirming district court finding that "sporadic exchanges of price information . . . having no effect upon actual pricing decisions" did not prove price-fixing conspiracy) (citing *United States v. Citizens & S. Nat'l Bank*, 422 U.S. 86, 113 (1975) and *United States v. Container Corp. of Am.*, 393 U.S. 333, 338 (1969) (Fortas, J., concurring)); Sand Instruction 58-12.1 (Price Fixing: Evidence of Exchange of Price Information) ("The exchange of information about price is not, by itself, illegal.  The fact that the defendants exchanged such information does not establish an agreement to fix prices."); ABA Model Jury Instructions ch. 3.I (approving jury instructions stating that mere exchange of price information is not illegal); Penn Mot. at 12 (collecting additional cases).

11

purpose" (SI ¶ 47) and "shared understanding" (*id.* ¶ 48(b)), there is no allegation that Mr. Blake intentionally or knowingly joined this "network." *See* Penn Mot. at 14.

Allegations implying that Mr. Blake on occasion shared Supplier-6's price information with competitors of Supplier-6 do not amount to allegations that he *knew* an anticompetitive agreement existed and joined it with the intent to further its purpose. Even if the Superseding Indictment could be read to suggest that information shared by Mr. Blake may have furthered an agreement between or among *other* suppliers, that reading does not transform the allegations concerning Mr. Blake into allegations that he knowingly joined such an agreement. *See United States v. Metro. Enterprs., Inc.*, 728 F.2d 444, 453 (10th Cir. 1984) ("requisite intent must be pled and proved in any criminal prosecution arising out of the Sherman Act"); ABA Model Instructions ch. 3.K ("[A] person who has no knowledge of a[n antitrust] conspiracy but who happens to act in a way which furthers some object or purpose of the conspiracy does not thereby become a member of the conspiracy."); Sand Instruction 58-10 (Second Element—Joining and Participating in the Conspiracy) (same); *see also* Tenth Cir. Pattern Jury Instruction 2.19 (to prove a violation of 18 U.S.C. § 371, Government must demonstrate beyond reasonable doubt, *inter alia*, that "the defendant knew the essential objective of the conspiracy" and "knowingly and voluntarily participated" in it); *cf. Suntar Roofing*, 897 F.2d at 474–75 (approving instruction that jury could find defendant knowing joined conspiracy only if "the Government prove[d] beyond a reasonable doubt that a defendant was aware of the common purpose, and was a willing participant, with the intent to advance the purpose of the conspiracy").

Although an indictment need not use the word "intend" in order adequately to allege a § 1 violation, it must contain factual allegations sufficient to give rise to a reasonable inference that

the accused, "by conspiring, did intend to produce the anticompetitive effects" alleged.  *See*

*Metro. Enterprs.*, 728 F.2d at 453.  The handful of phone calls that Mr. Blake allegedly made or

received during the timeframe of the purported conspiracy—on which, at most, he is alleged to

have shared price information with an employee of a competitor—do not constitute allegations

that Mr. Blake intended to restrain trade.  *See U.S. Gypsum Co.*, 438 U.S. at 441 (corporate

officials cannot face criminal liability for "the exchange of price information among competitors

. . . . without inquiring into the intent with which [that conduct] was undertaken"); *cf. Metro.*

*Enterprs.*, 728 F.2d at 453; *see also Krehl*, 664 F.2d at 1357 (price communications between

"persons with no direct pricing responsibilities" were little more than "idle 'shop talk'").[6]

### III.     The Superseding Indictment fails to allege an unreasonable restraint.

The Superseding Indictment suffers from one final, independent fatal flaw: it does not

allege that any restraint of trade was "unreasonable."  *State Oil v. Khan*, 522 U.S. 3, 10 (1997).

