IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     **TIMOTHY R. MULRENIN**,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.    RICKIE PATTERSON BLAKE,

    Defendants.

**DEFENDANT TIMOTHY MULRENIN'S REPLY TO THE UNITED STATES' RESPONSE IN OPPOSITION TO MOTION PURSUANT TO RULE 17(c) FOR COURT ORDER AUTHORIZING A SUBPOENA DUCES TECUM TO PRODUCE DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL**

In its August 9, 2021 Response in Opposition ("Response") to Defendant Timothy Mulrenin's Motion Pursuant to Rule 17(c) for Court Order Authorizing Subpoena Duces Tecum to Produce Documentary Evidence in Advance of Trial (Mr. Mulrenin's "Motion"), the government departs from its standard practice with respect to *every other* motion Defendants have made requesting the issuance of a Rule 17(c) subpoena, arguing for the *first time* that such subpoena requests are part of a "fishing expedition" and fail to satisfy the *Nixon* standards. Notably, the government lodges its first opposition to a subpoena when it comes to requests to Tyson Foods ("Tyson"), despite its silence when Defendants directed many of *the exact same requests* at Pilgrim's Pride Corporation ("Pilgrim's") less than a month ago. In an attempt to

demonstrate some legitimate basis as to *why* the government is even concerned with a supposed "fishing expedition" involving Tyson in the first place, the government mischaracterizes Mr. Mulrenin's requests as "seeking to circumvent the rules of discovery, attempting to undermine the government's investigation, and setting the stage for a delayed trial." But the government fails to not only explain *how* Mr. Mulrenin's requests threaten to do so, but also *why* Mr. Mulrenin's requests should be treated any differently than the *very same* requests Defendants directed at Pilgrim's, which this Court held met the *Nixon* standards.

Setting aside the government's motives for seeking to shield Tyson, in particular, from having to comply with the subpoena, two things are clear: (1) the government does not have standing or another cognizable basis upon which to challenge Mr. Mulrenin's Motion; and (2) Mr. Mulrenin's requests meet the applicable standards for issuance under Rule 17(c), notwithstanding the government's arguments stating otherwise.

I. **THE GOVERNMENT DOES NOT HAVE STANDING TO OPPOSE MR. MULRENIN'S MOTION**

As a threshold matter, the government does not have standing to oppose Mr. Mulrenin's Motion. As courts have recognized, "[a] party generally lacks standing to challenge a subpoena issued to a non-party absent a claim of privilege or a proprietary interest in the subpoenaed matter." *U.S. v. Tucker*, 249 F.R.D. 58, 60 n.3 (S.D.N.Y. 2008). While the Tenth Circuit has not explicitly made a determination as to whether the government lacks standing to oppose a request for the issuance of a Rule 17(c) subpoena to a third party, it has expressed "doubt" that it does. *See United States v. Love*, 2010 WL 1931021, at *1 n.5 (D. Colo. May 13, 2010).[1]

---

[1] The *Love* Court observed that other courts confronting the same issue have permitted the government to oppose a 17(c) motion where certain concerns formed the basis for doing so. *See id.* (citing *U.S. v. Smith*, 245 F.R.D. 605, 611 (N.D. Oh. 2007) (finding government had standing to challenge Rule 17(c) subpoena issued to individual identified as trial witness, but no standing

Perhaps in an attempt to establish standing or some other cognizable grounds upon which to justify its intervention, the government makes unsupported claims that Mr. Mulrenin is "seeking to circumvent the rules of discovery," "attempting to undermine the government's investigation," and is "setting the stage for a delayed trial"—without any specificity as to *how* any of Mr. Mulrenin's requests threaten to do so.  Mr. Mulrenin respectfully submits that, if such bald assertions were sufficient to confer standing, the government could oppose the issuance of a 17(c) subpoena to nearly any third party subpoena recipient, before a court ruled on whether the subpoena met standards for issuance, and before the third party raised any objection whatsoever, as the government is attempting to do here.  There is no reasonable argument that Mr. Mulrenin is somehow seeking to "undermine the government's investigation,"[2] and the government has not even attempted to articulate one.  Moreover, Mr. Mulrenin struggles to understand how these requests would "set[] the stage for a delayed trial," when they were timely made in accordance with the discovery timeline ordered by the Court, and where Mr. Mulrenin's counsel has yet to meet-and-confer with Tyson's counsel on the subject of the requests.  Again, how such concerns would only be present with respect to Tyson is confounding.

