IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**JAYSON JEFFREY PENN, et al.**,<br><br>*Defendants.* | Case No. 1:20-cr-00152-PAB |

**MR. BLAKE'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS COUNT ONE
<u>FOR FAILURE TO STATE AN OFFENSE AGAINST HIM</u>**

The Government's Consolidated Response to Defendants' Motions to Dismiss the Superseding Indictment, ECF No. 415 ("Br.") fails to address the defects in Count One of the Superseding Indictment as it pertains to Mr. Blake. As detailed in Mr. Blake's Motion to Dismiss (ECF No. 309), the Superseding Indictment fails to allege adequate facts to state the charged offense that he was a knowing participant in an antitrust conspiracy. The Government's opposition cites numerous examples from the Superseding Indictment that it claims adequately allege an antitrust conspiracy. But none of these pertain to Mr. Blake. Further, as explained below, the Government's argument that the *per se* rule is not an unconstitutional conclusive presumption because it is merely an interpretation of the Sherman Act itself cannot withstand scrutiny.

## ARGUMENT

**I.   The Government fails to address the Superseding Indictment's failure to state an offense against Mr. Blake.**

As set forth in Mr. Blake's motion to dismiss, the only allegations in the Superseding Indictment that pertain to Mr. Blake state that he participated in several telephone conversations with competitors over a period of years, without any allegations as to what was said on those calls. Read most generously, the allegations imply that Mr. Blake shared some of his employer's pricing information with competitors. Yet, as explained in his motion to dismiss, merely sharing pricing information with a competitor does not violate the Sherman Act.

The Government does not address this argument in its response, though it explicitly acknowledges that even a *two*-way exchange of pricing information would be insufficient to state a claim. *See* Br. 19-20 ("It is immaterial that an exchange of information, by itself, would not be *per se* unlawful."). Instead, the Government tries to cure this deficiency by citing a number of examples that it claims demonstrate that the Superseding Indictment properly alleges a price-fixing conspiracy. Yet, none of these examples mentions Mr. Blake. *See* Br. 12-17, 20. Thus, regardless of whether the Government is correct that the Superseding Indictment adequately alleges a violation of the Sherman Act, it does not adequately state an offense against Mr. Blake.

Indeed, the best the Government can muster is a generalized reference to "a multitude of communications among all defendants." *See* Br. 20. In doing so, the Government does not even attempt to address the very issue raised in Mr. Blake's motion—namely, that communications with competitors, even communications sharing pricing information, do not violate the Sherman Act. The Government fails to rebut the assertion in Mr. Blake's motion that the factual allegations

2

*against him* are limited to conduct that does not state an offense. Count One should be dismissed as to Mr. Blake.

**II.     The Government's argument that the *per se* rule may be applied in criminal cases because this rule merely interprets the Sherman Act is wholly unpersuasive.**

As explained in Mr. Blake's motion to dismiss, the *per se* rule is a conclusive presumption that cannot be squared with the Constitution or the Sherman Act. In response, the Government argues that the *per se* rule "is an interpretation of the Sherman Act itself, not an evidentiary presumption." Br. 29. But that argument ignores the text of the statute and binding Supreme Court precedent.

Section 1's text is sparse: it bars contracts, combinations, and conspiracies in "restraint of trade or commerce." 15 U.S.C. § 1. Of course, this language cannot have been directed at all contracts that restrain trade; "[e]very agreement concerning trade, every regulation of trade, restrains." *Chicago Board of Trade v. United States*, 246 U.S. 231, 238 (1918). Instead, the statutory terms "took their origin in the common law," under which "restraint of trade" was "synonymous with" an "*undue* restraint of the course of trade." *Standard Oil Co. v. United States*, 221 U.S. 1, 51, 61 (1911). Thus, the "Court has long recognized that Congress intended to outlaw *only* unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (emphasis added); *see Chicago Board of Trade*, 221 U.S. at 238 ("The true test of legality is whether the restraint . . . is such as may suppress or even destroy competition."). The rule of reason, in short, is a construction of the statutory term "contract, combination . . . or conspiracy[] in restraint of trade." 15 U.S.C. § 1. *Cf. Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) ("When a statutory term is obviously transplanted from another legal source, it brings the old soil with it." (quotation marks omitted)).

The *per se* rule, by contrast, does not interpret the statutory language. Instead, it represents a judicial determination that "[t]he aim and result of every price-fixing agreement, if effective, is the elimination of one form of competition" and that therefore "[a]greements which create such potential power may well be held to be in themselves unreasonable or unlawful restraints, without the necessity of minute inquiry." *United States v. Trenton Potteries Co.*, 273 U.S. 392, 397 (1927). "[T]he nature and character" of these agreements create "a conclusive presumption which [brings] them within the statute." *Standard Oil*, 221 U.S. at 65; *see also Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982) (describing *per se* rule as a "conclusive presumption"); *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958) (same); *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 100 (1984) ("In such circumstances a restraint is presumed unreasonable").

