IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

     Defendants.

No. 20-cr-00152-PAB

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

Pursuant to Section 4(E)(1) of the Court's Practice Standards, Defendants respectfully submit their proposed jury instructions. Following a meet and confer, the parties stipulated to several instructions, which are listed in the government's filing as Stipulated Instructions No. 2, No. 3, No. 4, No. 5 (except for the footnote, to which Defendants object), No. 10, No. 14, No. 33, No. 34, and No. 40. Separately, the government does not oppose Defendants' Proposed Instruction No. 31 (equal consideration for all parties).

Pursuant to the Court's separate order (Doc. 568), Defendants will provide comments on and objections to the Court's proposed introductory jury instruction on October 7, 2021.

Defendants respectfully reserve the right to supplement, amend, or tailor their proposed instructions based on the Court's rulings and the evidence and arguments offered at trial.

Dated:  October 6, 2021                          Respectfully submitted,

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

*s/ Craig Allen Gillen*
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

*s/ Barry J. Pollack*
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  October 6, 2021

*s/ Michael F. Tubach*

Michael F. Tubach

**Defendants' Proposed Jury Instructions**

| DEF. INSTRUCTION NO. | TITLE | PAGE | GOV. ALTERNATIVE |
|---|---|---|---|
| 1 | Substantive Preliminary Instruction Before Trial | 3 | |
| 2 | Each Defendant Has Separate Rights | 8 | |
| 3 | Direct and Circumstantial Evidence | 9 | Instruction No. 6 |
| 4 | Inferences | 10 | Instruction No. 6 |
| 5 | Credibility of Witnesses | 12 | Instruction No. 7 |
| 6 | Credibility of Law Enforcement Witnesses | 14 | Instruction No. 9 |
| 7 | Impeachment – Inconsistent Statement or Conduct | 15 | Instruction No. 11 |
| 8 | Consider Only Crime Charged | 16 | Instruction No. 31 |
| 9 | Opinion Evidence, Expert Witnesses | 17 | |
| 10 | Testimony of Witnesses Involving Special Circumstances—Non-Prosecution, Cooperation, and Corporate Amnesty Agreements | 18 | Instruction No. 12 |
| 11 | Elements of Sherman Act Violation | 19 | Instruction No. 16 |
| 12 | First Sherman Act Element - Conspiracy | 21 | Instruction No. 17 |
| 13 | First Sherman Act Element – Proof of Single Overarching Conspiracy Necessary | 23 | |
| 14 | First Sherman Act Element - Information Exchanges | 25 | |
| 15 | First Sherman Act Element - Conscious Parallelism | 27 | |
| 16 | First Sherman Act Element - Meeting with Competitors is Not Illegal | 30 | |
| 17 | First Sherman Act Element - Employees of the Same Corporation Cannot Conspire Among Themselves | 31 | |

| DEF. INSTRUCTION NO. | TITLE | PAGE | GOV. ALTERNATIVE |
|---|---|---|---|
| 18 | First Sherman Act Element - Specific Issue Unanimity is Necessary | 32 | |
| 19 | Second Sherman Act Element – "Knowingly" Joined | 33 | Instruction No. 20 |
| 20 | Third Sherman Act Element – Unreasonable Restraint of Trade | 36 | |
| 21 | Fourth Sherman Act Element – Interstate Commerce | 38 | Instruction No. 24 |
| 22 | Count One Sherman Act Venue | 40 | Instruction No. 25 |
| 23 | Theory of the Defense | 41 | |
| 24 | Common Defense | 42 | |
| 25 | Defendants' Reputations | 43 | |
| 26 | Charts and Summaries Not in Evidence | 45 | |
| 27 | Statute of Limitations for the Sherman Act, Count One | 46 | Instruction No. 30 |
| 28 | Count 2: False Statements | 48 | Instruction No. 26 |
| 29 | Count 2: Willfully – To Act | 50 | |
| 30 | Count 3: Obstruction of Justice | 51 | Instruction No. 28 |
| 31 | Equal Consideration for All Parties | 53 | Instruction No. 35 |
| 32 | Duty to Deliberate | 54 | Instruction No. 36 |

**Defendants' Instruction No. 1**

**Substantive Preliminary Instruction Before Trial**

All of the defendants are charged in Count One with knowingly joining and participating in a single conspiracy to suppress and eliminate competition by fixing prices and other price-related terms and rigging bids in violation of Section 1 of Title 15 of the United States Code, commonly known as the Sherman Antitrust Act. Defendant Jimmie Little is also charged in Count Two with making false statements in violation of Section 1001(a)(2) of Title 18 of the United States Code, and in Count Three with obstruction of justice in violation of Section 1512(c)(3) of Title 18 of the United States Code. Let me remind you at the outset that the charges themselves are not evidence, and should be considered in deciding whether the government has proved each of the defendant's guilt or any element of the offense.

It is most important to understand that none of the defendants has to prove his innocence or present any evidence during the course of this trial. The government has the exclusive burden of proving each defendant guilty beyond a reasonable doubt, and this burden remains on the government alone throughout every stage of the trial and during your deliberations on the verdict. If the government fails to meet its burden as to any defendant, you must find that defendant not guilty.

You must presume each defendant innocent unless and until the government proves his guilt beyond a reasonable doubt, and you must separately consider the evidence against each defendant.

In order to prove each defendant is guilty of violating the Sherman Act, the government must establish each of the following elements beyond a reasonable doubt as to each defendant:

*First*, the government must prove that beginning at least as early as 2012 and continuing until at least early 2019, there was a single conspiracy in which persons illegally agreed to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States;

*Second*, each defendant knowingly—that is, voluntarily and intentionally—became a member of the charged conspiracy, knowing that the object of the agreement was to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States;

*Third*, the agreement was one that would unreasonably restrain trade; and

*Fourth*, that the alleged conspiracy occurred within the flow of, or substantially affected, interstate commerce.

