IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

---

# ORDER

---

This matter comes before the Court on defendants' objections to the Court's jury trial protocols. Docket No. 522.

Defendants object to the following jury trial protocols: (1) requiring or permitting jurors to wear obstructive masks while they are speaking during voir dire; (2) requiring or permitting witnesses to wear obstructive masks during their testimony; (3) providing witnesses with the option to testify via video teleconference ("VTC"); (4) requiring unvaccinated jurors to sit in the gallery and permitting any juror to opt to sit in the gallery; (5) excluding certain unvaccinated potential jurors; (6) configuring the courtroom so that government counsel have their backs to the jury in close proximity to the box,

which would allow jurors to see the government's computer screens; and (7) closing the courtroom to the public's physical presence during voir dire and trial. *Id.* at 2. The government opposes the objection, arguing that the jury trial protocols are appropriate. Docket No. 562 at 3-5.

**I. Mask Requirement**

The jury protocols require "[a]ll potential jurors, whether vaccinated or unvaccinated, [to] wear masks during the jury selection process." United States District Court for the District of Colorado, Jury Trial Protocols – Revised August 9, 2021, 1 (hereinafter "Protocols"). The Protocols also require that all witnesses "must testify in the courtroom with masks or via [VTC] from another location in the courthouse without a mask" except that, "in the discretion of the judicial officer, fully vaccinated witnesses may testify without masks." *Id.* at 3. Defendants argue that requiring prospective jurors to wear masks violates their right to an impartial jury because they will not be able to adequately assess the prospective jurors' demeanor. Docket No. 522 at 3. Defendants also argue that requiring witnesses to wear masks during their testimony or testify via VTC without masks violates the Confrontation Clause and due process. *Id.* at 4-5.

Masks have been singled out by public health professionals as the best measure, other than vaccinations, to prevent the spread of coronavirus. Wearing cloth masks in the courtroom, where trial participants will be for hours each day, is particularly important. Allowing someone who is testifying or speaking not to wear a mask creates risks to others in the courtroom. It also lessens the perception of courtroom safety for jurors. It is counterintuitive to have the persons posing the greatest risks to everyone

2

else in the courtroom, namely, the witnesses testifying or jurors speaking during voir dire, not to wear masks.

Recent data support these conclusions. As of the date of this order, the Centers for Disease Control and Prevention ("CDC") states that the "Delta variant causes more infections and spreads faster than earlier forms of the virus that causes COVID-19." CDC, *Your Health*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/index.html (last updated Mar. 23, 2021) (hereinafter "CDC, *Your Health*"). The Delta variant accounts for virtually all of the cases being reported in Colorado. Colorado Department of Public Health and Environment, *Colorado COVID-19 Data*, https://covid19.colorado.gov/data (last visited Oct. 7, 2021) (hereinafter "CDPHE, *Colorado COVID-19 Data*"). The CDC recommends that all persons, whether vaccinated or not, "wear masks indoors in public spaces to reduce the spread of this variant." CDC, *Your Health*. The CDC also notes, "When you wear a mask, you protect others as well as yourself. Masks work best when everyone wears one." CDC, *Guidance for Wearing Masks*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html#:~:text=When%20you%20wear%20a%20mask,t%20live%20in%20your%20household (last updated April 19, 2021) (hereinafter "CDC, *Guidance for Wearing Masks*"). The seven-day positivity rate of COVID-19 for Colorado is currently 6.9%. CDPHE, *Colorado COVID-19 Data.* The CDC guidance and Colorado Public Health Department data justify the use of masks and other protective measures in the Protocols to prevent the transmission of the Delta variant, not only to unvaccinated persons in the courtroom,

but also to vaccinated people who may become infectious despite having been vaccinated and who may pass the virus to others, thereby spreading the disease.

