# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   **WILLIAM VINCENT KANTOLA**,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10.  RICKIE PATTERSON BLAKE,

      Defendants.

---

## DEFENDANT WILLIAM KANTOLA'S TRIAL BRIEF

---

COMES NOW, Defendant William Kantola, by and through his undersigned counsel, and submits this Trial Brief in supplementation of the Defendants' Joint Trial Brief.[1]

## I. INTRODUCTION

Mr. Kantola is charged in one count of the Superseding Indictment with violating Section One of the Sherman Act, 15 U.S.C. § 1 by engaging in an agreement to fix prices and rig bids over a seven-year period. In some respects, as explained in the Joint Trial Brief, the issues at trial with regard to him are parallel to those of other defendants. In other respects, however, the

---

[1] *See* Dkt. 631 (Court Order permitting joint and separate trial briefs).

issues are distinctly unique, including those concerning the critical proof the Government must adduce on (1) what Mr. Kantola  did or did not do: (2) what he understood; and (3) what he intended.  And the manner in which he is differently situated will lead to trial issues that require separate consideration of his different circumstances, including regarding evidence that may be admitted against others but not against him.

At trial, the Government will not meet its burden to show beyond a reasonable doubt that Mr. Kantola knowingly joined the alleged agreement to fix prices or rig bids.  The inferences the Government will ask the jury to draw from snippets of documents and phone records cannot be supported in light of the full documents and the evidence of the surrounding circumstance.  Jury instructions will be critical to a fair trial in these circumstances.  Additionally, Mr. Kantola asserts that the evidence that will be presented at trial will not permit use of the per se presumption, both under the articulation of what is a per se offense and as a matter of constitutional law.  Moreover, Mr. Kantola expects that at trial the evidence will expose why the Sherman Act is unconstitutionally vague as applied.

## II.    OBJECTIONS TO VARIOUS GOVERNMENT EVIDENCE

A haphazard collection of unconnected incidents, even of alleged agreements to fix prices or rig bids, does not itself create an overarching agreement over seven years to engage in price fixing or bid rigging, particularly when the evidence demonstrates intense competition among the suppliers during that time.  This point becomes critical when the jury must view the evidence from the vantage of Mr. Kantola to assess what he as an individual in context saw, heard, and did, and personally could have understood.  The proof will show that he did not agree to participate in the alleged conspiracy; that he would not have understood that any such conspiracy existed; and that he was completely disconnected from many of the evidentiary incidents so that

he could not have contemplated that his conduct could have connected him to them in any manner.

When attempting to segregate which evidence may be relevant to Mr. Kantola, the risk of juror confusion is particularly acute. The Government has failed to articulate the scope of the alleged conspiracy and has already demonstrated that, as often as possible, it will refer to defendants as one, and otherwise ignore their separate identities and circumstances.[2]  But the law is clear.  The Government must prove the Sherman Act intent element beyond a reasonable doubt for each individual.  *See Gypsum*, 438 U.S. 422, 440–43 (1978) ("[I]ntent is a necessary element of a criminal antitrust violation."); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 453 (10th Cir. 1984) ("[I]ntent must be pled and proved in any criminal prosecution arising out of the Sherman Act."). This intent must be an intent to join and effectuate an agreement, not merely to raise prices, increase profits, or understand competitor positions. *Gypsum*, 438 U.S. at 443 n.20. At minimum, Mr. Kantola anticipates that at trial there will be objections under Rules 401, 402, and 403 to how the Government presents its evidence and any continued references to treating the defendants as a bloc.

Mr. Kantola notes here only some of the evidentiary issues that will require separate analysis related to him to avoid misleading the jury and otherwise provide a fair trial.  Mr. Kantola is named in but five of 14 incidents in the indictment alleged to comprise the "Means and Methods of the Conspiracy" of the alleged conspiracy.[3]  For anything about the other incidents to be relevant to Mr. Kantola, the Government must show that any conduct related to them would have been within the scope of what *Mr. Kantola* would have understood the scope of

---

[2] *See, e.g.,* Dkt. 620, 636 (Government improperly treating defendants as a single unit for purposes of discovery obligations).

[3] Dkt. 101, ¶51-143.

the alleged price-fixing agreement in which he is alleged to have knowingly agreed to participate. But the trial evidence will not show this. Thus, Mr. Kantola expects to object under Fed.R.Evid. 401, 402, 403, and 801, to various Government evidence at trial to protect his rights to a fair trial under the Rules of Evidence as well as under Constitutional protections to Due Process and the rights to trial by jury and to confront witnesses. For example, at trial, the evidence will show instances of Mr. Kantola directly trying to undercut those very competitors with whom he is alleged to be engaged in price fixing, thus negating any basis to speculate that Mr. Kantola could have understood the scope of any price-fixing or bid-rigging agreement to include those bidding incidents.

Similarly, the Government may try to admit statements of other defendants under Rule 801(2) at a time when that defendant has not been shown to have been part of the alleged conspiracy. For example, the Government failed to proffer evidence to show that Mr. Blake was a member of the conspiracy prior to October 24, 2016.[4] Statements of Mr. Blake prior to that date should not be admitted as evidence at trial because they would constitute inadmissible hearsay with regard to Mr. Kantola and, given the extreme likelihood of juror inability to parse the evidence, could be highly prejudicial, especially as the Government continues to refer to all defendants collectively. Mr. Kantola does not believe that a limiting instruction would cure the prejudice to him of such admission at trial, but will request a limiting instruction in the event the Court permits introduction of any such statements.

---

[4] *See* Dkt. 559 at 20.

## III.    JURY INSTRUCTIONS

With ten defendants, a seven-year span of time, only circumstantial evidence and no witness who claims to have participated in the alleged agreement, the jury may well be misled and confused if not carefully instructed on the law.  We highlight here a few issues.

### A.   Ambiguous Evidence

Given the Government's reliance upon inference from circumstantial evidence to prove the alleged conspiracy and because the law limits the range of permissible inferences in antitrust cases, the jury will need clear guidance on the particulars of these antitrust law limits. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986) (impermissible to draw inference of price-fixing conspiracy when "conduct is consistent with other, equally plausible explanations"). *See* Dkt. 592 Instruction 4.

### B.   Statute of Limitations

While the Government has claimed that its alleged conspiracy continued for seven years until sometime in 2019, the last act attributed to Mr. Kantola in the claimed conspiracy in the Superseding Indictment is on April 1, 2015,[5] when he emailed a customer to agree to a *discount* the customer requested.  Mr. Kantola believes that, at trial, the Government will not be able to sustain its burden of proof regarding the alleged conspiracy or to demonstrate any price fixing or bid rigging, but, because of the potential for juror confusion, a statute of limitations instruction will be necessary given the vague allegations and because the vast bulk of the Government's evidence predates that statutory time frame, relates to separate and isolated incidents, and for Mr. Kantola it was manifest to competitors before the statutory time frame that he was competing to

---

[5] Dkt.101, ¶127 (a).  This alleged act is over five years before Mr. Kantola was charged.

undercut them, which is evidence of withdrawal.[6] It will be important for the jury to understand that they can only convict if they find the alleged overarching agreement alleged, but, especially if the jury were to consider that there ever was any conspiratorial conduct, they will need guidance. *See* Dkt. 592 Instruction 27.

    C.  <u>Sherman Act Element of Unreasonable Restraint of Trade</u>

The Government relies exclusively on its price-fixing label to meet the well-established element of a Sherman Act violation that the alleged restraint of trade is unreasonable or undue. *See National Collegiate Athletic Ass'n v. Alston* (*NCAA*), slip op. at 9 (S.Ct. June 21, 2021) (horizontal price fixing analyzed under rule of reason and requires fact-finding on issue of whether a restraint is unreasonable); *Broadcast Music Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1, 19-21 (1979) (same). The evidence at trial will not show an agreement that meets the requirement that its object constitute a restraint of trade that is "unreasonable" or "undue." "Whether an antitrust violation exists necessarily depends on a careful analysis of market realities," *NCAA*, slip op. at 21, and an information exchange alone does not fall into the per se category in any case, *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990). Defendants' proposed instructions will guide the jury through these issues. *See* Dkt.529 Instructions 11-20.

## IV.    CONSTITUTIONAL PARAMETERS

The proof at trial will raise constitutional issues related to the evidence, the manner of presenting it, and jury instructions that could impair Fifth and Sixth Amendment rights to Due Process, a fair trial, confrontation of witnesses, and a jury determination. Supreme Court

---

[6] Withdrawal can be by conduct inconsistent with the objectives of the alleged conspiracy, including resumption of competition. *See United States v. U.S. Gypsum*, 438 U.S. 422, 464 (1978).

precedent requires that all fact-finding on an element of a criminal offense is reserved for the jury, precluding judicial determinations to substitute without violating constitutional Due Process, the right to trial by jury and also the separation of powers. *Apprendi v. New Jersey*, 530 U.S. 466, 494 (2000)(constitutional "rights indisputably entitle a criminal defendant to a jury determination on every element of the crime"); *United States v. Booker*, 543 U.S. 220, 230 (2005)(same); *United States v. U.S. Gypsum*, 438 U.S. 422 (1978)(rejecting instruction of conclusive presumption of antitrust intent in criminal case where indictment charged price fixing but evidence showed only information exchanges); *Morrisette v. United States*, 342 U.S. 246, 275 (1952)(where intent is an element, "[h]owever clear the proof may be, or however incontrovertible may seem to the judge the inference of a criminal intention, the question of intent can never be ruled as a matter of law, but must always be submitted to the jury…").

The trial facts are expected also to demonstrate that the application of the Sherman Act in this case is unconstitutional under the void-for-vagueness doctrine.  That doctrine requires that a person must know what conduct may bring punishment. *See Connally v. Construction Co.*, 269 U.S. 385 (1926).  To avoid unconstitutional vagueness a criminal offense must be defined "(1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 561 U.S. 358, 402-03 (2010).  Even apart from the historical and ever-changing judicial precedent, it is expected that the evidence will show that ordinary people are unable to understand what a violation of the law is.  For example, Mr. Bryant, on the Government's witness list, stated in his interview with the Government that "he thought [the very same] price sharing [conduct that is the basis for the Government having claimed Bryant was a participant in the alleged conspiracy] was inappropriate but not illegal in 2014".  302 Record of Interview of

Robert Allen Bryant on September 27, 2021.  As other witnesses testify about what they believed "wrong", this testimony, far from having any relevance to what the defendants may have understood, will instead demonstrate how impossible it is for ordinary people to assess legality under the law as applied to the conduct in this case.

## V.   CONCLUSION

Mr. Kantola respectfully notes to the Court that various procedural issues and objections that will likely arise at trial unique to him as well as those affecting codefendants.  In addition, Defendant Kantola highlights that the evidence will not warrant use of the per se presumption both under the Sherman Act under constitutional protections and that the evidence will demonstrate that the Act as applied in this case is unconstitutional as void for vagueness.

Dated:  October 18, 2021
At:      Philadelphia, Pennsylvania

Respectfully submitted,

JAMES A. BACKSTROM, COUNSELLOR

*s/ James A. Backstrom*

1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
Tel: (215) 864-7797
jabber@backstromlaw.com

ROXANN HENRY, ESQ.

5410 Wilson Lane
Bethesda, MD 20814-1342
Tel: (202) 489-9556
Henry.Roxann@me.com

*Counsel for Defendant William Kantola*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 18th day of October, 2021, I filed the foregoing **Defendant William Kantola's Trial Brief** with the Clerk of Court using the CM/ECF system, which will serve notice of such filing on all counsel of record.

At:   Philadelphia, Pennsylvania

<u>*s/ James A. Backstrom*</u>
James A. Backstrom