IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

| | |
|---|---|
| 1. | JAYSON JEFFREY PENN, |
| 2. | MIKELL REEVE FRIES, |
| 3. | SCOTT JAMES BRADY, |
| 4. | ROGER BORN AUSTIN, |
| 5. | TIMOTHY R. MULRENIN, |
| 6. | WILLIAM VINCENT KANTOLA, |
| 7. | JIMMIE LEE LITTLE, |
| 8. | WILLIAM WADE LOVETTE, |
| 9. | GARY BRIAN ROBERTS, and |
| 10. | RICKIE PATTERSON BLAKE, |

       Defendants.

Criminal Case No. 20-cr-00152-PAB

## DEFENDANT JAYSON PENN'S MOTION TO EXCLUDE GOVERNMENT EXHIBIT 1030

Defendant Jayson Penn, by and through undersigned counsel, respectfully submits this Motion to Exclude Government Exhibit 1030, which is a photocopy of handwritten notes.

## INTRODUCTION

The Department of Justice ("DOJ") seeks to admit GX1030, a single page photocopy of years-old, handwritten notes allegedly made by an individual who will not testify at trial. It attempts to rely on the photocopy of the notes without making any showing that the original version is unavailable. This is problematic because GX1030 raises questions about its authenticity and trustworthiness. Indeed, portions of the page appear to have been "whited-out" and overwritten prior to photocopying. Thus, the photocopy does not accurately reflect the

original document, bringing into question the timing of the alterations, who performed them, and the authenticity of the document itself. The DOJ has offered no explanation for these alterations. The Court should exclude the photocopy of these handwritten notes for several independent reasons: (i) the government's proposed custodian witness cannot authenticate the handwritten document; (ii) their admission violates the best-evidence rule, (iii) the DOJ's efforts to authenticate the notes via civil litigation deposition testimony violates the Confrontation Clause,[1] and (iv) the government's attempts to authenticate the notes with a company's non-opposition to a request for admission in civil litigation is insufficient.

## ARGUMENT

### I.     The DOJ's Proposed Custodian of Records Cannot Authenticate Handwritten Notes.

The DOJ intends to show GX1030 to a Mar-Jac custodian, Joel Williams. It appears the DOJ will ask him to authenticate the document on the basis that its Bates number falls within a range of documents for which he offered a Rule 902(13) certification prior to trial. But document authentication requires that the offering party produce "a witness who can testify from his or her own knowledge that the document is what it appears to be." *Van Patten v. Frank*, 2007 WL 5490140, at *1 (E.D. Wisc. Aug. 24, 2007). Mr. Williams lacks that personal knowledge. In his Rule 902(13) certification, Mr. Williams disclaimed any knowledge about or ability to attest to

---

[1] The government first informed Mr. Penn that it intended to use a deposition transcript to authenticate GX1030 when the government mentioned it in a brief filed on the evening of October 23, 2021, a Saturday. Doc. 720. As discussed with the Court during today's morning trial session, Mr. Penn was in the process of finalizing this brief—Mr. Penn is the only defendant purportedly mentioned in GX1030—when the Court issued an order allowing the government to use the deposition transcript during the examination of Mr. Simeon Morbey, a lawyer in parallel civil litigation, in an attempt to authenticate GX1030. Doc. 742 at 3. Pursuant to the Court's instruction, Mr. Penn is filing his brief now.

"hard-copy documents that were produced by Mar-Jac but were not maintained electronically on its servers." GX9502. The handwritten notes in GX1030 presumably were not maintained electronically on Mar-Jac's servers. In fact, the DOJ later made clear that certifications like Mr. Williams' were "not intend[ed] . . . to cover hand-written documents." Doc. 622 at 8 n.8.

Even if GX1030 was maintained on Mar-Jac's servers, Mr. Williams has disclaimed any knowledge about the accuracy of any document's contents, which is particularly problematic given the alterations to and trustworthiness issues with GX1030. *See* GX9502 ("I cannot attest to the accuracy of any content of [Mar-Jac's] records"). Moreover, Mr. Williams appears to have no personal knowledge about the management, maintenance, storage, and retrieval of Mar-Jac documents since all of that information was "provided to [him] by employees of Mar-Jac Poultry, Inc., its affiliates and counsel." *Id*. And as Mr. Williams made clear again last night, he "is not aware of the process by which hard copies were collected and eventually transmitted to USDOJ." Field Investigation Summary of Joel Williams Interview at 1 (Oct. 26, 2021).

Authentication under Rules 901 and 902 is designed to ensure the reliability of documents offered as evidence. *See Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1250 (10th Cir. 2013). Given the many problems with GX1030, Mr. Williams' inability "personally to vouch for the credibility of any entries" further undermines the trustworthiness of the document and renders him unable to authenticate. *United States v. Jackson*, 636 F.3d 687, 693-94 (5th Cir. 2011) (discussing failure to authenticate handwritten materials). Indeed, when there are concerns about trustworthiness of handwritten material, the witness generally must possess personal knowledge regarding the writings' content or the circumstances of their creation. *Biers v. Cline*, 724 F. App'x 189, 192 (4th Cir. 2018) (discussing, in part, Rule 901);

*United States v. Jenkins*, 499 F. Supp. 2d 1268, 1284-85 (M.D. Fla. 2007) (challenging authenticity of business records; trustworthiness of notes summarizing phone call not established where sponsoring witness lacked personal knowledge to provide basis for "glean[ing] the meaning of the relevant entry from its context within the rest" of the document). The witness's mere familiarity with the author's handwriting is insufficient. *Biers*, 724 F. App'x at 192 (handwriting identification insufficient where witness lacked personal knowledge regarding notes).

**II.      Admitting Photocopies of the Handwritten Notes Violates the Best-Evidence Rule.**

The best-evidence rule is a "foundational doctrine" that requires an original writing to be produced in order to prove that writing's contents. *United States v. Chavez*, 976 F.3d 1178, 1193, 1195 (10th Cir. 2020); *see* Fed. R. Evid. 1002 ("An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise."). Duplicates are inadmissible when "a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Here, both conditions require exclusion. Further, while in narrow circumstances the Federal Rules jettison the requirement that an original be produced—such as when (a) "all the originals are lost or destroyed" or (b) the "original cannot be obtained by any available judicial process," Fed. R. Evid. 1004—the DOJ has made no showing that those circumstances exist here. Accordingly, the Court should exclude any proffered photocopies of the notes in GX1030.

1. GX1030, which is a single photocopied page of handwriting, raises questions about authenticity. The government argues that the document reflects handwritten notes by Mar-Jac employee Pete Martin, but portions of the page appear to have been "whited-out" and

overwritten prior to photocopying. GX1030. Thus, the photocopy does not accurately reflect the original document, bringing into question the timing of those alterations, who performed them, and the authenticity of the document itself. The DOJ has offered no explanation for these alterations. *See Lozano v. Ashcroft*, 258 F.3d 1160, 1166 (10th Cir. 2001) (excluding "DOJ's photocopy" of a date-stamped letter where key information contained therein was barely legible).

2. Similarly, it would be unfair to admit the photocopy because portions of the original are "not completely reproduced in the 'duplicate.'" *Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1391 (10th Cir. 1980) (excluding photocopy where critical portions of the original were excluded in the duplicate). Given the apparent white-outs and overwriting, the photocopy is not a complete and accurate reproduction of the original.[2]

3. Duplicates that are inadmissible under the best evidence rule "because there is a genuine question as to the authenticity of the original" cannot be admitted under the "alternative path" of Rule 1004. *Tinley v. Poly-Triplex Techs., Inc.*, 2009 WL 812150, at *6 (D. Colo. March 26, 2009). Rule 1004 allows for copies of documents to be admitted if the original has been "lost or destroyed" (unless the proponent lost or destroyed them in bad faith) or if the original is "not obtainable." Given the questions about the GX1030's authenticity, the photocopies cannot be admitted under Rule 1004. But even if the "alternative path" of Rule 1004 were available, the photocopies in question do not satisfy its requirements. The DOJ has apparently made no effort to obtain the original of the notes, and it has made no showing that the original has been

---

[2] "[I]naccurate or incomplete duplication," was a concern the best-evidence rule was developed to address. *Chavez*, 976 F.3d at 1194-95 ("As between a supposed literal copy and the original, the copy is always liable to errors on the part of the copyist, whether by wilfulness [*sic*] or by inadvertence"—a problem that "wholly disappears when the original is produced.") (quoting *United States v. Alexander*, 326 F.2d 736, 742 (4th Cir. 1964)).

destroyed or is not obtainable. The DOJ cannot invoke Rule 1004's exception to the best-evidence rule under these circumstances. *See Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995) (affirming exclusion of a document under the best-evidence rule where the proponent "did not make a diligent effort in trying to obtain" the original); *cf. Ernest v. Lockheed Martin Corp.*, 2008 WL 2958964, at *6 (D. Colo. July 29, 2008) ("the most common means of proving loss or destruction is the use of circumstantial evidence showing a diligent but unsuccessful search and inquiry for the document.").

## III.    The DOJ Cannot Authenticate the Handwritten Notes Via Civil Deposition Testimony.

Even if the Court concludes that photocopies of handwritten notes satisfy the best-evidence rule, that "does not mean that the evidence in question is necessarily admissible. The evidence remains subject to other admissibility objections under the Evidence Rules and the Constitution," including authentication. *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1144 (10th Cir. 2006) (citation omitted). Federal Rule of Evidence 901 requires the proponent of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *United States v. Hernandez-Herrera*, 952 F.2d 342, 343 (10th Cir. 1991) ("Authentication is a prerequisite to the admission of evidence.").

1. Here, Mr. Martin will not testify at trial and therefore cannot authenticate GX1030. *See* Doc. 589 (defense witness list), Doc. 590 (DOJ witness list); Doc. 719-1 (DOJ revised witness list). The DOJ hopes instead to authenticate the notes through a hearsay statement from Mr. Martin's deposition in a related civil case—*In re Broiler Chicken Antitrust Litigation*, 16-cv-

8637 (N.D. Ill.). Doc. 720 at 5.[3] Mr. Penn has never been a party to that action and did not have the opportunity to cross examine Mr. Martin during the deposition. Under these circumstances, courts refuse to allow the use of civil deposition testimony to authenticate documents in other cases. *See, e.g.*, *United States v. Cinergy Corp.*, 2009 WL 6327419, at *3 (S.D. Ind. Apr. 24, 2009) ("Plaintiffs cannot use McMurry's deposition . . . to authenticate the 1997 GADS memo either. . . . Cinergy was not a party to the litigation in which McMurry's deposition was taken."); *see also* Fed. R. Civ. P. 32 (governing how civil deposition testimony can be used "in court proceedings" and requiring that the party against whom deposition testimony is offered have been present or represented at the relevant deposition).

2. The DOJ's proposed effort to use Mr. Martin's deposition testimony to authenticate the notes also raises serious constitutional problems. Out-of-court testimonial statements are admissible only if the witness is unavailable and the accused had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("[T]he Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."). Here, Mr. Penn has not had the opportunity to cross-examine Mr. Martin about the substance of his testimony, either in this trial or in the civil case. Mr. Martin's deposition statements are also plainly testimonial. Indeed, it is well established that deposition testimony is testimonial. *See, e.g.*, *Davis v. Washington*, 547 U.S. 813, 824 n.3 (2006) (discussing early American cases treating deposition testimony as testimonial evidence); *United States v.*

---

[3] Although the Court preliminarily ruled that Mr. Martin was a co-conspirator for purposes of Rule 801(d)(2)(E), the DOJ does not argue that this deposition testimony was made during or in furtherance of the conspiracy, so the deposition testimony cannot be introduced pursuant to Rule 801(d)(2)(E).

*Summers*, 414 F.3d 1287, 1301-02 (10th Cir. 2005) ("testimonial" statements include "depositions"). The "taking of statements under oath" is a "factual circumstance[] surrounding an out-of-court statement" that renders the statement "tru[ly] testimonial." *Summers*, 414 F.3d at 1302 (rejecting a narrow definition of "testimonial statement"). Here, plaintiffs in the related civil action deposed Mr. Martin on May 7, 2019, and that case includes price-fixing and bid-rigging allegations similar to those in this case. At the time of Mr. Martin's deposition, the DOJ had been publicly investigating potential price-fixing and bid-rigging in the broiler-chicken industry.[4] There is no question that Mr. Martin should reasonably have foreseen that his testimony "might be used" in the DOJ's criminal investigation. *Id*.

The substance of Mr. Martin's statement underscores its testimonial nature. Because Mr. Martin is the purported author of the document the DOJ seeks to authenticate, Mr. Martin's statement that he authored the notes necessarily suggests the notes are accurate and, more specifically, that the purported exchange between Mr. Penn and Mr. Martin described in the notes actually occurred. That kind of statement is testimonial since it is being used "for the purpose of establishing or proving some fact at trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009); *see United States v. Doe*, 465 U.S. 605, 614 n.13 (1984) (discussing right against self-incrimination and noting that actions that "relieve the Government of the need for authentication" have "testimonial aspects"); *McIntyre's Mini Comput. Sales Grp., Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528, 531 (D. Mass. 1987) (routine acts in response to deposition subpoena can be testimonial if those acts "admit that the documents exist, that they

---

[4] *See, e.g.,* David Yaffe-Bellany, *Why Chicken Producers Are Under Investigation for Price Fixing*, N.Y. Times (June 25, 2019), https://www.nytimes.com/2019/06/25/business/chicken-price-fixing.html.

are in [one's] possession or that they are authentic"). The testimony on which the DOJ seeks to rely relates directly to a fact question that should go to the jury—whether Mr. Penn said what Mr. Martin claims in the notes—and relieves the government of its need to authenticate the documents in a criminal prosecution. The statement is clearly testimonial.

For these reasons, the DOJ's proposed use of Mr. Martin's deposition testimony to authenticate GX1030 would deprive Mr. Penn of his opportunity to cross examine Mr. Martin, the "best" procedure by which the reliability of Mr. Martin's testimony "can [] be determined." *Crawford*, 541 U.S. at 61. For example, under the government's proposed approach, Mr. Penn will have had no opportunity to question Mr. Martin about the alterations to the documents, whether he actually took the notes, their substance, why he took them, whether he wrote the notes contemporaneously with the alleged conversation with Mr. Penn, whether they accurately reflect a conversation between Mr. Penn and Mr. Martin, or whether they leave out important context and details. In short, allowing the DOJ to authenticate these notes through Mr. Martin's deposition testimony from a civil case in which Mr. Penn is not involved would short-circuit the constitutional procedure at the heart of *Crawford*.

3. While some routine custodial authentications of business records can be non-testimonial, those authentications attest only to whether a business would have kept the particular document in the ordinary course and whether the procedures to create the document were followed. *United States v. Yeley-Davis*, 632 F.3d 673, 680 (10th Cir. 2011). Such attestations are irrelevant because in those cases the custodian authenticating the documents is not acting as the author of the document and therefore, unlike here, not necessarily vouching for the accuracy of the content. Moreover, nothing in Mr. Martin's deposition testimony describes his practice of

taking notes, the purpose of these particular notes, or any procedures that would relate to ensuring their accuracy. To the contrary, in the portions of Mr. Martin's deposition testimony that the DOJ seeks to use for the purposes of authentication, Mr. Martin demonstrates an inability to recall even basic information about their contents. *See* Doc. 721 at 4. Simply put, the notes are not a "routine" business record—and the DOJ has not argued to the contrary—so any rules applying to such records are inapplicable.

4. Finally, the government suggests that Simeon Morbey, a lawyer who entered an appearance in the civil litigation in which Mr. Martin was deposed, will discuss the deposition transcript. Doc. 720 at 4; *see also* Doc. 742 at 3. Even if it were appropriate to use a civil deposition transcript against someone who was not represented at the deposition, and even if it did not raise the constitutional issues described above, it is unclear how Mr. Morbey is a proper witness to discuss Mr. Martin's deposition. Mr. Morbey was not at the deposition, nor was any member of his firm.

**IV.    The DOJ Cannot Authenticate Handwritten Notes With Non-Substantive Responses to a Request for Admission in Civil Litigation.**

The DOJ separately seeks to authenticate GX1030 with a discovery response that Mar-Jac Poultry, Mr. Martin's former employer, provided in civil litigation. *See* GX9567. In the *In re Broiler Chicken Antitrust Litigation*, Mar-Jac appears to have received a request for admission about the authenticity of documents. In response to GX1030, Mar-Jac said only "no objection." GX9567 at 9. That non-objection cannot authenticate handwritten notes in this criminal matter. Mar-Jac Poultry was not the author of the document, and its litigation position in a civil action regarding the authenticity of a document is irrelevant in this criminal matter.

Authentication requires evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). And when the government seeks to attribute statements in documentary evidence to a particular author, it must produce "some evidence that the [document] did, in fact, emanate" from that person. *United States v. Vayner*, 769 F.3d 125, 132 (2d Cir. 2014). For handwritten notes, this generally requires testimony linking the document with its purported author. *See United States v. Samet*, 466 F.3d 251, 255 (2d Cir. 2006). The Mar-Jac non-objection offers no such evidence. To start, Mar-Jac did not admit that the notes are authentic, it simply chose not to oppose a discovery request. Equally important, Mar-Jac did not admit that any particular person created the notes, under any particular circumstances, or for any particular purpose. There is nothing in Mar-Jac's non-objection that indicates the notes are what the government claims them to be—Mr. Martin's memorialization of a conversation with Mr. Penn. Accordingly, the government cannot satisfy its authentication burden by relying on Mar-Jac's non-objection. *Lyngass v. Curaden AG*, 2019 WL 6210690, at *11 (E.D. Mich. Nov. 21, 2019) (authentication under Rule 901 requires some evidence regarding the "origins or accuracy" of the evidence offered).

## CONCLUSION

For the reasons discussed, the Court should exclude GX1030. *Eller v. Trans Union, LLC*, 739 F.3d 467, 476 n.6 (10th Cir. 2013) (documents to be excluded where the proffering party fails to authenticate them); *Amoco*, 619 F.2d at 1391 (excluding documents that could not be authenticated).

Dated:  October 27, 2021

Respectfully submitted,

*s/ Michael F. Tubach*

Chad David Williams
Jacqueline Ventre Roeder
Davis Graham & Stubbs LLP-Denver
1550 17th Street
Suite 500
Denver, CO 80202
303-892-9400
Fax: 303-893-1379
Email: chad.williams@dgslaw.com
        jackie.roeder@dgslaw.com

Michael F. Tubach (Cal. Bar No. 145955)
Anna T. Pletcher (Cal. Bar No. 239730)
Brian P. Quinn (D.C. Bar No. 1048323)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701
E-mail:  mtubach@omm.com
          apletcher@omm.com
          bquinn@omm.com

*Attorneys for Defendant Jayson Jeffrey Penn*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach