IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>1.    JAYSON JEFFREY PENN,<br>2.    MIKELL REEVE FRIES,<br>3.    SCOTT JAMES BRADY,<br>4.    ROGER BORN AUSTIN,<br>5.    TIMOTHY R. MULRENIN,<br>6.    WILLIAM VINCENT KANTOLA,<br>7.    JIMMIE LEE LITTLE,<br>8.    WILLIAM WADE LOVETTE,<br>9.    GARY BRIAN ROBERTS, and<br>10.   RICKIE PATTERSON BLAKE,<br><br>    Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANT JAYSON PENN'S RESPONSE TO THE GOVERNMENT'S NOTICE OF ALTERNATIVE BASIS FOR AUTHENTICATING GX1030**

The Court ruled that the government could not authenticate GX1030—a single page photocopy of handwritten notes—through live custodial witnesses because their testimony could not establish that the document was what the government claimed it to be: notes written by Pete Martin, a former employee of Mar-Jac Poultry. *See* 770 at 3. The Court also ruled that the government cannot authenticate the notes by relying on civil deposition testimony because doing so would violate the Confrontation Clause. Doc. 770 at 4-5. The government has abandoned any reliance on the civil deposition testimony. Doc. 780 at 4 n.3.

Instead, the government seeks to sidestep the Court's rulings with a "notice" that the government now claims the document to be something else—hand-written notes by an

1

unspecified Mar-Jac co-conspirator. The government argues that these identical but now unattributed notes can be authenticated by the same live custodial witness testimony because the notes are "distinctive" under Rule 901(b)(4). Doc. 780 at 1-2, 5-6. This thinly veiled motion for reconsideration should be denied for at least three independent reasons.

*First*, as the Court has made clear, a "motion for reconsideration is not an appropriate means to revisit issues already addressed or to advance arguments or evidence that could have been raised in prior briefing." Doc. 770 at 2. The only grounds "warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. (quotation omitted). The government has identified no change in controlling law, no new evidence, and no clear error or manifest injustice. The Court should deny the government's effort to authenticate GX1030 under Rule 901(b)(4) on that ground alone.

*Second*, the government's approach creates damning hearsay problems. Until this morning, the government had maintained that GX1030 reflected handwritten statements by Pete Martin, statements it argued could be admitted pursuant to Federal Rule of Evidence 801(d)(2)(E) because Mr. Martin was a purported co-conspirator. But because the government cannot establish that Mr. Martin actually wrote the notes, the government appears to have abandoned that position and now claims only that the "contents of GX-1030 indicate the handwritten notes were authored by a co-conspirator" and that "Mar-Jac participated in the conspiracy." Doc. 780 at 6.

But to admit a statement under Rule 801(d)(2)(E), the government must prove that *the declarant* was a member of the conspiracy at the time he made the statements. *United States v.*

2

*Perez*, 989 F.2d 1574, 1577 (10th Cir. 1993) (en banc). This is "a limitation on the admissibility of coconspirators' statements that is meant to be taken seriously." *Id*. at 1578 (quotation omitted). The government does not contend that Mar-Jac is the declarant, and it is clear that the handwritten notes were not statements by the corporation; it is only purported to have produced the document. The government does not explain who it now believes wrote the notes and therefore makes no showing—and certainly has advanced no independent evidence beyond the document—that this unidentified individual was ever a member of the alleged conspiracy, that the declarant was a member of the alleged conspiracy at the time he purportedly made the notes, or that the declarant had any connection to the purported "surrounding circumstances" invoked by the government. This is fatal. Fed. R. Evid. 801(d)(2) (statement "does not by itself establish the declarant's . . . participation in" the alleged conspiracy); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (proponent must advance reliable and independent corroborating evidence that declarant participated in conspiracy); *United States v. Mouzin*, 785 F.2d 682, 692-93 (9th Cir. 1986) (government's failure to identify author of handwritten ledger rendered ledger inadmissible under Rule 801(d)(2)(E) for lack of proper foundation).

At bottom, the government cannot have it both ways. It cannot avoid the bar on hearsay by attributing the notes to Mr. Martin and then avoid its failure to establish Mr. Martin's authorship by attributing the notes to some other, unidentified individual for authentication purposes. Under the approach laid out in the government's "notice," the contents of the documents are unattributed hearsay and should be excluded as such.

*Third*, there is nothing "distinctive" about the characteristics of GX1030 that allows authentication pursuant to Rule 901(b)(4). As the advisory committee explained, distinctive

3

characteristics generally relate to the attribution of documents to "*a particular person* by virtue of," for instance, "disclosing knowledge of facts known peculiarly to him," or indicating the document is in response to a "duly authenticated" communication that he received. Fed. R. Evid. 901(b)(4), Advisory Committee Notes (emphasis added). Nothing of the sort exists here. The testimony of custodians like Larry Barela and Simeon Morbey speaks only to the production of a photocopy of handwritten notes by Mar-Jac. They say nothing about the particular person who purportedly authored the notes, whether that person was even an employee of Mar-Jac, the context in which the notes were made, the reliability of the original document, or the alterations made to it. *See United States ex rel. Parikh v. Premera Blue Cross*, 2006 WL 2841998, at \*3 (W.D. Wash. Sept. 29, 2006) (document could not be authenticated on the "basis of their 'distinctive characteristics' without more information concerning the circumstances under which they were created").

Courts regularly reject arguments that a document is "distinctive" for authentication purposes when the document does not speak to authorship. *See, e.g.*, *Harlan v. United Fire & Cas. Co.*, 208 F. Supp. 3d 1168, 1177 (D. Kan. 2016) (document purporting to be a report from a particular government agency lacked "distinctive characteristics" where, among other things, it did not list the agency's name, the name of the preparer was not listed, and no one signed the document); *Acosta v. Mezcal, Inc.*, 2019 WL 2550660, at \*3 (D. Md. June 20, 2019) ("Exhibit H, however, lacks such distinctive characteristics. It contains several pages of typed lists of first names, alongside dates, amounts, and handwritten annotations, but no heading or other marking identifying it on its face as a record kept by Defendants. The Court concludes that the Secretary failed to sufficiently authenticate Exhibit H, and it will not be considered.").

*United States v. Reyes* is easily distinguishable. In that case, the trial court deemed a set of handwritten notes authentic because (i) the notes were found in the defendant's residence—and the court gave no indication that anyone else lived in or had access to the residence—and the government could therefore demonstrate the exact location of discovery in relation to the defendant; (ii) the contents of the notes clearly reflected other co-conspirators and drug activity, which has no potentially lawful purpose; and (iii) the contents of the notes left no doubt they were written by a member of the drug conspiracy. 798 F.2d 380, 383 (10th Cir. 1986).

None of those circumstances exist here with respect to GX1030. The government has elicited testimony only that "the document came from Mar-Jac." Doc. 780 at 6. That fact does not mean the notes were authored by a Mar-Jac employee, let alone by a co-conspirator, and does not speak to where specifically the notes were discovered. The government's latest theory—that a handwritten note was found somewhere at Mar-Jac at some point and written by an unknown party—is not remotely like the facts in *Reyes*. In addition, the mere fact that Mr. Penn's name purportedly appears in the document is not evidence of unlawful activity, especially when there is no evidence that an individual at Mar-Jac actually authored the document or had any connection to the "surrounding circumstances" invoked by the government. Even assuming the notes were authored by a Mar-Jac employee, there are many lawful reasons for suppliers to be in contact. The mere fact of a discussion is not like a ledger of drug packaging and drug sales that speaks only to illegal activity supporting authenticity or authorship by a co-conspirator. *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 440-41 & n.16 (1978); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015).

\* \* \* \* \*

For all of these reasons, the Court should deny the government's effort to authenticate GX1030 under Rule 901(b)(4) and exclude the document.

Dated:  November 3, 2021                                    Respectfully submitted,

<div style="display:flex">

*s/ Michael F. Tubach*

| | |
|---|---|
| Chad David Williams | Michael F. Tubach (Cal. Bar No. 145955) |
| Jacqueline Ventre Roeder | Anna T. Pletcher (Cal. Bar No. 239730) |
| Davis Graham & Stubbs LLP-Denver | Brian P. Quinn (D.C. Bar No. 1048323) |
| 1550 17th Street | O'MELVENY & MYERS LLP |
| Suite 500 | Two Embarcadero Center, 28th Floor |
| Denver, CO 80202 | San Francisco, California 94111-3823 |
| 303-892-9400 | Telephone: 415-984-8700 |
| Fax: 303-893-1379 | Facsimile: 415-984-8701 |
| Email: chad.williams@dgslaw.com | E-mail:  mtubach@omm.com |
|      jackie.roeder@dgslaw.com |           apletcher@omm.com |
| |           bquinn@omm.com |

*Attorneys for Defendant Jayson Jeffrey Penn*

6

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach