IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB-8

UNITED STATES OF AMERICA,

 Plaintiff,

v.

8. WILLIAM WADE LOVETTE,

 Defendant.

## ORDER

  This matter comes before the Court on William Lovette's Motion to Compel the Production of Certain *Brady* Material [Docket No. 818]. The government has filed a response.[1]  Docket No. 836.

  Mr. Lovette states that, on October 6 and 21, 2021, the government produced black-and-white text messages between Special Agents Matthew Koppenhaver and LaNard Taylor concerning this case. Docket No. 818 at 1. However, color copies, which Mr. Lovette states are necessary for an accurate reading, were not produced until November 3 and 4, 2021. *Id.* at 2 n.3. Mr. Lovette states that, "[a]s best [he] can determine," the text messages had not been produced earlier. *Id.* at 2. Mr. Lovette asks the Court to compel the government to produce "(1) communications between or involving case agents that are *Brady* material and (2) pertinent time, date, and

---

[1] Mr. Lovette additionally filed "William Lovette's Supplemental Information Filing in Regard to Motion to Compel the Production of Certain *Brady* Material." Docket No. 839.

transmission information about those same communications." *Id.* at 1.  Mr. Lovette argues that the text messages that the government has produced between Special Agents Koppenhaver and Taylor are subject to the strictures of *Brady* and the government has violated *Brady* with its delayed and incomplete production.  *Id.*

The government responds that the text messages it has produced are not *Brady* material, but are, "at most," potential Jencks Act material for the special agents.[2] Docket No. 836 at 1.  Additionally, the government states that the color copies of the text messages in question were provided with the original productions, which happened on September 1, August 26, and October 21, 2021.  *Id.* at 1-2.

"Proving a *Brady* claim requires the defendant to show by a preponderance of the evidence (1) that the government suppressed evidence, (2) that the evidence was favorable to the defendant, and (3) that the evidence was material."  *United States v. Wells*, 873 F.3d 1241, 1259 (10th Cir. 2017) (citing *United States v. Reese*, 745 F.3d 1075, 1083 (10th Cir. 2014)).  "Materiality requires 'a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed.'" *Id*. (quoting *Reese*, 745 F.3d at 1083).  "Reading *Brady* and *Giglio* together, the government must produce or disclose evidence that is favorable to the accused when relevant to guilt, credibility, or punishment."  *United States v. Wright*, No. 11-cr-00497-REB, 2012 WL 4049826, at *1 (D. Colo. Sept. 13, 2012).

The cases Mr. Lovette cites for the proposition that information material to impeaching an agent's credibility is *Brady* material are inapposite.  Mr. Lovette cites

---

[2] The government states that it may not call the special agents as witnesses. Docket No. 836 at 1.

cases involving investigations of case agents for misconduct.  *See* Docket No. 818 at 4-5.  The text messages at issue in this case are not akin to an internal investigation of the agent, records of which would be in an agent's personnel file.  *Id.*  Although the court in *United States v. Grobstein*, 2013 WL 12328891, at *3 (D.N.M. Sept. 3, 2013), cited by Mr. Lovette, found that there may be material in an agent's personnel file that could be relevant to credibility, the court still "call[ed] for the usual prosecutorial examination" of the personnel file.  *Id.* (finding the existence of an investigation into an agent did not automatically mean the agent's personnel file should be disclosed; "[r]ather, unless and until Defendant can identify, within the categories of documents it seeks to review, specific exculpatory material that the government has withheld, it is within the sole province of the government to determine what material is exculpatory and thus subject to mandatory disclosure.").

Mr. Lovette does not cite any cases finding text messages between case agents to be *Brady* material.  *See generally* Docket No. 818.  The Court finds that the text messages are not relevant to the guilt of any defendants, to the credibility of the case agents, or to punishment, and are therefore not *Brady* material.  Additionally, Mr. Lovette has not identified what other "additional text messages" there may be and why they would constitute *Brady* material, *see id.* at 6; accordingly, the Court will not conduct an *in camera* review of the "additional text messages."  *See United States v. Brooks*, 966 F.2d 1500, 1504 (D.C. Cir. 1992) ("[m]ere speculation that a government file may contain *Brady* material [is] not enough to require an in camera examination." (internal quotation marks and citation omitted)).  Finally, Mr. Lovette makes no argument as to why *Brady* would require the "pertinent time, date, and transmission

information" about text messages, *see* Docket No. 818 at 1, when the text messages state the date they took place. *See, e.g.*, Docket No. 818-3 at 3 (giving Monday, May 4 10:02 a.m. as time and date of conversation). Accordingly, the Court rejects this argument.

Even assuming the text messages qualify as *Brady* material, the Court finds that no remedy is warranted. Mr. Lovette cites *United States v. Burke*, 571 F.3d 1048, 1053 (10th Cir. 2009), where the Tenth Circuit considered the belated disclosure of *Brady* material. *See* Docket No. 818 at 2. The Tenth Circuit held that "the belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an earlier disclosure would have created a reasonable doubt of guilt." *Id.* at 1054 (internal quotation marks and citation omitted). The court stated:

> It is not hard to imagine the many circumstances in which the belated revelation of *Brady* material might meaningfully alter a defendant's choices before and during trial: how to apportion time and resources to various theories when investigating the case, whether the defendant should testify, whether to focus the jury's attention on this or that defense, and so on. To force the defendant to bear these costs without recourse would offend the notion of fair trial that underlies the *Brady* principle.

*Id.* Mr. Lovette states that he has experienced prejudice because the belated disclosure[3] prevented impeachment of Special Agent Taylor at the *James* hearing, disrupted trial preparation and strategy, and "absent relief from the Court, [will] truncat[e] the impeachment of these agents when they testify." Docket No. 818 at 2. Mr. Lovette does not explain how the belated disclosure disrupted trial preparation and strategy. Nor does Mr. Lovette explain why his impeachment of the case agents will be

---

[3] As noted above, the parties dispute when the text messages were first produced and whether or not they were in color.

4

truncated (presuming they testify) without relief. Additionally, the Court finds that the failure to disclose the text messages before the *James* hearing does not violate due process because there is no evidence that earlier disclosure would have created a reasonable doubt of guilt. *See Burke*, 571 F.3d at 1054. The *James* hearing used a preponderance of the evidence standard to determine the existence and membership of a conspiracy; no determination of guilt was made. Because the Court finds no prejudice to Mr. Lovette from the disclosure of text messages prior to trial, even assuming they are *Brady* material, the Court declines to impose any remedy. *Cf. id*. ("Where the district court concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial.").

For the foregoing reasons, it is

**ORDERED** that William Lovette's Motion to Compel the Production of Certain *Brady* Material [Docket No. 818] is **DENIED**.

DATED November 17, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge