IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAYSON JEFFREY PENN, *et al.*,

    Defendants.

No. 20-cr-00152-PAB

**MR. BLAKE'S RESPONSE TO THE GOVERNMENT'S
NOTICE REGARDING GX-6086 AND GX-6087**

The Government's "notice" that it "intends to introduce exhibits GX-6086 and GX-6087 as sufficiently authenticated under Fed. R. Evid. 901(b)(4)," Doc. 848 at 1, fails to acknowledge that it previously sought to admit GX-6086, after eliciting testimony about both exhibits, and that the Court, having heard extensive argument, concluded the Government has not adduced sufficient evidence to lay a foundation. The Court permitted the Government to withdraw its offer of GX-6086, with the understanding that it could seek to admit GX-6087 at a later date.

In its "notice," the Government offers no new evidence laying any additional foundation to support its argument that GX-6086 and GX-6087 are admissible against Mr. Blake. Even if the Court were to consider the Government's renewed effort to introduce both exhibits *de novo*, the Government's arguments are wholly unpersuasive. GX-6086 and GX-6087 are each a photocopy of a file containing documents, some of which have handwriting. For these files to be admissible against Mr. Blake under Rule 801(d)(2)(A), the Government must establish both that the documents were authored by Mr. Blake and that the handwriting is that of Mr. Blake. The Government can establish either.

1

I.   **When the Government previously attempted to introduce GX-6086, the Court expressed at least two levels of separation between GX-6086 and Mr. Blake.**

On November 16, 2021, the Government called Gary Weeks, a custodian of records for George's, who testified he collected the documents now designated as GX-6086 and GX-6087 from Mr. Blake in 2018. *See* Nov. 16 Tr. 22:19-25:15.[1] Mr. Weeks did not identify any handwriting in these exhibits as belonging to Mr. Blake. Nor did Mr. Weeks provide testimony about what he asked Mr. Blake to give him. There was no testimony, for example, regarding whether Mr. Blake was asked to provide 1) sales files regardless of who maintained them; 2) files he personally maintained; and/or 3) files he personally authored. Nor was there any testimony about how Mr. Blake described the files when he produced them.[2]

Following Mr. Weeks' testimony, the Government offered GX-6086 into evidence. The parties engaged in a substantial discussion with the Court regarding the authenticity and admissibility of GX-6086, much of which also pertained to GX-6087. *Id.* at 26:11-34:6. Following this discussion, the Court concluded there are at least two levels of separation between GX-6086 and an association with Mr. Blake: 1) other than the fact that his name is at the top of a handful of printed emails, there is nothing that indicates Mr. Blake is the one who printed out the documents in GX-6086 or that the file has any direct association with Mr. Blake; and 2) several of the pages contain handwritten notes that could only have been added at some point after the hard copy documents were printed out, and there is no foundation that those notes were made by Mr. Blake.

---

[1] Because the transcript is unofficial, Mr. Blake does not quote from it. The citations are offered only for the Court's convenience. If the Court's recollection differs from the unofficial transcript, the Court's recollection obviously controls.

[2] The Government does not proffer any such evidence in its "notice," and it is unlikely that it could. The Government noted that George's is asserting privilege over Mr. Weeks' communications with its employees. *Id.* at 29:19-23.

*Id.* at 31:15-32:10. The Court also noted that, in some instances, it is not even clear how or if the handwritten notations relate to the underlying document. *Id.* at 32:11-13. In sum, the Court concluded that it is impossible to say who added the handwritten notations. *Id.* at 32:10.

The Court allowed the Government to withdraw its request to admit GX-6086 and seek the admission of GX-6087 at a later time. *Id.* at 32:16-23. The Government then withdrew the admission of GX-6086. *Id.* at 33:12-13.

## II. The Government has not laid a proper foundation to admit GX-6086 or GX-6087.

### A. The mere fact that Mr. Weeks collected the documents from Mr. Blake is insufficient to prove they were created or authored by him.

The Government argues, as it did previously in court, that the mere fact Mr. Blake gave the documents to Mr. Weeks is enough to "link the exhibits to [Mr.] Blake." Doc. 848 at 5. But as discussed above, the Court has already rejected this assertion. And it did so for good reason. As the Honorable Judge Krieger of this Court recently held—in a case cited by Mr. Blake in court and yet ignored by the Government in its "notice"—the "mere fact that a document … was in [the defendant's] possession does not suffice to demonstrate that the document is what it purports to be." *United States v. Kalu*, Case No. 12-CR-106, Doc. 229 at 5 (D. Colo. June 14, 2013). The documents in *Kalu* were found in the defendant's home. One of them was an executed promissory note with what purported to be Mr. Kalu's signature. Nonetheless, because no witness had identified the handwriting as, in fact, belonging to Mr. Kalu, Judge Krieger found that the fact the document was seized from Mr. Kalu's home and had what on its face *appeared* to be his signature was insufficient to authenticate the document. *Id.* at 4-5.

The foundation the Government has laid for the authentication of GX-6086 and GX-6087 is weaker than that held insufficient in *Kalu*. The documents came not from Mr. Blake's home,

3

but from an office where numerous employees may have had access to the files and contributed to their contents. No document has what purports to be a signature of Mr. Blake. While GX-6086 has a handful of hard copy documents that appear to be emails printed by Mr. Blake, the handwriting was plainly added at some point after the emails were printed. GX-6087 has no emails to Mr. Blake or documents on which his name appears.

The Government argues that items seized from an office can support a finding of authenticity, citing *United States v. Ceballos*, 789 F.3d 607 (5th Cir. 2015). Doc. 848 at 5. But in *Ceballos* a ledger was recovered from the defendant's *purse,* not an office, and it recorded specific details of the charged illegal smuggling activity, including notations of the persons being smuggled, "next to individual dollar amounts" and descriptions of the activity. 789 F.3d at 620. Moreover, the agent who recovered the ledger testified that the purse contained other personal items that clearly belonged to the defendant, and there was "no indication that anyone other than [the defendant] used the purse." *Id.* at 619-20. In finding the contents were what the Government purported them to be—a ledger recording smuggling activity—the Fifth Circuit said, even with the agent's "foundational testimony," "the issue [was] close." *Id.*[3]

None of those circumstances exist here. The files Mr. Weeks collected from Mr. Blake were collected in a business office, not Mr. Blake's home, and they do not describe criminal activity. They contain email printouts and notes about contracts and period pricing documents

---

[3] In its parenthetical description of *Ceballos,* the Government may have been referring to another out-of-circuit case cited in *Ceballos*, *United States v. Wake*, 948 F.2d 1422 (5th Cir. 1991). The drug ledgers in *Wake* were authenticated through the testimony of a DEA agent who participated in the criminal investigation and who testified as to the circumstances under which each ledger was seized from the defendant's person or property. Like the smuggling ledgers in *Ceballos*, the ledgers recovered in *Wake* were "broadly corroborative of the offense charged." *Id.* at 1425, 1434.

4

that are fully consistent with lawful business activity. *See* Nov. 10 Tr. 112:20-25 (testimony of M. Ledford that period pricing is irrelevant to a competitive bidding process). There is no testimony that the contents of these files evidence unlawful behavior.

The Government's reliance on *United States v. Brown*, 255 F. App'x 292 (10th Cir. 2007) and *United States v. Reyes*, 798 F.2d 380 (10th Cir. 1986) is also misplaced. The handwritten letters in *Brown* contained specific references to information that only the defendant and his accomplice would know. *See Brown,* 255 F. App'x at 295. And the defendant's accomplice (the recipient of the letters), testified at trial based on personal knowledge that "he believed [the defendant] authored the letters." *Id. Reyes* involved a drug ledger seized from the defendant's home that, like the ledger recovered in *Ceballos*, recorded details of the alleged criminal activity taking place, such as the number of ounces of drugs that had been trafficked. 798 F.2d at 383.

The Government has cited no authority that supports its argument that the fact that files, which contain facially innocuous business information, were collected in an office from a particular employee—without any other testimony or evidence describing the circumstances in which the files were created, maintained, or retrieved—is sufficient to establish not only that the documents in the files were authored by that employee, but also that any handwriting contained on the documents belongs to that same employee. As the cases cited both by Mr. Blake and by the Government demonstrate, additional foundational testimony is required. And, as the Court previously concluded, Mr. Weeks did not provide such testimony.

**B.     The additional "facts" proffered by the Government do not lay a foundation for the admission of GX-6086 and GX-6087.**

In an effort to bolster its attempt to lay a foundation for the authentication of GX-6086 and GX-6087, the Government's "notice" cites a number of additional "facts," which are based on the

5

Government's interpretation of documents the Court has already ruled are unauthenticated and inadmissible. This effort must be rejected. *See* Fed. R. Evid. 901, Advisory Committee Notes (requirement of authenticity "falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)," which requires that "proof must be introduced sufficient to support a finding that the fact does exist"); 31 C. Wright & A. Miller, Fed. Prac. & Proc. Evid. § 7104 (1st ed.) ("In determining whether a matter is authentic, a court only may consider evidence that is itself admissible.").

### 1. The way the files are "organized" does not demonstrate that they are statements of Mr. Blake.

The Government argues that the "organization" of GX-6086 and GX-6087 "mirror[] the file-keeping system Mr. Brian Coan attributed to [Mr.] Blake." Doc. 848 at 6. Mr. Coan testified he found old sales files in banker's boxes in a warehouse, and one of the boxes had Mr. Blake's name on the outside of the box. Kirsten Tucker, another custodian for George's, testified that the box with Mr. Blake's name on it also had other notations on the outside of the box. Nov. 5 Tr. 85:5-12. Mr. Coan testified that inside the box were manila folders that had customer names on the tabs. *See* Nov. 5 Tr. 83:1-16. Mr. Coan never attributed those files to Mr. Blake. Nor did he offer any basis to establish that Mr. Blake maintained these files, much less that Mr. Blake authored their contents. Indeed, when the Government sought to introduce documents from the boxes Mr. Coan found in the warehouse, the Court ruled them inadmissible. *See* Nov. 12 Tr. 179:4-190:1 (rejecting GX-9688). In any event, the "file-keeping system" Mr. Coan described—manila folders bearing the names of customers—is hardly so unusual that it leads to the conclusion that any manila file with the name of a customer can be attributed to Mr. Blake or that Mr. Blake made every statement such a file contains.

## 2. The contents do not establish they are statements of Mr. Blake.

The Government does not fare any better by describing the *contents* of GX-6086 and GX-6087. The Government claims that the documents are "uniquely linked" to Mr. Blake because they relate to bid negotiations on "accounts [he] managed." Doc. 848 at 6. The Government supports this assertion by claiming Mr. Ledford testified Mr. "Blake was his main contact at George's for contract negotiations in 2012 and 2013." *Id.* (citing Tr. Nov. 8 at 196:21-23, which, in fact, reflect that Mr. Ledford testified his primary contacts at George's were Mr. Blake *and* Darrel Keck).

Mr. Ledford testified that while Mr. Blake was his *day-to-day* contact at George's, when it came to negotiations, Mr. Ledford dealt not with Mr. Blake, but with Mr. Keck, Mr. Blake's superior, and Charles George, Mr. Keck's superior. Nov. 10 Tr. 113:11-114:14. Thus, not only does Mr. Ledford's testimony fail to support the Government's contention that Mr. Blake was "uniquely linked" to the negotiations reflected in GX-6086 and GX-6087, in fact, it demonstrates the opposite.[4]

The Government's other witnesses confirmed that employees at George's other than Mr. Blake—Darrel Keck, Dean Bradley, Brian Coan, and Charles George—were involved in bid negotiations with the same customers whose names appear in GX-6086 and GX-6807. *See, e.g.*, Nov. 4 Tr. 141:19-142:7 (testimony of R. Lewis, regarding KFC); Nov. 5 Tr. 24:14-25:11 (testimony of S. Fisher, regarding KFC); GX-710 (email from D. Bradley to K. Kronauge attaching George's 2018 Popeye's bid); GX-1121 (2015-2017 George's contract for KFC, signed by C.

---

[4] The Government also cites the testimony of James Olson that Mr. "Blake was the only person at George's with whom he worked." Doc. 848 at 6. But Mr. Olson was not an employee of RSCS; he was franchisee on RSCS's board. He did not, and could not, negotiate with individual chicken suppliers in their responses to RSCS's requests for proposals. *See* Oct. 27 Tr. 215:10-216:1.

7

George). In fact, there has been *no* evidence Mr. Blake was, as the Government contends, "in charge" of any negotiations with these customers, much less "uniquely" so. Doc. 848 at 6.

      **3.**      **The Government cannot lay a foundation that handwriting in GX-6086 and GX-6087 is Mr. Blake's by comparing it to handwriting in other documents the Court ruled are unauthenticated and inadmissible.**

Finally, even if the Government could establish that the files contained in GX-6086 and GX-6087 were maintained by Mr. Blake, that would not mean that handwritten notes added at some unknown point in time to certain of the hard copy documents within the files are statements of Mr. Blake. To establish this, the Government must introduce evidence showing the handwriting is Mr. Blake's. Yet, neither Mr. Weeks nor Mr. Coan identified Mr. Blake's handwriting.

The Government argues the handwriting on GX-6086 and GX-6087 can be attributed to Mr. Blake because it is sufficiently similar to the handwriting on other unauthenticated, inadmissible exhibits: GX-1730 and GX-9129. But Rule 901 permits the finder of fact to authenticate an exhibit only based on a "comparison with an *authenticated specimen*." Fed. R. Evid. 901(b)(3) (emphasis added); *see United States v. Wagner*, 475 F.2d 121, 123 (10th Cir. 1973) ("To be admissible and usable as a standard of comparison, for the purposes of opinion evidence on a questioned writing, the [handwriting] specimen must first be authenticated," which requires "proof of authorship."). Not only have GX-1730 and GX-9129 not been authenticated as handwriting specimens belonging to Mr. Blake, but this Court previously *rejected* the Government's attempted authentication of GX-1730, because there is no evidence where the documents came from (other than they were found in one of three boxes in a warehouse) or that the handwriting was Mr. Blake's. *See* Nov. 12 Tr. 188:20-190:1. Rather than comparing a *known* sample of Mr. Blake's handwriting to a questioned sample, the Government is comparing two

8

questioned samples to each other. Thus, even if the Court agreed that the handwriting in GX-6086 and GX-6087 is similar to the handwriting in GX-1730 and GX-9129, that would not establish whose handwriting it is.[5]

In any event, a cursory glance at the documents the Government says are "readily attributable" to Mr. Blake and therefore "known" samples of his handwriting undermines this claim. Doc. 848 at 9. For example, the top of page 5 of GX-1730 (GEODOJ_0584947) contains handwritten notes that misspell Mr. Blake's first name.

Mr. Blake goes by the first name "Ric," which he spells R-I-C. This is evident from one of the documents in GX-1730 (page 4, GEODOJ_0584946), which as the Government notes, says "From the desk of Ric Blake." Doc. 848 at 9. Yet the handwriting at the top of the very next page of GX-1730 refers to Mr. Blake as "Ric<u>k</u> B," spelling his first name R-I-C-K. Unless the Government contends that Mr. Blake refers to himself in the third person *and* misspells his own name, the handwritten notes cannot be attributed to him.

None of the cases cited by the Government allow the authentication of handwriting under circumstances remotely similar, where there is no known sample of the defendant's handwriting and the Government is seeking to authenticate unauthenticated handwriting as that of the defendant by comparing it to other unauthenticated handwriting. *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416 (10th Cir. 1991), and *Lichter v. Bureau of Accts. Control, Inc.*, 2021 WL 1026175 (S.D.N.Y. Mar. 17, 2021), have nothing to do with handwriting comparison at all. And the issue

---

[5] There is some irony in the Government's current effort to authenticate GX-6086 and GX-6087 by comparing them to the supposedly "known" samples in GX-1730 and GX-9129. In its previous unsuccessful effort to introduce documents as 801(d)(2)(E) statements, the Government argued that GX-6086 was a "known" sample of Mr. Blake's handwriting and that it would use that exhibit to authenticate other documents as containing Mr. Blake's handwriting. Doc. 512 at 3-4 & n.2.

in *United States v. Miller*, 985 F. Supp. 1284 (D. Kan. 1997), was whether the court could authenticate a phone book as belonging to the defendant Brian Miller when it was seized from him, at his home, and had the words "Brian Miller's Phone Book" written inside. *Id.* at 1285–86.

## CONCLUSION

The Court has previously articulated gaps in the Government's efforts to demonstrate that the handwritten notations in GX-6086 are statements of Mr. Blake. The Court's reasoning applies with even greater force to GX-6087, which, unlike GX-6086, does not contain any emails associated with Mr. Blake. The Government points to no evidence not already in the record when the Court previously noted the deficiencies in the Government's offer. Rather, the Government relies on its assertion that the underlying documents are "uniquely" linked to Mr. Blake, an assertion contradicted by the testimony at trial, and a comparison of the handwriting contained in GX-6086 and GX-6087 with handwriting in other documents the Court has ruled unauthenticated. Neither argument moves the needle with respect to the Court's prior analysis of exhibit GX-6086. The Government has not laid a foundation that GX-6086 or GX-6087 contain statements of Mr. Blake. Neither is admissible against him under Rule 801(d)(2)(A).

Date: November 21, 2021

Respectfully submitted,

/s/ *Barry J. Pollack*
Barry J. Pollack
ROBBINS, RUSSELL, ENGLERT,
ORSECK & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, D.C. 20006
Telephone: (202) 775 4500
bpollack@robbinsrussell.com

/s/ *Wendy L. Johnson*
Wendy L. Johnson
RMP LLP
5519 Hackett Street, Suite 300
Springdale, Arkansas 72762
Telephone: (479) 443-2705
wjohnson@rmp.law

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated:  November 21, 2021      */s Wendy L. Johnson*

                                                                               Wendy L. Johnson