IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     **GARY BRIAN ROBERTS**, and
10.    RICKIE PATTERSON BLAKE,

        Defendants.

## DEFENDANT ROBERTS'
## MOTION FOR JUDGMENT OF ACQUITTAL

"W[E] SHOULD NOT HELP THEM ONE MICRON"
--Government's Exhibit # 2005, Pilgrim's Pride, referring to Tyson Foods,
November 24, 2014

    Defendant Gary Brian Roberts hereby moves this Court to enter a judgment of acquittal in Mr. Roberts' favor pursuant to Federal Rule of Criminal Procedure 29, pursuant to his oral motion made on November 24, 2021, *see* Dkt. # 869, for the reason that the Government has introduced no evidence relating to Mr. Roberts as to the majority of the elements which it is required to prove to the jury beyond a reasonable doubt in order to convict Mr. Roberts for the alleged conspiracy pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1, charged in the Superseding Indictment.

-1-

To purportedly establish beyond a reasonable doubt Mr. Roberts' participation in an alleged seven-year conspiracy among suppliers of broiler chicken products to rig bids and fix prices, the Government has introduced into evidence references to Mr. Roberts from two fact witnesses, a handful of documents referencing Mr. Roberts, and evidence of telephone calls, the contents of which cannot be proven. In the more than 16,000,000 documents produced by the Government in discovery, not a single document shows that Mr. Roberts ever requested pricing information from any competitor of Tyson Foods (Tyson), or provided pricing information to a competitor. *No* evidence has been introduced showing (1) that Mr. Roberts was aware of any conspiracy among suppliers of broiler chicken products to rig bids and fix prices, or (2) that Mr. Roberts knowingly and intentionally became a part of the charged conspiracy. The Government has failed even to present any evidence that Mr. Roberts possessed any authority over pricing for Tyson.

Failure of the Government to establish even a single essential element beyond a reasonable doubt warrants a grant of judgment of acquittal in favor of the defendant as a matter of law. Pursuant to principles of due process and fundamental fairness, the Court should grant Mr. Roberts judgment of acquittal as to the charge against him.

## I. INTRODUCTION AND GROUNDS FOR JUDGMENT OF ACQUITTAL

### A. The Charged Antitrust Conspiracy

The Government, in its Superseding Indictment, charged the Defendants, including Mr. Roberts, and others with entering into and engaging in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related

terms for broiler chicken products, in violation of the Sherman Act.[1] *See* Dkt. # 101, ¶ 1. It alleged that the Defendants reached agreements and understandings to submit aligned bids and aligned prices and price-related terms for broiler chicken products. *Id*. at ¶ 48. The Government made specific allegations regarding Mr. Roberts in its Superseding Indictment in relation to "Church's 2013 Freezing Charge," *id*. at ¶¶ 68, 69; "Church's Quality Assurance Costs for 2014," *id*. at ¶ 82; and "KFC's 8-Piece [Chicken on Bone (COB)] Supply for 2015," *Id.* at ¶¶ 91, 93, 98, 104, 106.

### B. The Government's Fact Witnesses Regarding Mr. Roberts

The prosecution presented the testimony of James Olson, the former Chief Executive Officer of Harman Management Corporation (HMC) and a former member of the Board of Directors of RSCS. *See* Transcript (Tr.) Day 3, p. 78.[2] Mr. Olson testified that he attended a dinner with Mr. Roberts in October or November of 2014. *Id*. at 122, 151. Mr. Olson stated that he talked with Mr. Roberts at dinner about possibly gaining discounts for HMC from the price negotiated by RSCS. *Id*. at 122-123. Mr. Roberts told Mr. Olson that he could not help Mr. Olson. *Id*. at 156.

---

[1] Undermining the Government's theory of criminality, the actual evidence which the prosecution has introduced demonstrates that the suppliers of broiler chicken products—especially Tyson and Pilgrim's Pride (Pilgrim's)—were competitors rather than conspirators. *See* Gov't. Ex. # 2005, *supra*. In November 2014, while the suppliers were allegedly conspiring to fix prices in relation to KFC's 2015 8-piece COB supply, Pilgrim's executives were complaining about Tyson's "idiotic ways" and how Tyson was "selling cheap chicken and being short," adding "market share," and taking Pilgrim's business "on price." *Id*. Pilgrim's discussed the need to not help Tyson "ONE MICRON" and to make Tyson "pay" so that Tyson would start "making decisions commensurate with a profitable venture and not a philanthropic organization." *Id*. Several days later, Pilgrim's executives again discussed Tyson being "cheap" and "selling cheap in a short market," and discussed the need to "keep [its] enemies close," and derisively referred to Tyson as "Otis," the "town drunk" from the television sitcom, The Andy Griffith Show. *See* Gov't. Exs. # 2000, 2001 & 2002.

[2] The unofficial, daily transcripts of the trial are summarized.

On cross-examination, Mr. Olson admitted that he was not involved in negotiating pricing on the KFC 2015 8-piece COB contract. *See* Tr. Day 3, p. 151. Mr. Olson acknowledged that he didn't attend a single meeting with a supplier for the contract, and was not a party to any communications with suppliers. *Id*. at 148. Mr. Olson furthermore conceded that it would be inappropriate for him to negotiate with suppliers separate from RSCS. *Id*. at 149.

The prosecution called Robert Lewis, a former employee of Restaurant Supply Chain Solutions (RSCS), Tr. Day 7, pp. 73, 74. Mr. Lewis stated that he had no knowledge that Mr. Roberts engaged in any kind of bid-rigging or price-fixing. *Id*. at 107. He testified that he sent a request to Mr. Roberts on July 10, 2014, for Tyson's model for 8-piece COB for 2015, and that Mr. Roberts responded with the model on the same day. *Id*. at 94. Mr. Lewis acknowledged that Tyson's initial model for 8-piece COB was unique compared with Tyson's competitors. *See* Tr. Day 8, p. 90.

Neither Mr. Olson's or Mr. Lewis' testimony supported any finding that Mr. Roberts was aware of any conspiracy between Tyson and other suppliers of broiler chicken products to rig bids and fix prices, or that Mr. Roberts knowingly and voluntarily joined such a conspiracy.[3] To the

---

[3] Other fact witnesses presented by the Government included Robert Bryant, an employee of Pilgrim's. *See* Tr. Day 5, p. 84. Mr. Bryant, who testified pursuant to a non-prosecution agreement, did not mention Mr. Roberts. He admitted that, several weeks prior to the trial in this action, he told prosecutors and agents that there was no agreement between suppliers which prevented the suppliers from arriving at different price points. *Id.* at 94; Tr. Day 6, p. 39. He furthermore told the Government that Pilgrim's pricing decisions were made independently, that Pilgrim's did not want to have the same prices as its competitors, and that it wanted to outperform, and take business away from, Tyson. *See* Tr. Day 6, p. 41, 88. Government witness Michael Ledford, Senior Director of Supply Continuity for Chick-fil-A, made no reference to Mr. Roberts other than stating that he dealt with Mr. Roberts in contract negotiations for 2012 and 2013. *See* Tr. Day 10, pp. 194-195.

contrary, Mr. Lewis' testimony that Tyson's bid was unique compared with the other suppliers contradicts any finding that Tyson conspired with other suppliers of broiler chicken products.

### C. The Government's Documentary Evidence Relating to Mr. Roberts

The Government has introduced tens of thousands of pages of telephone records into the record in this case without presenting any testimony or evidence concerning any specific calls or their contents. The prosecution has furthermore introduced into evidence several emails which Mr. Roberts was a party to, or was copied on. Government Exhibit # 114 is an internal Tyson email string pursuant to emails from Church's regarding getting Tyson approved as a frozen 8-piece and dark meat supplier and the price for frozen 8-piece and dark meat. *See* Govt. Ex. # 114. Mr. Roberts sent an email to other Tyson employees, stating that he wanted to discuss the freezing issue before Tyson submitted anything to Church's. *Id*. Mr. Roberts stated that he wanted to know what the "storage expectation" was going to be—i.e. whether Tyson was going to have to store the frozen product for longer than a month. *Id*. It is clear from the email that Mr. Roberts was concerned about the cost to Tyson in having to potentially store frozen chicken for Church's—not about Tyson's competitors' pricing.

Government Exhibit # 6282 is a July 2013 email string from Scott Brady of Claxton Poultry. *See* Govt. Ex. # 6282. Mr. Brady sent what appear to be prices to Mr. Roberts. *Id*. Six days later, Mr. Brady sent another email telling Mr. Roberts not to forget about him. *Id*. There is no evidence that Mr. Roberts asked Mr. Brady for any pricing information, or that he ever responded to Mr. Brady. There is furthermore no evidence that Mr. Brady's cryptic pricing notes were related to any particular bid or request for proposals, or any alleged collusion or conspiracy to rig bids or fix prices.

Government Exhibit # 221 is an internal Tyson email string in response to an email from a Church's employee regarding Church's quality assurance (QA) requirements for 2014. *See* Govt. Ex. # 221. Another Tyson employee states that QA requirements are costs which Tyson has not incurred previously, and a second Tyson employee responds that the costs were not in Tyson's pricing to Church's. *Id*. at 2. Mr. Roberts' superior at Tyson states that the requirements could get expensive. *Id*. at 1. Mr. Roberts states that a third Tyson employee was getting the estimated total cost and that they would know what the real impact was and add it to the cost-plus model. *Id*. Carl Pepper, a Tyson employee, sends an email to Mr. Roberts and several other Tyson employees stating that he talked to Jimmy Little and that Little said that Pilgrim's was planning on adding their cost to do the QA requirements. *Id*. No evidence was presented that Mr. Roberts ever asked Mr. Pepper for any pricing information, or that he ever responded to Pepper's statements.

The prosecution's evidence of Mr. Roberts' alleged participation in the charged conspiracy largely consists of internal Tyson emails in response to emails from Tyson's customers. None of the prosecution's documentary evidence possesses any probative value as to the issue of whether Mr. Roberts knew of the charged conspiracy between suppliers of broiler chicken products to fix prices or rig bids, or that he knowingly and voluntarily joined the alleged conspiracy.

**D. The Government's Communications Evidence Relating to Mr. Roberts**

The Government cites to various a handful of telephone calls between Mr. Roberts and Scott Brady of Claxton Poultry (Claxton), and between Mr. Roberts and Jayson Penn of Pilgrim's Pride (Pilgrim's), and Mr. Roberts, in its summary exhibits in relation to the KFC 2015 8-piece COB supply transaction.[4] *See* Govt. Ex. # 10-1. The prosecution highlights a telephone call from

---

[4] Several of the Government's alleged telephone calls are mere seconds in duration.

-7-

Mr. Roberts to Mr. Brady on August 11, 2014. *Id*. at 1. However, other documents introduced by the prosecution reveal that, on the same day, Mr. Roberts sent Tyson's initial bid to RSCS, asking RSCS about a possible commitment to Tyson's proposal by the end of the week. *See* Govt. Exs. # 1190, 1191. Tyson's initial bid for 8-piece COB supply was highly distinct compared with those of its competitors in including marination weight and removing 48-hour drain tare weights and case weight ceilings. *See* Govt. Ex. # 1191 at 1.

The Government furthermore highlights several alleged calls between Mr. Penn, Mr. Brady, and Mr. Roberts on August 15, 2014. *See* Govt. Ex. # 10-1 at 1. Yet, as shown above, the calls occurred several days after Tyson had already submitted its initial bid to RSCS. *See* Govt. Ex. # 1190. Furthermore, to the extent emails from Jason McGuire, a Pilgrim's employee, to Mr. Penn on August 18, 2014, reveal anything they reveal that Pilgrim's supposedly possessed pricing information for Claxton, Koch Foods, Case Farms, George's, and Mar-Jac Poultry—all suppliers *except Tyson*. *See* Govt. Exs. # 1035, 1036-1, 9744. This evidence compels a conclusion that Tyson did not share any pricing information with other suppliers of broiler chicken products in relation to the KFC 2015 8-piece COB supply transaction.

Considering the testimonial, documentary, and communications evidence as a whole, the prosecution has failed to introduce any evidence, still less evidence beyond a reasonable doubt, relating to Mr. Roberts on critical, essential elements of its Sherman Act charge. Rule 29 and principles of due process and fundamental fairness dictate that judgment of acquittal be granted in his favor.

## II. ARGUMENT AND CITATION OF AUTHORITIES

Federal Rule of Criminal Procedure 29 provides that, after the government closes its evidence, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "When determining whether to grant a motion for judgment of acquittal, the court asks only whether, taking the evidence in the record in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Miller*, 178 F. Supp. 3d 1114, 1118 (D. Colo. 2016) (citing *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000); *United States v. Isaac–Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006)). "'*If there is a failure to prove an essential element of the offense, the defendant is entitled to an acquittal*.'" *McKenzie v. United States*, 266 F.2d 524, 527 (10th Cir. 1959) (emphasis added) (quoting *Christoffel v. United States*, 338 U.S. 84 (1949); *Politano v. United States*, 220 F.2d 217 (10 Cir. 1955)).

The Sixth Amendment, in conjunction with the Due Process Clause of the Fifth Amendment, "requires that each element of a crime be proved to a jury beyond a reasonable doubt." *Hurst v. Florida*, 577 U.S. 92, 97 (2016) (citing *Alleyne v. United States*, 570 U.S. 99, 103 (2013)). In regard to a conspiracy charge, the government must prove beyond a reasonable doubt that "'(1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it.'" *United States v. Horn*, 946 F.2d 738, 740 (10th Cir. 1991) (quoting *United States v. Esparsen*, 930 F.2d 1461, 1471 (10th Cir. 1991)). "An agreement between the defendants to violate the law is an essential element, which must be shown beyond a reasonable doubt." *United States v. Migliaccio*, 34 F.3d 1517, 1521 (10th Cir. 1994) (citing *United States v. Davis*, 965 F.2d 804, 814 (10th Cir. 1992); *United States v.*

*Butler*, 494 F.2d 1246, 1249 (10th Cir. 1974)). "A conspiracy cannot be thrust upon a member, but instead must be purposely and voluntarily joined; there 'must at some point be a meeting of the minds in the common design, purpose, or objects of the conspiracy.'" *United States v. Nall*, 949 F.2d 301, 306 (10th Cir. 1991) (quoting *Butler*, 494 F.2d 1246, 1249 (10th Cir.1974)). A defendant's knowledge of the purpose of the conspiracy "must be shown by 'clear, unequivocal evidence.'" *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000) (quoting *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986)).

On a conspiracy charge, "[t]he evidence must show circumstances to warrant a jury finding that the conspirators had a unity of purpose or a common design and understanding." *United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir. 1985) (citing *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444, 450–451 (10th Cir. 1984)). The conduct of the alleged co-conspirators "must be interdependent in some way." *Horn*, at 740 (citing *United States v. Daily*, 921 F.2d 994, 1007 (10th Cir. 1990)).

Similarly, to convict Mr. Roberts of violating the Sherman Act, Government must "'prove beyond reasonable doubt that the Defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the Defendant actually intended to carry out the agreement in fact.'" *United States v. Therm-All, Inc.*, 373 F.3d 625, 639 (5th Cir. 2004). There can be no Sherman Act violation "absent an illegal agreement…" *United States v. Miller*, 771 F.2d 1219, 1240 (9th Cir. 1985). Moreover, "[a] defendant's subjective intent is a required element of a criminal antitrust violation…" *United States v. Andreas*, 216 F.3d 645, 669 (7th Cir. 2000) (citing *United States v. United States Gypsum Co.*, 438 U.S. 422, 434–436 (1978)).

The prosecution has failed to introduce sufficient evidence based upon which a reasonable jury could find Mr. Roberts guilty beyond a reasonable doubt on every element of the charged conspiracy under 15 U.S.C. § 1. Its failure to establish beyond a reasonable doubt as to Mr. Roberts each element of the Section 1 offense warrants entry of a judgment of acquittal in Mr. Roberts' favor as to Count One of the Superseding Indictment.

The prosecution has failed to introduce evidence based upon which a reasonable jury could find beyond a reasonable doubt that Mr. Roberts either (1) knew of any alleged conspiracy or its purpose, or (2) that Mr. Roberts knowingly and voluntarily became a part of any conspiracy. *See Davis*, 965 F.2d at 813-814 (reversing the defendant's conviction for alleged conspiracy under 18 U.S.C. § 371, finding that there was insufficient evidence of a conspiratorial agreement between the alleged conspirators); *Nall*, 949 F.2d at 306 (affirming the district court's dismissal of a conspiracy count against the defendants, finding that there was no evidence to support a finding that there was an agreement between the defendants). For the purposes of the Sherman Act, it has adduced no evidence whatsoever that Mr. Roberts entered into any alleged agreement with a competitor (i.e. any person outside of Tyson) to fix prices or rig bids, or that Mr. Roberts intended to carry out any such agreement. The prosecution failed to introduce any evidence that Mr. Roberts ever asked for any pricing information from Tyson's competitors, or that he requested any other persons to obtain pricing information, or that he provided any pricing information to any competitor. It furthermore failed entirely to provide any evidence that Mr. Roberts had any authority to set prices for Tyson, or had any input into Tyson's pricing. "Unless the individuals involved understood from something that was said or done that they were, in fact, committed to

-10-

raise prices, there was no violation of the Sherman Act." *United States v. Standard Oil Co.*, 316 F.2d 884, 890 (7th Cir. 1963).

The prosecution has similarly failed to introduce any evidence showing any interdependence of Mr. Roberts and any persons outside of Tyson. It has failed to establish beyond a reasonable doubt Mr. Roberts' knowing participation in the conspiracy charged in the Superseding Indictment. To the contrary, all of the prosecution's evidence even arguably relevant to the charges in the Superseding Indictment relates to Tyson's and Mr. Roberts' internal responses to dealings with Tyson's customers.

As the Supreme Court has recognized, "conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984); *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 280 (1968)). "[C]ourts should not permit factfinders to infer conspiracies when such inferences are implausible…" *Id.* at 593 (citing *Monsanto Co.*, at 762-764). The prosecution's evidence relating to Mr. Roberts consists of nothing more than ordinary business activity within Tyson. Furthermore, "'[a] jury may infer guilt from the surrounding circumstances,' [cit.] [ ], but it may not infer guilt by 'piling inference upon inference.'" *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015) (internal citation omitted) (quoting *United States v. Delgado-Uribe*, 363 F.3d 1077 (10th Cir. 2004); *United States v. Xiang*, 12 F.4th 1176, 1184 (10th Cir. 2021)). The Government's case against Mr. Roberts requires the jury to infer that Mr. Roberts was aware of an alleged agreement between Tyson and other suppliers of broiler chicken products to fix prices and rig bids, that he knowingly and voluntarily joined in it, and that

Mr. Roberts possessed some unproven, unknown, authority to set or influence Tyson's pricing—which he did not.

A conclusion that the minimal testimony and evidence introduced by the prosecution regarding Mr. Roberts warrants judgment of acquittal is supported by *United States v. Standard Oil Co.*, 316 F.2d 884 (7th Cir. 1963), in which the government charged thirteen defendant petroleum companies with conspiring to raise, and inducing their dealers or jobbers to raise, retail gasoline prices in a certain area, in violation of Section 1 of the Sherman Act, *id*. at 887-888. At trial, the companies moved for judgments of acquittal, however all were convicted. *Id*. at 887-888, 897. The Seventh Circuit Court of Appeals reversed the judgment of conviction against one of the companies, Phillips Petroleum Company, with direction to dismiss the indictment as to the company, finding that:

> The record before us does not show that Phillips made any agreement with anybody. Standard did not call Phillips. Standard did not ask for any action by Phillips. [William] Oliver [a Phillips salesman], who had no pricing authority, did not agree to anything. There is no evidence that Phillips induced or persuaded any jobber to induce or persuade any dealer to raise prices. Phillips, and no employee of Phillips, had any knowledge of any alleged 'plan.' All actions by Phillips were entirely consistent with its innocence. The government failed to produce sufficient circumstantial evidence to 'exclude every reasonable hypothesis except that of guilt.'

*Id*. at 899 (quoting *United States v. Fenwick*, 177 F.2d 488, 490 (7th Cir. 1949)). Following *Standard Oil Co.*, in the instant case the prosecution presented no evidence in its case-in-chief that Tyson possessed any agreement with other suppliers of broiler chicken products. It presented no evidence that Mr. Roberts ever contacted any competitor regarding pricing or asked any other Tyson employee to do so. Contrary to the Government's theory of the case, the price increases relating to the KFC 2015 8-piece COB supply transaction were nothing more than "the result of

economic conditions in a standardized industry." *Cont'l Baking Co. v. United States*, 281 F.2d 137, 145 (6th Cir. 1960) (citing *Pevely Dairy Co. v. United States*, 178 F.2d 363 (8th Cir. 1949). Likewise, the price increases relating to the Church's 2013 freezing charge and 2014 quality assurance costs transactions were nothing more than Tyson charging Church's for its additional costs in complying with Church's requirements.

All of the prosecution's evidence relating to Mr. Roberts and Tyson is consistent with legitimate business activity, and therefore Mr. Roberts' lack of guilt as to the charged conspiracy. Furthermore, as to the Government's evidence relating to other suppliers or defendants, exchanges of pricing information alone cannot "constitute a *per se* violation of the Sherman Act." *U.S. Gypsum Co.*, 438 U.S. at 441 n. 16 (citing *United States v. Citizens & Southern Nat. Bank*, 422 U.S. 86, 113 (1975); *United States v. Container Corp.*, 393 U.S. 333, 338 (1969) (Fortas, J., concurring)).

"[G]uilt is still individual and personal in conspiracy cases—it is not a matter of mass application." *United States v. Dickey*, 736 F.2d 571, 583 (10th Cir. 1984) (citing *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir. 1979); citing *Butler*, 494 F.2d at 1256). In determining Mr. Roberts' Motion, the Court should consider the evidence which relates to him, and should grant judgment of acquittal pursuant to Rule 29. The Government's handful of email communications and references by fact witnesses directly relating to Mr. Roberts are wholly insufficient to establish beyond a reasonable doubt that Mr. Roberts knew of an alleged conspiracy between suppliers of broiler chicken products to fix prices and rig bids, or that he knowingly and voluntarily joined in such a conspiracy. Where the Government fails to introduce evidence

sufficient to establish any essential element of the offense beyond a reasonable doubt, the defendant is entitled to judgment of acquittal. *See McKenzie*, 266 F.2d at 527.

### III. CONCLUSION

On the grounds set forth herein, Defendant Gary Brian Roberts respectfully requests that the Court grant his Motion for Judgment of Acquittal and enter a judgment of acquittal in Defendant's favor, pursuant to Federal Rule of Criminal Procedure 29.

Respectfully submitted, this 29th day of November, 2021.

| | |
|---|---|
| */s/ Craig A. Gillen* | */s/ Richard Tegtmeier* |
| Craig A. Gillen | Richard L. Tegtmeier, #2544 |
| Anthony C. Lake | SHERMAN & HOWARD LLC |
| GILLEN WITHERS & LAKE LLC | 633 Seventeenth Street |
| 400 Galleria Parkway | Suite 3000 |
| Suite 1920 | Denver, Colorado 80202 |
| Atlanta, Georgia 30339 | (303) 299-8163 |
| (404) 842-9700 | rtegtmeier@shermanhoward.com |
| cgillen@gwllawfirm.com | |
| aclake@gwllawfirm.com | |

*Counsel for Gary Brian Roberts*

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2021, I electronically filed the foregoing **DEFENDANT ROBERTS' MOTION FOR JUDGMENT OF ACQUITTAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*/s/ Craig A. Gillen*
Craig A. Gillen
Anthony C. Lake
GILLEN WITHERS & LAKE LLC
400 Galleria Parkway
Suite 1920
Atlanta, Georgia 30339
(404) 842-9700
cgillen@gwllawfirm.com
aclake@gwllawfirm.com

*/s/ Richard Tegtmeier*
Richard L. Tegtmeier, #2544
SHERMAN & HOWARD LLC
633 Seventeenth Street
Suite 3000
Denver, Colorado 80202
(303) 299-8163
rtegtmeier@shermanhoward.com

*Counsel for Gary Brian Roberts*