IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:20-cr-00152-PAB

UNITED STATES OF AMERICA,

   Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. **JIMMIE LEE LITTLE,**
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

   Defendants.

**DEFENDANT JIMMIE LITTLE'S MOTION FOR JUDGMENT OF ACQUITTAL**

Pursuant to Federal Rule of Criminal Procedure 29(a), Defendant Jimmie Little, by and through his counsel, moves for a judgment of acquittal because the evidence is insufficient to sustain a conviction.

## I.     Procedural Background

On October 6, 2020, the Grand Jury returned a Superseding Indictment alleging that Mr. Little along with nine co-defendants and other co-conspirators engaged in a conspiracy to rig bids and fix prices for broiler chicken products beginning as early as 2012 and continuing through at least early 2019.  (Dkt. #101 ¶ 1.)  The Superseding Indictment describes fourteen separate episodes that allegedly constitute the means and methods of the conspiracy, yet it argues a broader and seemingly more wide-reaching conspiracy than those fourteen episodes.  (*Id*. ¶¶ 47-143.)  It is unclear from the Superseding Indictment how the fourteen distinct episodes are related to a single conspiracy involving all the defendants.  In fact, the fourteen episodes involve different groups of individuals, customers, and bids.  Mr. Little is identified in only three of the fourteen identified episodes.  (*Id*. ¶¶ 66-70; 77-83; 87-107.)  The Superseding Indictment alleges that he was a Sales Director at Pilgrim's and started working at the company in approximately 2000.  (*Id*. ¶ 18.)  Mr. Little retired on September 30, 2016. (*See* GX9748.)

The Superseding Indictment also charges Mr. Little with False Statements (18 U.S.C. § 1001) ("Count Two") and Obstruction of Justice (18 U.S.C. § 1512(c)(2)) ("Count Three"). (Dkt. #101 ¶¶ 146-149, 150-151.)  Both counts are based upon statements that Mr. Little allegedly made on August 31, 2020, when he was interviewed in his home by federal agents. (*Id*.)  Counts Two and Three were dismissed with prejudice on the Government's motion.  (Dkt. #828, Dkt. #835.)

Trial commenced on October 25, 2021. On November 24, 2021, the Government concluded its case-in-chief and Mr. Little orally moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

## II.     Legal Standard

Under Rule 29(a), the Court must enter a judgment of acquittal when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence, viewed in the light most favorable to the government, is sufficient only when a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 44 F.3d 860, 864-66 (10th Cir. 1995) (reversing conspiracy conviction). The test is not whether a rational jury could decide that guilt was more likely than not, but beyond a reasonable doubt. *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013). The evidence "must be substantial, raising more than a mere suspicion of guilt." *Id*. (*citing United States v. Smith*, 133 F.3d 737, 742 (10th Cir.1997)).

## III.    No Rational Juror Could Find Beyond a Reasonable Doubt that Mr. Little Conspired to Rig Bids or Fix Prices[1]

To demonstrate that an individual agreed to conspire, the Government must prove the individual had a conscious commitment to a common scheme designed to achieve an unlawful objective. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984). He must know the essential objectives of the conspiracy and knowingly and voluntarily become a part of it.

---

[1] Pursuant to D.C. Colo. L.Cr.R. 12.1(b), Mr. Little adopts and incorporates by refence the arguments and authorities cited in Sections III.D and IV of Mr. Kantola's Motion for a Judgment of Acquittal (Dkt. #876) with the respect to the Government's failure to prove undue restraint of trade and the absence of a basis to apply a per se presumption and improper variance from the indictment.

*United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991). "Those having no knowledge of the conspiracy are not conspirators," just as one cannot become a member of a conspiracy "merely by associating with conspirators known to be involved in crime." *Id*. "Mere exchanges of information, even regarding price," are neither illegal nor indicative of conspiracy, much less a conspiracy covering many products and individuals over the course of many years. *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999).

Here, the Government alleges a conspiracy to rig bids and fix prices for broiler chicken products beginning as early as 2012 and continuing through at least early 2019.[2] The evidence offered at trial was even broader than the fourteen episodes identified in the Superseding Indictment. Despite calling nine fact witnesses and introducing hundreds of exhibits, the evidence offered regarding Mr. Little's alleged involvement in the conspiracy was minimal and certainly not sufficient to sustain a conviction. Not a single fact witness, not even the Government's "insider" Mr. Bryant, testified to the existence of a specific agreement entered into by Mr. Little to fix a price or rig a bid. All that Mr. Bryant could testify to was Mr. Little relayed information from conversations he had with someone at Tyson's and Holmes in 2014 or 2015 and Mr. Bryant understood that Mr. Little collected pricing information from Holmes to increase prices without losing volume. Reporter's Transcript (R. Bryant), Nov. 1, 2021, p. 29:24-31:7.

The Government offered a series of summary exhibits directed at specific episodes of the purported conspiracy. Mr. Little is identified in only six of the summary exhibits. (*See* Exhibits

---

[2] The Government stipulated that Mr. Little retired from Pilgrim's on September 30, 2016. (*See* GX9748.)

1-1, 2-1, 5-1, 10-1, 14-1, 17-1.) Exhibits 10-1, 14-1 and 17-1 all deal with KFC. Exhibit 10-1 identifies a total of three telephone calls between Mr. Little, Mr. Kantola and Mr. Pepper and three telephone calls between Mr. Little and Mr. Austin (with whom Mr. Little worked at Pilgrim's) during a two-week time period. Exhibit 14-1 similarly identified three telephone calls between Mr. Little, Mr. Kantola and Mr. Brady during a two-week time period. Finally, Exhibit 17-1 includes one telephone call that Mr. Little had with Mr. Brady. None of the calls were recorded and there is no evidence of what was discussed during those calls. Furthermore, it was well established at trial that there were lawful reasons for competitors to speak with one another. *See, e.g.*, Michael Ledford, Nov. 9, 2021, Trial Tr. 178:18-179:21; Meyer Skalak, Nov. 15, 2021, Trial Tr. 91:10-92:22.[3]

       Exhibits 1-1 and 2-1 concern freezer costs and quality assurance requirements for Church's Chicken. Both summary exhibits reflect a telephone call between Mr. Little and Mr. Pepper, followed by an e-mail from Mr. Pepper that contains information regarding Pilgrim's. Even viewed in the light most favorable to the Government, at most the documents summarized in the exhibits suggest that Mr. Little shared information concerning Pilgrim's with a competitor. However, mere exchanges of information, even regarding price, are neither illegal nor indicative of a conspiracy. *Mitchael*, 179 F.3d at 859.

       Finally, Exhibit 5-1 relates to negotiations in 2014 with Pollo Tropical restaurants. The summary exhibit includes telephone calls between Mr. Cooper at Claxton and Mr. Little at Pilgrim's. Again, the calls were not recorded and there is no evidence of what was discussed

---

[3] An official transcript of the testimony of Mr. Ledford, Mr. Skalak and Mr. Brink is not yet available. In accordance with the Court's instructions, testimony from the unofficial transcript is referenced but not directly quoted.

during those calls.  In addition to the summary exhibit, the Government called Joseph Brink, who was responsible for negotiating with chicken suppliers for the purchase of broiler chicken products for Pollo Tropical restaurants.  Although Mr. Brink testified that he was unhappy about the outcome of the 2014 negotiations, he had no personal knowledge of any of the suppliers communicating with each other about the contract.  Joseph Brink, Nov. 17, 2021, Trial Tr. 100:24-101:6.  In short, he could offer no evidence that Mr. Little entered into an agreement or was engaged in a conspiracy to fix prices or rig bids.

The Government has failed to prove that Mr. Little knowingly and voluntarily joined a conspiracy to fix prices or rig bids.

**IV.   Conclusion**

For the foregoing reasons, Defendant Jimmie Little respectfully requests that a judgment of acquittal be granted as to Count One.

Dated: November 29, 2021

Respectfully submitted,

/s/ Mark A. Byrne
_____
Mark A. Byrne (Cal. Bar No. 116657)
e-mail: markbyrne@byrnenixon.com
Jennifer L. Derwin (Cal. Bar No. 222420)
e-mail: jenniferderwin@byrnenixon.com
**BYRNE & NIXON LLP**
888 West Sixth Street, Suite 1100
Los Angeles, California 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012

*Attorneys for Defendant Jimmie Little*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to all parties of record.

        /s/ Mark A. Byrne
      Mark A. Byrne