IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

## UNITED STATES' MOTION TO EXCLUDE DX C-781

The government respectfully moves to exclude DX C-781 ("McKinsey Report"), which is a "working draft" of a 2014 slide presentation commissioned by RSCS. The McKinsey Report was created by compiling information from interviews with the defendants, other conspirators, and other sources with no business duty to report reliable information to McKinsey or to RSCS. At bottom, it is a hearsay document that is not a record of McKinsey's regularly conducted business activities, and is riddled with embedded hearsay with no applicable hearsay exception. Moreover, the government understands that at least four defendants were interviewed as a part of the McKinsey

project, so to the extent any slides are based on information provided by defendants, defendants cannot introduce their own statements under any hearsay exception.

## Background

In 2014, RSCS retained McKinsey & Company "to assess the risk in the COB supply chain and to provide solutions to ensure availability." McKinsey Report at 1. The slide deck's authors are unknown to the government.[1] However, page 3 of the report lists individuals—none of whom are employed at McKinsey—who "guided the overall effort" for the report. Slide 4 shows a list of individuals who were "engaged for input and guidance" for the project, including defendants Roberts, Mulrenin, Penn, and Austin, as well as co-conspirators Carl Pepper (Tyson), Justin Gay (Pilgrim's) and Scott Tucker (Pilgrim's). The rest of the slides are derived from myriad sources, including the National Chicken Council (slide 7), various pricing indices (slide 8), an International Dairy-Deli-Bakery Association report (slide 11), an Agri-Stats report (slide 13), a Pilgrim's Pride presentation to RSCS (slide 14), interviews with producers and others (slides 16-19), and the RSCS procurement team (slides 31-34).

## Discussion

Hearsay is inadmissible as a business record unless it (a) "was made at or near the time by—or from information transmitted by—someone with knowledge;" (b) "was kept in the course of a regularly conducted activity of a business;" (c) "making the

---

[1] The defendants disclosed Bob Glied, a McKinsey employee, as a potential witness. It is the government's understanding that Mr. Glied will not testify that he authored the McKinsey Report.

2

record was a regular practice of that activity;" (d) "all these conditions are shown by the testimony of the custodian or another qualified witness;" and (e) "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." FED. R. EVID. 803(6).

Moreover, as this Court recently explained, the "requirement that each person in the chain of information . . . be under a business duty to provide accurate information." ECF 673 at 7 n.3. *See also United States v. Blechman*, 657 F.3d 1052, 1065 (10th Cir. 2011) ("If the person who provides the information is an outsider to the business who is not under a business duty to provide accurate information, then the reliability rationale that underlies the business records exception ordinarily does not apply."); *United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008) ("The essential component of the business records exception is that each actor in the chain of information is under a business duty or compulsion to provide accurate information. If any person in the process is not acting in the regular course of business, then an essential link in the trustworthiness chain fails.") (ellipsis, citation, and internal quotation marks omitted).

Outside of the business record context, hearsay is inadmissible unless an exception to the hearsay rule applies. Where there are multiple layers of hearsay within a document, each layer of hearsay must satisfy an exception before the document can be admitted. *See United States v. Blechman*, 657 F.3d 1052, 1065 (10th Cir. 2011) ("Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person.") (internal quotation omitted). In other words, the evidence can be admitted only if "each part of the

3

combined statements conforms with an exception to the rule." *Zimmerman v. Univ. of Utah*, No. 2:13-cv-1131, 2018 WL 10152219, at *2 (D. Utah Aug. 16, 2018).

The McKinsey Report is not a business record. In *Flanagan v. Allstate Ins. Co.*, No. 01 C 1541, 2008 WL 4561543, at *1 (N.D. Ill. May 21, 2008), the court confronted similar facts and held that a McKinsey report commissioned by another company was not a business record. The court reasoned that the document was not sufficiently reliable due to the type of advisory consulting at issue:

> Plaintiffs do not provide this court with sufficient testimony documenting the physical creation of the [relevant] documents, nor do they provide this court with a custodial witness. Many of the witnesses testified that they did not know exactly who created any given [relevant] document (let alone the ones specifically objected to here), *only that they were a collaboration of various McKinsey consultants and Allstate employees*. Most witnesses cannot remember much about the [relevant] documents at all-when they were made, who made them, or how they were created. . . .
>
> Finally, plaintiffs have offered no evidence confirming the reliability of these documents as being made in the regular course of McKinsey's business. McKinsey is a consulting firm whose business is to consult. Yet, we are unsure what that consists of. The type of consulting McKinsey performed for Allstate is wholly different, for example, from consultants hired to perform a financial audit. That type of consulting is fairly standard and routine, requiring precision and accuracy, allowing for an inference of reliability. Here, witness testimony makes clear that McKinsey's role was as an idea generator rather than an auditor. While McKinsey engaged in some fact-gathering, it also worked to generate *thoughts and ideas for the future*, some of which, all parties concur, was never acted upon or considered again after initial proposals. This is not the type of consulting that can result in reports of clear reliability, absent the other indicia not proffered here.

*Id.* (citation omitted) (emphasis added).

Based on the government's understanding that Mr. Glied will not testify that he

4

authored the slide deck, it is unlikely that defendants will be able to show that this McKinsey report differs meaningfully from the report in *Flanagan*—that is to say that McKinsey's work did not consist of generating thoughts and ideas for the future. McKinsey's work was to gather information from defendants, co-conspirators, and other outside sources in order to generate reports and recommendations about potential future actions for RSCS and KFC. McKinsey Report at 1. Just as in *Flanagan*, McKinsey Report's recommendations are oriented towards possible future events and actions are not recordings of current or past events, and thus lack the indicia of reliability required by Rule 803(6). *Flanagan*, 2008 WL 4561543, at *1. However, even in the unlikely event that Mr. Glied is more knowledgeable about the report than the government believes, the defendants will still not be able to meet any exceptions to the rule against hearsay with respect to the underlying statements used to create the report or the report itself.

The McKinsey Report also fails under the Tenth Circuit's "business duty" requirement. Significant portions of the report contain statements based on interviews with suppliers, which helped inform McKinsey's conclusions and recommendations. There is no indication that any of the interviewees who "were engaged for input and guidance," McKinsey Report at 4, had any business duty to provide accurate information to McKinsey. Indeed, the suppliers McKinsey interviewed, including four defendants and two co-conspirators in this case, had every incentive to (1) inflate the severity of the supply problem so that RSCS would be more willing to accept price increases; and (2) conceal key facts related to supplier coordination.

The defendants also cannot cure the unreliability of the underlying information or

5

data by arguing McKinsey verified it. *See Blechman*, 657 F.3d at 1066. In fact, evidence in both the government's and defense's possession suggests that Agri Stats, one of the purported underlying sources of information that Pilgrim's provided to McKinsey, refused to provide underlying information that would help McKinsey verify its data.

Finally, the McKinsey Report has embedded hearsay for which there is no exception. As an illustration, the information underlying slide 13 is based on an "Agristat report on small bird plants via Pilgrim's," meaning the slide contains at least two levels of nested hearsay: from Agristats to Pilgrim's to McKinsey. There is no indication in the record that the Agristats report is a business record, or that anything Pilgrim's may have done to, or said about, the Agristats report falls within a hearsay exception. Indeed, the whole purpose of a report from a consulting firm like McKinsey is for them to gather information from others—including written and oral statements—and assimilate those out-of-court statements into recommendations (bringing in yet another layer of hearsay). To the extent any slides are based on information provided by defendants who were interviewed as part of the McKinsey project, such statements would be inadmissible hearsay, as defendants cannot introduce their own statements under Rule 801(d)(2)(E). Thus, by its very nature, the McKinsey Report is replete with hearsay and therefore inadmissible.

## CONCLUSION

For the foregoing reasons, the government respectfully moves to exclude DX C-781 as inadmissible hearsay.

Dated: December 4, 2021           Respectfully submitted,

                                          /s/
JILLIAN ROGOWSKI
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
Washington D.C. 20530
Tel: (773) 703-7633
Jillian.Rogowski@usdoj.gov
Attorneys for the United States