# APPENDIX A

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Olson | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did you want Defendant Roberts and Defendant Blake to be talking about prices? | 27 Oct - 267:15-16 |
| Olson | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  When you were in the negotiation and completing the negotiation in 2014, did you expect Defendants Roberts and Blake to talk about prices?<br>　　MR. McLOUGHLIN:  Your Honor, objection with respect to the witness' expectation.  The crazy point is his expectation is purely idiosyncratic, it is personal, and it is not relevant<br>to the issues the jury has to decide.  But to the extent it might be, it's substituting his opinion for that of the jury.<br>　　MR. BELLER:  Thank you, Your Honor.  And I object under all of those grounds in addition to relevance as to Mr. Fries and Claxton Poultry.<br>　　THE COURT:  Objections will be overruled.  The witness can answer.<br>A.  Can you state it again?<br>BY MS. SWEENEY:<br>Q.  Sure.  So in your negotiations in 2014 or after, did you expect Defendants Blake and Roberts to talk about prices?<br>A.  No. | 27 Oct - 267:23-268:15 |
| Olson | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Why not?<br>　　MR. McLOUGHLIN:  Your Honor, same objection and an additional objection as to Mr. Lovette.<br>　　MR. GILLEN:  And I object.  It assumes facts not in evidence.<br>　　THE COURT:  Objections will be overruled.  He may answer.<br>BY MS. SWEENEY:<br>Q.  Why not?<br>A.  I expect both suppliers to be working earnestly to give us their best price, and I think for them to share their information ends up not having as much of a free market. | 27 Oct - 268:16-269:2 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did you expect any of the defendants that you've identified to ever call you to ask about their competitors' period prices?<br>A.  No.<br>Q.  Why not?<br>A.  Well, I believe that that would be --<br>    MR. McLOUGHLIN:  Your Honor, excuse me, objection to the witness' personal beliefs here.<br>    THE COURT:  Sustained.<br>    MR. McLOUGHLIN:  It's not relevant to the question before the jury.<br>    THE COURT:  Sustained.<br>BY MR. TORZILLI:<br>Q.  Can you explain rather than your belief why you did not expect any of the defendants you have identified here today to ever call you to ask for their competitors' period pricing?<br>    MR. McLOUGHLIN:  Your Honor, same objection.  Putting the same drink in a different bottle does not change the issue here.<br>    MR. KORNFELD:  Your Honor, I would additionally interpose a relevance objection to an expectation of something that didn't happen.<br>    THE COURT:  I am going to sustain both objections. There is no foundation for him even expecting such a thing. | 3 Nov - 1309:6-1310:3 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  So they were involved in all the communications that you had with chicken suppliers?<br>A.  They were involved in all of the meetings that we had with suppliers. They were not necessarily the originators of written correspondence to the suppliers.  I did most of that. | 3 Nov - 1241:12-16 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  And you mentioned approved chicken suppliers.  Who were the approved chicken suppliers going into the contract negotiations in 2014?<br>A.  There were six approved suppliers at that time, Pilgrim's Pride, Tyson Foods, Mar-Jac Poultry, Koch Foods, Claxton Poultry and George's. | 3 Nov - 1241:17-22 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Did you at any time ask any of the recipients of this e-mail to communicate with any of their competitors before they submitted their final proposal?<br>A. No. | 3 Nov - 1289:3-6 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. When you were at RSCS in 2014, did you ever ask any of the competing suppliers to communicate with each other about their bids or their pricing proposals or their negotiations with you?<br>A. No. | 3 Nov – 1318:3-6 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Okay.  And can you tell me whether RSCS's contract prices are public information or private information?<br>A. Private.<br>    MR. McLOUGHLIN:  Objection, Your Honor, to the question and to the answer.  What is private when, in fact, for example with respect to Pilgrim's, Pilgrim's knows the price of the contract.  The man on the street may not know it and so, quote, it's private, but that's simply irrelevant to the issues here.<br>    THE COURT:  He has answered.  The objection is overruled as well. | 3 Nov - 1310:8-18 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Can you explain the basis for your answer?<br>A. I believe that it is morally wrong.  In fact, I think it's --<br>    MR. McLOUGHLIN:  I object to the witness' belief which has already been ruled improper.<br>    THE COURT:  Overruled.  He can answer.<br>BY MR. TORZILLI:<br>Q. Please complete your answer, sir.<br>A. I believe it's morally wrong.  In fact, I think it's a form of cheating. | 3 Nov - 1310:20-1311:4 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. What do you mean by cheating?<br>A. Well, it's not right. | 3 Nov - 1311:5-6 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  What do you mean not right?<br>A.  Well, it's against all the moral standards that I live by. | 3 Nov - 1311:7-8 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Sure.  Would you want or would you expect any publication to be publishing the RSCS bids that were received from the competing chicken suppliers?<br>A.  No.<br>MS. PREWITT:  Objection, Your Honor, compound question.<br>     THE COURT:  Overruled.  You can answer.<br>A.  No.  I answered no. | 4 Nov - 1549:6-13 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Thank you, sir.<br>And why not?<br>A.  Well, it is protected confidential information that should not be shared outside RSCS. | 4 Nov - 1549:15-18 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did you ever ask competing chicken suppliers to discuss the bids that they were submitting to RSCS?<br>A.  With each other?<br>Q.  With each other.<br>A.  No. | 4 Nov - 1549:19-23 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Why not?<br>A.  It's – it's morally wrong.<br>Q.  What do you mean by that? | 4 Nov - 1549:24-1550:1 |
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did you, Mr. Lewis, ever communicate with any other purchaser of chicken about contract prices or about bids?<br>A.  No.<br>Q.  Why not?<br>A.  Well, that's against my moral standard. | 4 Nov - 1551:7-11 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Lewis | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  You mentioned that contract price information in your view is confidential.  Is that an accurate statement in your view?<br>A.  Yes. | 4 Nov - 1551:12-14 |
| Smith | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Okay. In connection with this RFP, did you ever ask suppliers, chicken suppliers, to contact each other to talk about their bids?<br>A. No. | 8 Nov - 1893:8-11 |
| Smith | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Why not?<br>A. Well, because -- we expect our partners to be confidential with our information. We do our best to be confidential with their information. And privacy and confidentiality is paramount to having a competitive bid. | 8 Nov - 1893:12-16 |
| Smith | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Why is that?<br>A.  Because if one supplier knows what another supplier is bidding, then it's possible that those numbers could not be as aggressive as they normally would have been. | 8 Nov - 1893:17-20 |
| Smith | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  And by aggressive you meant what?<br>A.  Lower in price. | 8 Nov - 1893:21-22 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Mr. Ledford, did you ever ask chicken suppliers to communicate with one another for purposes of getting their prices into a tighter range?<br>       MR. BELLER:  Objection, calls for hearsay.<br>       THE COURT:  Overruled.<br>A.  No, I did not. | 8 Nov - 2055:9-14 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Why not?<br>    MR. BELLER:  Relevance, and it's asking him to speculate on a fact that didn't occur.<br>    THE COURT:  Overruled.<br>BY MR. TORZILLI:<br>Q.  You can answer, sir.<br>A.  I didn't want them talking about what my price should be amongst each other.  I wanted the best price from each of them and a fair price, not folks getting together and talking, deciding what my price should be. | 8 Nov - 2055:16-25 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Did you ask them to communicate or coordinate with each other regarding what their wings bids should be for round two?<br>A. No, I did not. | 9 Nov - 2178:22-24 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Why not?<br>A. Again, I wanted their best price, a fair price. I didn't need two suppliers communicating to each other about what the KFC price should be.<br>Q. How, if at all, would two competing suppliers communicating with each other interfere with your ability to get the best price?<br>    MR. FAGG:  Objection, Your Honor.<br>    MR. TUBACH:  Calls for speculation, lack of foundation.<br>    THE COURT:  Overruled.<br>A. It could artificially keep the price higher than it should have been. | 9 Nov - 2178:25-2179:12 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did Mr. Brady or Mr. Austin ever tell you that they were in communication or coordination with each other about their wings bids for round two of 2012?<br>    MR. FELDBERG:  Object to the form of the question.  It assumes facts not in evidence.<br>    THE COURT:  Overruled.  He can answer.<br>A.  No. | 9 Nov - 2179:14-20 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  And why would you have wanted to act upon them if they were talking to each other under those circumstances?<br>A.  Because I would not have wanted them talking during the negotiation to artificially make the price higher than it should have been.  I would have wanted their best price that they came up with as an individual company. | 10 Nov - 2571:18-23 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Mr. Ledford, can you explain what's going on in the e-mail that's in 1700-1?<br>A. Yes. Mark was telling Scott Brady that, "See attached feedback from the Round 1 Poultry RFP." And then he goes on to say, "We will be sending a request for additional information tomorrow."<br>Q. Did anyone at RSCS to your knowledge ever ask Mr. Brady to call any of his competitors to discuss the information contained in this e-mail or in the attachment?<br>A. No. | 10 Nov - 2575:21-2576:7 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Why not, Mr. Ledford?<br>    MR. BELLER: Objection. He is asking him to testify as to whether or not he has knowledge, so it's speculation and it's now multiple layers of hearsay. And he is asking him to speculate on something that didn't happen.<br>    THE COURT: Response?<br>    MR. TORZILLI: I am asking him the reason for his previous answer.<br>    THE COURT: Sustained. | 10 Nov - 2576:11-19 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Sir, do you know whether Mr. Brady called competitors to discuss the information contained in Government Exhibit 1700-1 or the attachment marked as A-288?<br>A. No, I do not have personal knowledge of that. | 10 Nov - 2576:21-24 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Why not?<br>    MR. BELLER: Objection. He testified that he has no knowledge and the question is why don't you have knowledge. And so I would object to relevance and foundation and speculation.<br>    THE COURT: Sustained. | 10 Nov - 2576:25-2577:5 |
| Ledford | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did you ever become aware of Mr. Brady having contacted any of his competitors regarding information contained in government Exhibit 1700-1 or the attachment A-288?<br>    MR. BELLER:  Objection, asked and answered.<br>    MR. TUBACH:  And it's hearsay.  And if we could have a side bar on this, please.<br>    THE COURT:  Yes.<br>  (At the bench:)<br>    THE COURT:  Mr. Torzilli, can you hear me?<br>    MR. TORZILLI:  Yes, sir.<br>    THE COURT:  Mr. Tubach go ahead.<br>    MR. TUBACH:  I believe what the government is trying to elicit here is that Mr. Ledford may have read the indictment and maybe talked to his lawyer about what's in the indictment or what's in the evidence in this case. It's entirely inappropriate to elicit that kind of hearsay post hoc evidence about what Mr. Ledford may know now.  If there is any such evidence, it will come in at trial.<br>    THE COURT:  All right.  And Mr. Torzilli, what do you anticipate that Mr. Ledford will say?<br>    MR. TORZILLI:  I anticipate he will say he has no knowledge or information about Mr. Brady calling competitors. As you can see from the unredacted version of this, Mr. Brady says, I will make a few calls.  And we have phone records that indicate he called competitors on this day, and I think that gives us reason to -- very good reason to believe he was discussing exactly this with those competitors.<br>    So it seems appropriate for us to be asking whether the customer, who in this case Mr. Ledford, was asked about whether he shared information with any of his competitors and including Mr. Kronaugue, but whether the | 10 Nov - 2577:7-2580:9 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---------|----------|----------|---------------------------|
| | | communications that Mr. Brady was intending to do as indicated in the top portion of this e-mail or that he, in fact, did with the – as indicated by the phone records, whether it was done behind Mr. Ledford's back or not.<br><br>THE COURT:  So I am not quite following it.  So when you say the top portion of the e-mail, are you talking about the portion that's been redacted on this exhibit?<br><br>MR. TORZILLI:  It's been redacted on this exhibit, that's right.  And unredacted it indicates that Mr. Brady is communicating with his boss, Mr. Fries, saying, I will make some calls.  And then there are phone records indicating that Mr. Brady called competitors, including at least one defendant, later in this same day.<br><br>MR. FAGG:  Your Honor, this is John Fagg.<br><br>THE COURT:  Go ahead.<br><br>MR. FAGG:  That question is asked and answered.  He has already asked him this question and he says he doesn't know.  We also object that this line of questioning just amounts to argument on behalf of the government.<br><br>THE COURT:  Well, I am going to sustain the objection. The nature of the question, No. 1, I think Mr. Fagg may be right that he has already indicated he doesn't know; but No. 2, I think that there is a very high probability that the witness will misunderstand the question and may answer in a way that would simply recite some type of hearsay statement that he gained after litigation was filed, so I think there is a real danger that there would be something prejudicial coming from him.  Given the fact that the government -- especially given the fact that the government anticipates that his answer to the question would be no anyway.  All right?<br><br>MR. TORZILLI:  That's fair.  Your Honor, may I ask him one last question just to confirm that he has no knowledge of Mr. Brady making any phone calls regarding the content of the e-mail and the attachment?<br><br>THE COURT:  Given the fact he has already indicated he doesn't have knowledge of the competitors doing such a thing, it seems like the question may presume something not in evidence, and for that reason there would likely be an objection that would be sustained in any event. | |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| | | MR. TUBACH:  He was asked that precise question already and gave the answer no, so it just would be repeating the same question he just asked the witness.<br><br>THE COURT:  Anything else, Mr. Torzilli?<br><br>MR. TORZILLI:  No, Your Honor.<br><br>(In open court:)<br><br>MR. TORZILLI:  Thank you, Your Honor.  The government has no further questions. | |
| Skalak | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Did Chick-fil-A in your time in that role ever ask your chicken suppliers to find out the bids from the other suppliers that Chick-fil-A wasn't sharing?<br><br>MR. BELLER:  Your Honor, I'm going to object as to foundation as well as vague regarding this witness' ability to be able to speak on behalf of a corporation.<br><br>MR. McLOUGHLIN:  And Your Honor, I also would object with respect to leading.<br><br>THE COURT:  Both objections will be overruled.  He can answer.<br>A.  Could you please ask the question again?<br>MS. SWEENEY:  I apologize.  With all of the objections, I would ask the court reporter if she could repeat the question.<br><br>(The record was read by the court reporter.)<br>A.  I have no knowledge of us ever asking suppliers to do that. | 15 Nov - 3013:21-3014:11 |
| Brink | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Is there ever a reason for chicken suppliers to speak to each other about prices, bids or negotiations?<br>A. No. | 17 Nov - 3337:4-6 |
| Brink | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Why not?<br><br>MR. McLOUGHLIN:  Objection, Your Honor.<br><br>THE COURT:  Overruled.<br>A.  Because we want a fair price competitive process to have fair competitive pricing. | 17 Nov - 3337:7-11 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---------|----------|----------|---------------------------|
| Brink | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  And why would communication among chicken suppliers on the subjects that -- those subjects potentially be counter to that?<br>A.  It would defeat the purpose.<br>     MR. McLOUGHLIN:  Objection, Your Honor, calls for expert testimony.  This gentleman is not qualified to give an opinion and this is beyond the scope of the cross-examinations which did not go into this issue.  We are not going to have the opportunity to cross-examine him as we have with some of the other witnesses on this issue.<br>     THE COURT:  Overruled on both counts.<br>BY MR. TORZILLI:<br>Q.  You can complete your answer, sir.<br>A.  I forgot what I was saying.  I'm sorry.<br>     MR. TORZILLI:  If we could ask the court reporter to read back the question.<br>     (The record was read by the court reporter.)<br>A.  Because it would defeat the purpose of having pricing that's independent of each other so I can compare pricing between all companies. | 17 Nov - 3337:13-3338:6 |
| Brink | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  Sir, when you gave specific guidance to suppliers during your negotiations with them, did you have an expectation as to whether they would communicate that guidance with one another?<br>A.  No.<br>     MR. McLOUGHLIN:  Object, Your Honor.  Assumes facts that are simply not in evidence.<br>     THE COURT:  I am going to sustain that objection. | 17 Nov - 3341:19-25 |
| Hoyt | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q.  When you were negotiating payment terms with Pilgrim's Pride and Koch Foods, did you want those companies discussing the payment terms with each other?<br>     MR. FAGG:  Objection, Your Honor.  Assumes facts not in evidence.<br>     THE COURT:  Overruled.<br>     Ms. Henry, did you have an objection?<br>     MS. HENRY:  Relevance.<br>     THE COURT:  That will be overruled. | 17 Nov - 3403:9-22 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| | | A.  I am sorry, can you repeat the question? MS. SWEENEY:  Sure.  If I might ask madam court reporter to read it back.      (The record was read back by the court reporter.) A.  Never. | |
| Hoyt | Expectations or Desires Regarding Chicken Suppliers Communicating With Each Other | Q. Did you ever ask Pilgrim's Pride or Koch Foods to discuss payment terms with each other? A. No. | 17 Nov - 3403:24-3404:1 |
| Olson | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. At any point in 2012 or 2016 did you ever ask suppliers to coordinate their pricing? A. No. | 27 Oct - 279:21-23 |
| Olson | Expectations Regarding Chicken Suppliers Coordinating With Each Other | At any point in that time period did you ever ask the chicken suppliers to coordinate on how high price increases, if there were price increases, should be? A. No. | 27 Oct - 279:24-280:2 |
| Lewis | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Did you ever ask the competing chicken suppliers to coordinate their prices amongst themselves to achieve that? A. No. | 3 Nov - 1317:25-1318:2 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Did you ever tell the chicken suppliers to coordinate on pricing to help RSCS achieve pricing parity? A.  No. | 4 Nov - 1572:11-13 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not? A. Because it was competition. It's not the right thing to do. And for us it was a competitive bidding process and we're trying to negotiate down, so we wouldn't want them sharing confidential information with each other. | 4 Nov - 1572:14-18 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Not even to help you attain the pricing parity?<br>A.  No. | 4 Nov - 1572:19-20 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  You said confidential information.  What specifically were you referring to?<br>A.  Just the pricing that was submitted.  It's confidential when we receive it.  We keep that information confidential.  We don't share it with other suppliers. | 4 Nov - 1572:21-25 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. At that meeting did you ask Pilgrim's to coordinate pricing during the RFP process?<br>A. No. | 4 Nov - 1592:5-7 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. Because that's not how we do business. And they are competitors and we were in the middle of a competitive bidding process. | 4 Nov - 1592:8-11 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And at any point in that RFP process did you ask the competing chicken suppliers to coordinate their pricing?<br>A. No. | 4 Nov - 1598:24-1599:1 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. Because it's not how we do business. | 4 Nov - 1599:2-3 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And did you ask the suppliers to coordinate with each other in order to attain those prices closer together?<br>A. No. | 5 Nov - 1696:18-20 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And did you want the suppliers to coordinate their prices to get them closer together when submitting bids to RSCS for that 2018 contract?<br>A. No. | 5 Nov - 1696:21-24 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. Because it was a competitive bid and we didn't -- it was confidential information and we didn't want them sharing information. | 5 Nov - 1696:25-1697:3 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And what was the confidential information?<br>A. The pricing. | 5 Nov - 1697:4-5 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. The bid?<br>A. Yes. | 5 Nov - 1697:6-7 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. So would it have mattered to you if the suppliers had coordinated their prices to attain the price that they submitted to RSCS?<br>A. Yes. | 5 Nov - 1698:18-21 |
| Fisher | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And why would it have mattered?<br>A. Because that's not how we do business and we don't want them talking. | 5 Nov - 1698:22-24 |
| Smith | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. At any time did you ask any of the companies you just named to coordinate their bid submissions?<br>A. No. | 8 Nov - 1894:9-11 |
| Smith | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. Because that would not -- that goes against the process. We were putting out this information to request proposals from each company. | 8 Nov - 1894:12-15 |
| Smith | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. At any time did you ask those companies to coordinate their bids or prices?<br>A. No. | 8 Nov - 1918:10-12 |
| Smith | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Did you ever suspect -- well, why not?<br>A. We would not have asked them. This is a competitive bidding situation, so we would not have asked them to coordinate or to communicate with each other on those bids. | 8 Nov - 1918:13-16 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---------|----------|----------|---------------------------|
| Smith | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. So if there was a supply problem, in your mind would that justify coordination of prices by competitors?<br>A. No, sir. | 8 Nov - 2026:21-23 |
| Smith | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. Because that still defeats the purpose of the competitive bid process, and there is no guarantee that we would receive the best, most accurate price. | 8 Nov - 2026:25-2027:2 |
| Ledford | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  During your time at RSCS, sir, did you ever ask any of the defendants that you identified yesterday to coordinate with each other on any of their bids or their negotiations?<br>    MR. BELLER:  Objection.  This has all been asked and answered.<br>    THE COURT:  I am going to sustain the objection on vagueness.  It wasn't clear what time period was being asked.<br>BY MR. TORZILLI:<br>Q.  How about during 2012 and 2013 negotiation periods, did you ever ask any of the defendants you identified yesterday to coordinate with each other on their bids or their negotiations?<br>    MR. BELLER:  Same objection.<br>    THE COURT:  Sustained. | 9 Nov - 2225:17-2226:4 |
| Ledford | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Did you ever expect that your chicken suppliers would have colluded with one another on any aspect of their dealings with you at RSCS?<br>    MR. FELDBERG:  Objection.  It assumes a fact not in evidence.<br>    MR. TUBACH:  Lacks foundation.<br>    THE COURT:  Overruled.  He can answer.<br>A.  I don't know that I would say any aspects because we certainly wanted them to talk about quality, wanted them to talk about best practices and things of that nature. | 10 Nov - 2572:3-12 |
| Ledford | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Other than the quality and best practices and things of that nature, would you have expected them to collude in any aspect?<br>    MR. TUBACH:  Same objection.<br>    THE COURT:  Overruled.<br>A.  No, that would not have been my expectation. | 10 Nov - 2572:14-19 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Ledford | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Why not?<br>A.  Again, I was wanting their best price.  And when doing negotiations, I didn't want them getting together to come up with what my price should be. | 10 Nov - 2572:21-24 |
| Ledford | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And why is that?<br>A. Because I wanted the best price I could get. | 10 Nov - 2572:25-2573:1 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Now, with regard to the meetings that you had with suppliers, that you personally had with suppliers, did you ask any of the chicken suppliers to coordinate with each other on price during those meetings?<br>A. I did not ask anyone to coordinate on price. | 10 Nov - 2612:10-14 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. I don't think it's appropriate for suppliers to coordinate on price. | 10 Nov - 2612:15-17 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | BY MS. SWEENEY:<br>Q.  So you asked the suppliers to coordinate on, as you said, feed regimens. They could discuss feed regimens?<br>A.  Yes.  Again, if they felt there was a need, we didn't see any issue with that.<br>Q.  And the number of birds in a house.<br>A.  Yes. | 10 Nov - 2615:19-25 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Did you ask the suppliers to coordinate on pricing with regard to the transition to NAE?<br>A. We did not ask the suppliers to coordinate on pricing. | 10 Nov - 2616:1-3 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Did you ask suppliers to coordinate on the price submissions in the discovery phase with regard to the transition to NAE?<br>     MR. McLOUGHLIN:  Object as to form, Your Honor.<br>     THE COURT:  Overruled.<br>A.  We did not ask suppliers to coordinate on price during the submission phase for discovery either. | 10 Nov - 2616:4-10 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>A. Again, each supplier is a competitor. They have their own cost structures. Our job is to get and ascertain their best price, and coordination of pricing doesn't favorably impact getting their best price. | 10 Nov - 2616:12-16 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Can you describe what you mean when you say it doesn't favorably impact getting the best price?<br>A. Sure. Again, each supplier understands their cost basis. They understand what it costs to raise their chicken. And in the manner they understand how to do that NAE, they should be able to derive what their best price is. If we want to have their best price competitive and be able to compare that, we need that to be independent. | 10 Nov - 2616:17-24 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. And did that, what you just said, relate to also the discovery phase prices that were discussed with suppliers?<br>A. That would be on any pricing discussion. | 10 Nov - 2616:25-2617:2 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Do you ever ask chicken suppliers to coordinate with the other suppliers to increase price?<br>A. No, I never asked suppliers to do that. | 15 Nov - 3014:13-15 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Mr. Skalak, did you want competitors coordinating on price?<br>MR. McLOUGHLIN: Same objections.<br>MR. BELLER: I also object because it assumes a fact that hasn't been testified to or stated.<br>THE COURT: Overruled. He can answer.<br>A. May you repeat the question one more time, please?<br>BY MS. SWEENEY:<br>Q. Yes. Mr. Skalak, did you want competitors coordinating on price?<br>A. We did not want competitors coordinating on price. | 15 Nov - 3015:7-16 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Why not?<br>MR. McLOUGHLIN: Your Honor, I apologize, but I think you sustained my objection to leading on that question, and counsel just asked the exact same question. I object to the leading and move to strike. | 15 Nov - 3015:17-3016:5 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---------|----------|----------|---------------------------|
| | | MR. BELLER:  This is also outside the scope, Your Honor.  This is just rehashing the direct.<br>THE COURT:  I don't think so.  Both objections will be overruled.<br>A.  So I don't think we want suppliers talking and coordinating on price because I don't believe we thought that was necessary. They should be able to independently price their own product, and in doing so we felt that gives us the most competitive price that they were able to provide. | |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Now, was that based on your common sense?<br>A.  It's based on practice throughout my years in supply chain and purchasing. | 15 Nov - 3016:7-9 |
| Skalak | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  So for these particular prices for the Chick-fil-A sought and received prior to the transition to any chicken, did you want the suppliers to coordinate with each other on those prices prior to submitting them?<br>MR. BELLER:  Objection, asked and answered now three times.<br>MR. McLOUGHLIN:  Same objection except I think Mr. Beller understates the count.<br>THE COURT:  I am going to sustain the objection. | 15 Nov - 3021:5-13 |
| Brink | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Is short chicken supply a reason for competing chicken suppliers to coordinate their bids in negotiations?<br>MR. BELLER:  Your Honor, that is so wholly improper as to the relevance for this jury's determination of whether or not that fact even happened.  I completely object to this line of questioning.  It has happened with every witness and this Court has upheld that objection every single time.<br>THE COURT:  Mr. Beller, let's go side bar.<br>(At the bench:)<br>THE COURT:  Mr. Beller, that objection was -- went a bit beyond the bounds.  You cannot, No. 1, indicate some of your own statistics in terms of how often I've sustained objections.  That's improper.  Also the beginning of the objection was improper as well.  The basic objection will | 17 Nov - 3339:8-3340:4 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| | | be sustained, namely that the question was -- lacks the foundation for this particular witness.<br>    Anything else, Mr. Torzilli, on that?<br>    MR. TORZILLI:  No, sir.<br>    THE COURT:  Thank you.<br>    MR. BELLER:  My apologies.<br>  (In open court:)<br>    THE COURT:  The objection will be sustained. | |
| Hoyt | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q. Did you ever ask them to coordinate with each other on payment terms?<br>A. No. | 17 Nov - 3404:2-4 |
| Hoyt | Expectations Regarding Chicken Suppliers Coordinating With Each Other | Q.  Why not?<br>A.  Well, first and foremost, it would violate our NDA that we have in place.<br>    MR. FAGG:  Objection, Your Honor.<br>    THE COURT:  Sustained.<br>BY MS. SWEENEY:<br>Q.  Without reference to any legal document --<br>    MR. FAGG:  Objection, Your Honor.<br>    THE COURT:  Sustained.  If you can ask a new question.<br>    MS. SWEENEY:  Yes, Your Honor.<br>    Your Honor, may I confer?<br>    THE COURT:  Yes.<br>BY MS. SWEENEY:<br>Q.  Ms. Hoyt, in answering my prior question, you started with first.  Can you describe your second and other reasons that you did not want them to talk about payment terms?<br>A.  Sure.  If suppliers talked about payment terms with each other, it would put Sysco at a disadvantage of what negotiations we would be able to achieve with suppliers.  It would hinder our ability to get to the best negotiation. | 17 Nov - 3404:5-24 |

| Witness | Category | Question | Cite - (Daily Transcript) |
|---|---|---|---|
| Bryant | Alleged Co-Conspirators Statements that Information Sharing is Wrong, Illegal, etc. | Q.  When you sent this e-mail, how did it make you feel?<br>    MR. KORNFELD:  Objection, irrelevant as to how it made him feel.<br>    THE COURT:  Overruled.<br>A.  I immediately wished I hadn't sent the e-mail.  I regretted sending the e-mail and I felt like it was wrong to ask that question of Roger. | 1 Nov - 836:1-7 |
| Bryant | Alleged Co-Conspirators Statements that Information Sharing is Wrong, Illegal, etc. | Q.  Why did you feel it was wrong?<br>A.  Because I was asking him to go get pricing information from competitors.  And this was to my memory the first time I'd asked somebody to do something like this. | 1 Nov - 836:9-12 |
| Bryant | Alleged Co-Conspirators Statements that Information Sharing is Wrong, Illegal, etc. | Q.  So if you thought it was wrong, why did you do it?<br>A.  I knew that there was an expectation that I should have that information for this bid. | 1 Nov - 836:23-25 |