IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>1.    JAYSON JEFFREY PENN,<br>2.    MIKELL REEVE FRIES,<br>3.    SCOTT JAMES BRADY,<br>4.    ROGER BORN AUSTIN,<br>5.    TIMOTHY R. MULRENIN,<br>6.    WILLIAM VINCENT KANTOLA,<br>7.    JIMMIE LEE LITTLE,<br>8.    WILLIAM WADE LOVETTE,<br>9.    GARY BRIAN ROBERTS, and<br>10.  RICKIE PATTERSON BLAKE,<br><br>        Defendants. | Criminal Case No. 20-cr-00152-PAB |

**JAYSON PENN AND ROGER AUSTIN'S MOTION TO ADMIT EXHIBITS WITHOUT A SPONSORING WITNESS**

Mr. Penn and Mr. Austin respectfully request that the Court admit twenty-nine exhibits without a sponsoring witness pursuant to Federal Rule of Evidence 803(3), and for non-hearsay purposes under Rule 801. The relevant documents are D-240, F-459, J-229, D-137, D-138, D-407, D-408, D-409, D-410, D-146, D-147, D-148, D-149, D-150, D-151, D-152, D-154, D-157, D-158, D-159, D-160, D-161, D-162, D-164, D-165, E-545, E-546, E-543, and E-898.[1]

As discussed below, certain exhibits (D-240, F-459, and E-898) explain the declarants' states of mind during the charged conspiracy period. Among other things, the exhibits show that the declarants intended and made plans to compete vigorously against other suppliers and often

---

[1] Defendants will provide the Court with a flash drive containing these exhibits on Monday, March 21.

1

harbored feelings of dislike toward their competitors. This state of mind directly negates the intent requirement under the Sherman Act. The Court admitted two of these exhibits (D-240 and F-459) on this basis at the first trial. Defense exhibit J-229 is admissible as non-hearsay because it involves an instruction not offered for its truth. An additional document, E-543, is admissible as a present sense impression because the declarant explains an event relating to Pilgrim's August 20, 2014, KFC bid submission immediately after the declarant perceived that event.

The rest of the exhibits demonstrate that Pilgrim's cost models for its August 2014 KFC bid were continuously revised in the days, and even hours, leading up to Pilgrim's' first round bid on August 20, 2014, illustrating that Pilgrim's prices were independently derived and were not set pursuant to any agreement with competitors.

## ARGUMENT

Federal Rule of Evidence 803(3) provides an exception to the hearsay rule for statements of a declarant's "then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)," "regardless of whether the declarant is available as a witness." Federal Rule of Evidence 803(1) permits the introduction of statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Because these rules provide *exceptions* to the hearsay rule, documents admitted thereunder may be considered for their truth. *See United States v. Knox*, 124 F.3d 1360, 1363 n.1 (10th Cir. 1997).

In addition, out-of-court statements offered for a purpose other than to prove their truth are not barred by the hearsay rule. *See* Fed. R. Evid. 801. Therefore, a statement offered not for its truth, but only to show that it was made, is not hearsay. *See, e.g.*, *Kramer v. Wasatch Cnty.*

*Sheriff's Off.*, 743 F.3d 726, 752 (10th Cir. 2014) (statement not hearsay where offered only "for the fact that it was said"); *Boren v. Sable*, 887 F.2d 1032, 1035 (10th Cir. 1989) (statements not hearsay when their relevance "is not their truth or falsity, [but] rather it is the fact the statements were made" (quotation omitted)); *United States v. Murphy*, 193 F.3d 1, 5 n.2 (1st Cir. 1999) (statements offered to show that a person "had certain information" are not hearsay). A statement offered only for its effect on the listener similarly is not hearsay. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) (statements offered for their effect on the listener "are generally not hearsay").

I.  **EXHIBITS D-240 AND F-459**

As the Court did in the first trial, the Court should once again admit Exhibits D-240 and F-459 without a sponsoring witness pursuant to Rule 803(3). First Trial Tr. 4427:16-4428:6 (Dec. 6, 2021); Doc. 898 at 13 (Mr. Penn's motion).

Exhibit D-240 is a February 24, 2014, email from Mr. Penn to Mr. Lovette. In the email, Mr. Penn writes:

> Best week as a company we have ever had. AND we have much, much more to get. Personal mission is to send [Sanderson Farms] into a tailspin. No need to mess with [Tyson Foods] because they have taken their own poison pill with their new structure. Foot on the throat. Both of these hese [sic] boys will be going down. Our team is far from being good. Teams need to commit to being the best in our industry or hit the door.

*See* D-240.

Mr. Penn describes his "personal mission" to outcompete Sanderson Farms and Tyson by having the best team in the industry, a statement about intent and plans that is admissible pursuant to Rule 803(3). *Allen v. Sybase, Inc.*, 468 F.3d 642, 656 (10th Cir. 2006) (statement of

3

intent to perform an act admissible); *United States v. Peak*, 856 F.2d 825, 833 (7th Cir. 1988) (collecting cases). As the Court ruled, this exhibit "does indicate a clear kind of agenda, perhaps even what you might call a vendetta," First Trial Tr. 4428:3-5 (Dec. 6, 2021), making it admissible to show Mr. Penn's state of mind, *United States v. Alfonso*, 66 F. Supp. 2d 261, 267 (D.P.R. 1999) (defendant's statement about his "sole mission in life" admissible Rule 803(3)). Moreover, "[s]tatements admitted under Fed. R. Evid. 803(3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan." *United States v. Donley*, 878 F.2d 735, 738 (3d Cir. 1989). Mr. Penn's statements—made in the middle of the alleged conspiracy period—are relevant to whether Mr. Penn formed the state of mind required under the Sherman Act.

Exhibit F-459 is a January 30, 2015, email chain between Mr. Penn, Mr. Lovette, and Fabio Sandri. The email begins with Mr. Lovette forwarding information that Tyson Foods experienced a 12.6% increase in "EBIT" (earnings before interest and tax). Mr. Lovette then compares Tyson's increase to Pilgrim's performance and comments "Beat they [sic] . . . again!" In a follow up email, he adds, "And one more thing. It's been enough time passed now, I can honestly admit…..I HATE that company and everything about it!!!!" Mr. Sandri replies to this email, responding, "Welcome to the club," to which Mr. Penn replies, "I hate Tyson but I hate Sanderson [Farms] more!!" Mr. Sandri then finishes the conversation, writing, "And I hate Wayne [Farms] even more!"[2] *See* F-459.

As the Court found at the first trial, Exhibit F-459 expressly shows "what [Messrs.

---

[2] The Court admitted Exhibit F-459 in the first trial, with the last email from Mr. Sandri about Wayne Farms redacted. First Trial Tr. 4427:17-19 (Dec. 6, 2021).

4

Penn's, Lovette's, and Sandri's] feelings are regarding" their competitors, and those feelings are relevant to show that Messrs. Penn and Lovette did not form the required mental state under the Sherman Act. First Trial Tr. 4427:16-4428:1 (Dec. 6, 2021). Statements of hatred or dislike are clearly statements of a "mental feeling" that fall within the state of mind exception to the hearsay rule. *See Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) (Rule 803(3) properly invoked when "the statement is offered for the truth of the matter asserted and shows the declarant's state of mind (e.g., 'I hate X.')"); *United States v. Brown*, 490 F.2d 758, 763 (D.C. Cir. 1973) (same); *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 27 & n. 41 (M.D. Pa. 2019) (same).

## II.     EXHIBIT J-229

Exhibit J-229 is an August 28, 2014, email from Kurt Collins (RSCS) to a number of suppliers, including Pete Martin (pmartin@marjacpoultry.com), directing suppliers to "cancel the order that was submitted on August 26 to price P10 soybean meal requirements at $387.3" and instead price those requirements "using a market on the close (MOC) order for today's trading session." J-229.

The top email in the chain—Mr. Collins's instruction to suppliers to use the August 28, 2014 MOC figure—is not offered for its truth, but for its effect on Mr. Martin as the listener and is relevant to Mr. Martin's subsequent actions in seeking information on August 29, 2014 regarding the price of soybean meal futures for the previous day. *United States v. Shepherd*, 739 F.2d 510, 514 (10th Cir. 1984) ("An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth."). Offered for this purpose, the statement is not hearsay. *Id.* (orders or instructions "offered to show that they occurred rather than to prove the truth of something asserted" are not hearsay).

5

### III.  COST MODELS AND COVER EMAILS

Exhibits D-137, D-138, D-407, D-408, D-409, D-410, D-146, D-147, D-148, D-149, D-150, D-151, D-152, D-154, D-157, D-158, D-159, D-160, D-161, D-162, D-164, D-165, E-545, and E-546 are various versions of Pilgrim's' 2014 KFC cost model and accompanying cover emails showing the dates and times on which the model was revised. These exhibits are admissible for the non-hearsay purpose of showing that Pilgrim's began preparing the cost model for its KFC bid submission in late July 2014 and that the model repeatedly was revised right up until it was submitted to RSCS on August 20, 2014.

D-137 and D-138 show that Pilgrim's Pride employees Tommy Lane and Jason McGuire began working on a cost model for the KFC bid submission as early as July 29, 2014. D-407 and D-408 show that Mr. Lane and Mr. McGuire prepared a revised version of the model on August 13, 2014. They revised the model again on August 14, 2014 (D-409 and D-410), August 15, 2014 (D-146 and D-147), and August 16, 2014 (D-148 and D-149). Mr. Lane and Mr. Austin revised it three more times on August 18, 2014. *See* D-150 and D-151; D-152 and D-154; GX 1035, GX 1036 and GX 1036-1 (already admitted). And on August 20, 2014, the day Pilgrim's submitted its bid, Mr. Austin, Mr. Lane, Mr. McGuire, and others revised the model five additional times before Pilgrim's finally submitted it to RSCS. *See* D-157 and D-158; D-159 and D-160; D-161 and D-162; D-164 and D-165; E-545 and E-546; GX 1104 and GX 1105 (already admitted).

In its case-in-chief, the government offered only one of these draft cost models, *see* GX 1035, GX 1036, and GX 1036-1, and Pilgrim's' August 20, 2014, bid submission to RSCS, *see* GX 1104 and GX 1105. Unlike the numerous cost models discussed above, the government's

exhibits appear to contain competitor pricing information, *see* GX 1036 and GX 1036-1, and therefore create the misleading impression that that information played a central role in setting Pilgrim's ultimate bid price. However, taken together, the exhibits discussed above show that the cost model submitted to RSCS in Pilgrim's August 20 bid was revised at least eleven times before being submitted to RSCS, including five times *after* any alleged receipt of competitor pricing information. These exhibits are therefore relevant not for the truth of any statement contained within them, but rather to show that Pilgrim's and its employees continually revised their pricing model in the days and hours leading up to Pilgrim's bid submission. Offered for this purpose, the exhibits are not hearsay. *Kramer*, 743 F.3d at 752 (statement not hearsay when offered only "for the fact that it was said"); *Boren*, 887 F.2d at 1035 (statements not hearsay when their relevance "is not their truth or falsity, [but] rather it is the fact the statements were made" (quotation omitted)).

This evidence is necessary to rebut the misleading impression created by evidence admitted in the government's case-in-chief. As at the first trial, the government's trial strategy involves presenting cherry-picked business documents without any sponsoring witness and then having the jury guess at their import and meaning. In addition to being a violation of Defendants' Confrontation Clause rights, *see* Doc. 945 at 3-4, this approach also prevents Defendants from challenging the government's evidence through the presentation of contradictory documentary evidence on cross-examination.

## IV.    EXHIBIT E-543

Exhibit E-543 is an August 2014 email exchange between Jason McGuire and Tommy Lane. On August 18, 2014, Mr. Lane and Mr. McGuire discuss revisions to the KFC model and

Mr. McGuire writes that he is waiting for "JP" to call him back. At 7:30 AM on August 19, 2014, Mr. McGuire follows up, explaining that Mr. Penn "now decided that he doesn't like the Hd to Hd variance and now wants to talk about absolute value on the big bird. Throw out small birds altogether. I got to go back and pull all the data points again….." Mr. Lane responds, "So he wants to get the margin $ to a big bird equivalent?" Mr. McGuire replies, "Im [sic] not 100% sure anymore. I was just trying to figure out how I am going to get it all done for him to review again before we present it today." E-543.

Mr. McGuire's August 19, 7:30 AM statement that Mr. Penn "now wants to talk about absolute value on the big bird [and] [t]hrow out small birds altogether" explains Mr. Penn's decision with respect to the recommended bid submission immediately after it was made. As such, it is admissible as a present sense impression. *Dickerson v. Bd. of Trs. of Metro. State Univ. of Denver*, 2021 WL 492483, at *4 (D. Colo. Feb. 10, 2021) (statements in interviews describing interactions with another person immediately after declarant reported the interactions admissible as present sense impressions); Fed. R. Evid. 803(1) (statements "describing or explaining an event" immediately after the declarant perceived it admissible as a present sense impression). Mr. Lane's response is a nonassertive question and is therefore not hearsay. *United States v. Jackson*, 88 F.3d 845, 848 (10th Cir. 1996) (questions not intended as assertions are not hearsay); *see also United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005) (same). The remaining statements in the exchange need not be considered for their truth, but only to provide context to Mr. McGuire's August 19, 7:30 AM statement.

Alternatively, the email exchange is admissible not for its truth, but for its effect on the listener. *See Faulkner*, 3 F.3d at 1434 (statements offered for their effect on the listener "are

8

generally not hearsay"). Specifically, the email is relevant to explain Mr. Lane's and Mr. McGuire's subsequent involvement in revising Pilgrim's RSCS cost model five additional times before Pilgrim's August 20 bid submission to RSCS. *See* D-157 and D-158; D-159 and D-160; D-161 and D-162; D-164 and D-165; E-545 and E-546; GX 1104 and GX 1105. Offered for this purpose, the email is not hearsay. *Faulkner*, 3 F.3d at 1434.

## V.     EXHIBIT E-898

Exhibit E-898 is an August 19, 2014, email exchange between Mr. Penn, Mr. Austin, and Jason McGuire. Mr. McGuire sends Mr. Penn and Mr. Austin a spreadsheet titled "KFC Price Increase 14-08-15" and states that it shows an increase of "about .09/lb increase per Wog lb." Mr. Penn responds by asking, "what is your c/b analysis from the data?" Mr. McGuire states, "Profit per wog/lb is just shy of .09/lb." *See* E-898.[3]

Mr. Penn's only comment in the chain—"Just looked at the data – what is your c/lb analysis from the data?"—is a contemporaneous reaction to his review of the data. The statement reflects his then-existing state of mind, namely a motivation to understand the financial analysis underlying Pilgrim's cost model. *See Riggs v. Life Care Ctrs. of Am., Inc.*, 2017 WL 9772962, at *1 (E.D. Wash. Oct. 26, 2017) (statements offered to show reasoning or motivation not hearsay under Rule 803(3)). This state of mind negates the intent requirement under the Sherman Act by demonstrating that, in internal discussions regarding Pilgrim's bid submission to KFC, Mr. Penn was motivated by a desire to understand the Pilgrim's-specific factors underlying the cost model,

---

[3] At the first trial, Mr. Penn sought to introduce this exhibit to show that Mr. Penn continued to ask questions after receiving a recommended bid proposal, arguing it is not nonhearsay because it is a nonassertive question. Doc. 898 at 9. The Court ruled that the exhibit was not admissible for that purpose. First Trial Tr. at 4417:7-4418:10 (Dec. 6, 2021).

9

not any information regarding competitors' prices. Moreover, Mr. McGuire's statements in the exchange are not offered for their truth, but to explain the basis for Mr. Penn's question. *See Miller v. Jefferson Cnty. Bd. of Cnty. Comm'rs*, 2018 WL 1116673, at *2 n.2 (D. Kan. Mar. 1, 2018) (statement offered to show the basis for a conclusion not hearsay).

## CONCLUSION

For the reasons discussed above, Mr. Penn and Mr. Austin respectfully request that the Court admit exhibits D-240, F-459, J-229, D-137, D-138, D-407, D-408, D-409, D-410, D-146, D-147, D-148, D-149, D-150, D-151, D-152, D-154, D-157, D-158, D-159, D-160, D-161, D-162, D-164, D-165, E-545, E-546, E-543, and E-898 without a sponsoring witness.

Dated: March 20, 2022

Respectfully submitted,

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach