**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
**7. JIMMIE LEE LITTLE,**
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

**DEFENDANT JIMMIE LITTLE'S MOTION FOR JUDGMENT OF ACQUITTAL**

1

Pursuant to Federal Rule of Criminal Procedure 29(a), Defendant Jimmie Little, by and through his counsel, moves for a judgment of acquittal because the evidence is insufficient to sustain a conviction.

## I.     Procedural Background

On October 6, 2020, the Grand Jury returned a Superseding Indictment alleging that Mr. Little along with nine co-defendants and other co-conspirators engaged in a conspiracy to rig bids and fix prices for broiler chicken products beginning as early as 2012 and continuing through at least early 2019. (Dkt. #101 ¶ 1.) The Superseding Indictment describes fourteen separate episodes that allegedly constitute the means and methods of the conspiracy, yet it argues a broader and seemingly more wide-reaching conspiracy than those fourteen episodes. (*Id*. ¶¶ 47-143.) It is unclear from the Superseding Indictment how the fourteen distinct episodes are related to a single conspiracy involving all the defendants. In fact, the fourteen episodes involve different groups of individuals, customers, and bids. Mr. Little is identified in only three of the fourteen identified episodes. (*Id*. ¶¶ 66-70; 77-83; 87-107.) The Superseding Indictment alleges that he was a Sales Director at Pilgrim's and started working at the company in approximately 2000. (*Id*. ¶ 18.) Mr. Little retired on September 30, 2016. (*See* GX9748.)

Trial commenced on October 25, 2021. On December 16, 2021, the Court declared a mistrial due to the jury's inability to reach a verdict as to any defendant. (Dkt. #920.) The jury count as to Mr. Little was 9-3 in favor of acquittal. The re-trial commenced on February 22, 2022. On March 15, 2022, the Government concluded its case-in-chief and Mr. Little orally moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

## II. Legal Standard

Under Rule 29(a), the Court must enter a judgment of acquittal when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Evidence, viewed in the light most favorable to the government, is sufficient only when a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jones*, 44 F.3d 860, 864-66 (10th Cir. 1995) (reversing conspiracy conviction). The test is not whether a rational jury could decide that guilt was more likely than not, but beyond a reasonable doubt. *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013). The evidence "must be substantial, raising more than a mere suspicion of guilt." *Id*. (*citing United States v. Smith*, 133 F.3d 737, 742 (10th Cir.1997)).

## III. No Rational Juror Could Find Beyond a Reasonable Doubt that Mr. Little Conspired to Rig Bids or Fix Prices[1]

To demonstrate that an individual agreed to conspire, the Government must prove the individual had a conscious commitment to a common scheme designed to achieve an unlawful objective. *Monsanto Co. v. Spray-Rite Serv. Corp*., 465 U.S. 752, 764 (1984). He must know the essential objectives of the conspiracy and knowingly and voluntarily become a part of it. *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991). "Those having no knowledge of the conspiracy are not conspirators," just as one cannot become a member of a conspiracy "merely by associating with conspirators known to be involved in crime." *Id*. "Mere exchanges of

---

[1] Pursuant to D.C. Colo. L.Cr.R. 12.1(b), Mr. Little adopts and incorporates by refence the arguments and authorities cited in Sections II.E and III of Mr. Kantola's Motion for a Judgment of Acquittal (Dkt. #1208) with the respect to the Government's failure to prove a basis to apply a *per se* presumption and improper variance from the indictment.

information, even regarding price," are neither illegal nor indicative of conspiracy, much less a conspiracy covering many products and individuals over the course of many years. *Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 859 (10th Cir. 1999).

Here, the Government alleges a conspiracy to rig bids and fix prices for broiler chicken products beginning as early as 2012 and continuing through at least early 2019.[2] The evidence offered at trial was even broader than the fourteen episodes identified in the Superseding Indictment. Despite calling nine fact witnesses and introducing hundreds of exhibits, the evidence offered regarding Mr. Little's alleged involvement in the conspiracy was minimal and certainly not sufficient to sustain a conviction. Not a single fact witness, not even the Government's "insider" from Pilgrim's, Mr. Bryant, testified that Mr. Little entered into an agreement to fix a price or rig a bid. All that Mr. Bryant could testify to was Mr. Little relayed information after talking to a competitor during negotiations to help Pilgrim's position its bid against the competitor's price. Transcript (R. Bryant), March 8, 2022, p. 176:10-17.[3]

The Government offered a series of summary exhibits directed at specific episodes of the purported conspiracy. Mr. Little is identified in only six of the summary exhibits. (*See* Exhibits 1, 2, 5, 10, 14, 17.) Exhibits 10, 14 and 17 all deal with KFC. Exhibit 10 identifies a total of five telephone calls between Mr. Little, Mr. Kantola and Mr. Pepper and three telephone calls between Mr. Little and Mr. Austin (with whom Mr. Little worked at Pilgrim's) during a two-week time period. Exhibit 14 similarly identified three telephone calls between Mr. Little, on the

---

[2] The Government stipulated that Mr. Little retired from Pilgrim's on September 30, 2016. (*See* GX9748.)

[3] Since a Certified Transcript has not been prepared, Mr. Little refers to the unofficial daily transcript, but defers to the Court's recollection if it differs in any way.

one hand, and Mr. Kantola or Mr. Brady, on the other hand, during a two-week time period. Finally, Exhibit 17 includes one telephone call that Mr. Little had with Mr. Brady. None of the calls were recorded and there is no evidence of what actually was discussed during those calls. Furthermore, it was well established at trial that there were lawful reasons for competitors to speak with one another. *See, e.g.*, Transcript (M. Ledford) March 1, 2022, pp. 97:9-99:12; Transcript (C. Pepper) March 3, 2022, pp. 102:9-105:10; Transcript (R. Bryant) March 9, 2022, p. 179:7-21.

The Government's other "insider" witness, Mr. Pepper, testified that he spoke to Mr. Little regarding the contract negotiations for the 2015 KFC contract. He said they discussed there being a "substantial price increase," but he never told Mr. Little what he meant by "substantial." *See e.g.*, Transcript (C. Pepper) March 2, 2022, pp. 250:10-22, 254:6-255:24; Transcript (C. Pepper) March 3, 2022, p. 49:20-25. He also testified that he never shared Tyson's pricing information with Mr. Little. Transcript (C. Pepper) March 3, 2022, p. 192:19-193:13. Even viewing Mr. Pepper's testimony in the light most favorable to the Government, it does not provide a basis for a reasonable jury to conclude that Mr. Little was a knowing participant in a conspiracy to fix a price or rig a bid.[4]

Exhibits 1 and 2 concern freezer costs and quality assurance requirements for Church's Chicken. Both summary exhibits reflect a telephone call between Mr. Little and Mr. Pepper, followed by an e-mail from Mr. Pepper that contains information regarding Pilgrim's. Even

---

[4] Mr. Pepper also testified about an email he sent to Mr. Little asking for Pilgrim's next quarter's billing weight for Boston Market, but his testimony established that the information was unrelated to any bid and had nothing to do with future contract pricing. Transcript (C. Pepper) March 7, 2022, pp. 192:22-195:10, 196:17-197:8.

viewed in the light most favorable to the Government, at most the documents summarized in the exhibits suggest that Mr. Little shared information concerning Pilgrim's with a competitor. However, mere exchanges of information, even regarding price, are neither illegal nor indicative of a conspiracy. *Mitchael*, 179 F.3d at 859. There is no evidence of any agreement between Mr. Little and Mr. Pepper regarding the freezer cost or quality assurance cost. In fact, the evidence shows that Tyson calculated its costs without regard to any information related to Pilgrim's. Transcript (C. Pepper) March 7, 2022, pp. 74:14-75:1, 77:5-79:14, 102:6-104:16; *see also* Transcript (D. Bowlin) March 16, 2022, pp. 11:6-12:20, 12:21-18:19.[5]

      Finally, Exhibit 5 relates to negotiations in 2014 with Pollo Tropical restaurants. The summary exhibit includes telephone calls between Mr. Cooper at Claxton and Mr. Little at Pilgrim's. Again, the calls were not recorded and there is no evidence that Mr. Little and Mr. Cooper shared pricing information during those calls. To the contrary, Greg Finch, Claxton's CFO, testified that he had no knowledge of any other supplier's price when setting Claxton's price for Pollo Tropical in 2015. Transcript (G. Finch) March 17, 2022, p. 95:8-18. In addition to the summary exhibit, the Government called Joseph Brink, who was responsible for negotiating with chicken suppliers for the purchase of broiler chicken products for Pollo Tropical restaurants. Although Mr. Brink testified that he was unhappy about the outcome of the 2014 negotiations, he had no personal knowledge of any price-fixing or bid-rigging among the suppliers. Transcript (J. Brink) March 10, 2022, p. 122:11-14. In short, he could offer no evidence that Mr. Little entered into an agreement or was engaged in a conspiracy to fix prices or

---

[5] If the Court reserves ruling on this motion until the close of all evidence, the Court may consider the testimony of Mr. Bowlin, as well as any other defense witness, in deciding this motion.

rig bids.

The Government has failed to prove that Mr. Little knowingly and voluntarily joined a conspiracy to fix prices or rig bids.

## IV. Conclusion

For the foregoing reasons, Defendant Jimmie Little respectfully requests that a judgment of acquittal be granted as to Count One.

Dated: March 21, 2022

Respectfully submitted,

/s/ Mark A. Byrne

Mark A. Byrne (Cal. Bar No. 116657)
e-mail: markbyrne@byrnenixon.com
Jennifer L. Derwin (Cal. Bar No. 222420)
e-mail: jenniferderwin@byrnenixon.com
**BYRNE & NIXON LLP**
888 West Sixth Street, Suite 1100
Los Angeles, California 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012

*Attorneys for Defendant Jimmie Little*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of such filing to all parties of record.

                                      /s/ Mark A. Byrne
                                      Mark A. Byrne