IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     **GARY BRIAN ROBERTS**, and
10.    RICKIE PATTERSON BLAKE,

       Defendants.

## DEFENDANT ROBERTS' MOTION FOR JUDGMENT OF ACQUITTAL

"*Currently in the process of negotiating a ~$0.19/lb price increase for the 2015 contract.*"

-Brandon Campbell, Pricing Manager, Tyson Foods
Regarding KFC, on or about August 1, 2014, DX G-950

Defendant Gary Brian Roberts files this Motion for Judgment of Acquittal, pursuant to Defendant's oral motion for judgment of acquittal on March 15, 2021, *see* Dkt. # 1184, respectfully requesting that the Court enter judgment of acquittal in favor of Defendant, pursuant to Federal Rule of Criminal Procedure 29, as to the count of the Superseding Indictment charging Defendant with allegedly entering into and engaging in a conspiracy to suppress and eliminate competition by rigging bids and fixing prices and other price-related terms for broiler chicken products from

-1-

2012 through 2019, in violation of the Sherman Act, 15 U.S.C. § 1. The Court denied Mr. Roberts' motion for judgment of acquittal in the first trial in this action, citing representations by the prosecution that Mr. Roberts allegedly spoke with competitors in order to assure a price increase in the negotiations with Restaurant Supply Chain Solutions (RSCS) in 2014, and that Mr. Roberts allegedly approved and encouraged the participation of Carl Pepper in the conspiracy. *See* Dkt. # 932, p. 25.

The prosecution's re-trial of this action compels a conclusion that no evidence has been presented by the prosecution on either of these alleged grounds, much less evidence sufficient to permit a jury finding beyond a reasonable doubt, for the following reasons:

- In contrast to the Government's speculative evidence, the defense has presented direct evidence through the testimony of Brandon Campbell, a former Pricing Manager for Tyson Foods, explaining how Tyson arrived at its price increase for KFC's 2015 supply of 8 piece chicken-on-bone—a process which involved no alleged agreement or communications with Tyson's competitors.

- The defense has also presented testimony from Darrell Bowlin, Tyson's Cut-Up Manager, explaining that the freezing and quality assurance charges for Church's Chicken (Church's) amounted to Tyson figuring what its costs would be and passing the costs along to Church's.

- In addition, Mr. Pepper, one of the Government's two key cooperating witnesses, denied exchanging specific pricing information with competitors, and admitted that he did not call Mr. Roberts during the 2014 negotiations and could not remember what he might have talked to Mr. Roberts about in 2014.

The Government has failed to establish through evidence beyond a reasonable doubt that any alleged conspiracy existed. And even if the prosecution had established the existence of the charged conspiracy beyond a reasonable, it has presented no evidence to support any finding by the jury beyond a reasonable doubt that Mr. Roberts knew of the objectives of the conspiracy, or that Mr. Roberts knowingly and voluntarily joined the conspiracy. The Government's failure to prove essential elements of its Sherman Act charge against Mr. Roberts beyond a reasonable doubt entitles Mr. Roberts to a grant of judgment of acquittal pursuant to Rule 29.

## I. INTRODUCTION AND GROUNDS FOR ENTERING A JUDGMENT OF ACQUITTAL IN FAVOR OF MR. ROBERTS

The Government indicted Mr. Roberts for the charged conspiracy to violate 15 U.S.C. § 1 on October 6, 2020. *See* Dkt. # 101. The first trial of the defendants commenced on October 25, 2021. *See* Dkt. # 735. On November 24, 2021, Mr. Roberts made an oral motion for judgment of acquittal, *see* Dkt. # 869, followed by a written motion, *see* Dkt. # 877, on November 29, 2021. The prosecution filed a response in opposition to Mr. Roberts' motions on December 6, 2021. *See* Dkt. # 900.

On December 16, 2021, the Court declared a mistrial in the first trial. *See* Dkt. # 920. On January 13, 2021, the Court issued an order denying Mr. Roberts' motions for judgment of acquittal. *See* Dkt. # 932, pp. 25-27. On the question of the alleged sufficiency of the evidence, the Court found that the Government's "arguments" that "(1) Mr. Roberts spoke with competitors in order to assure a price increase for the 2014 RSCS negotiations; and (2) Mr. Roberts approved and encouraged the participation of Mr. Pepper in the conspiracy," *id*. at 25, were sufficient to enable a reasonable jury to conclude that Mr. Roberts joined the charged conspiracy, knowing of the conspiracy's alleged goal and intending to help accomplish it, *id*.

The prosecution, however, provided the Court with no evidence from the record to support the prosecution's naked assertion that "Defendants Mulrenin and Roberts, as managers, approved and encouraged their subordinate, Mr. Pepper's participation in the conspiracy." Dkt. # 900, p. 28. Furthermore, the prosecution's evidence that Mr. Roberts allegedly spoke with competitors in order to assure price increases in the 2014 negotiations with RSCS rest on telephone calls the contents of which are unproven. *Id*. at 27-28 (citing GX 10-1; 1231; 8005).

## A. The Direct Testimony of Brandon Campbell, Tyson's Pricing Manager, Negates Any Potential Jury Finding That Tyson Agreed With Its Competitors To Fix Prices Or Rig Bids For Broiler Chicken Products

In the Government's re-trial of the defendants, Mr. Roberts has again presented the testimony of Mr. Brandon Campbell, a Pricing Manager for Tyson Foods' (Tyson) Pricing Unit in 2014. Mr. Campbell testified that Tyson's Small Bird Business Unit (SBBU) had ultimate authority over the pricing that was given to a customer. *See* Uncert. Trans. 3/16/2022, p.37.[1] Mr. Campbell was responsible for creating and updating the pricing models which Tyson gave to its customers. *Id*. at 37, 42.

Concerning the 2014 negotiations for KFC's 2015 supply of 8 piece chicken-on-bone, Mr. Campbell testified that, in 2014, the SBBU came up with a strategy for price increases across the board in order to make its Small Bird business profitable. *See* Uncert. Trans. 3/16/2022, pp.37, 42. Mr. Campbell testified that he was responsible for creating and updating the pricing model for KFC. *Id.* at 42, 61, 84. Mr. Campbell stated that he developed the pricing for KFC's 2015 supply of 8 piece chicken-on-bone by looking at what the margin goals from the Business Unit were, by

---

[1] The defense does not yet possess certified copies of the transcript. Accordingly, the uncertified, daily transcripts will be summarized in this Motion.

-4-

looking at fair market values on the public market, and Tyson's history of being awarded bids. *Id.* at 42. He acknowledged that Charlie Solomon, Senior Vice-President for Tyson's SBBU, was ultimately responsible for the KFC pricing, and that he was in constant communication with the SBBU about the pricing model. *Id.* at 37, 45, 55. Mr. Campbell stated that the Sales Team did not tell him what the price should be. *Id.* at 37, 46.

On June 5, 2014—before RSCS requested any bids for KFC's 2015 supply of 8 piece chicken-on-bone—Mr. Campbell testified that he sent the pricing model informing Mr. Roberts and the Sales Team what the price would be. *See* Uncert. Trans. 3/16/2022, p.52. (discussing DX G-624). Mr. Campbell sent the final pricing model to Mr. Roberts on September 25, 2014. *Id.* at 92.

Mr. Campbell's testimony was entirely corroborated by the documentary evidence on which he was questioned and which was admitted into evidence during his testimony. On June 5, 2014, Mr. Campbell sent an email to Mr. Roberts, Mr. Solomon, Mr. Bowlin, and others with the subject "KFC 2015 Pricing Model," stating that "The attached model would be the proposed model for KFC for 2015 with the following assumptions. This equates to ~$0.19/lb price increase when you do an 'apples to apples' comparison (outlined below)." DX G-624. Mr. Campbell sent a second email to Mr. Roberts on June 19, 2014, stating "Brian, This is where we want to be with KFC for next year. Let me know if you have any questions, or would like to discuss further." DX-521. On July 9, 2014, Mr. Campbell sent an email to Mr. Solomon and Mr. Bowlin, stating "When you take into account the ~7.5 lb increase per case that we will be invoicing for… the true price increase is ~$0.19/lb." DX G-824. Mr. Campbell sent an email to Mr. Roberts, Mr. Solomon, Mr. Bowlin, and others with the subject "KFC Pricing Updated" on August 21, 2014, stating "the margin has

been increased to $0.19/lb which delivers the same case price as was originally presented." DX G-570. Finally, on September 25, 2014, Mr. Campbell sent an email with the subject "KFC 2015 Fresh Chicken Bid" to Mr. Bowlin, Mr. Pepper, Mr. Roberts, Mr. Solomon and others stating "Attached is the final KFC pricing model for 2015 which includes the segment pricing. Here are a few highlights of the pricing changes. Increased margin from $0.1681 to $0.1931 on the 8 piece model." DX G-467.

B. **The Direct Testimony of The Government's Cooperating Witness Carl Pepper, Negates, Any Potential Jury Finding That Tyson Agreed With Its Competitors To Fix Prices Or Rig Bids For Broiler Chicken Products**

One of the two key cooperating witnesses for the Government, Carl Pepper, also nullified any potential finding by the jury that Tyson or Mr. Roberts participated in the alleged price fixing conspiracy. In his testimony, Mr. Pepper undermined the prosecution's allegations by conceding that he never told any of Tyson's competitors a specific price and that the competitors never gave him a specific price. *See* Uncert. Trans. 3/3/2022, p. 247. Mr. Pepper furthermore acknowledged that he didn't really talk to Mr. Roberts or call Mr. Roberts that often, and that there were no telephone calls between him and Mr. Roberts in August of 2014. *Id.* at 60, 61, 62, 88, 89, 156. Moreover, Mr. Pepper did not know what his calls to Mr. Roberts in 2014 might have been about. *Id.* at 59-60, 87, 88. This included a call on July 16, 2014—a day on which Mr. Pepper also talked to Mr. Jimmy Little. *Id.* at 59-60. Mr. Pepper also admitted that he never asked Mr. Roberts whether getting pricing information from competitors was permissible. *Id.* at 232.

## II ARGUMENT AND CITATIONS OF AUTHORITIES

Federal Rule of Criminal Procedure 29 provides that, after the government closes its evidence, "the court on the defendant's motion must enter a judgment of acquittal of any offense

for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "When determining whether to grant a motion for judgment of acquittal, the court asks only whether, taking the evidence in the record in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Miller*, 178 F. Supp. 3d 1114, 1118 (D. Colo. 2016) (citing *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000); *United States v. Isaac–Sigala*, 448 F.3d 1206, 1210 (10th Cir. 2006)). "'*If there is a failure to prove an essential element of the offense, the defendant is entitled to an acquittal*.'" *McKenzie v. United States*, 266 F.2d 524, 527 (10th Cir. 1959) (emphasis added) (quoting *Christoffel v. United States*, 338 U.S. 84 (1949); *Politano v. United States*, 220 F.2d 217 (10 Cir. 1955)).

The Sixth Amendment, in conjunction with the Due Process Clause of the Fifth Amendment, "requires that each element of a crime be proved to a jury beyond a reasonable doubt." *Hurst v. Florida*, 577 U.S. 92, 97 (2016) (citing *Alleyne v. United States*, 570 U.S. 99, 103 (2013)). In regard to a conspiracy charge, the government must prove beyond a reasonable doubt that "'(1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it.'" *United States v. Horn*, 946 F.2d 738, 740 (10th Cir. 1991) (quoting *United States v. Esparsen*, 930 F.2d 1461, 1471 (10th Cir. 1991)). "An agreement between the defendants to violate the law is an essential element, which must be shown beyond a reasonable doubt." *United States v. Migliaccio*, 34 F.3d 1517, 1521 (10th Cir. 1994) (citing *United States v. Davis*, 965 F.2d 804, 814 (10th Cir. 1992); *United States v. Butler*, 494 F.2d 1246, 1249 (10th Cir. 1974)). "A conspiracy cannot be thrust upon a member, but instead must be purposely and voluntarily joined; there 'must at some point be a meeting of the minds in the common design, purpose, or objects of the conspiracy.'" *United States v. Nall*, 949

F.2d 301, 306 (10th Cir. 1991) (quoting *Butler*, 494 F.2d 1246, 1249 (10th Cir.1974)). A defendant's knowledge of the purpose of the conspiracy "must be shown by 'clear, unequivocal evidence.'" *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000) (quoting *United States v. Austin*, 786 F.2d 986, 988 (10th Cir. 1986)).

On a conspiracy charge, "[t]he evidence must show circumstances to warrant a jury finding that the conspirators had a unity of purpose or a common design and understanding." *United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir. 1985) (citing *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946); *United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444, 450–451 (10th Cir. 1984)). The conduct of the alleged co-conspirators "must be interdependent in some way." *Horn*, at 740 (citing *United States v. Daily*, 921 F.2d 994, 1007 (10th Cir. 1990)).

### A. The Prosecution Has Introduced No Evidence Tending to Show that Mr. Roberts Assured a Price Increase For The 2014 RSCS Negotiations, Or That Mr. Roberts Approved or Encouraged Carl Pepper's Participation in a Conspiracy

The Court denied Mr. Roberts' prior motions for judgment of acquittal, finding that the Government's arguments that Mr. Roberts allegedly spoke with competitors to assure a price increase during the 2014 negotiations with RSCS and that he allegedly approved and encouraged Mr. Pepper to participate in a conspiracy. *See* Dkt. # 932, p. 25. The testimony of Mr. Campbell, Tyson's Pricing Manager, and the evidence introduced during his testimony, establish—beyond any dispute—that it was Tyson's SBBU and Pricing Unit which formulated Tyson's pricing the for bids for KFC's 2015 supply of 8 piece chicken-on-bone—and not Mr. Roberts. Moreover, Mr. Campbell's testimony and the related evidence demonstrate that Tyson set its pricing for KFC for 2015 approximately two months before RSCS requested bids and before the conduct alleged in the

Superseding Indictment. The prosecution clearly possesses no evidence to rebut such direct evidence that Mr. Roberts had no control over or influence on Tyson's 2015 pricing for KFC.

Furthermore, the prosecution has introduced no evidence that Mr. Roberts allegedly approved or encouraged Mr. Pepper to participate in the charged conspiracy. On the contrary, Mr. Pepper admitted that he spoke with Mr. Roberts infrequently, and that he did not speak with Mr. Roberts at all during the August 2014 timeframe charged in the Superseding Indictment.

The prosecution has failed to furnish the Court with any evidence to support the grounds on which the Court denied Mr. Roberts' prior motions for judgments of acquittal. In view of the insufficiency of the evidence concerning Mr. Roberts in the Government's second attempt to establish his alleged knowing participation in the charged Sherman Act conspiracy beyond a reasonable doubt, and the substantial evidence presented by the defense regarding pricing authority for Tyson and Tyson's actual, uncontroverted process for setting its 2015 pricing for KFC, Mr. Roberts respectfully requests that the Court grant judgment of acquittal in his favor.

**B. The Prosecution's Telephone Call Evidence, The Contents of Which Are Unknown, Is Insufficient to Sustain a Conviction of Mr. Roberts for Conspiracy to Violate the Sherman Act**

In face of substantial testimony and evidence from officers or employees of Tyson demonstrating exactly who established Tyson's pricing for KFC's 2015 supply of chicken-on-bone and how, the only which the Government can point to in order to attempt to establish Mr. Roberts' alleged guilt are telephone calls between Mr. Roberts, Mr. Scott Brady, and Mr. Jayson Penn on or about August 15, 2014. *See* Dkt. # 900, p. 28 (citing GX 10-1; GX 1231). Such evidence, without more, is insufficient to establish beyond a reasonable doubt that Mr. Roberts knowingly joined any conspiracy to rig bids or fix prices for broiler chicken products.

In *United States v. Hanson*, 41 F.3d 580 (10th Cir. 1994), the government charged the defendant with mail and wire fraud, conspiracy to commit mail and wire fraud, and interstate transportation of money obtained by fraud, *id*. at 581. The defendant was convicted at trial and appealed, arguing *inter alia* that the evidence presented was insufficient to support her convictions. *Id*. at 582. The Court of Appeals reversed the judgment of conviction on all counts, finding the evidence insufficient to uphold the defendant's conviction on any of the counts for which she was found guilty. *Id*. at 584. On the conspiracy charge, the Court noted that, "[i]n the present case, the government has failed to show the existence of any agreement, much less evidence of such an agreement beyond a reasonable doubt." *Id*. at 582. Regarding the telephone calls which formed the basis for the wire fraud charges, the Court found that:

> [N]o… pattern of calls or substantive testimony was elicited such that a jury could reasonably infer the content of any of the calls. We have no idea who placed the calls or what they were about. No reasonable trier of fact could find that these phone calls of unknown relevance facilitated a scheme to defraud.

*Id*. at 584.

As in *Hanson*, in this case the prosecution has failed to introduce any direct evidence of any agreement between suppliers to fix prices or rig bids. Lacking any direct evidence of any actual agreement between the defendants, the prosecution points to calls between the defendants. However, without evidence of any agreement, or of the contents of the calls, the evidence is insufficient as a matter of law to sustain any conviction of Mr. Roberts beyond a reasonable doubt. Furthermore, the evidence at trial established unequivocally that Tyson had submitted its bid prior to the calls between Mr. Roberts, Mr. Brady, and Mr. Penn. The prosecution asks the Court to infer not only that an alleged conspiracy existed, but that the particular calls which it cites were allegedly in furtherance of the alleged conspiracy. A court "may not infer guilt by 'piling inference upon

inference.'" *United States v. Dewberry*, 790 F.3d 1022, 1028 (10th Cir. 2015) (internal citation omitted) (quoting *United States v. Delgado-Uribe*, 363 F.3d 1077 (10th Cir. 2004); *United States v. Xiang*, 12 F.4th 1176, 1184 (10th Cir. 2021)). Mr. Roberts should accordingly be held to be entitled to judgment of acquittal in his favor.

### C. The Prosecution's Evidence As a Whole Is Insufficient to Sustain a Conviction of Mr. Roberts for Conspiracy to Violate the Sherman Act

In order to convict a defendant for violating the Sherman Act, the Government must "'prove beyond reasonable doubt that the Defendant knowingly agreed with a competitor to raise, fix and maintain prices, and that the Defendant actually intended to carry out the agreement in fact.'" *United States v. Therm-All, Inc.*, 373 F.3d 625, 639 (5th Cir. 2004). Viewing the evidence in a light most favorable to the Government, the prosecution has introduced no evidence showing that Mr. Roberts knowingly agreed with any competitor of Tyson to fix prices. It has presented no evidence that Mr. Roberts possessed any knowledge of the alleged conspiracy charged in the Superseding Indictment or its alleged purposes. The prosecution has likewise failed to establish beyond a reasonable doubt that Mr. Roberts possessed any common design or understanding with any alleged co-conspirators, or that his conduct was interdependent upon any of the other alleged co-conspirators.

The prosecution's failure to present evidence demonstrating beyond a reasonable doubt that Mr. Roberts knowingly and intentionally entered into an agreement to engage in the alleged Sherman Act conspiracy charged in the Superseding Indictment constitutes a failure to prove an essential element of the offense, and warrants a grant of judgment of acquittal in Mr. Roberts' favor. *See McKenzie*, 266 F.2d at 527 (quoting *Christoffel*, 338 U.S. 84; *Politano*, 220 F.2d 217). The Court of Appeals has found a similar lack of evidence insufficient to sustain a conviction in

other conspiracy cases. *See Davis*, 965 F.2d at 813-814 (reversing the defendant's conviction for alleged conspiracy under 18 U.S.C. § 371, finding that there was insufficient evidence of a conspiratorial agreement between the alleged conspirators); *Nall*, 949 F.2d at 306 (affirming the district court's dismissal of a conspiracy count against the defendants, finding that there was no evidence to support a finding that there was an agreement between the defendants). Moreover, another court reversed a defendant's conviction for alleged conspiracy to fix prices in violation of the Sherman Act where the government failed to introduce evidence showing that the defendant corporation "made any agreement with anybody," *id*. at 899, and where the defendant's actions "were entirely consistent with its innocence," *id*. The testimony and evidence presented by the defense through Mr. Campbell and Mr. Bowlin conclusively demonstrate that Tyson arrived at its pricing internally, legitimately, and lawfully—in the complete absence of any agreement with any of its competitors. The Government has not—and cannot—prove otherwise, despite now having had two lengthy trials in which to do so. Mr. Campbell's testimony moreover definitively established that Mr. Roberts did not have authority over setting pricing for Tyson. The prosecution's wholesale failure of proof on essential elements of its Sherman Act charge as to Mr. Roberts, as well as due process and fundamental fairness, strongly urge the granting of Mr. Roberts' Motion for Judgment of Acquittal, and entry of judgment of acquittal in his favor on the Government's charges against him.

### III. CONCLUSION

On the grounds set forth herein, Defendant Gary Brian Roberts respectfully requests that the Court grant his Motion for Judgment of Acquittal and enter a judgment of acquittal in Defendant's favor, pursuant to Federal Rule of Criminal Procedure 29.

Respectfully submitted, this 21st day of March, 2022.

| | |
|---|---|
| */s/ Craig A. Gillen*_____ | */s/ Richard Tegtmeier*_____ |
| Craig A. Gillen | Richard L. Tegtmeier, #2544 |
| Anthony C. Lake | SHERMAN & HOWARD LLC |
| GILLEN WITHERS & LAKE LLC | 633 Seventeenth Street |
| 400 Galleria Parkway | Suite 3000 |
| Suite 1920 | Denver, Colorado 80202 |
| Atlanta, Georgia 30339 | (303) 299-8163 |
| (404) 842-9700 | rtegtmeier@shermanhoward.com |
| cgillen@gwllawfirm.com | |
| aclake@gwllawfirm.com | |

*Counsel for Gary Brian Roberts*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2022, I electronically filed the foregoing **DEFENDANT ROBERTS' MOTION FOR JUDGMENT OF ACQUITTAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

| | |
|---|---|
| /s/ Craig A. Gillen | /s/ Richard Tegtmeier |
| Craig A. Gillen | Richard L. Tegtmeier, #2544 |
| Anthony C. Lake | SHERMAN & HOWARD LLC |
| GILLEN WITHERS & LAKE LLC | 633 Seventeenth Street |
| 400 Galleria Parkway | Suite 3000 |
| Suite 1920 | Denver, Colorado 80202 |
| Atlanta, Georgia 30339 | (303) 299-8163 |
| (404) 842-9700 | rtegtmeier@shermanhoward.com |
| cgillen@gwllawfirm.com | |
| aclake@gwllawfirm.com | |

*Counsel for Gary Brian Roberts*