IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAYSON JEFFREY PENN,
MIKELL REEVE FRIES,
SCOTT JAMES BRADY,
ROGER BORN AUSTIN,
WILLIAM WADE LOVETTE,

    Defendants.

Criminal Case No. 20-cr-00152-PAB

**DEFENDANTS' MOTION FOR EXPANDED JURY VOIR DIRE AND PEREMPTORY CHALLENGES TO CURE GOVERNMENT'S EXTRAJUDICIAL STATEMENTS**

    Messrs. Penn, Fries, Brady, Austin, and Lovette, by and through their respective counsel, hereby move the Court for an additional five peremptory challenges and an additional twenty minutes of *voir dire* in light of the United States' repeated public statements in violation of Rule 3.8(f) of the Colorado Rules of Professional Conduct. In support of this motion, Defendants state as follows:

**FACTUAL BACKGROUND**

    On April 14, 2022, Mr. Jonathan Kanter, Assistant Attorney General for the Antitrust Division, appeared before this Court to explain why the government believes a third trial in this case comports with Department of Justice, Justice Manual § 9-27.220. Mr. Kanter told the Court that the "justice manual is extremely important in terms of guiding our decisions. It is therefore a reason [sic] and we consult it. And it is something that I've considered both in context of this case and many other cases, every other case." April 14, 2022 Hearing Tr. at 6:23-7:2 (Apr. 14,

2022).[1] Mr. Kanter emphasized that "it is important that we dispatch our resources responsibly and deliberately and with great care." *Id.* at 7:13-15. Mr. Kanter said that he is "mindful of the expense of the department's resources, the burden that it places on the Court and the strain when the Court is already—nationwide we are seeing this—burdened with busy dockets and the effect on the defendants." *Id.* at 12:19-23. Mr. Kanter described choosing to retry these five Defendants as a "very deliberate considered process. It was not reactionary. It was not reflexive." *Id.* at 15:5-7. And he expressed his belief that his office has "an obligation to use our powers responsibly and provide transparency in how we make our decisions." *Id.* at 24:18-21.[2]

    Just a week later, on April 21, 2022, Mr. Kanter boasted about this case and others at a public event, the Stigler Center's Competition Conference, with the press in attendance. Contrary to what he told the Court about the government's "very deliberate, considered," "not reactionary," and "not reflexive" decision to proceed with a third trial, Mr. Kanter revealed that his reaction to recent unfavorable jury verdicts in criminal antitrust cases was to send an e-mail to his staff, telling them to listen to Tom Petty's "I Won't Back Down," and to "dance like nobody's watching." *Won't Back Down: The Tipline for April 22, 2022*, Global Competition Review, https://globalcompetitionreview.com/gcr-usa/wont-back-down-the-tipline-22-april-2022 (last visited Apr. 25, 2022). Mr. Kanter insisted that "[w]e're going to continue to bring the cases. We're not backing down." *Id.* His full speech was reported in the media and is posted on

---

[1] Unless otherwise noted, all citations are to the certified trial and hearing transcripts.

[2] It is difficult to reconcile Mr. Kanter's description of the DOJ's "very deliberate [and] considered," "not reactionary," and "not reflexive" process for deciding to try the case a third time with the government's pronouncement that it would retry the case immediately after the Court declared a second mistrial. *See* Second Trial Tr. at 9:7-13 (Mar. 29, 2022) (The Court: Mr. Koenig, has the Department determined the next step in light of that ruling [declaring another mistrial]? Mr. Koenig: Yes, we have. And so we would, like last time, ask for whatever the outside date is for the Speedy Trial Act. We do plan to try the case[.]").

the Justice Department's website: https://www.justice.gov/opa/speech/assistant-attorney-general-jonathan-kanter-delivers-keynote-university-chicago-stigler.

Mr. Kanter also used the Chicago stage to commend his appearance before this Court and to publicly condemn Defendants' alleged conduct: "I want to end by reflecting on my duty. I swore an oath to uphold the laws. Just last week, I appeared before a federal court in Denver where I explained just how seriously I take my obligation to protect the American public under the antitrust laws. Antitrust is a kitchen table issue. The public depends on us to police the channels of commerce against collusion and monopoly. **When we fail, families struggle to afford groceries.** They earn lower wages. They lose control of their own private data to dominant platforms. **The American Dream slips away.**" *Id.* (emphases added).

At the same conference, Mr. Kanter was asked about the mistrials in this case, and recent acquittals in other cases. Mr. Kanter responded, "I'm here to declare that we're not part of the chickenshit club." Jack Queen, *DOJ Antitrust Head: No 'Chickenshit Club' Despite Losses*, Law360 (April 21, 2022), https://www.law360.com/articles/1486196/doj-antitrust-head-no-chickenshit-club-despite-losses.³ Mr. Kanter then explained the role that public opinion plays in

---

³ The remark appears to be a reference to the 2018 book by Jesse Eisinger entitled, *The Chickenshit Club: Why the Justice Department Fails to Prosecute Executives*. The cover of the book shows a chicken in handcuffs:



his prosecutorial decisions: "Just because a jury or two decided not to convict on a specific case doesn't mean the public isn't demanding more. We're hearing from the public on a regular basis, and they want more enforcement." *Id.* Speaking specifically about this prosecution, Mr. Kanter reaffirmed his belief that "the case is worth fighting for. We have to strengthen our resolve and bring cases that are righteous. They're hard. But if it's worthwhile, sometimes it's difficult. And we're going to stick with it." *Id.*

## ARGUMENT

The Colorado Rules of Professional Conduct apply to all attorneys in this case. *See, e.g.*, Tr. 287:17-23 (Mar. 3, 2022); Doc. 889 at 6 (noting "the relevant standards are the Colorado Rules of Professional Conduct"); *see also* D.C.COLO.LAttyR 2(a) (the Colorado Rules of Professional Conduct apply to all attorneys who appear in the United States District Court for the District of Colorado); U.S. Dep't of Just., Just. Manual § 1-4.010 ("Department attorneys also must comply with applicable rules of professional conduct."). Under Colorado Rule of Professional Conduct 3.8(f),

> The prosecutor in a criminal case shall: except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused unless such comments are permitted under Rule 3.6(b) or 3.6(c), and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6[4] or this Rule.

---

[4] Colo. RPC 3.6 further prohibits a lawyer who "has participated in the investigation or litigation of a matter" from making "an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter," unless that statement relates to basic factual information about the case or is "required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client."

Far from serving a legitimate law enforcement function, Mr. Kanter's comments attempt to vilify defendants and garner public support for DOJ's misguided decision to proceed with a third trial after failing to obtain a single conviction in the first two. In a public forum with press in attendance, Mr. Kanter justified his appearance in this Court and his decision to try this case a third time on the grounds that it was necessary to protect families struggling to afford groceries and to protect "[t]he American dream." *See Antitrust Enforcement: The Road to Recovery*, Dep't of Justice, https://www.justice.gov/opa/speech/assistant-attorney-general-jonathan-kanter-delivers-keynote-university-chicago-stigler (last accessed Apr. 25, 2022). Grocery prices, wage suppression, and data privacy have nothing to do with this case. Publicly tying the second retrial to these unrelated "kitchen table" issues has no legitimate law enforcement purpose and only serves to inflame public opinion against Defendants. Similarly, Mr. Kanter's reference to "the chickenshit club" in response to questions about the recent string of acquittals and hung juries is grossly inappropriate. Putting aside the crass double-entendre, the comment is designed to bolster public approval for aggressive criminal prosecution; it turns government losses at trial into badges of honor and opportunities for media attention rather than moments for reflection and reconsideration. Worse, Mr. Kanter's direction to his staff to listen to Tom Petty's "I Won't Back Down" and "dance like nobody's watching" following unfavorable jury verdicts shows a startling disrespect for our criminal justice system, the defendants whose liberty is at stake, the families whose lives these trials upend, and the Department of Justice's internal standards on prosecuting criminal cases.

As one of the highest-ranking prosecutors in the country, Mr. Kanter must use his powerful position responsibly to ensure that criminal defendants receive a fair trial. *Douglas v. Workman*, 560 F.3d 1156, 1195 (10th Cir. 2009) (quotations omitted) (prosecutors are "subject

to constraints and responsibilities that don't apply to other lawyers," most notably to "serve truth and justice first" and to "give those accused of a crime a fair trial"); *see also Kyles v. Whitley*, 514 U.S. 419, 439 (1995) (a prosecutor's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done"). In his comments described above, Mr. Kanter instead has used the bully pulpit to send a message to the public trivializing the criminal process, politicizing the charged crimes, and attempting to shore up public support for failed prosecutions, including this one. These comments serve no legitimate law enforcement purpose and violate Colorado Rule of Professional Conduct 3.8(f).

Mr. Kanter's public extrajudicial statements ratchet up the risk that jurors will be informed of this case and come to jury selection with preformed judgments about Defendants' guilt. It is already clear from the first two trials that jurors are aware of this high-profile case. In the first trial, a prospective juror worked in the food industry and subscribed to *Meating Place Magazine,* a trade magazine that has reported repeatedly on the case. First Trial Tr. at 146:3-6 (Oct. 25, 2021). The Court excused one juror because of his knowledge of the case and predetermination of Defendants' guilt. *Id.* at 225:12-231:8 (Oct. 26, 2021). In the second trial, a prospective juror, an attorney who had practiced and taught antitrust law, had read about the case in the Denver Business Journal and Bloomberg News. Second Trial Tr. at 65:25-66:3, 67:17-25, 73:2-76:18 (Feb. 23, 2022).[5]

A simple Google search of the term "Pilgrim's Pride antitrust" yields 671,000 results; the top two "hits" originate from www.justice.gov. "Claxton Poultry antitrust" yields 9,230 results, again, with the top two "hits" originating from www.justice.gov. The Wall Street Journal,

---

[5] Defendants cite the unofficial transcript because certified transcripts from the second trial are not yet available. Defendants defer to the Court's recollection if it differs in any way from the draft transcript.

Bloomberg News, The Denver Post, The Denver Business Journal, Forbes, and The Washington Post have covered this case extensively, among other outlets. Much of this coverage has been self-generated by the DOJ through press releases and public speeches. Indeed, a search of the Department of Justice's website reveals 347 results for "Jayson Penn," 421 results for "Mikell Fries," 423 results for "Scott Brady Claxton,"[6] 624 results for "Roger Austin Claxton,"[7] and 222 results for "William Lovette Pilgrims." There are 725 results for "Pilgrim's Pride," and 203 results for "Claxton Poultry Farms."

Defendants' primary opportunity to determine the effect of Mr. Kanter's public statements and the media attention they garnered is through *voir dire*. *United States v. Lamb*, 575 F.2d 1310, 1315 (10th Cir. 1978), *cert. denied*, 439 U.S. 854 (1978) (The "proper occasion for determining juror partiality is upon *voir dire* examination."); *United States v. Walker*, 890 F. Supp. 954, 957 (D. Kan. 1995) (a "searching" *voir dire* examination effective for determining prejudice resulting from pretrial publicity). The Court has broad discretion to "allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly." Fed. R. Crim. P. 24(b). Courts routinely exercise this discretion where additional peremptory challenges are necessary to ensure a fair and impartial jury. This is because "[t]he presence of even a single biased juror deprives a defendant of his right to an impartial jury." *United States v. Dimora*, 2011 WL 5361129 at *6 (N.D. Ohio Oct. 31, 2011); *see also, Skilling v. United States*, 561 U.S. 358, 388 n.21 (2010) (peremptory challenges provide protection against prejudice).

---

[6] The search term "Scott Brady Claxton" was used for more accurate results, so as to not return results for former U.S. Attorney Scott W. Brady.

[7] The search term "Roger Austin Claxton" was used for more accurate results, as "Roger Austin," and "Roger Austin Pilgrims" yielded non-responsive results.

Defendants respectfully submit that an additional twenty minutes of *voir dire* and an additional five peremptory strikes for Defendants are necessary to mitigate any prejudicial effect from media coverage of Mr. Kanter's public statements about the case.[8] Indeed, courts regularly provide additional peremptory challenges in complex, multi-defendant cases. For example, in *United States v. Battle*, 1997 WL 447814 (D. Kan. June 27, 1997), *aff'd in part*, 188 F.3d 519 (10th Cir. 1999)—a case involving four defendants—the court permitted each defendant to exercise three peremptory challenges to ensure a fair trial. *Id.* at *21-22. Similarly, in *United States v. Hasan*, 747 F. Supp. 2d 642 (E.D. Va. 2010), *aff'd sub nom. United States v. Dire*, 680 F.3d 446 (4th Cir. 2012)—a case involving five defendants—the court provided the defendants with additional peremptory challenges to ensure an unbiased jury. *Id.* at 699. The court explained that "[w]hile providing additional peremptory challenges may protract jury selection to some degree, it is unlikely to be unduly burdensome, especially in light of the novelty and complexity of th[e] case." *Id.*; *see also, United States v. Marr*, 2017 U.S. Dist. LEXIS 68910, at *22 (N.D. Cal. Apr. 28, 2017) (permitting two additional peremptory challenges where the defendants were implicated in antitrust conspiracies).

The circumstances of this case—including the number of defendants, the complexity of the case, and the likelihood of biased jurors in the pool—counsel in favor of additional challenges and *voir dire* time. Defendants already will be exercising peremptory strikes and will efficiently exercise additional strikes so as not to unduly prolong jury selection, just as they have done in the prior two trials. On balance, a modest increase in the number of defense peremptory

---

[8] Defendants previously filed a motion seeking additional peremptory challenges. Doc. 525. The Court denied the motion. However, Defendants respectfully submit that the factual circumstances discussed in this motion constitute changed circumstances warranting reconsideration of that ruling.

challenges and time for *voir dire* is warranted to ensure a fair and impartial jury in light of the Government's public comments about the case and Defendants.

## CONCLUSION

Mr. Kanter's public statements describe Defendants' alleged conduct and the issues relevant to this case in hyperbolic terms clearly designed to garner media attention. These extrajudicial statements serve no legitimate law enforcement purpose, but rather violate the Colorado Rules of Professional Conduct and increase the likelihood of potential bias in the jury pool. Accordingly, Defendants respectfully request an additional five peremptory challenges and an additional twenty minutes of *voir dire* time to mitigate the impact of these improper statements.

Respectfully submitted this 26th day of April 2022,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Erin Holweger*