IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>1.   JAYSON JEFFREY PENN,<br>2.   MIKELL REEVE FRIES,<br>3.   SCOTT JAMES BRADY,<br>4.   ROGER BORN AUSTIN, and<br>5.   WILLIAM WADE LOVETTE,<br><br>    Defendants. | Criminal Case No. 20-cr-00152-PAB |

### DEFENDANTS' MOTION IN LIMINE 4:
### TO EXCLUDE EVIDENCE OF SEPARATE CONSPIRACY UNDER FEDERAL RULES OF EVIDENCE 402, 802, AND 403

This motion concerns Robert Bryant's proffered testimony describing conversations with two non-Defendants—Scott Tucker and Tim Stiller—regarding the pricing of boneless chicken breast to U.S. Foods, as well as their conduct with respect to that pricing. *See, e.g.*, Dkt. 1272-1 at 2-3 (Logs 122-S-126-S, 128-S). Because the second trial revealed that neither their statements nor their conduct relates to the charged conspiracy, Defendants move to exclude this testimony.

At the second trial, Mr. Bryant testified that none of the Defendants were involved in this "side hustle" [R. Tr. 3/9/2022 at 152:17-153:5][1], which involved Messrs. Stiller, Tucker and Bryant allegedly conspiring to raise pricing on boneless chicken breasts to U.S. Foods:

> Q. First of all, you testified on direct that you had engaged in certain pricing conduct related to U.S. Foods. Remember that?
> A. That's correct.
> Q. And this conduct that you engaged in had absolutely nothing to do with Mr. Kantola, did it?

---

[1] As with all of Defendants' Motions *in Limine*, citations from the second trial are taken from the unofficial transcript. To the extent the Court's recollection differs, Defendants defer to the Court.

1

>A. That's correct.
>Q. In fact, it didn't have to do with anyone in this courtroom at all except you.
>A. That's correct.

R. Tr. 3/10/2022 at 5:10-19.

Mr. Bryant's testimony makes clear that—far from furthering the charged conspiracy—the pricing conduct with respect to U.S. Foods was separate and distinct from any alleged conspiratorial activity at issue here. As described by Mr. Bryant, the alleged U.S. Foods conspiracy was independent criminal conduct—a parallel objective to the charged conspiracy. The alleged U.S. Foods scheme targeted a different type of product, concerned a different category of customer, and—crucially—did not involve any of the Defendants. These differences from the charged conspiracy did not become clear until Mr. Bryant's testimony in the second trial, and *after* the Court overruled objections, thus warranting a finding of a change in circumstances. Defendants therefore move to exclude the proffered evidence under Federal Rules of Evidence 402, 802, and 403.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Government included Mr. Bryant's testimony concerning U.S. Foods on both its original and supplemental *James* logs. *See* Dkt. 358-2 at 59; 941-1 at 6-7. The testimony was admitted over Defendants' hearsay objections in the two previous trials because the Court concluded that the testimony included statements by coconspirators that were made during and in furtherance of the charged conspiracy. Dkt. 559 at 7; Dkt. 1050 at 3.

During the first trial, Mr. Bryant testified that in 2017 he and Mr. Stiller "believed that our boneless breast meat was undervalued" and were "trying to formulate a plan to increase prices on boneless breast, particularly to U.S. Foods." Of. Tr. 860:23-861:7. Mr. Bryant testified that he and Mr. Stiller decided to have Mr. Bryant "reach out to Scott Tucker and see if Mar-Jac would be willing to submit a price increase to U.S. Foods for boneless also." Of. Tr. 866:3-13.

2

Mr. Bryant followed through with this plan, because he "felt like" Mr. Tucker "could be trusted" to make such a call. Of. Tr. 866:14-867:9. Mr. Bryant identified GX 9140 and GX 9139 in connection with this discussion. Of. Tr. 867:12-873:16. In addition, Mr. Bryant testified that Mr. Stiller's text message at GX 3039—in which Mr. Stiller told Mr. Bryant "no comp names in email"—was related to Mr. Bryant sending Mr. Stiller the emails at GX 9140 and GX 9139. Of. Tr. 873:21-875:16.

At the second trial, Mr. Bryant supplied largely the same testimony. R. Tr. 3/9/2022 at 30:8-42:1. In the course of this testimony, the Court overruled objections as to relevance, unfair prejudice, improper 404(b) evidence, and constructive amendment to the indictment. R. Tr. 3/9/2022 at 27:6-28:14. In addition, it was argued, this testimony was particularly prejudicial to Messrs. Fries and Brady, as Claxton Poultry did not sell boneless breast chicken to U.S. Foods. R. Tr. 3/9/2022 at 28:7-14. The Defendants made those objections, however, before Mr. Bryant testified that this conduct did not involve any of the Defendants. R. Tr. 3/9/2022 at 27:6-30:6.

Defendants renew their objections to this testimony and any related testimony that the Government might seek to elicit about Messrs. Bryant's, Tucker's, and Stiller's conduct with respect to U.S. Foods boneless chicken breast pricing. And because Mr. Bryant has now testified that the statements were made in furtherance of a *separate* alleged conspiracy—one that did not involve any of the Defendants—the testimony is irrelevant, inadmissible hearsay, and unfairly prejudicial. R. Tr. 3/10/2022 at 5:10-19.

## II.   ARGUMENT

### A.   Mr. Bryant's Trial Testimony Constitutes a Changed Circumstance that Warrants Reconsideration of this Court's Earlier Rulings.

Defendants respectfully urge this Court to reconsider its prior rulings about the admissibility of this evidence. Courts have discretion to revise evidentiary rulings for any reason

3

and at any time. *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) ("[T]he district court may change its ruling at any time for whatever reason it deems appropriate"); *Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling").

This Court has explained that it will review prior rulings when a party can demonstrate changed circumstances. Dkt. 1263 at 2 ("The Court will not reconsider its earlier rulings, absent a change in circumstances warranting reconsideration."). Courts in the Tenth Circuit have noted that trial testimony may constitute a changed circumstance that warrants reconsideration of pre-trial rulings. *Romero v. Helmerich & Payne Int'l Drilling Co.*, No. 15-CV-00720-NYW, 2017 WL 3268878, at *10 n.6 (D. Colo. Aug. 1, 2017) (noting that it may revisit a pretrial ruling based on trial testimony); *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) ("[T]he court may alter its *limine* ruling based on developments at trial[.]").

Mr. Bryant's testimony in the second trial provided new information about the nature of his, Mr. Stiller's, and Mr. Tucker's conduct with respect to U.S. Foods. Specifically, Mr. Bryant agreed that this conduct "didn't have to do with anyone in this courtroom at all except [him]." R. Tr. 3/10/2022 at 5:10-19. Because this testimony contradicts the basis of the prior rulings on the admissibility of this evidence, this Court should reconsider those rulings.

    **B.**    **Because the Evidence Is Unrelated to the Charged Conspiracy, It Is Irrelevant Under Rule 402.**

        **1.**    **Standard for 402 Exclusion.**

Federal Rule of Evidence 402 bars the introduction of any evidence that is not relevant. *Hare v. Denver Merch. Mart, Inc.*, No. 04-CV-02416-REB-MEH, 2008 WL 4642950, at *1 (D. Colo. Oct. 17, 2008) ("[E]vidence that is not relevant… is not admissible[.]"); Fed. R. Evid. 402. Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Independent criminal conduct by an alleged coconspirator is not relevant. This is true even where that conduct is similar to the charged conduct. Instead, "[w]hat is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people." *United States v. Evans*, 970 F.2d 663, 670 (10th Cir. 1992). To be sure, courts have held that "proof of the existence of the charged conspiracy is not confined to the acts of the defendants on trial." *United States v. Araujo*, 539 F.2d 287, 289 (2d Cir. 1976). While unindicted individuals' acts to further the *charged* conspiracy may be admissible, that same principle does not extend to unindicted individuals' acts to further an entirely *separate* conspiracy. The opposite is true: admissibility ends where the conspiracy ends. *United States v. Caldwell*, 589 F.3d 1323, 1330 (10th Cir. 2009) ("What is needed is proof that they intended to act together for their shared mutual benefit *within the scope of the conspiracy charged*.") (emphasis added).

Courts have also recognized that individuals may be simultaneously involved in multiple, overlapping conspiracies. In *United States v. DeLeon*, for example, the District of New Mexico excluded evidence of several defendants' criminal conduct since it related to an independent conspiracy from the one charged. 418 F. Supp. 3d 682 (D.N.M. 2019). The *DeLeon* court severed a 31-defendant prosecution of members of a prison gang into two separate trials. Although there were overlapping defendants, each trial involved different conspiracies. In *DeLeon* Trial 2, the court excluded statements that related to the conspiracies in *DeLeon* Trial 1 as irrelevant: "Even the statements which the Court ruled were generally admissible in Trial 1 under 803(3) . . . are inadmissible in Trial 2, because they are irrelevant to the Trial 2 conspiracies and Defendants." *Id*. at 826.

5

Under Rule 401, therefore, it is not enough that individuals engaged in a separate conspiracy from the one charged. For the testimony about a separate alleged conspiracy to be relevant, the Government must demonstrate that it makes a fact about the charged conspiracy more or less probable. Here, the Government fails to do so.

        **2.**        **Messrs. Bryant's, Stiller's, and Tucker's Pricing Conduct with Respect to U.S. Foods Constitutes a Separate Alleged Conspiracy.**

Messrs. Bryant's, Stiller's, and Tucker's pricing conduct with respect to U.S. Foods is not relevant to this case for the simple reason that it is not related to the charged conspiracy. Instead, it comprises a second, separate alleged conspiracy carried out by the three of them alone. Three facts compel this conclusion.

**First**, the type of product involved in the alleged U.S. Foods scheme is different than that involved in the charged conspiracy. The U.S. Foods pricing concerned a product that is not related to the quick serve restaurant, bone-in, broiler chicken products and terms that the Government alleges the Defendants conspired to price-fix. In the first trial, Mr. Bryant testified that in 2017, Pilgrim's was "seeking price increases on boneless breast meat." Of. Tr. 860:15-22. According to Mr. Bryant, he and Mr. Stiller "believed that our boneless breast meat was undervalued" and "were trying to formulate a plan to increase prices on boneless breast, particularly to US Foods." Of. Tr. 860:23-861:7. Mr. Bryant clarified on further questioning that this type of price increase was different from the increases for eight-piece bone-in chicken, because they are "totally different products" and that it "wasn't uncommon" for the values of those two products "to be a lot different." Of. Tr. 861:12-862:10.

**Second**, the category of customer is different. U.S. Foods is a different category of customer than every other customer about which Mr. Bryant testified—and different than all but one other customer about which the Government introduced evidence at both the first and second

6

trials. Specifically, Mr. Bryant testified in the first trial that U.S. Foods was one of Pilgrim's "broadline distributors," which was a different type of customer than "QSRs or fast-food restaurants." Of. Tr. at 727:21-25.

**Third**, Mr. Bryant's testimony shows it to be separate from the charged conspiracy. At the second trial, Mr. Bryant agreed that the conduct "didn't have to do with anyone in this courtroom at all except" him. R. Tr. 3/10/2022 at 5:10-19; *see also* R. Tr. 3/9/2022 at 152:17-153:5 ("Q. You also testified about U.S. Foods and we will call it a side hustle you had about trying to get the boneless price up to Mar-Jac with U.S. Foods, correct? A. That's correct.").

These facts make unambiguous what Mr. Bryant's testimony described: any pricing conduct with respect to the sale of boneless chicken breast to U.S. Foods was independent of the alleged conspiracy for which the Government has charged the Defendants. To be sure, this Court has heard argument on some of these facts before. However, the Court considered these facts in isolation and—critically—without the additional context of Mr. Bryant's unequivocal testimony from the second trial. When viewed in their totality, these facts show that the pricing conduct with respect to U.S. Foods involved an independent and irrelevant alleged conspiracy by Messrs. Bryant, Tucker, and Stiller.

      **C.**      **Because Mr. Bryant's Conduct with Respect to U.S. Foods Was Unrelated to the Charged Conspiracy, It Is Also Inadmissible Hearsay Under Rule 802.**

Under Federal Rule of Evidence 802, "[h]earsay is not admissible." Fed. R. Evid. 802. However, in the two prior trials, the Court admitted Messr.'s Bryant's, Stiller's, and Tucker's statements regarding U.S. Foods as non-hearsay "statements made by the party's coconspirator" within the meaning of Rule 801(d)(2)(E). Fed. R. Evid. 801; Dkt. 559 at 7; Dkt. 1050 at 3.

Statements do not fall under Rule 801(d)(2)(E) "unless the trial court finds the following elements by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the declarant

7

and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997). Thus, even when a court concludes by a preponderance of the evidence that a conspiracy exists, the Government does not acquire an unlimited license to admit into evidence every statement made by a coconspirator. Instead, the Government bears the burden of proving that each statement was made in furtherance of the charged conspiracy.

Messrs. Bryant's, Tucker's, and Stiller's statements about U.S. Foods pricing conduct could not have furthered the charged conspiracy because they did not relate to the charged conspiracy. Instead, they related to an independent scheme by the three of them. Accordingly, their statements do not fall under the ambit of Rule 801(d)(2)(E) and are inadmissible hearsay.

### D.    Even if the Court Concludes that the Evidence is Relevant and Not Hearsay, the Danger of Unfair Prejudice and Confusion Substantially Outweighs Its Probative Value.

#### 1.    Legal Standard

Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "To be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Fed. R. Evid. 403 advisory committee note). "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

#### 2.    The Government Seeks to Make an Impermissible Guilt-by-

8

### Association Argument.

Even if Messrs. Bryant's, Stiller's, or Tucker's conduct in a separate alleged conspiracy has some probative value, it is far outweighed by the danger of unfair prejudice and confusion. Although Mr. Bryant's testimony makes clear that his actions with respect to U.S. Foods did not involve any of the Defendants, the admission of this evidence creates a significant risk that the jury could find the Defendants guilty merely because of their association with Messrs. Bryant, Tucker, and Stiller. That is, this instance where Messrs. Bryant, Tucker, and Stiller may have acted *improperly without* the Defendants' involvement might color their impression of the instances where they acted *properly with* the Defendants' involvement.

The Tenth Circuit consistently rejects this sort of associational reasoning. *See, e.g., United States v. Fleming*, 667 F.3d 1098, 1105 (10th Cir. 2011) ("[C]ourts must be careful to guard against guilt by association, to scrupulously safeguard each defendant individually, as far as possible, from loss of identity in the mass."); *United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992) ("It is not enough, however, for the government to show only mere association with conspirators known to be involved in crime… .") (quotations omitted); *United States v. Dickey*, 736 F.2d 571, 585 (10th Cir. 1984) ("[W]e agree that mere association with coconspirators is insufficient to prove participation in a conspiracy.") (quotations omitted).

As the U.S. Court of Appeals for the Eighth Circuit explained in *United States v. Flynn*, "[w]hen the government introduces every bad act of an enterprise, including those in which the defendant does not participate, it magnifies the potential for imputing guilt to a defendant solely on the basis of the company he keeps and Fed.R.Evid. 403 is implicated." 852 F.2d 1045, 1054 (8th Cir. 1988), *abrogated on other grounds by Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994). Because none of Defendants were involved in Mr. Bryant's "side hustle" and his testimony establishes that this episode was distinct from the charged conspiracy, evidence of the

9

U.S. Foods conduct would unfairly lead to an implication of guilt by association that would far outweigh any potential relevance of Messrs. Bryant's, Tucker's, and Stiller's independent conduct.

### 3. Introduction of the U.S. Foods Conduct Would Confuse and Mislead the Jury.

In addition to unfairly prejudicing Defendants, testimony about the pricing of boneless chicken breast to U.S. Foods presents a substantial danger of confusing the issues and misleading the jury. This case involves years of conduct, spanning over a dozen alleged coconspirators, and five charged Defendants. Evidence of an unrelated scheme risks further complicating an already complex case. Moreover, although there are important distinctions between the charged conspiracy and Messrs. Bryant's, Tucker's, and Stiller's independent conduct, there is a high risk that the jury will confuse evidence of the latter with evidence of the former.

## CONCLUSION

For these reasons, the Court should exclude all evidence relating to pricing of boneless chicken breast to U.S. Foods.

Dated:  May 9, 2022

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

 *s/ Michael S. Feldberg*
 Michael S. Feldberg