IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN, and
5.     WILLIAM WADE LOVETTE,

    Defendants.

Criminal Case No. 20-cr-00152-PAB

## DEFENDANTS' MOTION TO DISMISS SUPERSEDING INDICTMENT

Defendants, by and through undersigned counsel, respectfully submit this Motion to Dismiss the Superseding Indictment because a third trial in this case is unconstitutional.

### INTRODUCTION

Over 51 court days, the government had two full and fair opportunities to present its best case: it offered 43 witnesses, introduced 986 exhibits, and empaneled 24 jurors, plus alternates. Yet the government failed to convict any of the ten defendants charged. Unsatisfied, the government seeks a third bite at the apple. But now, the government has an unfair advantage: it has had two practice rounds. After the first trial, the government learned from its mistakes. It figured out how to admit evidence that it failed to get in the first time; it interviewed a cooperating witness 16 more times until he finally said the magic word "agreement"; it shifted its theory of how the alleged conspiracy worked in order to address inconsistencies that Defendants exposed. A third trial compounds this unfairness—the government will have yet another chance

1

to revise and bolster its case.  This puts the Defendants in an untenable position and violates fundamental fairness.  The Defendants have already spent nearly two years under the cloud of indictment and endured two lengthy trials. For these reasons, the Double Jeopardy and Due Process clauses prohibit a third trial. The Superseding Indictment should therefore be dismissed on the ground that further prosecution is unconstitutional.[1]

## LEGAL STANDARD

Under the federal rules, Defendants may "raise[] by pretrial motion" any "defect in instituting the prosecution," so long as "the basis for the motion" is "reasonably available" and it "can be determined without a trial on the merits."  Fed. R. Crim. P. 12(b)(3)(A).  Challenges based on double jeopardy and due process meet those requirements: they are purely legal, they are based on the record, and neither requires a trial on the merits.  *See United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010) (Gorsuch, J.) ("courts may entertain motions that require [them] to answer only pure questions of law" before trial); *see also*, *e.g.*, *United States v. Makkar*, 2016 WL 4703742, at *3 (N.D. Okla. Sept. 8, 2016) (granting motion to dismiss on double jeopardy grounds).  Indeed, these constitutional protections "would be lost if the accused were asked to 'run the gauntlet'" before vindicating them.  *Abney v. United States*, 431 U.S. 651, 662 (1977) ("[I]f a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be

---

[1] Defendants recognize that the prevailing law treats retrial following a mistrial as a form of "continuing jeopardy" that does not violate the Constitution.  *See* Defendants' Motion 2 — Motion to Exclude New Evidence From The Third Trial (May 9, 2022).  For the reasons discussed below, however, that doctrine is unsound and should be reconsidered.  Defendants accordingly raise the general issue at the very least to preserve it for further review.  But beyond that, the unique facts and circumstances of this case warrant an exception to that general rule.

reviewable before that subsequent exposure occurs."). For the same reason, a denial of a motion to dismiss based on double jeopardy and due process grounds is immediately appealable. *See id.*

## ARGUMENT

### I. The Fifth Amendment's Double Jeopardy Clause Bars Retrial Following A Hung Jury.

Under the Double Jeopardy Clause, no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The text of that provision mandates a simple rule: "once a defendant is placed in jeopardy for an offense" and the prosecution "terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003); *see Breed v. Jones*, 421 U.S. 519, 528 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with criminal prosecution."). That protection should be interpreted to bar retrial here: upon deadlock, the "the jury was dismissed." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 581-82 (1977) (Burger, J., dissenting). Defendants thus "ceased to be in jeopardy": "they could no longer be convicted except for undergoing a new trial." *Id.* Retrial would therefore violate Defendants' right to not be "twice"—or thrice—"put in jeopardy" for the same alleged conspiracy. U.S. Const. amend. V.

The Supreme Court, of course, has held otherwise: juror deadlock "is the kind of 'manifest necessity' that permits the declaration of a mistrial and the continuation of the initial jeopardy that commenced when the jury was first empaneled." *Yeager v. United* States, 557 U.S. 110, 118 (2009); *accord Blueford v. Arkansas*, 566 U.S. 599, 609 (2012) (same); *Richardson v. United States*, 468 U.S. 317, 323-24 (1984) (same); *Arizona v. Washington*, 434 U.S. 497, 509 (1978) (same). But that notion of "continuing jeopardy" stems from a flawed reading of

common law divorced from the Constitution. And the unique facts and circumstances of this case should be held to fall outside that rule.

The Supreme Court's rule permitting retrial after a hung jury traces its roots to *United States v. Perez*, 22 U.S. (9 Wheat) 579 (1824). *See Richardson*, 468 U.S. at 323 (pointing to *Perez* as "source[]" of rule). But *Perez* concerned neither the Double Jeopardy Clause nor the Fifth Amendment. *See id.*; Janet E. Findlater, *Retrial After A Hung Jury: The Double Jeopardy Problem*, 129 U. Pa. L. Rev. 701, 703 (1981) ("[N]owhere in the unanimous opinion authored by Justice Story is either double jeopardy or the fifth amendment mentioned."). Instead, *Perez* considered whether, as a matter of judicial administration, trial courts have authority to discharge juries before verdicts for manifest necessity, and, if so, whether the discharge bars further proceedings. *Perez*, 22 U.S. at 579-80. The Court held "no," but cited no authority to support that conclusion. And it lacks a common law pedigree. At old English common law, judges did not have the authority to discharge a jury before it reached a verdict; courts went so far as to deprive jurors of food and water until they reached a unanimous decision. Findlater, 129 U. Pa. L. Rev. at 707, n.25. So the issue in *Perez* was whether federal trial courts even had the authority to discharge a jury before it rendered a verdict. *Id.* at 709; *Id.* at 703 ("In 1824, the hung jury question did not implicate the double jeopardy clause of the Fifth Amendment."). Thus, "[w]hatever the validity in 1824 of the *Perez* result, the rule that retrial following a hung jury does not run afoul of the Constitution is today, with all the respect due its years, simply dead wrong." *Id.* at 701-02.[2]

---

[2] The Supreme Court has acknowledged *Perez* may not carry constitutional weight, *see Crist v. Bretz*, 437 U.S. 28, 34 n.10 (1978) (noting that "a close reading" of *Perez* "could support the

*Perez* aside, there is no principled reason to conclude that a deadlocked jury "continues" jeopardy. It does not. It has been "long established as an integral part of double jeopardy jurisprudence" that "a defendant could be put in jeopardy even in a prosecution that did not culminate in a conviction or an acquittal." *Crist v. Bretz*, 437 U.S. 28, 34 & n.10 (1978) (citing *Kepner v. United States*, 195 U.S. 100, 128 (1904)). That makes sense: jeopardy begins when the jury is empaneled and sworn and ends when the defendant can "no longer be convicted except for undergoing a new trial." *Martin Linen Supply Co.*, 430 U.S. at 581-82 (Burger, J., dissenting). When a court dismisses a deadlocked jury, jeopardy terminates: there can be no conviction without a new trial. *See Richardson*, 468 U.S. at 328 (Brennan, J., concurring in part and dissenting in part) ("I have little trouble concluding that when a jury, unable to reach a verdict, is dismissed and a mistrial is declared, a defendant's trial has come to an end."). Accordingly, the Constitution forbids retrial.

Reading the Fifth Amendment's text to mean what it says also effectuates its purpose. The double jeopardy "rule evolved in response to the abhorrent practice under the Stuart monarchs of terminating prosecutions." *Blueford v. Arkansas*, 566 U.S. at 618-19 (quotation omitted) (Sotomayor, J., dissenting). "[W]hen it appeared that the Crown's proof might be

---

view that the Court was not purporting to decide a constitutional question, but simply settling a problem arising in the administration of federal criminal justice," but treating the question as of "academic interest"). It is far more than that, however: a misreading of an inapplicable precedent should not justify the perpetual denial of constitutional rights. The Supreme Court has not yet addressed this issue—*see* Petition for Writ of Certiorari, *Richards v. Connecticut*, 2021 WL 4080772 (Aug. 31, 2021), *cert. denied*, 142 S. Ct. 431 (2021) (Mem.) (No. 21-356) (denying certiorari on "[w]hether the Fifth Amendment's Double Jeopardy Clause bars a criminal defendant's retrial after the government has had a fair opportunity to prove its case and a mistrial is declared due to a hung jury, thus abrogating *Richardson v. United States*, 468 U.S. 317 (1984) and *United States v. Perez*, 9 Wheat. 579 (1824)")—but that hardly forecloses its correct resolution now.

insufficient," the Crown would simply end the proceedings and try again. *Id.* The Double Jeopardy Clause stands as a safeguard against that abuse: it "guarantees that the State shall not be permitted to make repeated attempts to convict the accused." *Id.* at 605 (quotation omitted); *see Twice in Jeopardy*, 75 Yale L.J. 262, 287-88 (1965) ("[D]ouble jeopardy forbids the prosecutor to use the first proceeding as a trial run of his case or as an opportunity to test and select his jury."). Any other rule would subject criminal defendants to intolerable "embarrassment, expense and ordeal;" compel them "to live in a continuing state of anxiety and insecurity;" and "enhanc[e] the possibility that even though innocent [they] may be found guilty." *Blueford*, 566 U.S. at 605 (quotation omitted).

Applied here, the Constitution bars retrial. Even if the Court accepts a general rule that a mistrial does not bar a retrial, the double failure of the government to persuade the jury rises to a new level of unfairness. The government failed "to prove its case despite"—not just one, but two—"fair opportunit[ies] to do so." *Hudson v. Louisiana*, 450 U.S. 40, 45 n.5 (1981) (barring retrial under Double Jeopardy Clause). Twice, the government failed to persuade the jurors that its evidence established guilt beyond a reasonable doubt; twice, the court dismissed deadlocked jurors; twice, the Court declared mistrials. "[T]wice," then, defendants were "put in jeopardy." U.S. Const. amend. V. The Constitution bars the government from doing so a third time.

## II. The Fifth Amendment's Due Process Clause Bars Retrial Following A Hung Jury.

Retrial following a hung jury also violates Defendants' Fifth Amendment due process rights—at least where, as here, the government has tried and failed *twice* to persuade jurors

beyond a reasonable double and continues to hone its case with shape-shifting evidence.³  The "right to a fair trial" is a "fundamental liberty" under the Due Process clause.  *Estelle v. Williams*, 425 U.S. 501, 503 (1976).  In turn, "the undoubted law, axiomatic and elementary," is that a fair trial includes the "presumption of innocence."  *Coffin v. United States*, 156 U.S. 432, 453 (1895); *see Estelle*, 425 U.S. at 503 (the "presumption of innocence" is "a basic component of a fair trial").⁴  Criminal defendants retain their liberty unless the government persuades the jury "by probative evidence" that they are guilty "beyond a reasonable doubt."  *Estelle*, 425 U.S. at 503.  And the Constitution affords only one shot: due process limits the government to "one fair opportunity to offer whatever proof it [can] assemble."  *Burks v. United States*, 437 U.S. 1, 16 (1978).

Retrial here after two hung juries upends that balance.  Central to the presumption of innocence, defendants retain the right to "remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion."  *Taylor v. Kentucky*, 436 U.S. 478, 483 n.12 (1978) (quotation omitted).  In other words, defendants have the right to do nothing.  *See id.*  They need not prove their innocence nor rebut the government's case.  *See id.*  The government, and the government alone, bears the burden of proving guilt beyond a

---

³ In *United States v. Batie*, 433 F.3d 1287, 1293-94 (10th Cir. 2006), the court of appeals rejected a due process challenge to a retrial following three mistrials—but the first two mistrials resulted from prejudicial trial error that resulted in the dismissal of the jurors before deliberations; only the third mistrial involved a hung jury.  *See* Br. for the United States, No. 04-4299 (10th Cir. Mar. 18, 2005), 2005 WL 5714926.

⁴ "It is now generally recognized that the 'presumption of innocence' is an inaccurate, shorthand description."  *Taylor v. Kentucky*, 436 U.S. 478, 483 n.12 (1978).  That is because "it is not technically a 'presumption'—a mandatory inference drawn from a fact in evidence.  Instead, it is better characterized as an 'assumption' that is indulged in the absence of contrary evidence."  *Id.* (quotation omitted).

reasonable doubt. *See id.* But allowing the government to retry its case following a deadlocked jury violates that presumption: the government's failure to prove its case no longer allows defendants to go free.

Courts could arrive at the contrary result only by relying on the "continuing jeopardy" fallacy, under which a mistrial following a hung jury does not terminate jeopardy; it merely pauses the prosecution until retrial. *See infra* Part I. That faulty logic could imply that retrial following a deadlocked jury likewise does not offend due process's requirement that the government have only "one fair opportunity" to prove its case beyond a reasonable doubt. *Burks*, 437 U.S. at 16; *see Sattazahn*, 537 U.S. at 116 ("We decline petitioner's invitation to hold that the Due Process Clause provides greater double-jeopardy protection than does the Double Jeopardy Clause."). But as explained above, that legal fiction originates in a flawed reading of precedent divorced from the Constitution.

Even if the continuing-jeopardy fallacy applied, it could not overcome the compelling demands of fairness protected by the Due Process Clause. *See Estelle*, 425 U.S. at 503 (due process guarantees "right to a fair trial"). Even when "the first trial is not completed" by a verdict, "a second prosecution may be grossly unfair": it "increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted." *Washington*, 434 U.S. at 503-04. That fairness concern is "deeply ingrained" in "the Anglo-American system of jurisprudence": it has "long been settled" that allowing the government—"with all its resources and power"—"to make repeated attempts to convict an individual for an alleged offense" is fundamentally inconsistent with a fair trial. *Green v. United*

8

*States*, 355 U.S. 184, 187-88 (1957). And "the threat to individual freedom from reprosecutions that favor States and unfairly rescue them from weak cases has not waned with time." *Blueford*, 566 U.S. at 623 (Sotomayor, J., dissenting).

Retrial presents that threat here. The government has already had two "fair opportunit[ies] to offer whatever proof it could assemble." *Burks*, 437 U.S. at 16. It failed. Twice. The fairness concerns that animate due process thus prohibit the government from trying again. *See Green*, 355 U.S. at 187. Indeed, that unfairness played out at the second trial. At the first trial, for example, the government called just one alleged "conspiracy insider" to testify. At the second trial—and only after it elicited for the first time in a seventeenth interview with another "insider" that there was an "agreement" among chicken suppliers—the government called a second "conspiracy insider." It then invoked that witness's testimony repeatedly during its closing argument. Similarly, at the first trial, the government failed to admit a handwritten note. But on retrial, it revamped its approach: it found a witness who purported to authenticate the handwriting, convinced the Court to admit the note, and relied on the note in its closing statement as evidence of an illegal agreement. The government also drew on its failures during the first trial to make countless revisions to its summary charts, present a new theory that there was an agreement to fix prices at 19 cents, and shore up its responses to Defendants' evidentiary objections. Now, the government's new trial team is preparing for yet another do-over with a flurry of new witness interviews, four new government witnesses, over 100 new exhibits, and foreknowledge of Defendants' cross-examination strategies—in addition to all the evidentiary gaps that Defendants pointed out during the first two trials.

The government, "with all its resources and power," has already made two "repeated

9

attempts to convict." *See Green*, 355 U.S. at 187. Due process bars another. The Court should prohibit the government from haling Defendants into court yet again. A contrary ruling would reverse the burden of proof and contravene the guarantees of fairness embodied in our Constitution.

## CONCLUSION

Because a third trial of Defendants would violate the Double Jeopardy and Due Process Clauses, the Court should dismiss the superseding indictment with prejudice.

Dated: May 9, 2022

Respectfully submitted,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach