## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JAYSON JEFFREY PENN,
MIKELL REEVE FRIES,
SCOTT JAMES BRADY,
ROGER BORN AUSTIN,
WILLIAM WADE LOVETTE,

     Defendants.

Criminal Case No. 20-cr-00152-PAB

---

## MOTION 10 – WILLIAM LOVETTE'S MOTION *IN LIMINE* TO EXCLUDE HIS EMPLOYMENT AGREEMENT

---

William Lovette, by and through undersigned counsel, respectfully moves to exclude newly identified government exhibit ("GX") 10045—Mr. Lovette's employment agreement. GX 10045 is merely a re-production of the same information included in GX 9168, which the Court previously ruled is inadmissible. For the same reasons the Court previously excluded GX 9168, GX 10045 is also inadmissible because it is irrelevant. To the extent it has any relevance, the relevance would be substantially outweighed by the unfair prejudice of publishing to the jury information regarding Mr. Lovette's financial circumstances. Accordingly, GX 10045 should be excluded pursuant to Federal Rules of Evidence 401 and 403.

## <u>ARGUMENT</u>

The government has twice attempted to introduce information about Mr. Lovette's compensation. First, the government filed a motion *in limine* before the first trial asking the Court

to admit evidence of Mr. Lovette's compensation.  (*See* ECF No. 543.)  The Court refused, ruling that it would "exclude any references to . . . Mr. Lovette's yearly compensation, wealth or lifestyle," and only allow "evidence of how [he] would benefit from higher chicken prices."  (*Id.* at 5.)

Ignoring this ruling, the government attempted to introduce GX 9168—Pilgrim's 2011 8K, which attaches Mr. Lovette's employment agreement dated January 14, 2011—in both the first and second trials.  (GX 9168 Ex. 10.1.)  GX 9168 sets forth the terms of Mr. Lovette's employment agreement with Pilgrim's Pride, including his base salary, the amount of Mr. Lovette's sign-on bonus, Mr. Lovette's guaranteed bonus for 2011, the number of restricted stock units Mr. Lovette was issued, and Pilgrim's agreement to purchase Mr. Lovette's current residence and the anticipated amount of that purchase.  (*See id.* at 3.)  At the first and second trials, Mr. Lovette objected to the admissibility of GX 9168, arguing that GX 9168 is not relevant because none of the information about Mr. Lovette's salary or bonuses in the 8K related to chicken sales, but instead were guaranteed payments.[1]  (*See* Nov. 3, 2021 Tr. 1262:18–1263:5; Feb. 24, 2022 Tr. 69:23–72:25; 201:21–204:23.)[2]  The government countered that GX 9168 was relevant because Mr. Lovette's receipt of restricted stock units showed an incentive for Mr. Lovette to price-fix because it would potentially increase his compensation.  (Feb. 24, 2022 Tr. 205:15-24.)  The Court rejected that argument.[3]  The Court found that GX 9168 was not relevant, noting that the "issue of . . . a

---

[1] At trial, Mr. Lovette objected to the admissibility of GX 9168 on additional grounds and incorporates all those objections herein.

[2] All citations to the 2021 trial transcript are to the certified transcript, and all citations to the 2022 transcript are to the unofficial, draft transcript for the convenience of the Court.  Mr. Lovette defers to the Court to the extent its recollection differs from what is included in the draft transcript.

[3] The Court did not rule on the admissibility of GX 9168 at the first trial because the government withdrew the exhibit.

one-time stock grant without any further information about [sic] Mr. Lovette's stock ownership from that point forward" is not relevant. (*Id.* at 205:25–206:4.) The Court also noted concerns that GX 9168 "crosses over into much more prejudice than probative value." (*Id.* at 206:5.)

Now, yet again, the government attempts to skirt the Court's prior rulings and offer the exact same evidence of Mr. Lovette's compensation, using the exact same employment agreement. But this time, instead of offering the employment agreement as an attachment to Pilgrim's 8K (GX 9168), the government intends to offer a standalone copy of Mr. Lovette's employment agreement (GX 10045). Despite the change in medium, the substance of the evidence remains identical and is still irrelevant and unfairly prejudicial as the Court previously held. (Feb. 24, 2022 Tr. 205:25– 206:4.) Because there are no changed circumstances warranting reconsideration of the Court's prior ruling, the Court should find that GX 10045 is inadmissible for the very reasons that it held GX 9168 was inadmissible.

As objected to by Mr. Lovette in the prior trials, Mr. Lovette's employment agreement does not have "any tendency" to make a fact of consequence in determining whether a conspiracy to rig bids and fix prices existed and whether any of the five Defendants knowingly joined the conspiracy "more or less probable." Fed. R. Evid. 401. The government argued in the second trial that Mr. Lovette's incentive compensation was relevant to his motive and incentive to join the conspiracy. However, as the Court previously noted, Mr. Lovette's employment agreement does not contain information that would go to the issue of an incentive to price-fix because it discusses a one-time stock grant. (*Id.* at 205:15–206:10.)

As this Court has repeatedly ruled, Mr. Lovette's compensation and wealth is not relevant to this action. (ECF No. 603.) Rather, this Court has ruled that the only potentially relevant

compensation information is how Mr. Lovette's compensation is impacted by higher chicken prices. (*Id.*) The employment agreement does not provide that information. The employment agreement notes the guaranteed bonus Mr. Lovette is entitled to be paid in 2011, which is not dependent on any performance objectives, in addition to a series of benefits that are "inducement[s] . . . to accept employment." (GX 10045, § 2 ¶¶ (b)-(e).) None of those inducements are evidence of how Mr. Lovette "would benefit from higher chicken prices" (ECF No. 603) because they are all guaranteed payments or incentives that are not dependent upon the company's performance.

To the extent that the government argues that any information in the employment agreement would speak to Mr. Lovette's 2011 bonus, this information is irrelevant. As this Court and the government are well aware, contracts are negotiated for the next calendar year. Any impact to Mr. Lovette's bonus in 2011 from higher chicken prices in 2011 would have been the result of contract negotiations in 2010, which is before the start of the alleged conspiracy. Finally, the employment agreement does not contain any relevant information regarding Mr. Lovette's future bonuses; the only information about Mr. Lovette's bonuses in subsequent years is that "it will be based on such objective and subjective performance factors as the Board shall determine after consultation with you." (GX 10045, § 2 ¶ (b).) Such a statement does not tend to suggest anything regarding how or if Mr. Lovette would benefit from higher chicken prices. (*Id.*) None of the information in GX 10045 tends to make it more probable that a price-fixing and bid-rigging conspiracy existed, or that Mr. Lovette knew of, or knowingly participated in, any such conspiracy.

Furthermore, any minimal probative value is substantially outweighed by the unfair prejudice and risk of confusing the issues and misleading the jury. As the Court has previously ruled, Mr. Lovette's compensation and information related to a one-time incentive compensation

are unfairly prejudicial.  (*See* Feb. 24, 2022 Tr. 206:5 (noting concerns that GX 9168 "crosses over into much more prejudice than probative value.").)  In addition to the prejudicial information about Mr. Lovette's compensation, there are also numerous terms of Mr. Lovette's employment agreement that have minimal, if any, probative value but are confusing and misleading.  For example, the employment agreement outlines conditions in which Mr. Lovette could be terminated, including a criminal conviction or failure to perform his duties; this may mislead the jury to speculate that Mr. Lovette was terminated from Pilgrim's because of this action. Additionally, the jury may be confused regarding how to square the employment agreement's definition of confidential information, which has no connection to the issues in this action, with the Court's instructions that sharing information is not illegal.

Finally, GX 10045 is cumulative. The parties have already stipulated that Mr. Lovette became the CEO of Pilgrim's Pride in January 2011, making Mr. Lovette's employment agreement unnecessary to establish that fact.  (*See* GX 9748.)  Additionally, as the Court noted when assessing the probative value of GX 9168 (*see* Feb. 24, 2022 Tr. 206:11-17), GX 9166 already outlines the formula that Pilgrim's board of directors used to calculate Mr. Lovette's bonus based on the EBITA (net earnings) of the company.  It is unnecessary for the government to introduce Mr. Lovette's employment agreement to prove that same fact.  (*Id.* at 206:11-17.)

In sum, nothing about GX 10045 tends to make it more probable that a price-fixing and bid-rigging conspiracy existed, or that Mr. Lovette knew of, or knowingly participated in, the charged conspiracy.  As this Court already held, the information in Mr. Lovette's employment agreement is highly prejudicial and outweighs the minimum probative value, if any, given that Mr. Lovette's incentive compensation was tied to the EBITA of Pilgrim's changes each year.

Therefore, the employment agreement does not provide any relevant facts related to his purported motive during the alleged conspiracy.

## **CONCLUSION**

For all the foregoing reasons, the Court should preclude the government from admitting GX 10045.

Respectfully submitted this 9th day of May 2022,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ John A. Fagg, Jr.*