IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN, and
**5.    WILLIAM WADE LOVETTE**

      Defendants.

**MOTION 11 – WILLIAM LOVETTE'S MOTION *IN LIMINE* TO EXCLUDE GX 803**

William Lovette, by and through undersigned counsel, respectfully moves to exclude government exhibit ("GX") 803. In two trials, the government has failed to prove, or even offer, any connection between the discussion of Sysco credit terms in GX 803 and the charged conspiracy. This failure is unsurprising given the testimony of "conspiracy insider" Robert Bryant during the retrial. Mr. Bryant foreclosed any reliance by the government on GX 803 when he made clear throughout his testimony that the alleged conspiracy only took place within the quick service restaurant ("QSR") business segment, which does not include Sysco. Tellingly, the government made no effort to cure Mr. Bryant's fatal testimony. Further, the testimony in the retrial of Pilgrim's employee Brenda Ray made clear that the Sysco credit term issue had nothing to do with bidding for contracts or fixing prices and that Mr. Lovette never had anything to do with

1

negotiations with Sysco. The evidence from the retrial, not available to the Court when it ruled the exhibit admissible, is sufficient for the Court to reconsider and alter its ruling.

The government offered GX 803 with no sponsoring witness or additional documentary evidence to provide any context, and it seems the government intends to do the same again for the third trial. Now that the evidence from two trials, including the government's own evidence, confirms that Sysco is unrelated to the charged conspiracy and that there was never any agreement that violated any law, the Court should exclude GX 803 as irrelevant and unfairly prejudicial pursuant to Federal Rules of Evidence 402 and 403.

In addition to GX 803 being entirely irrelevant to the charged conspiracy, if admitted, GX 803 will unfairly prejudice Defendants, confuse the issues, and mislead the jury. GX 803 invites the jury to wrongly infer that Mr. Lovette entered into an illegal agreement with respect to Sysco, and thus, was more likely to participate in such an agreement regarding QSRs. The jury also could speculate, wrongly, based on GX 803 that Mr. Lovette may have had communications with competitors regarding QSR customers, which the government has not shown and cannot show. It is unfairly prejudicial to allow the jury to assess Mr. Lovette's liability based on conduct that is separate and unrelated to the scope of the charged conspiracy.

This communication cannot, as a matter of law, make Mr. Lovette's alleged knowing participation in the charged conspiracy more likely, and the risk of jury confusion outweighs any alleged and highly tangential relevance. Should this exhibit be admitted again, it shifts the burden to Mr. Lovette to prove at trial what is clear from the evidence that was previously admitted—that GX 803 does not indicate an illegal agreement and that it has no relevance to QSRs.

## BACKGROUND

In GX 803, Joseph Grendys, the CEO of Koch Foods, and Mr. Lovette have the following exchange in May 2016:

> Mr. Grendys: "Have you herd [sic] that Sysco is going to 65 day terms with their supplies?"
> Mr. Lovette: "Yes, we told them NO!"
> Mr. Grendys: "Ok. Then I am 100 percent on board. If that changes can you please tell me ?"
> Mr. Lovette: "Will do, they must be following Wal Mart. Told them same."
> Mr. Grendys: "Somebody must have written this as an MBA class project. We are getting there [sic] request from various customers including people like Nestle"

During the first trial, Sysco employee Melissa Hoyt explained that Sysco never offered Pilgrim's or Koch Foods the 65-day terms referenced in GX 803. (Nov. 17, 2021 Off. Tr. 3418:1–17; Nov. 22, 2021 Off. Tr. 124:14–125:8, 128:22–25.) Ms. Hoyt also confirmed that the "terms" in GX 803 were distinct from prices of chicken and not tied to any specific RFP or bid. (Nov. 17, 2021 Off. Tr. 3381: 2–10, 3381:23–3382:1, 3382:12–14, 3410: 1–9; Nov. 22, 2021 Off. Tr. 110:9–14.) Pilgrim's and Koch Foods went on to negotiate different deal terms under different timelines with Sysco. Pilgrim's agreed to a 14-day term with a unique cash discount in July 2016, while Koch Foods was not offered a cash discount and did not agree to new payment terms until four years later, in 2020. (Nov. 17, 2021 Off. Tr. 3391:3–13, 3399:12–13; Nov. 22, 2021 Off. Tr. 117:5–20, 125:24– 126:1.)

Before the retrial, Mr. Lovette sought to exclude this document, arguing that credit terms were irrelevant to the charged conspiracy and that this evidence would unfairly prejudice Mr. Lovette and confuse the jury. (*See* ECF No. 990.) The Court denied the motion on the reasoning

3

that GX 803 "shows executives at competing chicken suppliers communicated regarding their approaches to a customer's payment terms." (ECF No. 1069 at 7.)

During the retrial, Ms. Hoyt was not called as a witness and the government presented no additional evidence specific to Sysco besides GX 803. However, Mr. Bryant—whom the government presented as a "conspiracy insider"—repeatedly testified that the charged conspiracy had nothing to do with Sysco. According to Mr. Bryant, the alleged conspiracy related only to the QSR business segment, which is different than the broadline business segment that serves Sysco. (*See* Mar. 8, 2022 Tr. 150:5-7; 154:3-9.[1]) Mr. Bryant testified that the QSR group was "different than the other segments":

> Q. Now, earlier you testified that for Wal-Mart business you didn't want your bid prices shared. So how do you reconcile that with what you are saying now knowing that they were shared in QSR channel?
> A. **The QSR channel** was just – was ***different than the other segments,*** so it was this mutual trust or collaboration that happened within that – that – the group of competitors.

(*Id*. 170:4-12; *see also* Mar. 9, 2022 Tr. 75:4-17 (explaining that "[i]n the QSR group we cooperated with our competitors" in contrast to the "hard-nosed competition" in other groups).)

The government introduced no other evidence related to Sysco or its credit terms during the retrial. To provide the jury with the necessary context surrounding GX 803, Mr. Lovette offered the testimony of Ms. Ray, who testified that Mr. Lovette was unequivocally *not* involved in the negotiations with Sysco over its credit terms and that he never communicated his email with Mr. Grendys to anyone involved in those negotiations. (Mar. 21, 2022 Tr. 151:25-152:10, 193:20-

---

[1] Mr. Lovette cites the unofficial, draft transcripts for the convenience of the Court. Mr. Lovette defers to the Court to the extent its recollection differs from what is included in the draft transcript.

4

23.) At Pilgrim's, Ms. Ray and the CFO, Fabio Sandri, handled the decisions regarding Sysco's credit terms, not Mr. Lovette. (*Id.* 132:23-133:9, 136:14-22, 153:7-11 (Ray).) Ms. Ray testified that she had no knowledge that Pilgrim's communicated with or received information from another supplier about Sysco's request. She also testified that Pilgrim's did not coordinate in any way with another supplier during the negotiations. (*Id.* 152:11-153:6.)

Based on the current exhibit and witness lists, it appears that the government intends to take the same approach for the third trial. The government will likely introduce GX 803 without a sponsoring witness (ECF No. 1269) and will not call any witnesses or introduce any other documents relating to Sysco or its credit terms (ECF Nos. 1268 and 1271).

## ARGUMENT

The fact that the government's "conspiracy insider" disavowed any connection between Sysco and the charged conspiracy and that a Pilgrim's employee confirmed Mr. Lovette had nothing to do with the Sysco negotiations constitutes "a change in circumstance[] warranting reconsideration" of the Court's prior Order on GX 803. *See* ECF No. 1263 at 2; *see also Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) ("[T]he district court may change its ruling at any time for whatever reason it deems appropriate"). Mr. Lovette's communication with Mr. Grendys about a customer in the broadline business segment—even if construed to relate to payment terms—is irrelevant to proving Mr. Lovette's knowing participation in an alleged price-fixing and bid-rigging conspiracy *within the QSR business segment*. Moreover, any supposed relevance of GX 803 is substantially outweighed by the unfair prejudice Mr. Lovette faces if the jury can consider evidence outside the scope of the charged conspiracy in determining his guilt for any alleged participation in the charged conspiracy. *See also* Fed. R. Evid. 404(b). Allowing the government

5

to offer this exhibit without any context will also compel Mr. Lovette to present evidence to show the jury what the government already knows: Sysco and GX 803 have no connection to the charged conspiracy. In addition to shifting the burden of proof to Mr. Lovette to show what has been proven already by the evidence in the first and second trials, this additional evidence will cause the jury to conflate two distinct business segments and confuse the issues.

### I.     GX 803 HAS NO RELEVANCE TO THE CHARGED CONSPIRACY.

To convict Mr. Lovette, the government must prove that he intended to act with the other coconspirators "within the scope of the conspiracy charged." *United States v. Caldwell*, 589 F.3d 1323, 1330 (10th Cir. 2009). Following the retrial, three facts cannot be disputed. *First*, the alleged conspiracy is confined within the QSR business segment. Mr. Bryant, a former Pilgrim's employee, acknowledged that the alleged "mutual trust or collaboration" with competitors in the QSR business segment was "different than the other segments." (Mar. 8, 2022 Tr. 170:4-12.) As Mr. Bryant claimed, "[i]n the QSR group we cooperated with our competitors," unlike the "hard-nosed competition" in other business segments. (Mar. 9, 2022 Tr. 75:4-17.) *Second*, Sysco is not a customer within the QSR business segment. Pilgrim's had "three primary channels inside fresh food service": QSR, retail delis, and broadline. (Mar. 8, 2022 Tr. 149:25-150:8.) Sysco was a customer within the broadline business segment. (*Id.* 150:5-6.) *Third*, Mr. Lovette played no role in the negotiations with Sysco over credit terms and all relevant evidence established that he did not relay his discussion with Mr. Grendys to anyone. (Mar. 21, 2022 Tr. 151:25-152:10, 193:20-23.) The record is void of any evidence showing otherwise.

These undisputed facts establish that GX 803 is outside the scope of the charged conspiracy. No information in GX 803 has "any tendency" to make a fact of consequence in

determining whether a conspiracy to rig bids and fix prices existed and whether Mr. Lovette knowingly joined the conspiracy "more or less probable." Fed. R. Evid. 401. Therefore, as a matter of law, GX 803 cannot prove that Mr. Lovette intended "to advance the objectives of the conspiracy" that the government seeks to prove within the QSR business segment. (ECF No. 1232 at Instruction No. 23.) GX 803 is irrelevant and should be excluded. *See United States v. DeLeon*, 418 F. Supp. 3d 682, 826 (D.N.M. 2019) (excluding statements admissible in Trial 1 for a separate conspiracy "because they are irrelevant to the Trial 2 conspiracies and Defendants").

## II.   GX 803 IS UNFAIRLY PREJUDICIAL AND WILL CONFUSE THE ISSUES AND MISLEAD THE JURY.

Alternatively, the Court should exclude GX 803 because any relevance is substantially outweighed by unfair prejudice to Mr. Lovette and the other Defendants, and the risk of misleading the jury and confusing the issues. *See* Fed. R. Evid. 403.

The jury must only decide whether Mr. Lovette knowingly participated in a conspiracy to rig bids and fix prices within the QSR business segment. (*See* ECF No. 1232 at Instruction Nos. 18, 20.) If the government introduces GX 803, it could "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged"—conduct that took place in a different business segment outside the scope of the charged conspiracy. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). GX 803 invites the jury to infer, wrongly, that Mr. Lovette entered into an illegal agreement regarding Sysco, which he did not, and that he thus was more likely to participate in a similar agreement regarding QSRs. The jury also may speculate that Mr. Lovette had similar conversations with competitors related to QSR customers, which, after two trials, the government has failed to show. The specter that the jury may convict Mr. Lovette based on a

7

single communication with a competitor unrelated to the charged conspiracy "creates a prejudicial effect that outweighs ordinary relevance." *Id.* at 181.

Moreover, the government justified a third trial of Mr. Lovette and the other Defendants because it claimed the case would be "streamlined." (Apr. 14, 2022 Off. Hrg. Tr. 10:25-11:1.) Introducing GX 803 will have the opposite effect. In addition to presenting unnecessary evidence irrelevant to the alleged conspiracy, the admission of GX 803 will compel Mr. Lovette to rebut any inference the jury may unfairly draw from GX 803 by offering testimony to establish that there is no connection between the Sysco negotiations and the charged conspiracy, and that Mr. Lovette had no role in those negotiations. *See United States v. Todd*, 108 F.3d 1329, 1333-34 (11th Cir. 1997) (reversing embezzlement conviction because trial court precluded defendant from offering evidence "to combat the government's criminal intent argument that [the defendant] was motivated by greed and selfishness").

This additional evidence will not only lengthen the trial, but it will also increase the risk that the jury will become confused and wrongly conflate conduct and evidence related to an entirely different business segment outside the scope of the conspiracy. *Cf. U.S. Football v. Nat'l Football League*, 634 F. Supp. 1155, 1181 (S.D.N.Y. 1986) (recognizing that consideration of "witnesses and documents largely unrelated to this action as a whole" will "unnecessarily confuse the issues in this case and mislead the jury").

The issues that will arise if GX 803 is admitted a third time justify its exclusion under Rule 403, particularly because Mr. Bryant's, Ms. Hoyt's, and Ms. Ray's testimony vitiate any claim from the government that this document is relevant.

## CONCLUSION

Mr. Lovette respectfully requests that the Court exclude GX 803.

Dated:  May 9, 2022                                             Respectfully submitted,

                                                  *s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
James P. McLoughlin, Jr.
Frank E. Schall
Kaitlin M. Price
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

9

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.


  *s/ John A. Fagg, Jr.*