IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAYSON JEFFREY PENN,
MIKELL REEVE FRIES,
SCOTT JAMES BRADY,
ROGER BORN AUSTIN,
WILLIAM WADE LOVETTE,

    Defendants.

Criminal Case No. 20-cr-00152-PAB

---

**MOTIONS 7 AND 8 – DEFENDANTS' JOINT MOTION TO EXCLUDE
NEW EXHIBITS THAT CONTAIN HEARSAY AND ARE
IRRELEVANT AND UNFAIRLY PREJUDICIAL**

---

Defendants respectfully submit this motion to exclude the admission of new government exhibits ("GX") 10075, 10103, 10106, 10108-10100, 10067, 10072, which are similar, unattributed PowerPoint decks, and GX 10058-10064, which comprise a text message exchange between Jayson Penn and Pilgrim's employee Tim Stiller.  The exhibits are inadmissible pursuant to Federal Rules of Evidence 401, 403, 404, 802, and 901.

**A.    The Various Iterations of a PowerPoint Deck Are Inadmissible Under Hearsay, Relevancy, Unfair Prejudice, and Foundation Grounds.**

    1.    <u>The PowerPoint decks do not meet the relevancy requirement of Rule 401.</u>

The government lists a PowerPoint deck dated June 18, 2019 and titled "JBS/PPC Management Trainees" (GX 10075), five undated decks similar to GX 10075 titled "2019 Kick-

Off" (GXs 10103, 10106, 10108-10100), and two other iterations without a date or title. (GXs 10067, 10072.)[1] One deck appears to contain notes underneath the slides. (GX 10106.)

These exhibits have no relevance to whether any of the Defendants violated the Sherman Act. The decks cover a variety of topics typical of internal corporate presentations, such as: the celebration of employee birthdays, work anniversaries, and promotions (*see* GXs 10067 at 40; 10072 at 39; 10103 at 53-73; 10106 at 8, 37; 10108 at 75; 10109 at 40; 10100 at 6, 33; 10075 at 16); an agenda for a day of strategy sessions and teambuilding activities (*see* GX 10106 at 37); assistance with hurricane relief (*see* GXs 10067 at 42-45; 10072 at 41-44; 10103 at 46-49; 10106 at 41-44; 10108 at 46-49; 10109 at 42-45; 10100 at 37-38); historical information about Pilgrim's bankruptcy and financial turnaround (*see* GX 10106 at 38); strategic vision and values statements (*see* GXs 10067 at 6, 19, 22; 10072 at 6, 19, 28; 10103 at 11, 22, 24; 10106 at 24, 26; 10108 at 24, 26; 10109 at 6, 20, 22; 10100 at 21, 23); community and charitable involvement (*see* GXs 10067 at 47-66; 10072 at 46-46; 10103 at 6, 43; 10106 at 56-76; 10108 at 51-72; 10109 at 47-62); and inspirational quotes ("Teamwork makes the dream work") (GX 10106 at 81). There is no mention of contracts, pricing, or bids that are the subject of the superseding indictment.

The PowerPoint decks do not tend to make any "fact more or less probable" that is "of consequence" in this action. Fed. R. Evid. 401(a)-(b). To the contrary, the decks are replete with slides encouraging competition and being "the best" (*see, e.g.*, GX 10106 at 39); as well as slides comparing Pilgrim's relative performance vs. competitors (*see, e.g*., GX 10106 at 41, 44, 53). The slides tout a strategy for beating the competition by focusing on "vision," "strategy," "purpose,"

---

[1] Defendants have located these eight versions of this PowerPoint deck on the government's exhibit list. To the extent Defendants identify other similar exhibits, Defendants assert the objections in this motion *in limine* to such additional exhibits.

and "balance," including "creating the opportunity of a better future" for team members and motivating employees through a "shared purpose and passion" (*see*, *e.g.*, GX 10106 at 48-49, 55). A slide deck for "trainees" is self-evidently not relevant, especially for those dated after the charged conspiracy and, as to Mr. Lovette and Mr. Austin, after their retirement dates. (*See* GX 9748.) The relevance is even more attenuated when considering the lack of evidence that these decks were ever used, who created them, and the purpose for their creation.

    2.    <u>The PowerPoint decks contain inadmissible hearsay.</u>

The PowerPoint decks are replete with inadmissible hearsay. The statements in these slides belong to whoever the various declarants are (*i.e.*, the creators of a slide or slides), not a records custodian or some tangential fact witness. Fed. R. Evid. 801(a)-(c); *see Farrar & Farrar Farms v. Miller-St.Nazianz, Inc.*, 477 F. App'x 981, 986 (4th Cir. 2012) (PowerPoint deck is inadmissible hearsay when the author was not identified or deposed). The statements of Pilgrim's corporate values, history, performance, and strategy are garden-variety hearsay.[2]

The Rule 803(6) hearsay exception does not apply because, among other reasons, the PowerPoint decks (i) were not prepared and kept in the course of a regularly conducted activity of Pilgrim's as the Court has interpreted the rule and (ii) lack the necessary trustworthiness. *See* Fed. R. Evid. 803(6). As this Court has explained, the "essential component" of the business records exception "is that each actor in the chain of information is under a business duty or compulsion to provide accurate information." (ECF No. 673 (quoting *United States v. Ary*, 518 F.3d 775, 787 (10th Cir. 2008)).) The "exception fails, however, if any of the participants is outside the pattern

---

[2] Exhibit 10106 is unique in that it contains what appear to be speaker notes on many of the pages. All of these notes are inadmissible hearsay statements by an unknown declarant.

3

of regularity of activity." (*Id.* (quoting *United States v. Snyder*, 787 F.2d 1429, 1433-34 (10th Cir. 1986)).) The government has not identified (and, we believe, cannot identify) ***any*** of the "actors in the chain," let alone the decks' creators.

      3.      <u>The PowerPoint decks as a whole, and especially the slides with "Godfather" references are unfairly prejudicial under Rule 403.</u>

The PowerPoint decks are also unfairly prejudicial to Defendants. In particular, there are several slides comparing Mr. Lovette to Marlin Brando in his well-known role as the Godfather. For example, the seventh slide of GX 10075 (and in similar slides in the other decks) indicates that Pilgrim's had a "record year performance" as of December 2015 in terms of sales, EBITDA (net earnings), and dividends. (GX 10075 at 7.) An image of Mr. Lovette appears on the left-hand side, and an image of Marlon Brando in his role as the Godfather appears on the right-hand side. (*Id.*; *see also* GXs 10067 at 12; 10072 at 11; 10103 at 14; 10106 at 16; 10108 at 16; 10109 at 12; 10100 at 13.) In the other iterations of these decks, there is a second reference to Mr. Lovette as "Godfather." (GXs 10067 at 10; 10072 at 9; 10103 at 12; 10106 at 14; 1018 at 14; 10109 at 10; 10100 at 11.) Mr. Lovette's face is superimposed on a well-known image of Mr. Brando's body as the Godfather, and the slide's text suggests Mr. Lovette will improve the company's performance by "mak[ing] them an offer they can't refuse"—one of Mr. Brando's most famous lines from "The Godfather" films. Mr. Lovette retired from Pilgrim's approximately three months before the date shown on this PowerPoint deck. (*See* GX 9748).

The government's opening statement at the second trial, referring to "Lovette's crew," is proof the government will use any device, however misleading. (*See* Feb. 23, 2022 Tr. 135:4-6.)[3]

---

[3] Defendants cite the unofficial, draft transcripts for the convenience of the Court. Defendants defer to the Court to the extent its recollection differs from what is included in the draft transcript.

4

With no relevance tying the decks to the underlying charged conspiracy, it is clear the purpose for introducing these exhibits would be to play up an infamous fictional mafia character and to implant his image and reputation in the jurors' minds. Federal courts have excluded similar depictions of fictional characters because they lacked relevance. In *Dudley v. Bexar Cty.*, the court precluded the admission of Facebook photos in which a security officer "portrays himself as 'the Punisher,' a vigilante comic book character[.]" No. 5:12-CV-357-DAE, 2014 WL 6979542, at *4 (W.D. Tex. Dec. 9, 2014). The plaintiff, who brought an excessive force claim against the security officer, apparently hoped to use the photos to associate the security officer with the infamous and violent character. *Id*. The security officer in *Dudley* was accused of a violent offense (excessive force), but the court still found the effort to compare him to a violent vigilante figure to have no relevance. *Id*. The PowerPoint slides are even less relevant than in *Dudley*. Unlike in *Dudley*, Mr. Lovette did not "portray[] himself" as the Godfather. Neither Mr. Lovette nor Mr. Austin were even employed by Pilgrim's when the decks appear to have been created, and the only deck that bears a date post-dates the charged conspiracy. (*See* GX 9748; *see also* GX 10075 (the only presentation bearing a date, which is June 18, 2019).)

Moreover, any comparison between Pilgrim's and the mafia or association of the Defendants with the mafia is profoundly prejudicial. Fed. R. Evid. 403. The purpose for using these slides would be to provoke an emotional response by associating (i) Mr. Lovette with a fictional mafia character who orchestrated violent crime and (ii) other Defendants with the mafia characters that engaged in such misconduct. "[T]he potential for prejudice is great" when the government seeks to use evidence that "may provoke an emotional response in the jury or cause the jury to convict based on its belief that Defendant is a bad person or has a propensity for criminal

5

activity, rather than the facts of the case." *United States v. Gutierrez*, No. CR 09-00760 RB, 2010 WL 11482534 at *2 (D.N.M. Apr. 12, 2010) (excluding evidence of an earlier drug offense); *see also United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996) (remanding in part for a further evidentiary hearing). The risk of unfair prejudice is plain in this instance, given the notorious and violent character at issue.

The Godfather slides are the most egregious example, but the decks include other slides that are unfairly prejudicial and confusing. For example, one slide tracks Pilgrim's performance on "severe incidents" and "animal welfare" – issues that are entirely irrelevant and could provoke emotional responses from jurors. (GX 10075 at 57.) Other slides show organizational charts that appear to post-date the conspiracy period. (GX 10075 at 69-70.) These undated, irrelevant charts are likely to confuse jurors and unfairly prejudice Mr. Penn, who is shown alone at the top. Other slides show inspirational quotes that can be misconstrued and manipulated. For instance, one slides states "Look around. Are your peers with you?" "New followers emulate the follower. Teaching followers to lead is key." (GX 10103 at 99.) The government's theory is that Pilgrim's was the price leader in a bid-rigging and price-fixing conspiracy, and these internal Pilgrim's documents could be taken out of context to try to support that theory.

These decks differ in a vital way from the government's evidence of nicknames (*e.g.*, "Chicken Mafia" and "Goldkist Mafia") that some members of the chicken industry purportedly used when referring to themselves. As the Court held with respect to that issue, the nickname evidence had "some probative value, at least in acknowledging a relationship between the people who refer to themselves in that manner." (ECF No. 604 at 3.) For this deck, in contrast, there is no

evidence or even a suggestion that Mr. Lovette ever referred to himself as "the Godfather"[4] and no evidence any employee reasonably believed the organization was a criminal enterprise.  In fact, these decks appear to have been created months after the end of the charged conspiracy and after Mr. Lovette and Mr. Austin retired from Pilgrim's. (*See* GX 9748.)  Therefore, any probative value with respect to the PowerPoint decks is absent.

        Compounding the unfairness, the government has provided no indication (from its exhibit list or elsewhere) that it plans to call the creators of these eight PowerPoint decks to testify.  The Defendants will have no opportunity to cross-examine the creators' "motives and bias" in doing so.  *See United States v. Sarracino*, 340 F.3d 1148, 1167 (10th Cir. 2003) (concerning the Confrontation Clause)   This is a problem with any evidence sought to be introduced without its original creator, which has been a government strategy throughout the last two trials, but it is a greater risk here when the exhibits are inherently and unfairly prejudicial.

        4.    <u>The government cannot lay the proper foundation for these PowerPoint decks.</u>

        The government has a further obstacle in laying a foundation for these various PowerPoint exhibits.  The "condition precedent to admissibility" for each PowerPoint deck is that the government has introduced "evidence sufficient to support a finding" that each one is what the government claims it is. Fed. R. Evid. 901(a).  As already established, the government has not identified the creators, let alone anyone in the chain of custody of these decks.  Some records custodian or tangential fact witness does not suffice to establish their authenticity.  Furthermore, nothing suggests that any of these exhibits were ever used, and if so, when they were used, for

---

[4] For that matter, there no suggestion or evidence that any alleged co-conspirator referred to Mr. Lovette as "the Godfather" or likened him to Mr. Brando.

what purpose, and which business unit used them. These are all foundational requirements essential to admissibility, and all are missing.

**B.      The Text Messages Between Tim Stiller and Jayson Penn Regarding an Inventory Issue Are Inadmissible.**

The government includes seven text messages between Tim Stiller and Jayson Penn from January 21, 2017 on its exhibit list. (GXs 10058-10064.) The exchange concerns an "inventory situation" at Pilgrim's and, it appears, discussions about the problem and evaluation of possible solutions. (*See* GXs 10058-10059.) These text messages were not on the government's initial *James* log or its supplemental submissions and should be excluded for that reason alone. Moreover, the text message exchange is inadmissible under Federal Rules of Evidence 401, 403, 404(b), and 802.

1.      <u>The text messages are irrelevant.</u>

The text messages between Messrs. Stiller and Penn do not "tend to prove the matter sought to be proved"—whether Defendants conspired to "fix prices and rig bids for broiler chicken products." Fed. R. Evid. 401 advisory committee's note; (ECF No. 1232 at Instruction No. 17.) There is no discussion of Pilgrim's bids, pricing, negotiations, or customers in any of the seven text messages. Nor is there any language in the text messages suggesting that Mr. Penn (or Mr. Stiller) "knowingly—that is, voluntarily and intentionally—became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it". (ECF No. 1232 at Instruction No. 17.)  Instead, the documents on their face reveal that Messrs. Stiller and Penn were discussing an "inventory situation" at Pilgrim's and its impact on Pilgrim's profits and

losses. (*See* GXs 10058, 10061.) Therefore, the text messages have no probative value and should be excluded under Rule 401.[5]

## 2. The text messages create unfair prejudice.

During the text message exchange, Mr. Penn references "pull[ing] an Enron" and that another Pilgrim's employee, Mark Glover, "said the word 'jail' and spooked everyone." (GX 10059.) In response, Mr. Stiller acknowledges that he "do[esn't] like the word jail or [E]nron but needed everyone to understand." (GX 10060.) Mr. Penn suggests that "[t]hey got it" and that "[w]e can change AS but not P&L. No one thought big deal until I said $250k per week." (GX 10061.)

The references to "Enron" and "jail" are highly prejudicial. Enron has become a virtual buzzword in the public mind for corporate fraud. Admitting these text messages would create a substantial risk that the jury will associate Mr. Penn and the other Pilgrim's Defendants, indeed, all of the Defendants, with the infamous Enron accounting scandal and conclude that Defendants are more likely to be guilty of the charged conspiracy. This is exactly the type of unfair prejudice that Rule 403 was designed to prevent. *See United States v. Aranda-Daiz*, 31 F. Supp. 3d 1285, 1290 (D.N.M. 2014) (excluding defendant's statements related to his gang membership under Rule 403 "because the jury might use gang membership to conclude [the defendant] intended to distribute drugs because of his gang association -- rather than consider the United States' evidence against him").

---

[5] Much like GX 9057 (the December 2011 email chain between Charles von der Heyde, Mr. Lovette, and Mr. Penn regarding the United States Poultry and Egg Export Council) and GX 10584 (the March 2015 email exchange between Chuck Snipes and Mr. Lovette regarding a trip to Pebble Beach)—which the Court excluded—the text messages are irrelevant to the conduct charged in the superseding indictment and should be excluded for that reason. (*See* ECF No. 850; Nov. 23, 2021 Tr. at 3935:7-3937:4; Mar. 15, 2022 Tr. 18:7-21:15.)

Also, the text messages include a message from Mr. Penn to Mr. Stiller stating, "Have a nice weekend. Keep Kel out of trouble." (GX 10063.) Mr. Stiller responds "I will do my best." (GX 10064.) Mr. Penn's statement is a light-hearted reference to Mr. Stiller's spouse, not a directive to be taken literally. The fact that the government included this portion of the text message exchange on its exhibit list is troubling. A jury could easily – but wrongly – associate the comment "Keep Kel out of trouble" with the earlier exchange referencing "Enron" and "jail." These two messages should be excluded along with the rest of the thread because they are irrelevant, prejudicial, and misleading.

The admission of these prejudicial exhibits would require Defendants to introduce evidence and put on witnesses to prove that the text messages were benign and had nothing to do with the charged conspiracy. That would create a sideshow that distracts the jury and wastes the Court's time.

Further, even if one were to assume the text messages referred to some offense other than the one charged, Rule 404(b) would bar the admission of the exchange. "To admit 404(b) evidence, a district court must find that the evidence is being offered for a proper purpose, that the evidence is relevant to that purpose, and that—under Rule 403—the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice." *United States v. Williston*, 862 F.3d 1023, 1035 (10th Cir. 2017) (citing *United States v. Huddleston*, 485 U.S. 681, 691 (1988)). "When bad act evidence is both relevant and admissible for a proper purpose, 'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, *no link of which may be the inference that the defendant has the propensity to commit the bad act.*" *United States v. Chapman*, No. CR-14-1065, 2015 U.S. Dist. LEXIS 95211, at *18 (D.N.M. July 15, 2015) (quoting *United*

10

*States v. Morley*, 199 F.3d 129, 133 (3d Cir. 1999)) (emphasis added).

Evidence that Messrs. Stiller and Penn referenced "Enron" and "jail" in their text messages "is relevant only if it is used for propensity purposes" to suggest that Mr. Penn was more likely to participate in the alleged conspiracy because he was also involved in some unrelated, imaginary inventory accounting scandal akin to Enron—an impermissible purpose. *Cf.*, *Chapman*, 2015 U.S. Dist. LEXIS 95211, at *45-46 (excluding evidence that the defendant previously expressed anger toward the victim and others in a spousal abuse case because "the jury would need to make an impermissible propensity inference" and "there is a high risk that the jury will use the evidence to convict [the defendant] on the basis that he is a 'bad person'"); *see also Robertson*, 2021 U.S. Dist. LEXIS 82824, at *10-11 (rejecting the government's Rule 404(b) argument regarding defendant's recorded telephone call from jail "because the government is essentially admitting that it wants to introduce the call as evidence that [the defendant] has a propensity for violence in general and a propensity for violence against 'snitches' in particular"). The government lacks a proper purpose for introducing GXs 10058-10064 and asks the jury to make an impermissible propensity inference based on pure speculation with respect to Mr. Penn's alleged involvement in unspecified and unrelated criminal activity at Pilgrim's.

3. <u>The text messages are inadmissible hearsay.</u>

This text message exchange is inadmissible hearsay, and no exception applies. There is no evidence that these text messages were made in furtherance of the charged conspiracy or any conspiracy, so Rule 801(d)(2)(E) is not applicable. Should the court find that Mr. Penn's text messages are admissible under Rule 801(d)(2)(A), and the government is able to overcome the significant relevance and prejudice problems discussed above, Mr. Stiller's text messages are not

11

admissible. Standing alone but read together, the text message exchange between Messrs. Penn and Stiller are unclear, however, if Mr. Stiller's in-tandem text messages are excluded as hearsay, Mr. Penn's text messages would be indecipherable. Given the lack of relevance and the unfair prejudice likely to result from the potential admission from the standalone text messages of Mr. Penn, the complete exchange should be excluded.

## CONCLUSION

Defendants respectfully request that this Court preclude the admission of (A) the PowerPoint decks (GX 10103, 10106, 10108-10100, 10067, 10072, 10075) and (B) the text messages between Mr. Stiller and Mr. Penn regarding Pilgrim's inventory issue (GXs 10058-10064).

Respectfully submitted this 9th day of May 2022,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

<u>s/John A. Fagg, Jr.</u>