1        IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLORADO
2
  Criminal Action No. 20-CR-00152-PAB
3  In Re: Penn II
  UNITED STATES OF AMERICA,
4
        Plaintiff,
5
  vs.
6
  JAYSON JEFFREY PENN,
7  MIKELL REEVE FRIES,
  SCOTT JAMES BRADY,
8  ROGER BORN AUSTIN,
  TIMOTHY R. MULRENIN,
9  WILLIAM VINCENT KANTOLA,
  JIMMIE LEE LITTLE,
10  WILLIAM WADE LOVETTE,
  GARY BRIAN ROBERTS,
11  RICKIE PATTERSON BLAKE,

12       Defendants

13  _____

                REPORTER'S TRANSCRIPT
14               Trial to Jury, Vol. 1

15  _____

16         Proceedings before the HONORABLE PHILIP A. BRIMMER,

17  Chief Judge, United States District Court for the District of

18  Colorado, commencing at 8:04 a.m., on the 22nd day of February,

19  2022, in Courtroom A201, United States Courthouse, Denver,

20  Colorado.

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
     Produced via Computer by Janet M. Coppock, 901 19th Street,
25      Room A257, Denver, Colorado, 80294, (303) 335-2106

```
1                            APPEARANCES
2            Michael Koenig, Carolyn Sweeney, Heather Call and Paul
3    Torzilli,, U.S. Department of Justice, 450 Fifth Street N.W.,
4    Washington, DC 20530, appearing for Plaintiff.
5            Anna Tryon Pletcher and Michael Tubach of
6    O'Melveny & Myers, LLP, Two Embarcadero Center, 28th Floor,
7    San Francisco, CA 94111-3823;
8            Brian Quinn of O'Melveny & Myers, LLP, 1625 I Street
9    N.W., Washington, DC 20006, appearing for Defendant Penn.
10           David Beller, Richard Kornfeld and Kelly Page of
11   Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,
12   CO 80202, appearing for Defendant Fries.
13           Bryan B. Lavine of Troutman Pepper Hamilton Sanders,
14   LLP, 600 Peachtree Street NE,  Suite 3000, Atlanta, GA 30308;
15            Laura Kuykendall and Megan Rahman of Troutman Pepper
16   Hamilton Sanders, LLP,  1001 Haxall Point, Richmond VA 23219,
17   appearing for Defendant Brady.
18           Michael Felberg of Reichman, Jorgensen, Lehman,
19   Feldberg, LLP, 750 Third Avenue, 24th Floor, New York, NY
20   10017;
21
22
23
24
25
```

APPEARANCES (Continued)

1

2          Laura F. Carwile of Reichman, Jorgensen, Lehman,

3    Feldberg, LLP, 100 Marine Parkway, Suite 300, Redwood Shores,

4    CA 94065; appearing for Defendant Austin.

5          Elizabeth B. Prewitt of Latham & Watkins, LLP,

6    555 11th Street, N.W., Suite 1000, Washington, DC 20004;

7          Marci Gilligan LaBranche of Stimson, Stancil,

8    LaBranche, Hubbard, LLC, 1652 North Downing Street, Denver, CO

9    80218, appearing for Defendant Mulrenin.

10         James A. Backstrom, Counselor at Law, 1515 Market

11   Street, Suite 1200, Philadelphia, PA 19102-1932;

12         Roxann E. Henry, Attorney at Law, 5410 Wilson Lane,

13   Bethesda, MD 20814, appearing for Defendant Kantola.

14         Mark A. Byrne of Byrne & Nixon, LLP, 888 West Sixth

15   Street, Suite 1100, Los Angeles, CA 90017;

16         Dennis J. Canty, Canty Law Corporation,

17   1990 North California Blvd., 8th Floor, Walnut Creek, CA 94596,

18   appearing for Defendant Little.

19         John Anderson Fagg, Jr. and James McLoughlin of

20   Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700,

21   Charlotte, NC 28202-4003, appearing for Defendant Lovette.

22

23

24

25

```
 1              APPEARANCES (Continued)
 2          Craig Allen Gillen and Anthony Charles Lake of
 3    Gillen, Withers & Lake, LLC, 400 Galleria Parkway, Suite 1920,
 4    Atlanta, GA 30339;
 5          Richard L. Tegtmeier of Sherman & Howard, LLC,
 6    633 17th Street, Suite 3000, Denver, CO 80202-3622, appearing
 7    for Defendant Roberts.
 8          Barry J. Pollack of Robbins, Russell, Englert, Orseck
 9    & Untereiner, LLP, 2000 K Street N.W., 4th Floor, Washington,
10    DC 20006;
11          Wendy Johnson and Christopher Plumlee of  RMP, LLP,
12    5519 Hackett Road, Suite 300, Springdale, AR 72762, appearing
13    for the Defendant Blake.
14
15                    PROCEEDINGS
16        THE COURT:  The matter before the Court is United
17    States of America versus Jayson Jeffrey Penn and others.  This
18    is Criminal Case 20-CR-152.  We are here today for the first
19    day of the retrial.
20          I will take entries of appearances, first of all, on
21    behalf of the United States.
22        MR. KOENIG:  Good morning, Your Honor.  Michael Koenig
23    on behalf of the United States.  With me today is Carolyn
24    Sweeney, Paul Torzilli, Heather Call and Special Agent from the
25    FBI LaNard Taylor.
```

1        *THE COURT:*  Good morning to you.

2            And entries of appearance on behalf of Mr. Penn?

3        *MR. TUBACH:*  Good morning, Your Honor.  Michael Tubach

4   and Anna Pletcher of O'Melveny Meyers on behalf of Mr. Penn who

5   is with me today.

6        *THE COURT:*  And good morning to each of you.

7            On behalf of Mr. Fries?

8        *MR. KORNFELD:*  Good morning, Your Honor.  Rick

9   Kornfeld and David Beller -- also Kelly Page is in the overflow

10  courtroom -- on behalf of Mr. Fries who is present this

11  morning.

12       *THE COURT:*  Good morning to you.

13           And on behalf of Mr. Brady?

14       *MR. LAVINE:*  Good morning, Your Honor.  Bryan Lavine

15  and Megan Rahman representing Scott Brady who is here today and

16  also Tiffany Bracewell who is in the overflow courtroom.

17       *THE COURT:*  Good morning to you.

18           On behalf of Mr. Austin?

19       *MR. FELDBERG:*  Good morning, Your Honor.  Michael

20  Feldberg.  I am here with Mr. Austin; my colleagues, Julie

21  Withers, Laura Carwile and Parshad Brahmbhatt, are in back of

22  me or in the overflow courtroom.

23       *THE COURT:*  Good morning to you.

24           On behalf of Mr. Mulrenin?

25       *MS. PREWITT:*  Good morning, Your Honor.  Elizabeth

1    Prewitt and Marci LaBranche on behalf of Mr. Mulrenin.

2              *THE COURT:*  Good morning to each of you as well.

3              On behalf of Mr. Kantola?

4         *MS. HENRY:*  Good morning, Your Honor.  Roxann Henry

5    and Mr. James Backstrom on behalf of Mr. Kantola who is

6    present.

7              *THE COURT:*  And good morning to each of you.

8              On behalf of Mr. Little?

9         *MR. BYRNE:*  Good morning, Your Honor.  Mark Byrne and

10   Dennis Canty on behalf of Mr. Little and Mr. Little is present.

11             *THE COURT:*  Good morning to each of you.

12             On behalf of Mr. Lovette?

13        *MR. FAGG:*  Good morning, Your Honor.  John Fagg with

14   Dru Nielsen here on behalf of Mr. Lovette.

15             *THE COURT:*  Good morning to each of you.

16             On behalf of Mr. Roberts?

17        *MR. GILLEN:*  Good morning, Your Honor.  Craig Gillen.

18   Mr. Roberts is here.  Richard Tegtmeier is in the courtroom and

19   Anthony Lake is joining us from the overflow courtroom.

20             *THE COURT:*  Good morning to each of you.

21             And on behalf of Mr. Blake?

22        *MS. JOHNSON:*  Good morning, Your Honor.  Wendy Johnson

23   and Barry Pollack here in the courtroom with Mr. Blake.

24   Christopher Plumlee is in the overflow courtroom.

25             *THE COURT:*  Good morning to each of you as well.

1          Let us go over and adjust a few things to make sure

2     that we are all ready to go.  First of all, I think that you

3     should each have a transceiver, so make sure that you have got

4     that because we will be using the transceivers either for bench

5     conferences today during jury selection, but also if a juror

6     wants to talk to the Court privately, we will be using the

7     transceiver system as we did last time.  You will recall that

8     we brought the witness up closer to the witness stand -- sorry,

9     the juror closer to the witness stand so that we could have

10    that conversation.

11         Also when we do introductions, as we talked about at

12    the trial preparation conference, the people at your table can

13    lower their masks if they want to be able to let the jury see

14    faces, but here is the tricky part and that is the person

15    talking should have his or her mask on.  It's natural that you

16    want to talk when your mask is off, but it should be the

17    opposite.

18         So, for instance -- I don't know how you do it, but

19    think about that.  I don't want the jurors to get conditioned

20    to think, oh, yeah, take the mask off and start talking,

21    something like that.  The jurors, if I remember, I will let

22    them know that they can if they want to introduce themselves or

23    something, they can take their mask off; but once again, it may

24    be a little bit awkward for them to do so, but we'll see.

25         Keep in mind that the alternate seats are seats 5, 10

1    and 13, so you should mark those on your charts.  You can

2    exercise strikes as to those seats at any point in time as we

3    talked about at the trial preparation conference, but those are

4    the alternate seats.

5           I will be reading as I did the last time certain jury

6    instructions, presumption of innocence, burden of proof, and

7    the right not to testify.  The statement of the case will be

8    the same except for the fact that of course I won't be talking

9    about any additional charges against Mr. Little.  And in terms

10   of voir dire, I am allowing 50 minutes per side.  Right before

11   the defense voir dire, I will mention to the jury that as a

12   practical matter the defendants have decided to have just two

13   persons conduct the voir dire.

14          And then once we get to the point where we are ready

15   to exercise peremptories, I think that last time, I am not

16   sure, but I think that we did 20 minutes per side.  Is that

17   enough time to be able to confer about peremptory challenges

18   among the defendants?

19          Mr. Beller?

20          MR. BELLER:  Your Honor, my memory -- although to be

21   honest, I haven't looked -- I think Your Honor had given us an

22   hour only because we need to reach some sort of consensus on

23   the exercise of those, that's my memory, but I don't recall for

24   certain.  But nevertheless, we would ask for an hour.

25          THE COURT:  I think an hour is too long.  You have

1    done it before so we have a good factual basis, but if it

2    really takes that long, I will give you that long.  Is that

3    people's memory of how long it took?

4         MR. TUBACH:  We can check the transcript, Your Honor,

5    in the mean time.

6         THE COURT:  Yeah, but if you think it may take that

7    long, we can do that.  And speaking of that, I will open up my

8    courtroom for the defendants because there are more of you to

9    do that, but just on that subject every morning I will open the

10   doors to my courtroom's witness rooms so that, you know, if

11   either side wants to utilize those, it can.  But I am not going

12   to generally open up my courtroom just because I don't like to

13   have my courtroom just opened to people.  But if you need it,

14   just let me know and we will unlock it.  And we will do that

15   for purposes of the defendants conferring.

16        Will the government be able to do their conferral

17   regarding the exercise of peremptories either in the rooms down

18   here or you can use the ones up there, although it's a little

19   close quarters.

20        MR. KOENIG:  Yes, Your Honor.

21        THE COURT:  Okay, great.  And openings, just let me

22   know in advance how you want to divide up your times.  You

23   don't have to necessarily let me know now.  And then I'll tell

24   the jurors before the first break today that they should use

25   the bathrooms on the first or second floor and the attorneys

1    use the bathrooms on the fourth floor or higher.  The marshals

2    are on the third floor.

3         And then this won't really kick in until later, but

4    when you are conducting an examination of a witness, you should

5    not refer to the witness just by his or her first name.  You

6    can do that in your openings or in the closings, but not when

7    you are conducting an examination.

8         And then the government filed I think yesterday an

9    indication that the parties are still talking about

10   stipulations regarding exhibits.  I will hold off on an order

11   because we do have an outstanding motion, but I will hold off

12   on that until I get that stipulation.

13        Any idea maybe when you will know about the

14   stipulation, Mr. Torzilli?

15        *MR. TORZILLI:*  We are hopeful to have something

16   submitted later today, maybe even perhaps as soon as lunch.

17        *THE COURT:*  Okay.  That's fine.  I'll hold off.  I

18   think that's good.  I think that that will help move things

19   along.

20        The defendants filed I think it was yesterday an

21   indication of some additional witnesses, but also some

22   witnesses that won't be called.  So I've made those additions,

23   assuming the government doesn't object, and deletions to the

24   list of witnesses that I will read to the jury today.  Anything

25   else other than that notice?

1          Okay.  And then, of course, as you probably know,

2    there was a Wall Street Journal article yesterday about the

3    case.  So I will inquire of whether people have heard about the

4    case.  If anyone has, obviously we'll talk about any publicity

5    by way of a bench conference so that they won't poison the

6    other jurors.

7          Mr. Beller?

8          *MR. BELLER:*  Thank you, Your Honor.  I simply wanted

9    to bring it to the Court's attention that all last week on the

10   cover of the New York Times electronic page or website and app

11   was an 11-minute editorial on what I am going to call the

12   horrors of commercial chicken farming.  In addition to that,

13   both Chick-fil-A and KFC have a banner at the top of their

14   website currently that notes that due to global supply chain,

15   that many products including chicken may not be available.  I

16   simply point these out to the Court in case there happens to be

17   a juror that mentions having seen this or otherwise comments on

18   it.  I wanted to bring it to your attention.

19         *THE COURT:*  Yeah, that's a good idea.  And here is one

20   thing that could come up.  It really didn't last time, but it

21   could come up today, and that is, you know, a juror who feels

22   uncomfortable because that juror does not like chickens being

23   caged or some type of practices like that.  Of course, there

24   was testimony during the course of the last trial about how it

25   seemed to me that those practices do not really exist among the

 1  group that we're talking about here.

 2         So I am -- my suggestion, but I want to hear from you,

 3  is if it comes up and if there is no disagreement about that

 4  that's not the focus of this trial, even though I've told

 5  people that I don't want you to talk about facts, perhaps it

 6  would be a good idea to set people's minds at ease that none of

 7  the suppliers here have that type of a practice so that we

 8  wouldn't lose some jurors because they can't preside over a

 9  trial where there might be what they regard as inhumane

10  treatment of chickens or something.  What do you think about

11  that?

12         Mr. Koenig?

13         *MR. KOENIG:*  Sure, Your Honor.  I understand the

14  sentiment.  I also don't know that it's true.

15         *THE COURT:*  Yeah, I'm not sure.

16         *MR. KOENIG:*  So I would be reluctant to tell the jury

17  something that's not true.

18         *THE COURT:*  Sure.  We shouldn't do that.

19         Mr. Beller?

20         *MR. BELLER:*  Your Honor, the gentlemen here will

21  certainly correct me if I'm wrong, but I believe that it is

22  federal law that chicken that is to be consumed by humans is

23  not permitted to be caged and hasn't been in decades.  So the

24  difference would be if chickens are laying chickens, those can

25  be caged.  However, chickens for human consumption cannot be

1    caged.  For purposes of jury selection, of course, my concern

2    is if somebody has an opinion one way or the other, I would

3    like to know that and I would like to know why.

4         THE COURT:  Sure.

5         MR. BELLER:  So if the Court would simply allow us

6    just a little bit of leeway to be able to inquire into the

7    understanding of their sentiment, and then if there is a need

8    to correct it, we certainly can.  But I would prior to

9    correcting it just like to know what their opinion is if they

10   happen to be the ones who mention it.

11        THE COURT:  Yes.  You would obviously be able to do

12   that because that is relevant.  And there was a New York Times

13   article about the egg industry recently and it did mention

14   caging, so people could potentially be aware of that.

15        All right.  Anything else that we should take up

16   before we recess waiting for that point where we have a

17   sufficient number of jurors to begin?  I haven't gotten a

18   report on how we're doing in terms of people coming in.  Of

19   course, with the weather it could be that people are trickling

20   in a bit more slowly than normal.

21        Mr. Fagg?

22        MR. FAGG:  Thank you, Your Honor.  Just one point to

23   make the Court aware.  One member of our team is having some

24   back problems and may need to stand from time to time --

25        THE COURT:  No problem.

1          *MR. FAGG:*  -- for voir dire today and just wanted to

2     alert the Court to that.

3          *THE COURT:*  Yes, that can happen with jurors too, but

4     there is no problem if that person stands.  And who is that?

5          *MR. FAGG:*  It's Ms. Brickman.

6          *THE COURT:*  All right.  She is on the periphery and

7     that probably won't be too obvious.  But if I notice it and it

8     seems to be obvious, I will mention that to the jurors just so

9     they don't think, hey, what's she doing standing up?

10          *MR. FAGG:*  Thank you, Your Honor.

11          *THE COURT:*  Ms. Prewitt?

12          *MS. PREWITT:*  Thank you, Your Honor.  I just want to

13     advise the Court that we this morning received another set of

14     summary charts that have been corrected by the government.  And

15     Ms. Evans we anticipate would be testifying to those summary

16     charts just as she did during the last trial.  My understanding

17     is these are not even the final charts as Your Honor has before

18     him a motion already to exclude revised summary charts as

19     untimely.  And I just wish to make Your Honor aware of this

20     given we obviously had this history at the last trial and it

21     really throws a bunch of the defense teams into a bit of

22     disarray to have to constantly fact check new summary charts,

23     especially given, Your Honor, this is all ground that has been

24     well tread in the prior trial.  And sufficient amount of time

25     has elapsed since then to have charts that were submitted by

1    the Court deadline in final form.  Thank you, Your Honor.

2         THE COURT:  Right.  We won't take that up now, but we

3    may need to take it up by the time that we are getting ready to

4    call the first witness.

5         MS. PREWITT:  Thank you, Your Honor.

6         THE COURT:  Thank you, Ms. Prewitt.

7         Anything else we should take up at this time?

8         Ms. Call?

9         MS. CALL:  I was going to inform Your Honor the

10   government would seek to respond to the motion that was filed

11   on Friday by the defendants and will do so this morning.

12        THE COURT:  Okay.  Anything else we should take up?

13        So Ms. Grimm has let me know that we are getting close

14   to the number of jurors that we need, but we are not quite

15   there yet.  So once we reach that sufficient number, then we'll

16   go ahead and get people seated.  And obviously that will mean

17   that those of you who are currently in the gallery will need to

18   go up to the overflow courtroom.  And then once we get everyone

19   seated, then we will get going, all right?

20        The Court will be in recess.  Thank you.

21      (Recess at 8:20 a.m.)

22      (Reconvened at 8:56 a.m.)

23        THE COURT:  All right.  Good morning, ladies and

24   gentlemen.  Welcome to the United States District Court for the

25   District of Colorado.  My name is Philip Brimmer and I am the

1    judge who is presiding over this trial.  Let me thank you right

2    off the bat for responding to your summons and being here

3    today, especially with arctic air.

4          Jury service is one of the most important of civic

5    obligations that United States citizens have.  It ensures that

6    disputes between parties are resolved by a jury of their peers.

7    And if you had a different type of a system, for instance,

8    France has a system of professional judges who do it, but the

9    jury system really brings a lot of common sense and wisdom from

10   the community to bear on the resolution of those problems.

11         I am not sure if you have heard of the case between

12   Apple and Samsung that was tried a few years back in the

13   Northern District of California involving patents for the

14   iPhone.  You could imagine how complicated that particular

15   trial was in terms of the technical issues, but persons just

16   like yourselves were called in for jury duty in that case and

17   they were the ones who resolved that case.  So that is an

18   illustration of just how much responsibility that we entrust to

19   jurors in the American trial system.

20         Another way to think about the importance of jury

21   duty, ladies and gentlemen, is that everyone in this courtroom,

22   me included, is just one traffic accident away from either

23   being a plaintiff in a lawsuit or the defendant in a lawsuit.

24   And certainly if today was your trial, you would want the

25   persons who showed up for jury duty to take it seriously, to

1  answer the questions truthfully, and to be willing to

2  participate fully in the jury trial system.

3        The Court is convened today for a trial in Case No.

4  20-CR-152, which has the case caption United States of America

5  versus Jayson Jeffrey Penn, Mikell Reeve Fries, Scott James

6  Brady, Roger Born Austin, Timothy R. Mulrenin, William Vincent

7  Kantola, Jimmie Lee Little, William Wade Lovette, Gary Brian

8  Roberts and Rickie Patterson Blake.

9        This is a criminal case, ladies and gentlemen, as

10  opposed to a civil case.  And the Indictment that brought the

11  charges in this case charges each of the defendants with a

12  conspiracy to suppress and eliminate competition by rigging

13  bids and fixing prices in the broiler chicken industry.  A

14  broiler chicken is a chicken produced for human consumption.

15  Each of the defendants denies that he agreed or conspired with

16  anyone to rig bids or to fix prices for broiler chicken

17  products.

18        Keep in mind, ladies and gentlemen, that this is only

19  the charge.  It is not evidence.  Each of the defendants is

20  presumed innocent unless proven guilty.  And ladies and

21  gentlemen, we will, of course, have jury instructions at the

22  end of the case, but let me at this time read to you some of

23  those jury instructions, and that is as follows:

24        The government has the burden of proving each

25  defendant guilty beyond a reasonable doubt.  The law does not

1    require a defendant to prove his innocence or produce any

2    evidence at all.  The government has the burden of proving the

3    defendant guilty beyond a reasonable doubt, and if it fails to

4    do so, you must find the defendant not guilty.

5        Proof beyond a reasonable doubt is proof that leaves

6    you firmly convinced of the defendant's guilt.  There are few

7    things in this world that we know with absolute certainty, and

8    in criminal cases the law does not require proof that overcomes

9    every possible doubt.  It is only required that the

10   government's proof exclude any reasonable doubt concerning the

11   defendant's guilt.  A reasonable doubt is a doubt based on

12   reason and common sense after careful and impartial

13   consideration of all the evidence in the case.

14       If based on your consideration of the evidence you are

15   firmly convinced that the defendant is guilty of the crime

16   charged, you must find him guilty.  If, on the other hand, you

17   think there is a real possibility that he is not guilty, you

18   must give him the benefit of the doubt and find him not guilty.

19       Some or all of the defendants may not testify.  And I

20   remind you that you cannot consider each defendant's decision

21   not to testify as evidence of guilt.  You must understand that

22   the Constitution of the United States grants to a defendant the

23   right to remain silent.  That means the right not to testify.

24   That is a constitutional right in this country.  It is very

25   carefully guarded.  And you must not presume or infer guilt

1   from the fact that a defendant does not take the witness stand

2   and testify or call any witnesses.

3            Ladies and gentlemen, in the jury selection today we

4   are going to pick 15 people, 12 regular jurors and three

5   alternate jurors.  Before we begin, let me go ahead and

6   introduce the members of my staff to you.  First of all,

7   Sabrina Grimm who is right over there, if you are on the jury,

8   she will be your principal contact with my court staff.

9            Ms. Janet Coppock is our court reporter.  She is

10  seated right in front of the bench right there.  She is taking

11  down everything that is being said.  It's important that she be

12  able to do so.  And as a result, during the course of jury

13  selection if I am asking you a question, for example, and you,

14  for instance, just said uh-huh or nodded your head, I might ask

15  you to say yes or no.  That's just so that we are able to make

16  a record, okay?  And Ms. Virginia Butler, who is standing up

17  right now, she is my law clerk.  She may occasionally come in

18  and out of the courtroom as she needs to do so.

19            I am going to have the parties introduce themselves to

20  you at this time.  In the course of their doing so, ladies and

21  gentlemen, I have authorized them to lower their masks if they

22  choose to, so that way you can get a better look at them

23  essentially.

24            So starting off with the United States, the United

25  States may introduce themselves.

1          Mr. Koenig?

2          MR. KOENIG:  Good morning, ladies and gentlemen.  My

3   name is Michael Koenig.  I am a lawyer for the United States

4   Government.  With me today is Carolyn Sweeney, Paul Torzilli,

5   Heather Call, all attorneys with the United States, and from

6   the Federal Bureau of Investigation, Special Agent LaNard

7   Taylor.

8          THE COURT:  All right.  Thank you, Mr. Koenig.

9          And next introductions by Mr. Penn.  Mr. Tubach?

10          MR. TUBACH:  Good morning, Your Honor.  Michael Tubach

11   and Anna Pletcher who is not here.  She is in the overflow room

12   given we are picking a jury now.  I represent Jayson Penn.

13   Jayson Penn is standing next to me.  I will take off my mask

14   briefly so you can at least see what my face looks like one

15   time.

16          THE COURT:  Thank you, Mr. Tubach.

17          MR. TUBACH:  Thank you all.

18          THE COURT:  And on behalf of Mr. Fries?

19          MR. KORNFELD:  Good morning everybody.  My name is

20   Rick Kornfeld.  Along with David Beller and our colleague,

21   Kelly Page, who is in the overflow courtroom, we represent

22   Mr. Mikell Fries.

23          THE COURT:  Thank you, Mr. Kornfeld.

24          And on behalf of Mr. Brady, Mr. Lavine?

25          MR. LAVINE:  My name is Bryan Lavine.  Along with

1   Megan Rahman we represent Mr. Scott Brady, and Tiffany

2   Bracewell who is in the overflow courtroom.  Good morning.

3          THE COURT:  Thank you.

4          And on behalf of Mr. Austin, Mr. Feldberg.

5          MR. FELDBERG:  Good morning, ladies and gentlemen.  My

6   name is Michael Feldberg.  This is Roger Austin.  I will take

7   this off for a moment.  Over the course of the trial you will

8   see my colleagues Julie Withers, Laura Carwile and Parshad

9   Brahambhatt, who are all in the overflow courtroom.

10          THE COURT:  Thank you.

11          And on behalf of Mr. Mulrenin, Ms. Prewitt?

12          MS. PREWITT:  Good morning.  My name is Elizabeth

13   Prewitt.  I am here with my colleague Marci LaBranche and we

14   represent Timothy Mulrenin.

15          THE COURT:  Thank you.

16          And on behalf of Mr. Kantola.  Ms. Henry?

17          MS. HENRY:  Good morning.  My name is Roxann Henry and

18   I am here with Mr. James Backstrom and we represent Mr. Bill

19   Kantola.  Thank you.

20          THE COURT:  Thank you.

21          And on behalf of Mr. Little, Mr. Byrne?

22          MR. BYRNE:  Good morning.  My name is Mark Byrne.  I

23   am here with Dennis Canty and we represent Jimmie Lee Little.

24   Good morning.

25          THE COURT:  Thank you.

1          And on behalf of Mr. Lovette, Mr. Fagg?

2          MR. FAGG:  Good morning, everyone.  My name is John

3    Fagg.  And I am here with Dru Nielsen and my colleagues Jim

4    McLoughlin and Kaitlin Price who are in the overflow courtroom,

5    and we represent Bill Lovette.

6          THE COURT:  Thank you.

7          On behalf of Mr. Roberts, Mr. Gillen?

8          MR. GILLEN:  Good morning, ladies and gentlemen.  My

9    name is Craig Gillen along with Richard Tegtmeier, my

10   co-counsel, and Anthony Lake in the overflow room.  We have the

11   privilege of representing Brian Roberts.

12         THE COURT:  Thank you.

13         And on behalf of Mr. Blake, Ms. Johnson?

14         MS. JOHNSON:  Yes, good morning.  My name is Wendy

15   Johnson.  My colleague here with me is Mr. Barry Pollack.  And

16   our other colleague is in the overflow courtroom, Christopher

17   Plumlee.  We all represent Mr. Ric Blake.  Thank you.

18         THE COURT:  Thank you.

19         Ladies and gentlemen, just by word of explanation,

20   they are mentioning an overflow courtroom.  Because of our

21   pandemic procedures and the fact that we've got people spread

22   out, all the attorneys don't fit, because the jurors are in the

23   seating area.  So as a result, we have another courtroom where

24   they are able to watch it by close circuit.  So that's the

25   reference to the overflow courtroom.

1          All right, ladies and gentlemen.  Let us talk about

2     the length of the trial.  This trial is set for 22 days

3     beginning today.  We are not going to have trial each day of

4     the week.  For instance, we are not going to have trial on this

5     Friday.  The reason for that is I have other docket matters

6     that I have to fit in sometime during that 22 days.  And

7     oftentimes we won't have trial on Fridays, but there will be

8     some exceptions.  So the last day of the trial is scheduled for

9     March 29th.  That would be the last day of the trial.

10         Keep in mind, ladies and gentlemen, however, that the

11    length of deliberations is not limited.  So even though the

12    trial may end on the 29th of March, the jury can deliberate for

13    as long as it needs to deliberate.

14         Hours of the trial are generally between 8:30 and

15    5:00 o'clock.  We will generally end right at 5:00 o'clock.

16    The hours today, because jury selection may vary a little bit,

17    but once again we are not going to go past 5:00, we will take a

18    mid-morning break.  Once again, today we got a little bit of a

19    late start.  We might not take the break at the normal time,

20    but we will take a break this morning because this is not an

21    endurance contest.  But normally what we do is take a break at

22    about 10:15 for 15 minutes, and then in the afternoon we take a

23    break at about 3:15 once again for 15 minutes.  The lunch break

24    is generally between noon and 1:30.  We will play it by ear

25    today, but that is generally the schedule.

1          When we take a break, ladies and gentlemen, this is

2     especially important during jury selection, there are a lot of

3     us and people will be likely heading for the bathrooms.  I will

4     have the perspective jurors use the bathrooms on the first and

5     second floors.  So if you want to go down to the first floor,

6     there are bathrooms down there or you can stay on this floor.

7     The attorneys are going to be using the bathrooms on higher

8     floors.  And the whole purpose of that is just to avoid them

9     kind of awkwardly coming into contact with you.

10          Believe me, ladies and gentlemen, the attorneys are

11     all very friendly people.  However, I don't want you to try to

12     talk to the attorneys.  They are not going to talk to you.

13     Don't try to communicate with them.  The purpose of that is

14     really just to avoid an appearance of impropriety, you know, in

15     other words, a third party observer thinking, oh, boy, it

16     sounds like so and so is trying to talk up a juror or having

17     contact with the jurors.  So we are going to try to avoid that.

18          So I know that at this point in time you might not

19     necessarily know who people are, although very few people other

20     than lawyers where suits and ties these days, but nonetheless,

21     if for some reason you come in contact with one of the

22     attorneys, understand that they are not going to try to

23     communicate with you.  Once again, they are not being

24     unfriendly.  They are just following my orders.  And you should

25     not try to talk to them either, okay?

1         So let's talk about pandemic-related issues.

2    Obviously, even though this is a big courtroom, there are lots

3    of people, and so the rules of this Court require that

4    everybody wear masks.  That is for the protection of everyone

5    in the courtroom.  There has, of course, been some publicity

6    lately about the fact that, No. 1, the boosters turn out to be

7    highly effective and people may not be needing to get boosters

8    for a while.  There are also, of course, the Omicron numbers in

9    the state of Colorado have really fallen off a lot lately,

10   quite impressively going down.

11        However, please keep the following in mind.  Even

12   though the positivity rate in the state of Colorado is going

13   down, it doesn't mean that even fully vaccinated people can't

14   get something highly contagious like Omicron.  It really means

15   that if you've been vaccinated, you probably won't end up in

16   the hospital.  It's great that you may not end up in the

17   hospital, but we don't want you to get sick, period, because if

18   you get sick, you are obviously going to be at home and that

19   would cause a problem for us in terms of being able to do the

20   trial.  So that's why we are all going to be wearing masks.

21        And I would like you to, you know, take that

22   seriously.  I am sure that you all will.  The security guards

23   in the front are passing out the surgical masks and some of you

24   are wearing surgical masks.  I am not sure if you got them from

25   the front.  Those are really good.  Ms. Grimm also has a

1    supply.  I am not sure if she has got a sufficient supply for

2    each person each day, but she's got some KN95 masks, which are

3    really good too.  So in the event that you end up on the jury

4    and you want a KN95, just talk to Ms. Grimm and she can supply

5    one of those to you.

6            Let's talk about the ventilation system in this

7    crowded courtroom.  The ventilation system is actually really

8    quite good for pandemics.  It wasn't designed that way.  It

9    just coincidentally is.  It's a low flow system and the

10   ventilation vents are in the floor.  Most times the ventilation

11   vents are on the walls or maybe the ceiling, but they are in

12   the floor.  And we've done smoke testing in this particular

13   courtroom and in all the courtrooms in this building, and the

14   air, it rises slowly straight up.  So that's really good

15   because it keeps there -- we don't have to worry about

16   cross-flows of air that may cause air from one person to move

17   across several other persons.

18           However, it is a low volume system meaning that there

19   is not a lot of air pressure pushing that air up.  So because

20   of that reason, it's a good thing to wear a mask just in case

21   for the people who are talking, for instance, witnesses on the

22   witness stand who are doing a lot of talking -- that's why they

23   are on the witness stand -- there is a chance that their

24   talking could kind of overwhelm the low volume system's ability

25   to bring that air up and away.  So that's why -- that's another

1    reason that it's good for us to wear masks.  But generally the

2    ventilation system in the courtroom is really very, very good

3    for purposes of keeping us all safe.

4         Let me switch topics now and talk to you about an

5    important topic that I would like you to all follow too, and

6    that is now virtually everybody has a device in their purse or

7    pocket, namely their cellphones, that is capable of looking up

8    all of the world's knowledge.  Quite remarkable thing

9    historically, but not good for purposes of trials because the

10   jury needs to resolve the charges in this case based upon the

11   evidence that has been admitted and the testimony that takes

12   place during the trial, not based on something that you may

13   have looked up.

14        So I am going to order each of you until such time as

15   you are released from jury duty in this case not to look up any

16   information whatsoever about the case.  That includes the

17   attorneys, me, you know, anything about the charge, anything

18   like that, okay?  Once you're done, once you have been

19   released, you can look up anything that you want.  It's just

20   that until that point, I am going to order that you not do

21   that.  Let me give you an illustration of how important that

22   is.

23        Once upon a time, I think within the last 10 years,

24   one of the judges in this court had a case involving a charge

25   under the Lacey Act.  The Lacey Act prohibits the importation

1    of wild animal parts into the United States if those animals

2    were poached.   And the facts of that particular case involved

3    the importation of a leopard that was shot based upon a hunter

4    having a license to hunt in South Africa.   Well, the charge was

5    that he actually shot the leopard in Namibia where he did not

6    have a license.

7          The border between Namibia and South Africa that was

8    relevant for that particular case was a dry river bed.   And the

9    judge informed the jurors that they were not to look up any

10   information about the case.   But nonetheless, during jury

11   deliberations one of the jurors decided to download some

12   satellite photos of that particular river bed and brought the

13   photos into the jury room.   And the other jurors, knowing that

14   that was completely improper, reported that to the judge.   And

15   the judge then had to declare a mistrial in that case.   And

16   then after that the issue became whether the juror who caused

17   the mistrial was going to have to pay for the cost of the

18   retrial, an expensive proposition since most of the witnesses

19   were flown over from Africa.

20          That's kind of an extreme situation, ladies and

21   gentlemen, but it does illustrate just how important it is to

22   follow that important admonition about not looking up

23   information.   You also can't have someone look up information

24   for you and it also includes not looking up -- you know, not

25   using a dictionary to look up legal terms, that type of thing.

1   All those terms have to be defined for you during the course of

2   the trial.

3          The process of selecting a jury, ladies and gentlemen,

4   is to determine whether each of the prospective jurors can be

5   fair and impartial in resolving the charges and also whether

6   that person is committed to following the law as I give it to

7   you as opposed to following your own notion of what the law is

8   or what the law should be.  To accomplish that task, I am going

9   to ask you a series of questions, and the attorneys are going

10  to be given an opportunity to ask questions of you as well.

11  The purpose of those questions are not to ask you any question

12  that may embarrass you.

13         If the answer to one of our questions would embarrass

14  you, let me know that, all right?  And we will have you come up

15  over here near the witness stand and we are going to use a head

16  phone which is called a transceiver.  And that way you can

17  indicate what the answer is and the entire courtroom won't

18  hear.  Now, the attorneys will hear because they will each have

19  a transceiver too, I will obviously hear, but at least everyone

20  else in the courtroom won't hear.  So if you want to do that,

21  don't hesitate to ask.  When the transceiver system is being

22  used, Ms. Grimm will activate some background noise.  The

23  purpose of that background noise is obviously to make it more

24  difficult to overhear what the person is saying.

25         All right, ladies and gentlemen.  When you are

1    answering the questions that either I'm asking you or that the

2    attorneys are asking you, you need to answer truthfully and

3    completely just like a witness.  So at this time I am going to

4    have you take an oath that Ms. Grimm will administer to you.

5    So would each of the prospective jurors please stand, raise

6    your right hand, and assuming you agree with the oaths, please

7    afterwards say "I do."

8             (Prospective jurors were sworn.)

9             *PROSPECTIVE JURORS:*  I do.

10            (Jury selection was sealed.)

11                         REPORTER'S CERTIFICATE

12       I certify that the foregoing is a correct transcript from

13    the record of proceedings in the above-entitled matter.  Dated

14    at Denver, Colorado, this 15th day of May, 2022.

15

16                             _____
                               S/Janet M. Coppock

17

18

19

20

21

22

23

24

25