To violate Section 1 of the Sherman Act, the restraint of trade alleged must be an unreasonable

one.  *Standard Oil Co. v. United States*, 221 U.S. 1, 50-51, 61 (1911) (the statutory term

"restraint of trade" incorporated its common law "synonym[]," "undue restraint."); *see State Oil*,

522 U.S. at 10 ("Congress intended to outlaw only unreasonable restraints.").

---

[6] As Mr. Austin's and Mr. Roberts's motions discuss, the Superseding Indictment is unlike the
one the Tenth Circuit reviewed in *Metropolitan Enterprises*, 728 F.2d 444.  In that case, the court
of appeals affirmed the district court's conclusion that the indictment contained the requisite
"intent" element because it alleged "that the conspirators discussed the submission of prospective
bids; agreed among themselves upon a low bidder; agreed that appellant Metropolitan
Enterprises, Inc., would receive a specified subcontract to perform certain work on the projects
in question; and submitted intentionally high, noncompetitive bids, or withheld bids" and that the
"effects of this conspiracy . . . [were] the fixing of the prices of the Federal-Aid highway projects
in question at artificial, noncompetitive levels; restraint of competition for the award of Federal-
Aid highway projects; and the denial of the benefits of free and open competition for the award

In civil cases, to serve "business certainty and litigation efficiency," the *per se* rule has been followed in order to impose a "conclusive presumption that the restraint is unreasonable." *Arizona v. Maricopa County Med. Soc.*, 457 U.S. 332, 343-44 (1982).   The Superseding Indictment fails to make factual allegations as to how the charged conspiracy purportedly unreasonably restrained trade.   Instead, it simply presumes an unreasonable restraint of trade, relying on the *per se* rule.   While numerous courts of appeals have upheld this practice against constitutional challenges, *see, e.g.*, *United States v. Giordano*, 261 F.3d 1134, 1143-44 (11th Cir. 2001); *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195-96 (3d Cir. 1984); *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 683 (5th Cir. Unit B 1981); *United States v. Koppers Co.*, 652 F.2d 290, 295 (2d Cir. 1981); *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1106 (7th Cir. 1979); *United States v. Manufacturers' Ass'n of Relocatable Bldg. Indus.*, 462 F.2d 49, 52 (9th Cir. 1972), the Tenth Circuit has never done so.   Nor has the Supreme Court.[7]

And with good reason.   In the criminal sphere, a conclusive presumption that takes an element away from the jury violates the Fifth and Sixth Amendments.   *United States v. Gaudin*, 515 U.S. 506, 514-15 (1995); *Francis v. Franklin*, 471 U.S. 307, 317 (1985); *Morissette v. United States*, 342 U.S. 246, 274-75 (1952).   Because the Superseding Indictment fails to allege an unreasonable restraint of trade other than by relying on an unconstitutional presumption against Mr. Blake, it fails to state an offense and must be dismissed.

---

of the specified projects." *Id.* at 453; *see* Austin Mot. at 10; Roberts Mot. at 6–7.   No similar allegations are made in the Superseding Indictment.

**CONCLUSION**

Other than parroting the statutory language and offering conclusory allegations, the Superseding Indictment relies exclusively on allegations of a handful of phone calls that Mr. Blake made to or received from competitors to charge Mr. Blake with violating the Sherman Act.   Conspicuously absent is any allegation of what Mr. Blake said or what was said to him during any one of these calls.   Reading the Superseding Indictment as a whole, the allegations, at most, imply that Mr. Blake may have on occasion shared information about Supplier-6's contemplated prices with a competitor.   But even an allegation that Mr. Blake participated in two-way sharing of price information—something the Superseding Indictment does not allege, even by implication—would fall well short of alleging that Mr. Blake knowingly joined an agreement to restrain trade with the intent to further its purpose.   Further, the Superseding Indictment fails to allege the unreasonableness of the alleged restraint.   Accordingly, the Superseding Indictment fails to state an offense against Mr. Blake.

Date:  July 26, 2021

Respectfully submitted,

Wendy L. Johnson
RMP LLP
5519 Hackett Road, Suite 300
Springdale, Arkansas 72762
Telephone: (479) 443-2705
Fax: (479) 443-2718
wjohnson@rmp.law

*/s/ Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT, ORSECK
& UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, D.C.  20006
Telephone: (202) 775 4500
Fax: (202) 775 4510
bpollack@robbinsrussell.com

*Counsel for Mr. Blake*

---

[7] The Supreme Court has upheld the application of the *per se* rule only in criminal cases that did not present the constitutional question and that predate the Court's modern conclusive-presumption jurisprudence. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218-22 (1940); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 395-401 (1927).

**CERTIFICATE OF SERVICE**

On this 26th day of July, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Colorado by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack

*Counsel for Mr. Blake*