---

to object to subpoenas directed at two other individuals who were not identified as trial witnesses); *U.S. v. Orena*, 883 F.Supp. 849, 869 (E.D.N.Y. 1995) (government has standing to contest request for third-party subpoena where subpoena "might have the effect of unduly lengthening the trial" and might have the effect of "unduly harassing" a trial witness)).  None of those concerns are present here.

[2] Indeed, to the extent that the government revealed information about its investigation to Tyson, it did so knowing that such communications could later be discovered, and that no claim of privilege or other protection exists to prevent their production.  And, in any event, all documents produced to Mr. Mulrenin and Defendants are subject to a protective order in this case, and therefore any concerns regarding confidentiality that the government may have over its communications with Tyson will be subject to that order.

## II.   MR. MULRENIN'S REQUESTS MEET THE APPLICABLE *NIXON* STANDARDS

The government relies heavily on the standards articulated in *United States v. Nixon*, 418 U.S. 683 (1974), arguing that virtually every request (save for one) is somehow deficient with respect to some combination of relevance, admissibility, and specificity. But it bears noting, as *United States v. Nachamie* recognized, that while the "high [*Nixon*] standard, of course, made sense in the context of a Government subpoena, especially one seeking evidence from the President," there is a "real question" about "whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet this same standard," especially given that "[i]n *Nixon*, the Supreme Court explicitly avoided answering this question[.]" 91 F. Supp. 2d 552, 562 n.16 (S.D.N.Y. 2000).

Mr. Mulrenin notes that, contrary to the government's assertions stating otherwise,[3] this Court has not explicitly rejected the "looser subpoena standard" articulated in cases like *Nachamie*, but instead conducted the analysis with reference to the *Nixon* factors. However, the question is not whether the *Nixon* factors apply, but how stringently they should be applied in the context whereby a defendant's liberty is at stake, and where there is no other means to secure evidence material to its defense. Even the Supreme Court in *Nixon* expressly reserved ruling whether the standard articulated in that case would apply "in its full vigor" to a third-party

---

[3] The government plainly mischaracterizes Defendants' arguments with respect to *Nachamie*. Defendants never "claim[ed] that the District of Colorado adopted" the *Nachamie* standard, but instead observed that the District of Colorado has recognized and "endorsed" the *Nachamie* standard. (Doc. 284 at 5.) Further, Defendants explicitly acknowledged that the *Newsom* court did not apply the standard, instead finding "that the defendant was 'unwilling to defend the subpoena, as written, against the [*Nachamie* prong] of undue oppression' and the Court was therefore compelled to find 'that the looser subpoena standard, ***to the extent it might apply***, has not been satisfied in this case,' requiring the Court to analyze the subpoena under only the Nixon standard." (*See id.* at 6 n.1. (quoting *United States v. Newsom*, No. 15–cr–00265–WJM, 2015 WL 6735397, at *4 (D. Colo. Nov. 4, 2015) (emphasis added).)

4

subpoena. *Nixon*, 418 U.S. at 699 n.12.  Accordingly, in applying *Nixon* to third-party subpoenas, this particular context should be considered by the Court in keeping with the intent underlying Rule 17.  Irrespective of how the *Nixon* factors are applied, Mr. Mulrenin's subpoena requests meet them.

> A. **The Government's Arguments That the Court Should Deny Mr. Mulrenin's Requests Are in Contravention to This Court's Prior Holding**

The government urges the Court to find that Mr. Mulrenin's requests fail the *Nixon* test.  Yet such a conclusion would be in direct contravention to this Court's Order finding that the *virtually verbatim* requests seeking *the same* documents from Pilgrim's satisfy *Nixon*.  Indeed, the government concedes that "requests 1-2 mirror document requests 1-2 in the Pilgrim's subpoena," (Doc. 342 (hereinafter "Response") at 6 n.3,) "request 3 mirrors document request 5 in the Pilgrim's subpoena,"[4] (*id.* at 7 n.4,) "request 5 mirrors document request 11 in the Pilgrim's subpoena," (*id.* at 8 n.5,) and "requests 6-13 mirror document requests 13-17 in the Pilgrim's subpoena."  (*Id.* at 11 n.6.)  The "mirrored" Pilgrim's requests were all granted by the Court in its July 29, 2021 Order, as the government acknowledged.  (*See* Doc. 315 at 4; Response at 6 n.3 (recognizing that "the Court found [these] requests to satisfy *Nixon*").)

Despite all of this, the government explicitly states that it is *not* seeking a "motion for reconsideration of the prior ruling," but instead, "if the Court is inclined to allow Mr. Mulrenin's requests," "the government respectfully urges the Court to require Mr. Mulrenin to narrow his requests significantly," *only as to Tyson*.  (Response at 6 n.3.)  The government provides no

---

[4] Mr. Mulrenin notes that Request 5 as to Tyson is narrower than the Pilgrim's proposed subpoena in the manner contemplated by the Court in its Order, and only seeks reports from Agri Stats, Inc., Urner Barry, Express Markets, Inc., Bank of America, and the Georgia Dock Index relating to the "the sale of broiler chicken products or the financial performance of Tyson Foods." (*See* Doc. 331 at 11.)

argument as to *how* each of Mr. Mulrenin's requests should be narrowed and in what respect, nor does it provide any reason as to *why* the Court should treat Tyson differently than Pilgrim's. For this reason alone, the Court should disregard the government's Response.

Indeed, Tyson and Pilgrim's are similarly situated—both are large poultry suppliers that have been represented by counsel in connection with this investigation for several years, and each has several current or former employees who have either been indicted in the instant (or a related) case or are actively cooperating with the government in its investigation against Defendants. Certainly, any burden imposed upon Tyson by Mr. Mulrenin's purported "fishing expedition" is similarly felt by Pilgrim's in its need to respond to Defendants' Pilgrim's Rule 17(c) subpoena, yet the government declines to voice similar concerns with respect to Pilgrim's. Further, if Tyson held the view that Mr. Mulrenin's requests constitute a burdensome "fishing expedition," it could seek redress through its own opposition, or weigh-in to support the government's arguments, but it has instead remained silent. Indeed, the primary difference between Tyson and Pilgrim's here is Tyson's role as a Leniency Applicant,[5] providing an even greater need for the documents sought due to the government's heavy reliance on Leniency Applicants like Tyson to source evidence.[6]

---

[5] *See* Press Release, Tyson Foods, Tyson Foods' Statement on Department of Justice Indictment in Broiler Chicken Investigation (June 10, 2020), https://ir.tyson.com/news/news-details/2020/Tyson-Foods-Statement-on-Department-of-Justice-Indictment-in-Broiler-Chicken-Investigation/default.aspx

[6] *See* U.S. DEP'T OF JUST., ANTITRUST DIVISION, FREQUENTLY ASKED QUESTIONS ABOUT THE ANTITRUST DIVISION'S LENIENCY PROGRAM AND MODEL LENIENCY LETTERS 4, 5 (Jan. 26, 2017), https://www.justice.gov/atr/page/file/926521/download (leniency will be granted to a corporation reporting illegal antitrust activity either before or after an investigation has begun if "[t]he corporation reports the wrongdoing with candor and completeness and ***provides full, continuing and complete cooperation to the Division throughout the investigation***[.]") (emphasis added).

### B. The Government's Arguments That the Court Should Deny Mr. Mulrenin's Requests Are Without Merit

The government argues that Mr. Mulrenin's requests (with the exception of Request 4) fail the *Nixon* test with respect to varying combinations of specificity, relevance, and admissibility. But evidence the government would seek to introduce in support of its alleged conspiracy can only be confronted with the context of the full range of business dealings between suppliers and customers, and the process through which key evidence was sourced, particularly the statements of its key witness, as well as the statements themselves. Such evidence exists, has been specifically described, is admissible or potentially admissible, and is material to the defense and potentially exculpatory.

Specifically, with respect to Requests 1 and 2, the government argues that Mr. Mulrenin's request "is not a 'sharply defined group of documents[.]'" (Response at 6.) However, the eight year period the government refers to is the period of the charged conspiracy, and it is therefore directly relevant and proportional considering the length of the indictment period. That the government chose to indict the Defendants for conduct that allegedly took place over the course of nearly a decade cannot form the basis of its efforts to deny them access to necessary discovery to prepare their defense. Further, as Defendants stated with respect to their motion for a Rule 17(c) subpoena to Pilgrim's, while the government has produced "approximately 14 million documents" to date—indeed, with more documents being produced regularly—the current production does not provide necessary information about Tyson's business practices and decisions during the alleged conspiratorial period so that Mr. Mulrenin may contest the charge.

The same applies to the government's arguments against Requests 3 and 5. In addition, to the extent the government argues that the documents sought in Request 3 will face hearsay and "other admissibility issues," (Response at 7,) Mr. Mulrenin notes that the materials sought need

7

not "actually be used in evidence. It is only required that a good faith effort be made to obtain evidence." *In re Martin Marietta Corp.*, 856 F.2d 619, 622 (4th Cir. 1988); *see also Orena*, 883 F. Supp. at 868 (holding that the defendant could obtain surveillance reports pursuant to a Rule 17(c) subpoena because they were "potentially admissible" and "might also form the basis for eliciting certain testimony at trial"). Furthermore, with respect to the government's objections to Request 5, the documents sought in this request are identical to Request 11 in the Pilgrim's subpoena, which, again, was already granted by this Court. Further still, to the extent Mr. Mulrenin has put forward arguments as to how this request negates one or more of the elements of the crime with which he is charged, he need not disclose his strategy to the government at this time.

The government's objections as to Requests 6-13 are based upon its assertion that the requests constitute an "improper fishing expedition." (Response at 10.) But as explained above (and as conceded to by the government), these requests mirror Rule 17(c) subpoena requests already recognized as passing *Nixon* muster by this Court. Indeed, Requests 6, 7, 8, and 9 are near *verbatim* duplicates of the Pilgrim's Rule 17(c) Requests 13, 14, 16, 15, and 17. (*Compare* Doc. 331 at 9-10, *with* Doc. 284-2 at 8-9.) Further, the government fails to explain exactly *what* about these eight requests constitutes a "fishing expedition"—these documents are limited in scope beginning from April 26, 2019 onward, and they properly seek non-privileged communications regarding the government's investigation against Mr. Mulrenin that led to the development of evidence he must now confront at trial. Further, the government's argument that, to the extent Mr. Mulrenin's requests seek "impeachment evidence," it would be an inappropriate use of Rule 17(c), is also misguided, as district courts have the discretion to allow the pretrial production of impeachment evidence to prevent unfairness and trial delays. *See*

*United States v. Liddy*, 478 F.2d 586, 587-88 (D.C. Cir. 1972); *see also United States v. LaRouche Campaign*, 841 F.2d 1176, 1177, 1179-80 (1st Cir. 1988) (disclosure of impeachment evidence under Rule 17 left to "the sound discretion of the district court").

### III.   CONCLUSION

This Court's ruling on the subpoena to Tyson will greatly impact the ability of Mr. Mulrenin to mount an effective defense to the charge of an alleged multi-year criminal conspiracy to fix prices and rig bids. The government's Response in opposition to Mr. Mulrenin's Motion fails for a litany of reasons, among them being that the government: (1) does not have a cognizable basis upon which to bring such a motion; (2) concedes that each of Mr. Mulrenin's requests mirror requests already granted by this Court's July 29, 2021 Order as to Pilgrim's; (3) fails to articulate any basis upon which to justify disparate treatment by this Court of Tyson and Pilgrim's; and (4) fails to articulate any non-conclusory, valid reason as to why any of Mr. Mulrenin's requests should be denied under the *Nixon* standards. For the foregoing reasons, the government's Response should be disregarded, and this Court should grant Defendant Timothy Mulrenin's Motion in full.

Dated: August 12, 2021.

Respectfully submitted,

*s/ Elizabeth B. Prewitt*
**Latham & Watkins LLP**
Elizabeth B. Prewitt
Caroline A. Rivera
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200

*s/ Marci G. LaBranche*
**Stimson Stancil LaBranche Hubbard, LLC**
Marci G. LaBranche
1652 N. Downing Street
Denver, CO 80218
Tel/Fax: (720)689-8909
Email: labranche@sslhlaw.com

*Attorneys for Defendant Timothy Mulrenin*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*s/ Nancy Hickam*
Nancy Hickam