The Government argues (Br. 29) that the *per se* rule merely "give[s] definition" to the Sherman Act's text—but the mismatch between § 1's prohibition and the *per se* rule's sweep confirms the rule is an evidentiary shortcut. As with any presumption, the "match between the presumed and the actual is imperfect" and, therefore, the *per se* rule reaches "some agreements that a fullblown inquiry might have proved to be reasonable." *Maricopa Cnty.*, 457 U.S. at 344 The condemned practices "always or *almost always*" restrict competition. *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018) (emphasis added). The *per se* rule's overbreadth is tolerated because "the probability that [certain] practices are anticompetitive is so high" that further inquiry is not worth the candle, *NCAA*, 468 U.S. at 100. The practices that are condemned under the *per se* rule but that are not, in fact, unreasonable, "are not sufficiently common or important to justify the time and expense necessary to identify them." *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S.

4

36, 50 n.16 (1977). And yet they exist, even though § 1 "outlaw[s] only unreasonable restraints," *State Oil*, 522 U.S. at 10.

The result: the *per se* rule reaches some business practices that Congress did not prohibit. Seen in that light, the rule cannot be a mere interpretation of § 1, as the Government contends. Indeed, if the *per se* rule were a "substantive rule" (Br. 31), and not an evidentiary presumption, then the Supreme Court would have overstepped its authority because "[o]nly the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *United States v. Davis*, 139 S. Ct. 2319, 2325 (2019) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)).

Fortunately, the Supreme Court has done no such thing. As enumerated above, the Court has time and again described the *per se* rule as a "conclusive presumption" grounded in policy considerations. In fact, the very authority on which the Government relies for the proposition that "[t]he *per se* rule is an interpretation of the Sherman Act" (Br. 29) actually demonstrates the opposite. *FTC v. Superior Court Trial Lawyers' Association* explains that the *per se* rule has "no justification" save that: (i) price-fixing is "tempting to businessmen but very dangerous to society"; and (ii) "[t]he conceivable social benefits are few in principle, small in magnitude, speculative in occurrence, and always premised on the existence of price-fixing power which is likely to be exercised adversely to the public." 493 U.S. 411, 435 n.16 (1990). Those are just the sort of policy considerations that frequently drive evidentiary presumptions. *See Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988) ("Arising out of considerations of fairness, public policy, and probability, as well as judicial economy, presumptions are also useful devices for allocating the burdens of proof between parties."). Moreover, if the *per se* rule were grounded in § 1's text, as the Government

5

claims, it would be quite surprising that the *Superior Court Trial Lawyers* Court did not include that as a "justification."

The Government endorses a mode of interpretation that brazenly rewrites the statute. In "cases involving behavior such as bid rigging," the Government says, "the Sherman Act will be read as simply saying 'An agreement among competitors to rig bids is illegal.'" Br. 30 (quoting *United States v. Koppers Co.*, 652 F.2d 290, 294 (2d Cir. 1981)). It is true enough that the Second Circuit (and the Seventh before it, *United States v. Brighton Bldg. & Maint. Co.*, 598 F.2d 1101, 1106 (7th Cir. 1979)) so reasoned. But it is also true that the Sherman Act says no such thing— and that "our constitutional structure does not permit [the courts] to rewrite the statute that Congress has enacted." *Puerto Rico v. Franklin California Tax-Free Tr.*, 136 S. Ct. 1938, 1949 (2016) (quotation marks omitted).

More generally, the circuit cases relied on by the Government lack persuasive force. The Government relies on *United States v. Manufacturers' Ass'n of the Relocatable Bldg. Indus.* for the proposition that the *per se* rule merely defines "the statutory prohibition." Br. 29 (quoting 462 F.2d 49, 52 (9th Cir. 1972)). But that case's reasoning is indefensible. The Ninth Circuit reasoned that § 1 actually creates *two* offenses—and that "'unreasonableness' is an element of the crime only when no *per se* violation has occurred." 462 F.2d at 52. Yet the plain text of § 1 creates *one* offense. 15 U.S.C. § 1. "[W]hether the ultimate finding is the product of a presumption or actual market analysis, the essential inquiry remains the same." *Cal. Dental Ass'n v. FTC*, 526 U.S. 756, 779–80 (1999) (citation omitted). It is hard to see how the *per se* rule "defines" the statutory

prohibition on "unreasonable" restraints when, on the Ninth Circuit's view, unreasonableness is not even an element of the crime in a *per se* case.[1]

The Second Circuit likewise reasoned that "the Sherman Act does not make 'unreasonableness' part of the offense" and so "the judicially-created per se mechanism [does not] relieve[] the government of its duty of proving each element of a criminal offense under the Act." *Koppers*, 652 F.2d at 294. As discussed above, however, "unreasonableness" is the *essential* element of a § 1 offense.

Nor is Mr. Blake's argument foreclosed by Supreme Court precedent. To be sure, the Court has upheld the *per se* rule in criminal cases that did not present the question whether the rule violated the defendant's Fifth and Sixth Amendment rights. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 218-22 (1940); *United States v. Trenton Potteries Co.*, 273 U.S. 392, 395-401 (1927). Since then, the Court has explained that conclusive presumptions like the *per se* rule cannot constitutionally be applied in criminal cases because they violate the due process right to a presumption of innocence and the Sixth Amendment right to a jury trial. *See Carella v. California*, 491 U.S. 263, 266 (1989); *United States v. Gaudin*, 515 U.S. 506, 514 (1995). And "[w]hen the Supreme Court overturns the standard that it had previously used to resolve a particular class of cases, federal courts must apply the new standard and reach the result dictated under that new standard." *United States v. Anthem, Inc.*, 855 F.3d 345, 377 (D.C. Cir. 2017) (Kavanaugh, J.,

---

[1] This faulty reasoning infects the Ninth Circuit's later decision in *Sanchez*, relied on by the Government (Br. 31). The Government argues that *Sanchez* held Mr. Blake's argument foreclosed by Supreme Court precedent; in fact, it held the argument foreclosed by *Manufacturers'*. *See* Br. 31-32 (quoting *United States v. Sanchez*, 760 F. App'x 533, 535 (9th Cir. 2019)).

dissenting) (quoting Garner et al., The Law of Judicial Precedent at 31 (2016)).  The later, constitutional cases control; not the earlier non-constitutional cases.[2]

## CONCLUSION

Mr. Blake's motion to dismiss for failure to state an offense should be granted.  First, as explained in that motion, the Superseding Indictment relies on a smattering of phone calls between Mr. Blake and competitors—without any allegation of what was said on those calls—to establish his knowing involvement in a § 1 conspiracy.  To the extent the Superseding Indictment alleges that Mr. Blake shared pricing information with competitors, that would not come close to making out a § 1 violation (indeed, nor even would allegations of reciprocal information-exchange). Nothing in the Government's Brief addresses those insufficiencies.

Second, as explained above, the Superseding Indictment fails to plead the essential element of an "unreasonable" restraint.  Supreme Court precedent makes plain that the *per se* rule is a conclusive presumption—and equally plain that such presumptions have no place in criminal prosecutions.  New Deal-era cases that did not present this constitutional question do not control.

---

[2] Notably, when a constitutional objection to another presumption (of scienter) was raised in *Gypsum*, the Court did not hesitate to bifurcate civil and criminal standards.  Rejecting a presumption that "intent followed, *as a matter of law*" from price effect, the Court held that scienter "is an element of a criminal antitrust offense which must be established by evidence and inferences drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption."  *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 435, 446 (1978).  The lower court's presumption, defended by the government as correct under civil precedent, *id.* at 435, was impermissible in criminal cases because it "effectively eliminate[d] intent as an ingredient of the offense."  *Id.* at 446 (quoting *Morissette v. United States*, 342 U.S. 246, 275 (1952)).

| | |
|---|---|
| Date:  September 10, 2021 | Respectfully submitted, |
| Wendy L. Johnson<br>RMP LLP<br>5519 Hackett Road, Suite 300<br>Springdale, Arkansas 72762<br>Telephone: (479) 443-2705<br>Fax: (479) 443-2718<br>wjohnson@rmp.law | */s/ Barry J. Pollack*<br>Barry J. Pollack<br>ROBBINS, RUSSELL, ENGLERT, ORSECK<br>& UNTEREINER LLP<br>2000 K Street N.W., 4th Floor<br>Washington, D.C.  20006<br>Telephone: (202) 775 4500<br>Fax: (202) 775 4510<br>bpollack@robbinsrussell.com |

*Counsel for Mr. Blake*

### CERTIFICATE OF SERVICE

On this tenth day of September, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Colorado by using the Court's CM/ECF system, which will serve electronic notification of this filing on all counsel of record.

Respectfully submitted,

*/s/ Barry J. Pollack*
Barry J. Pollack

*Counsel for Mr. Blake*