The mere fact that competitors exchanged information, even regarding price, without more does not establish an agreement to fix prices or rig bids. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors, customers, distributors, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products so long as there is no agreement to rig bids or fix prices or other price related terms.

Similarly, the mere fact that the companies that employed defendants may have engaged in similar or parallel pricing does not, by itself, establish the existence of an unlawful agreement among them. Evidence of similarity of business practices by the employers of defendants, or the fact that the companies that employed them may have charged identical or similar prices for the same goods, does not alone establish an agreement to fix prices, since such activities may be

consistent with ordinary and proper competitive behavior in a free and open market. Businesses may lawfully copy each other's price lists, follow and conform exactly to each other's price policies and price changes, recognize that they have shared economic interests and, consequently, adopt the same prices, conditions of sale, or other practices, as long as they do so independently and not as part of an unlawful agreement to fix prices.

In determining whether such an agreement existed, you should consider whether, to the extent competitors engaged in similar or parallel pricing, the different persons adopting similar practices did so because of their own judgment about what was in their company's own best economic interest. In deciding this, you may consider whether the practices employed made sense in light of the industry conditions, and whether the benefits from those practices were dependent on other competitors doing the same thing. In short, you must find that those engaged in similar actions were acting together because of an unlawful agreement, rather than individual competitors acting in their own best interest who happen to have done the same thing.

Nevertheless, you may consider facts and circumstances of information exchanges and parallel pricing along with all other evidence in determining whether the alleged conduct resulted from the independent acts or business judgment of the defendants or the companies that employed them freely competing in the open market, or whether it resulted from an unlawful agreement among or between two or more of them to rig bids or fix prices.

Once again, defendants are presumed innocent and the rights of each of the defendants in this case are separate and distinct. You must separately consider the evidence against each defendant and return a separate verdict for each at the end of trial.

**Authority**: Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 16, 22 (modified); L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions §§ 58-3, 58-8, 58-12.1 (2018 ed.) (modified); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive. For this reason, we have held that such exchanges of information do not constitute a per se violation of the Sherman Act."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007) ("conscious parallelism" is "a common reaction of firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions" and "does not establish the contract, combination, or conspiracy required by Sherman Act § 1" (quotations omitted)); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("While consciously parallel behavior may contribute to a finding of antitrust conspiracy, it is insufficient, standing alone, to prove conspiracy. . . . Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990) (holding that instruction that "'it is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices' . . . adequately state[s] the law of conspiracy and agreement"); Tr. at 2461:6-9, *United States v. Usher*, 17-cr-00019 (S.D.N.Y. Nov. 8, 2018), Doc. 239 ("People responding to common perceptions of the market may take independent actions

that are similar or parallel. But parallel conduct alone is not sufficient to prove an illegal agreement."); Jury Instructions, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008), Doc. 337 at 24 ("It is not in itself unlawful for competitors to engage in price coordination. Price coordination occurs when competitors recognize that they have shared economic interests and, consequently, follow each other's conduct in setting prices."); Tenth Circuit Criminal Pattern Jury Instruction 1.21 (2021, ed.) (modified).

**Defendants' Instruction No. 2**

**Each Defendant Has Separate Rights**

The rights of each of the defendants in this case are separate and distinct. You must separately consider the evidence against each defendant and return a separate verdict for each.

Your verdict as to one defendant, whether it is guilty or not guilty, should not affect your verdict as to any other defendant. You must consider the evidence that has been presented by the government separately as to each defendant.

In order to find a particular defendant guilty on any given count in which he is charged, you must be satisfied that the government has proved beyond a reasonable doubt that that particular defendant is guilty on that specific count based upon the evidence against that defendant, not the evidence against another defendant.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.21 (2021, ed.) (modified); *See United States v. O'Connor*, 650 F.3d 839, 859-61 (2d Cir. 2011) (noting that the district court properly instructed that the jury was required to consider "each charge separately" with respect to "each defendant separately"); *United States v. Evans*, 970 F.2d 663, 673 (10th Cir. 1992) ("It is . . . essential to determine what kind of agreement or understanding existed as to each defendant." (quotation omitted)).

**Defendants' Instruction No. 3**

**Direct and Circumstantial Evidence**

There are two types of evidence from which you as the jury may properly determine the facts of a case. One is direct evidence, such as testimony by a witness about what that witness personally saw or heard or did. The other is indirect or circumstantial evidence, that is, it is proof of one or more facts from which you can find another fact.

The law makes no distinction between the weight to be given to either direct and circumstantial evidence. It is for you to decide how much weight to give any evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.07 (2021, ed.) (modified); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 8 (modified).

**Defendants' Instruction No. 4**

**Inferences**

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

But if the evidence is ambiguous, meaning it describes conduct that is just as consistent with lawful behavior as unlawful behavior, it is not reasonable to draw an inference that defendants committed the conspiracy offense charged in Count One. The government must instead present evidence tending to exclude the possibility that defendants acted independently. This requirement exists in Sherman Act cases because we do not want to deter or penalize perfectly legitimate business conduct, which can sometimes be difficult to identify.

Further, your ability to draw reasonable inferences never changes your obligation to decide a defendant is guilty only if the government proves his guilt beyond a reasonable doubt.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.07 (2021, ed.) (modified); *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1179-80 (10th Cir. 2019) ("Where circumstantial evidence is just 'as consistent with' unilateral action as with concerted action, it 'does not, standing alone, support an inference of antitrust conspiracy.'" It is "impermissible" to draw

10

inferences of conspiracy if "'conduct is consistent with other, equally plausible explanations.'"
(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596, 588 (1986));
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) ("[A]ntitrust law
limits the range of permissible inferences from ambiguous evidence in a § 1 case."); *Monsanto
Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763-64 (1984) (antitrust laws do not want to "deter
or penalize perfectly legitimate conduct" and therefore require "evidence that tends to exclude
the possibility that [defendants] were acting independently"); *United States v. U.S. Gypsum Co.*,
438 U.S. 422, 440-41 (1978) ("[T]he behavior proscribed by the Act is often difficult to
distinguish from the gray zone of socially acceptable and economically justifiable business
conduct.").

**Defendants' Instruction No. 5**

**Credibility of Witnesses**

It is your responsibility to decide whether the government has proved the guilt of each of the defendants beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

In deciding the facts, you may have to decide which testimony to believe and which testimony not to believe. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. You may believe everything a witness says, part of it, or none of it.

In considering the testimony of any witness, you may take into account many factors, including but not limited to:

- The witness's opportunity and ability to see or hear or know the things the witness testified about;

- The quality of the witness's memory;

- The witness's appearance and manner while testifying;

- The witness's interest in the outcome of the case;

- Any bias or prejudice the witness may have;

- Other evidence that may have contradicted the witness's testimony;

- The circumstances under which each witness has testified;

- The witness's character for truthfulness; and

- The reasonableness of the witness's testimony in light of all the evidence.

12

When weighing conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent mis-recollection—like failure of recollection—is not uncommon.

[If applicable: The testimony of [any testifying defendants] should be weighed and his credibility evaluated in the same way as that of any other witness.]

The weight of the evidence does not necessarily depend on the number of witnesses who testified.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.08 (2021, ed.) (modified); Jury Instructions, *White v. Deere & Co.*, 13-cv-2173 (D. Colo. Mar. 2, 2016) (Brimmer, J.), Doc. 251 at 7 (modified); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-9 at 14-15 (modified); Fed. R. Evid. 608(b).

**Defendants' Instruction No. 6**

**Credibility of Law Enforcement Witnesses**

You have heard the testimony of law enforcement agents. The fact that a witness may be employed by the federal government as a law enforcement agent does not mean that his or her testimony is deserving of more or less consideration or greater or lesser weight than that of any other witness.

At the same time, it is quite legitimate for defense counsel to try to attack the believability or credibility of a law enforcement witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

**Authority**: Third Circuit Model Criminal Jury Instruction 4.18 (modified); *United States v. Bethancourt*, 65 F.3d 1074 (3d Cir. 1995); *Bush v. United States*, 375 F.2d 602 (D.C. Cir. 1967).

**Defendants' Instruction No. 7**

**Impeachment – Inconsistent Statement or Conduct**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness's present testimony, or if there is evidence of the witness' character for untruthfulness.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

**Authority**: Jury Instructions, *White v. Deere & Co.*, 13-cv-2173 (D. Colo. Mar. 2, 2016) (Brimmer, J.), Doc. 251 at 10 (modified); 1A Fed. Jury Prac. & Instructions § 15:06 (6th ed.); Tenth Circuit Criminal Pattern Jury Instruction 1.10 (2021, ed.) (modified); Fed. R. Evid. 608(b).

**Defendants' Instruction No. 8**

**Consider Only Crime Charged**

You are here only to determine whether the government has proved beyond a reasonable doubt that each defendant is guilty of the specific crime or crimes charged against him . [As explained in my Preliminary Instructions,] in this case, all defendants are charged in Count One with violation of the Sherman Act Section One. Defendant Little is also charged in Counts Two and Three with making false statements and obstructing justice. The defendants are not on trial for any other act, conduct, or crime. I will explain more about those laws later.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.19 (2021, ed.) (modified); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 5 (modified).

**Defendants' Instruction No. 9**

**Opinion Evidence, Expert Witnesses**

You heard the testimony of [applicable expert witnesses] who testified as an expert about their opinions and the reasons for their opinions. In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider expert testimony just as you consider other testimony in this trial. Give the expert testimony as much weight as you think it deserves, considering the education, training, and experience of the witnesses, the soundness of the reasons given for the opinions, and other evidence in the trial.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.17 (2021, ed.) (modified); Jury Instructions, *White v. Deere & Co.*, 13-cv-2173 (D. Colo. Mar. 2, 2016) (Brimmer, J.), Doc. 251 at 8 (modified).

**Defendants' Instruction No. 10**

**Testimony of Witnesses Involving Special Circumstances—
Non-Prosecution, Cooperation, and Corporate Amnesty Agreements**

[If Applicable]

You heard testimony from [relevant witnesses] who entered into non-prosecution and cooperation agreements with the government. [Relevant witnesses] also testified in this case pursuant to a cooperation agreement between [his/her/their] employer and the government. That testimony was given in exchange for a promise by the government that the witness and/or his employer will not be prosecuted, and that testimony will not be used in any case against the witness and/or his employer. A non-prosecution, cooperation, corporate amnesty, or corporate leniency agreement is not evidence of guilt of any of the defendants, and you may consider it only in determining [relevant witnesses'] believability and motivations to testify as they did.

You should consider whether and the extent to which their testimony may have been influenced by the promise not to prosecute him or her personally or the promise not to prosecute his or her employer. You should examine the testimony of [the relevant witnesses] with greater caution than that of other witnesses. And you should never convict a defendant upon the unsupported testimony of a witness who has entered into a non-prosecution or cooperation agreement or has received protection under his or her employer's amnesty or leniency agreement, unless you believe that testimony beyond a reasonable doubt.

**Authority**: Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 12 (modified); Tenth Circuit Criminal Pattern Jury Instruction 1.15 (2021, ed.) (modified).

**Defendants' Instruction No. 11**

**Elements of Sherman Act Violation**

The defendants are charged in Count One with knowingly joining and participating in a single conspiracy to suppress and eliminate competition by fixing prices in violation of Section 1 of Title 15 of the United States Code, commonly known as the Sherman Act.

In order to prove the price-fixing and bid-rigging charges against the defendants, the government must establish each of the following elements beyond a reasonable doubt:

*First*, beginning at least as early as 2012 and continuing until at least early 2019, there was a single conspiracy in which persons illegally agreed to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products sold in the United States;

*Second*, with regard to each defendant, he knowingly—that is, voluntarily and intentionally—became a member of the charged conspiracy, knowing that the object of the agreement was to suppress and eliminate competition by fixing prices and other price-related terms for broiler chicken products sold in the United States, and he shared that objective;

*Third*, the agreement was one that would unreasonably restrain trade; and

*Fourth*, that the alleged conspiracy occurred within the flow of, or substantially affected, interstate commerce.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt with regard to a defendant, then you should find that defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of

these elements has not been proved beyond a reasonable doubt with regard to a defendant, then you must find that defendant not guilty.

**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-3 (2018 ed.) (modified); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 16 (modified); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 8 (modified); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 n.20 (1978) ("In a conspiracy, two different types of intent are generally required-the basic intent to agree, which is necessary to establish the existence of the conspiracy, and the more traditional intent to effectuate the object of the conspiracy.").

**Defendants' Instruction No. 12**

**First Sherman Act Element – Conspiracy**

As I have just told you, the first element that the government must prove beyond a reasonable doubt is that the alleged price-fixing agreement actually existed beginning in or about 2012 and continued until in or about early 2019. This is important because the part of the Sherman Act relevant in this case outlaws certain agreements among competitors, but not actions taken independently by individuals or companies. That is, the Sherman Act is only concerned when there is, in a very true sense, a partnership in crime.

A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. An unlawful agreement itself is the crime. Whether the agreement is ever carried out, or whether it succeeds or fails, does not matter. It is the agreement to do something that violates the law that is the essence of a conspiracy.

In order to establish the existence of a conspiracy, the evidence need not show that the members entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished. But the evidence must show that the alleged members of the charged conspiracy in some way came to an agreement or a meeting of the minds and had a conscious commitment to carry out a common scheme designed to achieve an unlawful objective.

Only a solicitation to enter into an agreement, without an acceptance by the defendant, does not violate the Sherman Act.

Direct proof of an unlawful agreement may not be available. An unlawful agreement may, however, be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of an unlawful agreement from what you find the parties actually did, as well as from the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have communicated with one another, met, or discussed common aims and interests, does not necessarily establish the existence of an unlawful agreement. If they ultimately made decisions independently of one another as a matter of individual business judgment, then there would be no conspiracy.

**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-4 (2018 ed.) (modified); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 19 (modified); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 9 (modified); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984) ("there must be direct or circumstantial evidence that reasonably tends to prove that [defendants] had a conscious commitment to a common scheme designed to achieve an unlawful objective").

**Defendants' Instruction No. 13**

**First Sherman Act Element – Proof of Single Overarching Conspiracy Necessary**

The government must prove, beyond a reasonable doubt, that the particular conspiracy charged existed, and that it existed at or about the time alleged–that all defendants were members of a single and continuing conspiracy to suppress and eliminate competition by fixing prices and price related terms and fixing bids for broiler chicken products sold in the United States that began in or about 2012 and continued until in or about early 2019.

You must determine whether the single conspiracy existed, and if it did, whether each defendant was a member of it.

You must judge each defendant only on the charge alleged. Thus, if you find that the conspiracy as charged did not exist, you cannot find any defendant guilty. This is so even if you find that one or more conspiracies other than the single charged existed; and even though any other conspiracy or conspiracies you may find existed had a purpose and/or membership similar to the charged conspiracy. That is, you must acquit defendants if you find there was not a single, overarching conspiracy to fix prices or rig bids for broiler chicken products sold in the United States beginning around 2012 and continuing until around early 2019.

Proof of several separate conspiracies is not proof of the single, continuing conspiracy charged, unless one of the several conspiracies which is proved is the single conspiracy charged.

If you find that a defendant was not a member of the alleged conspiracy, then you must find that defendant not guilty, even if you find that the defendant may have been a member of some other conspiracy.

But proof that a defendant was a member of some other conspiracy would not prevent

23

you from returning a guilty verdict, if the government proved that the defendant was also a member of the charged conspiracy.

**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-4 (2018 ed.) (modified); Tenth Circuit Criminal Pattern Jury Instruction 2.20 (2021, ed.) (modified); *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 874-75 (10th Cir. 1989) (affirming instruction that "told the jury that it must find the defendants not guilty of the Sherman Act count if it concluded 'that the government has failed to prove the existence of the single, continuing conspiracy charged in the indictment").

**Defendants' Instruction No. 14**

**First Sherman Act Element – Information Exchanges**

The mere fact that competitors exchanged information, even regarding price, without more does not establish an agreement to rig bids or fix prices. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from other competitors, customers, distributors, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products, so long as there is no agreement to rig bids or fix prices.

Nevertheless, you may consider such facts and circumstances along with all other evidence in determining whether the alleged conduct resulted from the independent acts or business judgment of each defendant freely competing in the open market, or whether it resulted from an unlawful agreement among or between two or more of them to rig bids and fix prices.

**Authority**: Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 7 ("It is not illegal to obtain information about a competitor's bid or to exchange bid information without more. It is only where such acts are done pursuant to an agreement between two or more competitors to rig bids that a violation of the law occurs. The mere exchange of information about a competitor's bid without more is not illegal."); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 22 (modified); L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-12.1 (2018 ed.) (modified); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors

does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive. For this reason, we have held that such exchanges of information do not constitute a per se violation of the Sherman Act."); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange."); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990) (holding that instruction that "'it is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices' . . . adequately state[s] the law of conspiracy and agreement").

**Defendants' Instruction No. 15**

**First Sherman Act Element – Conscious Parallelism**

The mere fact that the companies that employed defendants engaged in similar or parallel pricing does not establish the existence of a conspiracy among them. This is true even if a defendant takes an action knowing that his competitors are following similar practices. Evidence that competitors engaged in similar business practices, or that they may have charged identical or similar prices for the same goods, does not alone establish an agreement to rig bids and fix prices. Those activities may be consistent with ordinary and proper competitive behavior in a free and open market, or they may be the result of common reactions to identical or similar market conditions. Businesses may lawfully copy each other's price lists, follow and conform exactly to each other's price policies and price changes, recognize that they have shared economic interests and, consequently, adopt the same prices, conditions of sale, or other practices, as long as they do so independently and not as part of an unlawful agreement to rig bids and fix prices.

In determining whether to find such an agreement, you must consider whether the different persons adopting similar practices did so because of their own judgment about what was in their own best economic interest. In deciding this, you may consider whether the practices employed made sense in light of the industry conditions, and whether the benefits from those practices were dependent on other competitors doing the same thing, or other factors you deem relevant. In short, to find any defendant guilty you must first find that those engaged in similar actions were knowingly acting together because of an unlawful agreement, rather than individual competitors acting in their own best interest who happen to have done the same thing.

**Authority**: Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 22 (modified); 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions §§ 58-7, 58-8 (2018 ed.) (modified); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007) ("conscious parallelism" is "a common reaction of firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions" and "does not establish the contract, combination, or conspiracy required by Sherman Act § 1" (quotations omitted)); *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999) ("While consciously parallel behavior may contribute to a finding of antitrust conspiracy, it is insufficient, standing alone, to prove conspiracy."); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015) (courts can "without suspecting illegal collusion, expect competing firms to keep close track of each other's pricing and other market behavior and often to find it in their self-interest to imitate that behavior rather than try to undermine it"); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 5-6 ("[T]he mere fact that competitors may have bid at similar or identical prices . . . does not constitute a violation of the Sherman Act. Where a business concern, in the exercise of its own independent judgment, and not by agreement with its competitors, bids the same price as a competitor. . . there is no violation."); Tr. at 2461:6-9, *United States v. Usher*, 17-cr-00019 (S.D.N.Y. Nov. 8, 2018), Doc. 239 ("People responding to common perceptions of the market may take independent actions that are similar or parallel. But parallel conduct alone is not sufficient to prove an illegal agreement."); Jury Instructions, *United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal.

Mar. 10, 2008), Doc. 337 at 24 ("It is not in itself unlawful for competitors to engage in price coordination. Price coordination occurs when competitors recognize that they have shared economic interests and, consequently, follow each other's conduct in setting prices.").

**Defendants' Instruction No. 16**

**First Sherman Act Element – Meeting With Competitors is Not Illegal**

It is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices. A person's presence in a meeting, on a telephone call with competitors, or communicating by text or email, without more, is also insufficient to make a person a knowing participant in a price-fixing or bid-rigging agreement.

**Authority**: *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990) ("In the absence of an agreement on a course of action that is designed to eliminate competition, it is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices."); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 451-52 (10th Cir. 1984) (charging the jury that "the fact that [various persons] may have associated with each other and may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy"); *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991) ("Those having no knowledge of the conspiracy are not conspirators. Nor does one become a member of a conspiracy merely by associating with conspirators known to be involved in crime." (quotation omitted)); *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990) ("Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy.").

**Defendants' Instruction No. 17**

**First Sherman Act Element – Employees of the Same Corporation
Cannot Conspire Among Themselves**

A conspiracy requires an agreement between at least two separate parties. This means that in order to find a conspiracy, you must find that individuals from competing companies agreed to suppress and eliminate competition by rigging bids for and fixing prices of broiler chicken products sold in the United States. A corporation cannot conspire with its own officers or employees. Nor can a corporation's employees conspire among themselves.


**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-5 (2018 ed.) (modified); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 10 (modified); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 38 (modified); *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 474 (10th Cir. 1990) ("[T]he law will not recognize a conspiracy when the only possible 'conspirators' are a company and its employee, officer or owner." (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984))).

**Defendants' Instruction No. 18**

**First Sherman Act Element – Specific Issue Unanimity is Necessary**

To convict a defendant, you must unanimously agree that that each defendant participated in the particular price-fixing conspiracy that is charged in the superseding indictment. In other words, even if all of you find that a defendant participated in some conspiracy, if you cannot agree on the intended goal of such illegal agreement, you must acquit that defendant.

[To be tailored depending on the evidence at trial]


**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.24 (2021, ed.) (modified); *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 874-75 (10th Cir. 1989) (affirming instruction that "told the jury that it must find the defendants not guilty of the Sherman Act count if it concluded 'that the government has failed to prove the existence of the single, continuing conspiracy charged in the indictment'").

**Defendants' Instruction No. 19**

**Second Sherman Act Element – "Knowingly" Joined**

The second element the government must prove beyond a reasonable doubt is that each defendant knowingly joined the alleged illegal agreement. To act "knowingly" means to act voluntarily and intentionally with an awareness of the objective of the conspiracy. That is, the government must prove that each defendant joined the alleged illegal agreement with the intent to aid or advance the purposes of the alleged conspiracy, and not because of a mistake, accident, recklessness, or some other innocent reason.

Therefore, you may not convict a defendant unless the evidence establishes beyond a reasonable doubt (1) that the defendant knew that the goal of the agreement was to suppress and eliminate competition by fixing prices and other price-related terms and to rig bids for broiler chicken products sold in the United States and (2) that the defendant joined the charged conspiracy sharing that objective and actually intended to carry out the agreement in fact.

A person may become a member of a conspiracy without full knowledge of all the details of the alleged conspiracy, the identity of all of its members, or the parts they played in the charged conspiracy. Knowledge of the essential nature and objectives of the alleged illegal agreement is enough.

On the other hand, a person who has no knowledge of an alleged illegal agreement, but who happens to act in a way which furthers some object or purpose of the alleged agreement does not thereby become a member of the alleged conspiracy. Similarly, mere knowledge of an alleged illegal agreement without participation in the alleged conspiracy is insufficient to make a person a member of the alleged conspiracy. And mere association with one or more members of

an alleged conspiracy, or similarity of conduct, is also insufficient to make a person a member of an alleged conspiracy.  A person may know, supervise, work for or with, communicate with, or be friendly with a member of a conspiracy, without being a conspirator himself.

Your determination whether each defendant knowingly joined the alleged conspiracy must be based solely on the actions of each particular defendant as established by the evidence. You should not consider what others may have said or done to join the alleged conspiracy. Membership of the defendant in this alleged conspiracy must be established by evidence of his own conduct—what he said or did.

A person is not responsible for the conduct of others performed on behalf of a corporation merely because that person is an officer, employee, or other agent of the corporation.

**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-10 (2018 ed.) (modified); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 10 (modified); *United States v. Therm-All, Inc.*, 373 F.3d 625, 639 (5th Cir. 2004) (approving instruction stating "[t]he Government has to prove beyond a reasonable doubt that the Defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the Defendant actually intended to carry out the agreement in fact."); Jury Instructions*, United States v. Swanson*, No. 4:06-cr-00692-PJH (N.D. Cal. Mar. 10, 2008), Doc. 337 at 24, 27 ("In order to find that the Defendant acted knowingly, you must find that he voluntarily and intentionally became a member of the conspiracy charged in the indictment knowing of its goal and intending to help accomplish it."); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc.

621 at 30 (modified); *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991) ("Those having no knowledge of the conspiracy are not conspirators. Nor does one become a member of a conspiracy merely by associating with conspirators known to be involved in crime." (quotation omitted)); *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990) ("Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy.").

**Defendants' Instruction No. 20**

**Third Sherman Act Element –Unreasonable Restraint of Trade**

The third element that the government must prove, beyond a reasonable doubt, is that the charged agreement was one that would unreasonably restrain competition.

To determine whether a restraint unreasonably restrains trade, you must weigh all of the facts of the case, including the circumstances, details, and logic of each defendant's conduct. The alleged agreement must have unduly harmed competition before you can declare it an unreasonable restraint of trade.

To prove an unreasonable restraint, the government must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market. The first aspect is known as the relevant product market. The second aspect is known as the relevant geographic market. It is the government's burden to prove the existence of a relevant market.

If you find that the government has proven the existence of a relevant market, then you must determine whether the government has proven that the challenged conduct has a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, and higher product quality. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm and you should find that the challenged conduct was not unreasonable.

If you find that the government has proved that the challenged restraint resulted in a

substantial harm to competition in a relevant market, then you must consider whether the restraint produced countervailing competitive benefits. If you find that it did, then you must balance the competitive harm against the competitive benefit. The challenged restraint is unreasonable under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighed the competitive benefit.

**Authority**: ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases Chapter 1.C, Instructions 3A-3B (2016) (modified); *NCAA v. Alston*, 141 S. Ct. 2141, 2160 (2021) (in suit "involve[ing] admitted horizontal price fixing," Court explained factors the factfinder should consider in determining whether an agreement unreasonably restrains competition: "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition"; and "The whole point of the rule of reason is to furnish an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint to ensure that it unduly harms competition before a court declares it unlawful" (quotations omitted)); *United States v. Gaudin*, 515 U.S. 506, 509-10 (1995) ("The Fifth Amendment to the United States Constitution guarantees that no one will be deprived of liberty without 'due process of law'; and the Sixth, that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.' We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.").

**Defendants' Instruction No. 21**

**Fourth Sherman Act Element – Interstate Commerce**

If you find that the charged conspiracy existed, and that the defendants joined that conspiracy knowingly and with the intent to unreasonably restrain trade, then you must consider the final element the government must prove, again beyond a reasonable doubt. That is that the alleged conspiracy concerned interstate commerce.

The government may prove this element in one of two ways. First, the government may prove that the alleged conspiracy was imposed directly upon goods or services in the flow of interstate commerce—that is, commerce moving from one state to another. Second, the government may prove that the alleged conspiracy had a substantial effect on interstate commerce.

If you find that the defendants' activities were directly imposed on goods or services within the flow of interstate commerce, then the amount, quantity, or value of interstate commerce involved or affected does not matter.

But if you find that the defendants' illegal activities were completely local in nature and confined to a single state, then you must assess the effect the defendants' alleged activities had on trade between states. You may find that the alleged conspiracy involved interstate commerce if the defendants' alleged illegal activities affected more than an insignificant amount of trade between states. If, however, you find that the defendants' alleged illegal activities had either no impact or only a minimal impact on interstate trade, then you must find that the defendants' alleged illegal activities did not involve interstate commerce, and you must find the defendants not guilty.

**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury

Instructions §§ 58-16, 58-17, 58-18 (2018 ed.) (modified).

**Defendants' Instruction No. 22**

**Count One Sherman Act Venue**

Before you can find any defendant guilty on Count One, you must find by a preponderance of the evidence that, between 2012 and early 2019, the conspiratorial agreement or some act in furtherance of the alleged conspiracy occurred in the District of Colorado. This district includes the State of Colorado.

To prove something by a preponderance of the evidence is to prove it is more likely true than not true. This is a lesser standard than "beyond a reasonable doubt."

**Authority**: Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 22 (modified).

**Defendants' Instruction No. 23**

**Theory of the Defense**

[Defendants intend to request an instruction on the defense theory of the case. Defendants reserve their right to submit that request at the close of trial.]


**Authority**: *United States v. Beckstrom*, 647 F.3d 1012, 1016 (10th Cir. 2011) ("A criminal defendant is entitled to an instruction on his theory of defense provided that theory is supported by some evidence and the law." (quoting *United States v. Haney*, 318 F.3d 1161, 1163 (10th Cir. 2003)).

**Defendants' Instruction No. 24**

**Common Defense**

To help in the administration of the trial, I have asked defense counsel to cooperate in order to promote efficiency. They have been required to sit together and encouraged for your benefit to cooperate and to join together in examining witnesses and presenting their defenses. This does not constitute evidence that their clients were previously associated in any conspiracy, and you must draw no inference from their common defense efforts.

**Authority**: 3 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions § 58-9 (2018 ed.) (modified).

**Defendants' Instruction No. 25**

**Defendants' Reputations**

[If Applicable]

You have heard testimony about [relevant defendants] character for law-abidingness and honesty and truthfulness [other characteristics]. You should consider such evidence, along with all other evidence in the case, in deciding whether the government has proved beyond a reasonable doubt that that defendant committed the crime charged.

Evidence in the form of reputation for honesty and integrity may be sufficient to raise a reasonable doubt whether the defendant[s] [is/are] guilty because you may think it improbable that a person of honesty and integrity would commit such a crime. Evidence in the form of reputation of a defendant's honesty and integrity may be inconsistent with those traits of character ordinarily involved in the commission of the crime charged, and may give rise to a reasonable doubt. You may also consider any evidence offered to rebut the evidence of reputation offered by the defendant.

You must always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.09.1 (2021, ed.) (modified); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 37 (modified); Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-9 at 19 (modified); *Michelson v. United States*, 335 U.S. 469, 476 (1948) ("[A defendant] may introduce affirmative testimony that the general estimate of his

character is so favorable that the jury may infer that he would not be likely to commit the offense

charged. This privilege is sometimes valuable to a defendant for this Court has held that such

testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and

that in the federal courts a jury in a proper case should be so instructed.").

**Defendants' Instruction No. 26**

**Charts and Summaries Not in Evidence**

[If Applicable]

Certain charts and summaries have been shown to you to help explain the evidence in this case. These charts and summaries were not admitted into evidence and will not go into the jury room with you. Their only purpose was to help explain the evidence. These charts and summaries are not evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.41 (2021, ed.) (modified).

**Defendants' Instruction No. 27**

**Statute of Limitations for the Sherman Act, Count One**

The grand jury returned an indictment against Mr. Penn, Mr. Fries, Mr. Brady, and Mr. Austin on June 2, 2020. The grand jury returned a superseding indictment against all defendants on October 6, 2020.

There is a five-year statute of limitations that applies to the offense charged in Count One. This means that you cannot find Mr. Penn, Mr. Fries, Mr. Brady, or Mr. Austin guilty unless the government proves, beyond a reasonable doubt, that the alleged conspiracy existed at some point within the period of the statute of limitations, which for purposes of Mr. Penn, Mr. Fries, Mr. Brady, and Mr. Austin is the period beginning June 2, 2015, and continuing until June 2, 2020. The statute of limitations period for Mr. Mulrenin, Mr. Kantola, Mr. Little, Mr. Lovette, Mr. Roberts, and Mr. Blake is the period beginning October 6, 2015, and continuing until October 6, 2020.

To prove that the alleged conspiracy existed, the government must prove beyond a reasonable doubt that one or more members of the alleged conspiracy performed some overt act in furtherance of the objective of the alleged conspiracy during the applicable statute of limitations period. Evidence of acts committed before the statute of limitations period is not evidence that any acts in furtherance of the charged conspiracy were committed during the limitations period.

Moreover, if any defendant joined the conspiracy but abandoned it or withdrew before the statute of limitations time period applicable to that defendant, you must find that defendant, not guilty. Abandonment may be shown by affirmative acts inconsistent with the object of the

alleged conspiracy and communicated in a manner reasonably calculated to reach the other conspirators.

**Authority**: Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal. Nov. 27, 2019), Doc. 621 at 33 (modified); *United States v. Kemp & Assoc., Inc.*, 907 F.3d 1264, 1270 (10th Cir. 2018) (addressing statute of limitations under the Sherman Act; "[t]he operative question here … is whether, on the face of the indictment we can conclude that no overt act occurred"); *United States v. Therm-All, Inc.*, 373 F.3d 625, 633 (5th Cir. 2004) ("The statute of limitations runs from the last overt act. Stated another way, an overt act must occur within a certain time period—as defined in the statute of limitations—prior to the date on which the indictment is brought."); *United States v. Brown*, 936 F.2d 1042, 1048 (9th Cir. 1991) (noting that "the law was correctly stated" in jury instructions that informed jury "it had to find that a member committed an overt act in furtherance of the conspiracy" within the limitations period); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 462-65 (1978).

**Defendants' Instruction No. 28**

**Count 2: False Statements**

Defendant Little is charged in Count Two with making false statements in violation of 18 U.S.C. Section 1001(a)(2).

This law makes it a crime to knowingly and willfully make a false statement concerning a material fact within the jurisdiction of the executive branch of the United States Government.

To find Defendant Little guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: Defendant Little made a false statement or representation to the government; specifically: he had no contact with individuals at competing Suppliers outside of industry trade shows, and he had not called or sent text messages to any individuals at competing Suppliers.

*Second*: Defendant Little made the statements knowing they were false;

*Third*: Defendant Little made the statements willfully, that is deliberately, voluntarily and intentionally;

*Fourth*: the statement was made in a matter within the jurisdiction of the executive branch of the United States; and

*Fifth*: the statement was material to the executive branch of the United States Government.

A fact is "material" if it has a natural tendency to influence or is capable of influencing a decision of the executive branch of the United States Government.

It is not necessary that the executive branch of the United States Government was in fact influenced in any way.

In order to find Defendant Little guilty of making false statements, you must unanimously agree on which statement was false.

**Authority**:  Tenth Circuit Criminal Pattern Jury Instruction 2.46.1 (2021, ed.) (modified).

**Defendants' Instruction No. 29**

**Count 2: Willfully – To Act**

The word "willfully" is sometimes said to be a word of many meanings whose construction is often dependent on the context in which it appears. Most obviously it differentiates between deliberate and unwitting conduct, but in the criminal law it also typically refers to a culpable state of mind. As a general matter, when used in the criminal context, a willful act is one undertaken with a bad purpose.

The government must prove that Defendant Little knew his conduct was unlawful, but not that Defendant Little knew the precise legal duty which he was charged with violating.

**Authority**:  Tenth Circuit Criminal Pattern Jury Instruction 1.38 (2021, ed.) (modified); *Bryan v. United States*, 524 U.S. 184, 191, 196-198 (1998).

**Defendants' Instruction No. 30**

**Count 3: Obstruction of Justice**

Defendant Little is charged in Count Three with obstructing justice in violation of 18 U.S.C. § 1512 (c)(2). This law makes it a crime for anyone to corruptly obstruct, impede, or influence any official proceeding or to attempt to do so.

To find Defendant Little guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: Defendant Little acted knowingly;

*Second*: Defendant Little obstructed, influenced, or impeded or attempted to obstruct, influence, or impede an official proceeding;

*Third*: Defendant Little acted corruptly, that is, that he acted knowingly and dishonestly with the wrongful purpose to obstruct, influence or impede the due administration of justice;

*Fourth*: Defendant Little's alleged actions had a relationship in time, causation, or logic with the proceeding such that it was foreseeable Defendant Little's conduct would interfere with the proceeding. In other words, the government must prove to you beyond a reasonable doubt that obstruction of an official proceeding was the natural and probable outcome of Defendant Little's conduct.

An "official proceeding" means a proceeding before a judge or court of the United States or a Federal Grand Jury. You must keep in mind that an official proceeding need not be pending or about to be instituted at the time of the offense. However, as described above in the fourth element that the government must prove, an official proceeding must be reasonably foreseeable to Defendant Little at the time of his alleged conduct.

Defendant Little's act must have had the "natural and probable effect" of interfering with the due administration of justice.

If you find that Defendant Little lacked knowledge that his actions were likely to affect the official proceeding, then he necessarily lacked the requisite intent to obstruct.

Merely uttering false statements does not "corruptly influence" within the meaning of the statute.


**Authority**: *United States v. Ahrensfield*, 698 F.3d 1310, 1324-25 n.9 (10th Cir. 2012); *United States v. Phillips*, 583 F.3d 1261, 1264 (10th Cir. 2009); *United States v. Aguilar*, 515 U.S. 593, 599-601 (1995); *United States v. Gordon*, 710 F.3d 1124, 1149-1152 (10th Cir. 2013); *United States v. Friske*, 640 F.3d 1288 (11th Cir. 2011).

**Defendants' Instruction No. 31**

**Equal Consideration for All Parties**

The fact that this prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that granted to defendants or any other party to a legal case. All parties, whether the government or individuals, stand as equals at the bar of justice.

**Authority**: Jury Instructions, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo. June 19, 2008), Doc. 319-10 at 19 (modified).

**Defendants' Instruction No. 32**

**Duty to Deliberate**

In a moment the court security officer will escort you to the jury room and provide each of you with a copy of the instructions that I have just read. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you must select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Any verdict you reach must represent the unanimous collective judgement of the jury. In order to return a verdict, it is necessary that each and every juror agree to it. In other words, any verdict you reach must be unanimous. Your deliberations will be secret. You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved the defendants guilty beyond a reasonable doubt.

A verdict form has been prepared for your convenience.

**[Court reads the Verdict Form]**

You will take the verdict form to the jury room and when you have reached unanimous

agreement as to your verdict, the foreperson will write the unanimous answer of the jury in the space provided for each count of the superseding indictment. At the conclusion of your deliberations, the foreperson, together with all other jurors, should date and sign the verdict form and then notify the Court through a note given to the security officer that you have reached a verdict.

**Authority**: Tenth Circuit Criminal Pattern Jury Instruction 1.23 (2021, ed.) (modified); Jury Instructions, *White v. Deere & Co.*, 13-cv-2173 (D. Colo. Mar. 2, 2016) (Brimmer, J.), Doc. 251 at 38-39 (modified).