It is especially important for potential jurors to wear masks during jury selection. During jury selection, strangers have to sit relatively close to one another and answer questions. In order for the jurors to be protected from the spread of COVID-19 and in order for sensitive jurors to feel comfortable about their safety, a mask requirement is necessary. The defendants suggest that jurors be allowed to wear clear plastic face shields. Docket No. 522 at 3-4. The CDC website states that the CDC does not recommend using face shields. CDC, *Your Guide to Masks*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/about-face-coverings.html (last updated Aug. 13, 2021). Face shields, which provide no filtering, have no demonstrated efficacy in preventing the spread of COVID-19 as a mask substitute. In regard to witnesses, the defendants suggest the use of plexiglass around the witness stand. Docket No. 522 at 7. As with face shields, impermeable barriers do not filter the air, but rather redirect it.[1] Having witnesses testifying without masks from 8:30 a.m. to

---

[1] Numerous studies have confirmed this. *See Household COVID-19 risk and in-person schooling*, 372 Science 1092 (2021), *available at* https://www.science.org/doi/full/10.1126/science.abh2939 (findings from Johns Hopkins University study in June 2021 showed that desk screens in classrooms were associated with an increased risk of COVID-19 infection); Shira Doron, M.D. & Robin R. Ingalls, M.D., et al., *Weekly SARS-CoV-2 screening of asymptomatic students and staff to guide and evaluate strategies for safer in-person learning*, medRxiv, March 22, 2021, *available at* https://www.medrxiv.org/content/10.1101/2021.03.20.21253976v1.full.pdf (findings from Massachusetts school district that plexiglass dividers impeded air flow); J. Gettings & M. Czarnik, et al., *Mask Use and Ventilation Improvements to Reduce COVID-19 Incidence in Elementary Schools*, 70 MMWR, 779 (2021), *available at* http://dx.doi.org/10.15585/mmwr.mm7021e1 (findings from the CDC's *Morbidity and Mortality Weekly Report* that desk barriers did little to mitigate the spread of COVID-19 compared with improved ventilation and masking).

5:00 p.m. would mean that their unfiltered exhalations are going around the barrier to other parts of the courtroom. Given the defendants' request for the Court to place more tables and chairs in the courtroom for the trial, there are now more people located closer to the witness stand.

The right to both physically face a witness and to observe the witness's demeanor is not absolute. "[T]he Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849 (1990) (citations and quotations omitted). "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id*. at 850. Several exceptions to face-to-face confrontation have been permitted. For example, in *United States v. de Jesus-Casteneda*, a confidential informant testified in a wig and fake mustache. 705 F.3d 1117, 1119 (9th Cir. 2013). The Ninth Circuit held that the disguise was necessary to further the important government interest of protecting the witness's safety because the witness continued to act as a confidential informant against the Sinaloa Cartel. *Id*. at 1120. As to reliability, the court reasoned that reliability was otherwise assured because the witness was

> (1) . . . physically present in the courtroom, (2) he testified under oath, thus impressing him with the seriousness of the matter and the possibility of penalty for perjury, (3) he was subject to cross-examination while

>Appellant could see him, (4) despite his disguise, the jury was able to hear his voice, see his entire face including his eyes and facial reactions to questions, and observe his body language.

*Id*. at 1121.

The Second Circuit has also permitted witnesses to partially obstruct their faces while testifying. In *Morales v. Artuz*, a witness refused to remove her sunglasses and, after "two recesses and extensive colloquy with counsel," the trial court permitted the witness to testify with sunglasses. 281 F.3d 55, 57 (2d Cir. 2002). The trial judge found that, although the sunglasses were so dark that the witness's eyes were not visible, the witness exhibited "great fear" in testifying without her sunglasses. *Id*. The Second Circuit noted that "[s]eeing a witness's eyes has sometimes been explicitly mentioned as of value in assessing credibility." *Id*. at 60. Nevertheless, the court held that the sunglasses "resulted in only a minimal impairment of the jurors' opportunity to assess her credibility," *id*. at 60-61, because the jury "had an entirely unimpaired opportunity to assess the delivery of [her] testimony, notice any nervousness, and observe her body language." *Id*. at 61. The court reasoned that the jury "had a full opportunity to combine these fully observable aspects of demeanor with their consideration of the substance of her testimony, assessing her opportunity to observe, the consistency of her account, any hostile motive, and all the other traditional bases for evaluating testimony." *Id*. at 62.

Similarly, although the Protocols require witnesses to wear masks while testifying, the jurors and other people in the courtroom will have the ability to observe the witness's eyes and body movements and hear the witness's voice inflections and words. Given the important reasons requiring witnesses to wear masks for other

6

people's safety, the mask requirement does not violate the Confrontation Clause. Moreover, the requirement that jurors wear masks while speaking during voir dire does not raise constitutional concerns. *See United States v. Berglund*, 2021 WL 1589548, at *1 (D. Minn. Apr. 23, 2021) ("Courts have repeatedly found that requiring participants at trial to wear face masks due to the COVID-19 pandemic does not violate a criminal defendant's constitutional rights.") (collecting cases); *United States v. Watkins*, 2021 WL 3732298, at *6-7 (W.D.N.Y. Aug. 24, 2021) (rejecting defendant's arguments that requiring prospective jurors and empaneled jurors to wear surgical masks during voir dire and trial violated his right to an impartial jury and fair trial); *United States v. Crittenden*, 2020 WL 4917733, at *7-8 (M.D. Ga. Aug. 21, 2020) (finding mask requirement during jury selection and for testifying witnesses did not violate the Confrontation Clause or the right to a fair and impartial jury).

      Defendants object to the option that the parties have under the Protocols to conduct a witness examination from another location in the courthouse via VTC with the witness not wearing a mask. Docket No. 522 at 5-6. The cases the defendants cite regarding VTC examinations of witnesses are not on point. A VTC examination is an option, not a requirement, under the Protocols. If a defendant wants to confront a witness in person, he or she can do so in court, albeit with the witness wearing a mask. This aspect of the Protocols distinguishes the Protocols from the cases defendants cite. It is difficult to understand why there is a Confrontation Clause violation if a defendant can choose to confront a witness through cross-examination either in court with the witness wearing a mask or by VTC without the witness wearing a mask.

## II. Jurors in the Gallery

The Protocols require unvaccinated jurors to sit in the courtroom gallery to provide social distancing and permit vaccinated jurors to sit in the gallery if they wish. Protocols at 2.  Defendants argue that requiring unvaccinated jurors to sit in the gallery would result in a miscarriage of justice because they would be unable to assess the presentation of evidence from such a distance, prevent counsel from being able to address all jurors at once, make jurors feel alienated and reduce attention spans, and will require counsel to question witnesses with their backs to some jurors.  Docket No. 522 at 7-8.  Jurors sitting in the gallery would be in the front bench, not throughout the gallery.  Moreover, any sight or hearing issues by jurors can be addressed during the actual trial, depending on which jurors may have such issues.

## III. Excluding Unvaccinated Jurors

Defendants argue that the Protocols' exclusions of certain symptomatic or unvaccinated persons violate the Constitution.  Docket No. 522 at 9-10.  The Protocols provide:

> Before their expected service, potential jurors will be contacted and screened for factors that would automatically excuse them from service. These factors include:
> - Currently experiencing any symptoms of COVID-19, including a fever, cough, shortness of breath, or recent loss of the sense of taste or smell;
> - Being unvaccinated and having had close contact in the last 14 days with any person who has been diagnosed within the last month with COVID-19;
> - Having been asked to self-quarantine by any doctor, hospital, or health agency;
> - Being unvaccinated and being recognized by the CDC as a person at higher risk for severe illness from COVID-19; or
> - Being fully vaccinated and being immunocompromised.

Protocols at 1. "To establish a prima facie violation of the fair-cross-section requirement . . . a defendant must prove that: (1) a group qualifying as 'distinctive' (2) is not fairly and reasonably represented in jury venires, and (3) 'systematic exclusion' in the jury-selection process accounts for the underrepresentation." *Berghuis v. Smith*, 559 U.S. 314, 327 (2010) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Defendants argue that the Protocols will systematically exclude unvaccinated jurors from the jury pool. Docket No. 522 at 10. Defendants cite the CDC website, which states that older adults are more likely to get severely ill from COVID-19 and "[l]ong-standing systemic health and social inequities have put various groups of people at increased risk of getting sick and dying from COVID-19, including many racial and ethnic minority groups and people with disabilities." *Id.* at 9. Defendants argue that automatically excluding unvaccinated older adults and racial and ethnic minorities and people with disabilities would violate the Jury Selection Act and the Sixth Amendment. *Id.* at 10. Defendants additionally argue that the expansive list of medical conditions will require excluding a high percentage of the unvaccinated, and that unvaccinated individuals should be seen as a "distinct group" that the exclusion of violates the requirement to have a fair cross section of the community. *Id.* at 10-11.

The Court rejects defendants' invitation to find that unvaccinated individuals are a "distinct group." Defendants arguments regarding age,[2] race, ethnicity, and disability

---

[2] Additionally, older adults do not constitute a distinct group. *See United States v. Green*, 435 F.3d 1265, 1271 (10th Cir. 2006) ("Groups found not to have common interests such that they are considered a 'distinct group' include younger people, college students, and persons over 70.").

are premised on the person being unvaccinated, and are therefore meritless unless the Court finds that unvaccinated individuals are a distinct group.

> In determining whether a group is "distinctive" for these purposes, we consider three factors: (1) whether the group is defined by a "limiting quality (i.e. the group has a definite composition such as race or sex)"; (2) whether "a common thread or basic similarity in attitude, idea, or experience runs through the group"; and (3) whether "a community of interests exists among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process."

*United States v. Kamahele*, 748 F.3d 984, 1023-24 (10th Cir. 2014) (quoting *Green*, 435 F.3d at 1271). Defendants argument fails on the first prong. Vaccination status is not a "limiting quality." It is a choice; the group of individuals unvaccinated against COVID-19 does not have a "definite composition." Additionally, defendants have not shown that unvaccinated persons have a common thread or attitude, or that it is a group with interests that cannot be adequately represented if excluded from the jury selection process. Finally, as the government notes, the Protocols specifically contemplate empaneling unvaccinated jurors. *See* Docket No. 562 at 5. Accordingly, the Court rejects defendants' objection to the Protocols on this point.

## IV. Courtroom Configuration

Defendants argue that the Court's proposed courtroom configuration will result in jurors being able to view the government's computers. Docket No. 522 at 12. Putting aside the fact that the defendants are the ones who insisted on putting more tables in the courtroom and the fact that removing some tables would enable the government to be farther away from the jury, the government and defendants will be required to ensure that words on their computer screens are not readable by the jury.

## V. Public Access to the Courtroom

The Protocols state that members of the public will be excluded from the courtroom during voir dire. Protocols at 2. Also, members of the public may be excluded from the trial if jurors are seated in the gallery and "if the presiding judicial officer believes that the presence of spectators will interfere with the trial." *Id.* at 3. Defendants argue that excluding the public from the courtroom during voir dire and the trial violates their right to a public trial. Docket No. 522 at 12-13.

It is physically impossible to accommodate the number of prospective jurors necessary to conduct jury selection and also allow members of the public to sit in the courtroom. During the jury selection process, the jurors will occupy the entire gallery. However, members of the public will have the ability to listen to jury selection through an audio connection. That provides public access. After jury selection, the Court will assess the number of spectators and empty seats within the gallery and establish an overflow room if needed, where members of the public will be able to see and hear the trial proceedings.

For the foregoing reasons, the Court overrules defendants' objections to the jury protocols.

DATED October 7, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge